UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23485-CV-ALTMAN/REID

THE MAD ROOM, LLC, d/b/a BALL
AND CHAIN, ALTOS MEXICANO,
LLC d/b/a TAQUERIAS EL
MEXICANO, LITTLE HAVANA ARTS
BUILDING, LLC, and LA GRAN
FIESTA, LLC,

    Plaintiffs,

v.

THE CITY OF MIAMI,

    Defendant.
_____/

**ORDER ON DEFENDANT'S AMENDED SEALED MOTION FOR SANCTIONS, PLAINTIFFS' SEALED MOTION ON DEFENDANT'S WAIVER OF PRIVILEGE OVER CERTAIN ATTORNEY COMMUNICATIONS, AND PLAINTIFFS' MOTION TO OVERRULE CITY'S CONFIDENTIALITY DESIGNATION**

This Matter is before the Court on three related motions: (1) Defendant City of Miami's Amended Sealed Motion for Sanctions [ECF No. 168]; (2) Plaintiffs' Sealed Motion on the City of Miami's Waiver of Privilege over Certain Attorney Communications [ECF No. 150]; and (3) Plaintiffs' Motion to Overrule The City of Miami's Confidentiality Designation [ECF No. 176]. The Court held a hearing on the three motions on Monday, November 7, 2022. Having heard from the parties and reviewed the motions, responses, and record, the Court **ORDERS and ADJUDGES** as follows:

    1. Defendant City of Miami's Amended Sealed Motion for Sanctions [ECF No. 168] is **DENIED**.

1

2. Plaintiffs' Sealed Motion on the City of Miami's Waiver of Privilege over Certain Attorney Communications [ECF No. 150] is **DENIED AS MOOT**.

3. Plaintiffs' Motion to Overrule The City of Miami's Confidentiality Designation [ECF No. 176] is **GRANTED**.

## I.  Background

### A.  The Complaint

In September 2021, Plaintiffs Mad Room LLC, Little Havana Arts Building LLC, La Gran Fiesta LLC, and Altos Mexicanos LLC, corporate entities owned by principals William Fuller ("Fuller"), Ben Bush, Zack Bush, and Martin Pinilla III ("Pinilla"), (collectively "Owners"), filed this action against the City of Miami, alleging that beginning in January 2018, the City "developed and deployed a deliberate policy and plan of action … to destroy Plaintiffs' fundamental and constitutionally protected rights to their real property and in their business." [ECF No. 1]. Plaintiffs claimed the City used its administrative departments including Building, Planning, Zoning, Fire, Police, Code Enforcement and its staff and employees to harass and close the businesses, ultimately causing lost profits in the amount of $27.91 million. [*Id.*]. Additionally, Plaintiffs claimed that the City Attorney and her office were directly involved in planning and implementing the City's unlawful policies to target Plaintiffs and damage their business and properties. [*Id.*].

Plaintiffs filed the Complaint about three years after Owners Fuller and Pinilla filed a lawsuit against the City and City Commissioner Joe Carollo based upon analogous accusations of targeting. *See* Case No. 1:18-cv-24190 (hereinafter "*Fuller v. Carollo*"). In that action, Fuller and Pinilla were represented by Jeffrey Gutchess of AXS Law Group PLLC. *See id.*

### B. City Manager Emilio Gonzalez's Sworn Statement in the *Fuller v. Carollo* Action

Emilio Gonzalez was the City Manager for the City from January 2018 to January 2020. In January 2021, Senior Assistant City Attorney Christopher Green e-mailed Gonzalez's personal attorney, David Marko, about the *Fuller v. Carollo* action, stating:

> I represented the City in the above lawsuit in which the Plaintiffs has [sic] subpoenaed the former City Manager, Emilio Gonzalez, for deposition. Even though the City is no longer a party to the lawsuit, it is the practice of our office to represent former executives and directors who are being deposed with respect to their official duties. I reached out to Mr. Gonzalez and he advised that you would be representing him at the deposition. Therefore, I told him I would need to reach out to you before having any other conversations. He advised me that he told plaintiffs' counsel he would not be available for deposition next week and asked them to reschedule it. I would like to schedule a phone or videoconference with you at some time prior to the deposition. I am working remotely so the best way to reach me is through this email or my cell phone, (305) 496-9211.

[ECF No. 168-1]. Marko responded:

> As I understand from Mr. Gonzalez, the City would be representing in the deposition and I would attending as additional private counsel—not as a substitute for the City. Please feel free to call me anytime to coordinate this. My cel is below. It is the easiest way to reach me these days.

[*Id.*]. A few days later, on February 24, 2021, City Manager Gonzalez was interviewed by Fuller and Pinilla's attorney, Jeffrey Gutchess. [ECF No. 168-3]. Gonzalez's statements were made under oath, recorded, and transcribed ("the Gonzalez Sworn Statement"). At the beginning of the statement, Gutchess asked Gonzalez whether the City Attorney had offered to represent him in the matter and whether he had declined the City Attorney's offer. [*Id.* at 4–5]. Gonzalez responded: "I have told them that I have my own representation—and did not accept their offer." [*Id.*]. Moments later, Gonzalez answered a phone call from his attorney, David Marko. [*Id.* at 14–15]. Marko, whose call was transcribed as part of the statement, told Gutchess he was "Emilio [Gonzalez]'s humble servant and that Gonzalez was "a grown man who is five times smarter than me and … knows everything …" [*Id.* at 15]. Marko then told Gutchess he "was free to talk to [Gonzalez]." [*Id.*].

3

Gutchess proceeded to interview Gonzalez, asking him:

> **Q**: [L]et's start with your just overall general impressions of how Commissioner Carollo was treating Mr. Fuller and Pinilla?
>
> **Gonzalez**: [F]rom my perspective and I don't want to speak for other people but they can speak for themselves, but when you talk to them, it was very evident that Misters Fuller and Pinilla were being targeted by Commissioner Carollo. He made no secret that the fact that whatever it is they were doing was wrong. He one time early on when I started as city manager took me on a midnight tour…of Eighth Street pointing out businesses which he though had no business on Eighth Street and it just sort of escalated and escalated.
>
> **Q**: And then I believe there was a whole slew of events in the first few months of 2018 when you started?
>
> **Gonzalez**: Yes.
>
> \*\*\*\*\*\*\*
>
> **Gutchess**: Is it your opinion that we – our businesses were subjected to inspections and reviews that were grossly disproportionate to everybody else in the City?
>
> **Gonzalez**: Absolutely.
>
> **Q**: And do you – so, therefore, would you call that selective enforcement?
>
> **Gonzalez**: I would call that targeting.
>
> \*\*\*\*\*\*\*
>
> **Q**: There were a couple of times that [Carollo] asked you to [request code inspections]?
>
> **Gonzalez**: Correct.
>
> **Q**: And you did it because you were new and you didn't know what he was up to. Do you remember when those were?
>
> **Gonzalez**: Early on. Early on.

But I will tell you that part of the reason that the relationship between him and the administration deteriorated to the point – it was never good, it was because he thought we were stonewalling his efforts to put Mr. Fuller out of business. And, in fact, we would have that conversation with the City Attorney because she was very interested at that time in wanting to close these businesses, and deputy manager Napoli and myself were adamant saying we are not in the business of closing down businesses….

And there was instances that I can recall where she gave us a list of properties to research and we went back to her and said these are all Fuller's properties and then she came back the next day or a couple days later with more properties and said, here, I threw in some non-Fuller properties so it doesn't look like were piling on.

*******

**Q**: Did you make a memo in the file anywhere?

**Gonzalez**: I did. Because I thought it was just – it was very improper.

**Q**: Let me hand you what we'll mark as Exhibit A, and ask you if that's the memo that you wrote to memorialize that conversation.

**Gonzalez**: Yes.

**Q**: So is it your opinion that the City Attorney was working in coordination with the City –with the City commissioner to target our properties and our businesses?

**Gonzalez**: She had to because she is – she provides legal counsel for the commissioner. So whatever he did, she would provide legal justification for doing that.

**Q**: And do you believe that there were any other individuals that were being mobilized or utilized with – even with their knowledge or without their knowledge to organize the targeting efforts?

**Gonzalez**: Absolutely because Victoria runs the office. She has numerous attorneys at her disposal to do research and so forth. So this would not have been sort of like a covert operations on her part. She would have tapped into whatever staff she had available.

**Q**: And why do you think staff members would participate in such an action as that? Why would they do that?

> **Gonzalez**: Because they would do whatever the City Attorney – remember that the City Attorney, no matter what you called her out on something, she would always say I'm representing my client. And as distasteful as whatever it was she was doing, she could always justify it as representing her client.

[*Id.* at 6–7,9, 11–12 20–24, 41–42].

When asked about a then-pending lawsuit, Gonzalez answered:

> **Q.** Right. Right. Tell us what happened when you when we had the first hearing in this case before Judge M[ore]no. Do you recall that?
>
> **Gonzalez** Well, I wasn't there, but that would have been I want to say in November of '18. Is that about right?
>
> **Q**. Right. I think that sounds right, yeah?
>
> **Gonzalez**. I was -- I was at county -- at City Hall and I was actually standing in the front door with my chief of staff and I received a call from the -- from the City Attorney and she told me that she had literally just finished the status hearing and that Mr. Fuller's attorneys had made it a point to tell Judge M[ore]no that they planned on calling me as a witness and she told me that Commissioner Carollo was visibly upset and that that was not good and that I should go to grave lengths to make them happy. The Spanish version is "pasar la mano", which is like stroke. "Pasar la mano", make them happy. I said there's nothing to make happy about. If I am called to testify, I'll testify, I'll give the truth, and then she reiterated that he was visibly upset that I would be testifying and that it was in my best interest to "pasar la mano."

[*Id.* at 20–21]. In addition to the memorandum marked as Exhibit A, Gonzalez provided five more memoranda that were discussed and attached as exhibits to the transcribed statement. [*Id.* at 12, 49–53; ECF No. 168-5]. To this day—the City alleges—this memoranda has not been located among Gonzalez's official City records. [ECF No. 168 at 4].

    **C.**    **City Manager Emilio Gonzalez's Deposition in this Action**

On June 30, 2022, Plaintiffs deposed Gonzalez. [ECF No. 168-20]. Shortly before the deposition, on June 24, 2022, Plaintiffs produced multiple documents to the City in response to a

6

discovery request, including the six memoranda that were attached to Gonzalez's sworn statement. [ECF NO 168 at 8]. Present at the deposition were counsel for both parties, counsel for Gonzalez, and several other nonparties.[1] During the deposition, Gonzalez read portions of his sworn statement into the record. *See* [ECF No. 168-20 at 9]. The six memoranda, the "Gonzalez Memos," were also introduced as exhibits. *See id.* Later in the deposition, City Counsel Kevin R. Jones cross-examined Gonzalez about the sworn statement, referring to the statement as the "granddaddy" deposition exhibit. [*Id.* at 292].

### D.  Chief of Staff Richard Blom's Deposition

Approximately three weeks later, on July 19, 2022, Plaintiffs deposed Commissioner Carollo's Chief of Staff, Richard Blom. [ECF No. 168-4]. Blom was represented by two City Attorneys, including senior litigation counsel. *See id.* During the deposition, Plaintiffs asked Blom about the Gonzalez Memos and the City Attorney's alleged involvement in the scheme to target Plaintiffs. *See id.* As with the Gonzalez deposition, Counsel for the City cross-examined Blom about the same "confidential" topics and documents.

### E.  The City's Motion for Sanctions, Plaintiffs' Motion on the City's Waiver of Privilege, and Plaintiffs' Motion to Overrule the City's Confidentiality Designations

On August 18, 2022, the City contacted Plaintiffs' Counsel and demanded immediate production of several documents, including any *ex-parte* communications, testimony, sworn statements from City employees, and any records related to the case such as the Gonzalez Memos. [ECF No. 168-21]. The City also demanded that Plaintiffs' Counsel, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., ("Stearns Weaver") withdraw from the case, "as a result of its obtaining, possessing and introducing into this matter privileged attorney-client communications." [*Id.* at 3.]. The City alleged that Stearns Weaver had "artfully avoided directly

---

[1] Plaintiffs note that the depositions of certain City officials are by law public proceedings. [ECF No. 176 at 2].

asking Mr. Gonzalez about his privileged communications with the City Attorney by instead asking him to read his prior testimony about them from the previously orchestrated sworn statement improperly and unethically obtained by Mr. Gutchess and Mr. Fuller." [*Id.* at 2].

Plaintiffs denied committing any ethical violations and responded that any production requests should be made in accordance with the Federal Rules of Civil Procedure. [ECF No. 168-22]. On September 12, 2022, this Court conducted a discovery hearing in which the City raised the Gonzalez matter and potential ethical violations. [ECF No. 147]. Plaintiffs again denied any wrongdoing and argued the City waived any privilege over the communications by failing to object during Gonzalez's deposition. The Court instructed the parties to file simultaneous briefs on the matter. *See id.*

The City subsequently filed its Sealed Motion for Sanctions, and Plaintiffs filed their "Sealed Motion on the City's Waiver of Privilege Over Certain Attorney Communications." [ECF No. 149, 150]. The City later amended its Motion for Sanctions. [ECF No. 168]. Around this time, on September 21, 2022, the district court entered an order granting in part and denying in part the City's Motion to Dismiss the Complaint and allowed Plaintiffs to file an amended complaint by October 11, 2022. [ECF No. 164].

Following a notice of compliance with the district court's instructions, Plaintiffs moved the Court to overrule the City's confidentiality designation and for an extension of time to file the amended complaint on the Docket. [ECF No. 176]. Plaintiffs argue they are unable to file the amended complaint on the Docket because the City seeks to designate the Gonzalez and Blom deposition transcripts and exhibits as "confidential" and "attorneys' eyes only." [*Id.* at 8]. This Court granted the motion for extension of time to file the amended complaint on the docket, limited

to the time the sanctions, waiver of privilege, and confidentiality designation motions remain pending. [ECF No. 179]. The motions are now ripe for review.

## II. Discussion

### A. The City's Amended Motion for Sanctions

The City moves the Court to impose sanctions against Stearns Weaver pursuant to the Court's inherent authority to control its proceedings under Federal Rule of Civil Procedure 37. The City argues that, by using the Gonzalez statement and memoranda, Stearns Weaver has furthered Gutchess's ethical violation of soliciting privileged information from a represented official. [ECF No. 168 at 20]. The City also claims that Stearns Weaver directly violated the Florida Rules of Professional Conduct and Federal Rules of Civil Procedure by concealing the sworn statement and memoranda and by introducing attorney-client privileged information in Gonzalez's deposition in this case. According to the City, Stearns Weaver essentially "buried" the memoranda in a document "dump" that was served on the City only six days before Gonzalez's deposition; and the sworn statement was not produced to the City until September 9, 2022, in anticipation of the September 12, 2022 discovery hearing. [*Id.* at 8]. In addition to disqualifying Stearns Weaver, the City asks the Court to prohibit Plaintiffs from using Gonzalez's sworn statement and memoranda and award the City costs. [*Id.* at 25].

Plaintiffs and Stearns Weaver deny any wrongdoing and argue the accusations are nothing more than "pounding the table." [ECF No. 150 at 8]. Plaintiffs argue the communications Gonzalez testified about are not protected by the attorney-client privilege, but even if they were, the City waived this protection by failing to raise any objection during Gonzalez's seven-hour deposition. Plaintiffs add counsel for the City would not have cross-examined Gonzalez about the sworn statement had the City had any doubt regarding confidentiality. The City's months-long silence on

9

the matter constitutes a waiver, and its threat of sanctions cannot undermine the effect of such waiver.

1. **Whether Gutchess Obtained the Sworn Statement in Violation of the Florida Rules of Professional Conduct.**

I begin with Gonzalez's Sworn Statement and the City's claim that it was obtained in violation of the Rules of Professional Conduct. The City argues that Plaintiffs cannot rely on the Gonzalez Statement and memoranda because Gutchess (Fuller and Pinilla's lawyer in the *Fuller v. Carollo* action)—violated Fla. B. R. 4-4.2, which prohibits an attorney from contacting represented parties. According to the City, Gonzalez had no authority to reject the City's representation of him as to his official capacity. Under the City of Miami Charter, the City contends, current and former City employees are represented by the Office of the City Attorney on "matters relating to their official duties." And as former City Manager and final policymaker, the City adds, Gonzalez could subject the City to liability under 42 U.S.C. § 1983. The City relies in part on Section 21 of the City of Miami Charter, which states: "The city attorney shall be the legal advisor of and attorney and counsel for the city, and for all officers and departments thereof in matters relating to their official duties."

Although the City Attorney is indeed responsible for advising City officers, I do not read this provision to mean that former officers can be represented only by the City Attorney. The text makes no mention of *former* officers, and the provision is meant to clarify the City Attorney's role as the City's legal advisor. More importantly, this district has expressly held that Fla. B. R. 4-4.02 does not prohibit contact with former employees of defendant employers "who can no longer speak for or bind the organization." *Roker v. S. Fla. Water Mgmt. Dist.*, No. 06-80768-CIV, 2007 WL 9701946, at *1 (S.D. Fla. Mar. 26, 2007) (quoting *H.B.A. Mgmt., Inc. v. Est.of Schwartz By & Through Schwartz*, 693 So. 2d 541 (Fla. 1997)). Courts in this district have explained that

10

consistent with the Florida Supreme Court's decision in *H.B.A. Management v. Estate of Schwartz*: "A former employee is simply no longer in the position of the 'person' contemplated by rule 4-4.2's restrictions." *Herrera v. 7R Charter Ltd.*, No. 16-24031-CIV, 2017 WL 10966650 (S.D. Fla. Sept. 29, 2017). And—"[t]hat former employees may have engaged in 'actions or inactions' while they were employed that may give rise to liability of the employer is simply a matter of historical fact." *Id.*

In *H.B.A. Management*, the Florida Supreme Court relied on a Florida Bar Committee's advisory opinion that:

> Rule 4–4.2 cannot reasonably be construed as requiring a lawyer to obtain permission of a corporate party's attorney in order to communicate with former managers or other former employees of the corporation unless such individuals have in fact consented to or requested representation of the corporation's attorney. A former manager or other employee who has not maintained ties to the corporation (as a litigation consultant, for example) is no longer part of the corporate entity and therefore is not subject to the control or authority of the corporation's attorney. **In many cases it may be true that the interests of the former manager or employee are not allied with the interests of the corporation. In such cases the conflict of interests would preclude the corporation's attorney from actually representing the individual and therefore would preclude the corporation's attorney from controlling access to the individual.** As the comment indicates with regard to current employees, if a former manager or former employee is represented in the matter by his personal attorney, permission of that attorney must be obtained for *ex parte* contacts, including contacts by the corporation's attorney.

*H.B.A. Mgmt., Inc.*, 693 So. 2d at 543–44 (quoting Fla. B. Comm. Ethics Op. 88–14 (Mar. 7, 1989)) (emphasis added).

Here too, it appears Gonzalez's interests were not aligned with the City's interests. Gonzalez provided testimony suggesting that City Officials implemented policies aimed at targeting the Plaintiffs' businesses and properties. This position directly conflicts with the City's and, thus, the City Attorney was precluded from representing Gonzalez and controlling access to him. Gonzalez was free to retain his own counsel in the *Fuller v. Carollo* action, and Gutchess needed permission of that attorney only. The sworn statement shows Gutchess obtained Marko's

permission, and therefore it is not apparent that Gutchess obtained the statement in violation of Fla. B. R. 4-4.02.

The City's arguments that Gonzalez could "bind" the City or that "there is some gray regarding *ex parte* communications with former employees" are unpersuasive. See [ECF No. 168 at 18]. Though Gonzalez's *execution* of certain City polices during his time as City Manager could subject the City to liability under section 1983, statements made by Gonzalez as a former employee are not automatically imputed to the City. *See Pino v. City of Miami*, 315 F. Supp. 2d 1230, 1244 (S.D. Fla. 2004); *see also H.B.A. Mgmt., Inc.*, 693 So. 2d at 545 (explaining employee's departure terminates agency that permitted employee to create liability for employer or make admissions for that employer). The City ignores that the purpose of the prohibition on contacting represented parties "is not to protect a corporate party from revelation of prejudicial facts, but rather to preclude interviewing of employees who have **authority** to bind the corporation." *H.B.A. Mgmt., Inc.*, 693 So. 2d at 544 (emphasis added).

It is undisputed Gonzalez was no longer employed by the City when he provided his statement and that Gutchess obtained permission from Gonzalez's personal attorney. For these reasons, I find that Stearns Weaver did not rely on a statement that was obtained in violation of the rule prohibiting attorneys from contacting represented parties.

2. **Whether the Communications Described by Gonzalez Are Protected by the Attorney-Client Privilege**

Having reviewed the Gonzalez Statement and memoranda, I also find that the City has not met its burden of establishing that Gonzalez's sworn statements and deposition testimony are protected by the attorney-client privilege. *See Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 687 (S.D. Fla. 2010) (explaining that party invoking attorney-client privilege has burden of establishing the existence of an attorney-client relationship and confidential nature of the

information sought). Presumably, the City seeks to invoke the privilege for communications made by the City Attorney to Gonzalez, including those related to the list of "non-Fuller" properties and the conversation regarding the status hearing before Judge Federico Moreno. [*Id.*; see also 168-3].

Though these and other communications may well appear to contain sensitive information, the City has not shown that the communications were made in confidence or for the primary purpose of providing legal advice. The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients...." *Havana Docks Corp. v. Carnival Corp.*, No. 19-CV-21724, 2021 WL 2940244, at *3 (S.D. Fla. July 13, 2021); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege protects: (1) communications, (2) made between an attorney and client, (3) in confidence, and (4) for the purpose of obtaining or providing legal advice for the client. *See Diamond Resorts*, 2021 WL 505122, at *4.

"The privilege applies to a company's communications with its external and in-house lawyers." *Pearlstein v. BlackBerry Ltd.*, No. 13CV07060CMKHP, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019).  But given "the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel though subject to the attorney-client privilege must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *Id.* "If the former, the communication is not protected by the attorney-client privilege." *Id.*

Here, the City Attorney's role mirrors that of a corporation's in-house counsel. As the Charter of the City of Miami provides, the City Attorney is the City's legal advisor. That does not mean however, that every communication with the City Attorney is protected by the attorney-

client privilege. The expanded legal role of "in-house" or internal counsel increases the burden borne by the proponent of privilege; and thus, the City should have precisely identified the communications that require protection, the context of those communications—including the recipients—and the purpose of those communications. Instead, the City asserts a broad privilege, claiming that the entire Gonzalez Statement and related materials cannot be disclosed due to the attorney-client privilege.

This is simply insufficient. "The Court should not have to guess or speculate about the applicability of the privilege, for the party asserting it has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed." *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, No. 18-cv-2171, 2019 WL 9091666, at *7 (M.D. Fla. Dec. 9, 2019). Without more context, the Court cannot properly assess whether communications between the City Attorney to Gonzalez reflect the typical attorney-client confidential conversation and whether such communications were reasonably expected and understood to be confidential. *See United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460 (M.D. Fla. 1998).

For example, when referring to the communication about a status hearing before Judge Moreno, Gonzalez stated he was "standing in the front door with my chief of staff" when City Attorney Mendez called him on his cellphone. But the City has offered no further details that would allow the Court to determine: (1) Gonzalez should have reasonably understood the communication was confidential; and (2) the communication was made for the primary purpose to provide legal advice to Gonzalez in his capacity as City Manager. Similarly, Gonzalez generally stated that the City Attorney gave him and the City deputy manager a revised list with "non-Fuller" properties. But again, the City has provided no further explanation on whether this communication

14

was made in confidence and for the primary purpose of providing legal advice. Arguably, the City Attorney's instructions could be construed as business or political advice and not as legal advice pertaining to anticipated litigation.

In addition to these elements, the City has not even shown that Gonzalez's statements qualify as *communications*. Many of Gonzalez's statements could be characterized as recordation of fact, and thus unprotected by the attorney-client privilege. *See U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 5415108 (M.D. Fla. Nov. 6, 2012) (explaining the privilege applies only to communications and does not extend to facts). Gonzalez, for instance, alleged that the City Attorney had created a new list of properties and that the City Attorney recounted how the City Commissioner was "visibly upset" when he learned that Gonzalez might be called as a witness. Without more context, many of these statements seem to be Gonzalez's own impressions rather than confidential conversations or exchanges with counsel that were transmitted for the purpose of providing legal advice. Thus, I cannot find that the City has met its burden of showing that the communications were privileged or that Stearns Weaver relied on ill-gotten confidential information.

**3. Whether Stearns Weaver Concealed the Sworn Statement and Related Memoranda.**

Next, the City argues Stearns Weaver deliberately concealed the Gonzalez Statement throughout the course of the litigation in violation of Fed. R. Civ. P. 26(a). [ECF No. 168 at 14]. The City argues Stearns Weaver never explained its delay for producing the Gonzalez Statement until September 9, 2022, following the City's request for a hearing on these issues. Stearns Weaver responds it was not required to disclose the statement because the latter constitutes attorney work product. Also, Stearns Weaver produced the Gonzalez memoranda almost one week before the the deposition.

I agree with Plaintiffs on this point too. The record shows Plaintiffs disclosed Gonzalez as a witness under Rule 26 and provided the memoranda to the City prior to the deposition. Thus, I cannot find a significant violation of the discovery rules. *See Davila v. Odum & Sons Trucking, Inc.*, No. 05-61844-CIV, 2006 WL 8431577 (S.D. Fla. Oct. 4, 2006) (explaining that severe sanctions of striking pleadings and entering default judgment unwarranted where Defendant ultimately produced court-ordered document, albeit a month late); *Swofford v. Eslinger*, No. 6:08-CV-66-ORL-35DAB, 2009 WL 1025223 (M.D. Fla. Apr. 14, 2009) (finding movant's decision not to bring the matter to the Court's immediate attention supported conclusion that, if there was a violation of Rule 26, it was not significant).

Further, it is not immediately apparent that the City was "sandbagged" or ambushed when Plaintiffs introduced the statement and memoranda at Gonzalez's deposition. *Cf. Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484 (S.D. Fla. 2001) (imposing sanctions against helicopter manufacturer for producing thousands of pages of relevant documents on eve of trial and nearly a year after Plaintiff requested documents). Discovery is ongoing and will not close until December 27, 2022. Moreover, the City raised no objections during Gonzalez's or Blom's depositions and waited several weeks before bringing the alleged violations to the Court's attention. This belated objection suggests that the statement's introduction was not improper and that the City knew it was not bound by Gonzalez's statements. Having failed to show deliberate concealment, the Court cannot impose such harsh sanctions as excluding all Gonzalez documents and testimony and ordering Stearns Weaver to withdraw from the case.

### B. Plaintiffs' Motion on City's Waiver of Privilege Over Certain Attorney Communications

Plaintiffs ask the Court to find that the City has waived any privilege over the communications by failing to raise a timely objection. Though Plaintiffs present compelling

arguments regarding waiver, and it indeed appears that the City did not act swiftly in invoking any privilege, the issue is moot since the City has not met its burden in establishing that the communications are protected by the attorney-client privilege. Thus, Plaintiff's Motion on the City's Waiver of Privilege Over Certain Attorney Communications is **DENIED AS MOOT.** *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.").

### C. Plaintiffs' Motion to Overrule City's Confidentiality Designation

Finally, Plaintiffs ask the Court to overrule the City's attempt to designate the Gonzalez and Blom deposition transcripts and exhibits as "highly confidential" and "attorneys' eyes only" pursuant to the Court's Stipulated Confidentiality and Protective Order. *See* [ECF No. 78]. As explained above, the City has not shown that the Gonzalez materials are confidential in nature. Plaintiffs note that multiple non-attorneys were present for the deposition and yet the City never requested the depositions be closed to the public. [ECF No. 176 at 2]. Thus, the Plaintiffs' Motion to Overrule the Confidentiality Designation is **GRANTED**. The City's attempt to designate the entire sworn statement and deposition transcript as confidential is inconsistent with the Confidentiality and Protective Order's requirement that the party seeking a designation identify "appropriate sections" of depositions transcripts. *See* [*id.* at 3]. For these reasons, the Court finds that Plaintiffs have properly challenged the City's attempt to designate these materials as highly confidential.

### D. Conclusion

Having reviewed the briefs, record, and the communications at issue, the Court concludes Plaintiffs committed no violations that warrant the imposition of sanctions. Plaintiffs properly

relied on the Gonzalez statement and memoranda, and the City failed to meet its burden of establishing that the materials are protected by the attorney-client privilege. Accordingly, the Court **ORDERS:**

1. Defendant City of Miami's Amended Sealed Motion for Sanctions [ECF No. 168] is **DENIED**.

2. Plaintiffs' Sealed Motion on the City of Miami's Waiver of Privilege over Certain Attorney Communications [ECF No. 150] is **DENIED AS MOOT**.

3. Plaintiffs' Motion to Overrule The City of Miami's Confidentiality Designation [ECF No. 176] is **GRANTED.**

4. Plaintiffs may file the Amended Complaint on the Court's public docket. *See* [ECF No. 176].

**DONE AND ORDERED** at Miami, Florida this 15th day of November 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **All Counsel of Record via CM/ECF**