1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                     CASE NO. 21-CV-23485-RKA
3
THE MAD ROOM, LLC, *et al.*,
4                                         Miami, Florida
                  Plaintiff(s),
5                                         November 9, 2022
            vs.
6
THE CITY OF MIAMI,
7
                  Defendant(s).      Pages 1 - 109
8    ------------------------------------------------------------

9                         DISCOVERY HEARING
                 TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10                BEFORE THE HONORABLE LISETTE M. REID
                    UNITED STATES MAGISTRATE JUDGE
11
APPEARANCES:
12
FOR THE PLAINTIFF(S):  MARIA FEHRETDINOV, ESQ.
13                      JASON S. KOSLOWE, ESQ.
                        CORAL DEL MAR LOPEZ, ESQ.
14                      RYAN T. THORNTON, ESQ.
                        STEARNS WEAVER MILLER WEISSLER
15                      ALHADEFF SITTERSON, P.A.
                        150 W Flagler Street
16                      Miami, FL 33130
                        (305) 789-3593
17                      mfehretdinov@stearnsweaver.com
                        jkoslowe@stearnsweaver.com
18                      clopez@stearnsweaver.com
                        rthornton@stearnsweaver.com
19

20

21

22

23

24

25

```
1    APPEARANCES (CONT'D)

2

3

4    FOR THE DEFENDANT(S):   RAQUEL A. RODRIGUEZ, ESQ.
                             JESSE STOLOW, ESQ.
5                            BUCHANAN INGERSOLL & ROONEY, P.C.
                             Two South Biscayne Boulevard
6                            Miami, FL 33131
                             (305) 347-5913
7                            raquel.rodriguez@bipc.com
                             jesse.stolow@bipc.com
8

9                            BRANDON L. FERNANDEZ, ESQ.
                             OFFICE OF THE CITY ATTORNEY
10                           444 SW 2nd Ave
                             Miami, FL 33130
11                           (305) 416-1800
                             bfernandez@miamigov.com
12

13

14   TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
15                           jemancari@gmail.com

16

17

18

19

20

21

22

23

24

25
```

1   Thereupon,

2   the following proceedings were held via Zoom videoconference:

3          THE COURT:  Good afternoon, everyone.

4          I am really glad we could do this without having to go

5   out into that weather.  It is not Florida weather out there.

6          OK.  So I will get an appearance from counsel for the

7   plaintiffs.

8          MS. FEHRETDINOV:  Yes.  Good afternoon, your Honor.

9   Maria Fehretdinov, from Stearns Weaver Miller, and I am joined

10  here by my colleagues Mr. Jason Koslowe, Ms. Coral Lopez, and

11  Mr. Ryan Thornton.

12         THE COURT:  OK.  Very good.

13         On behalf of the defendants.

14         MS. RODRIGUEZ:  Raquel Rodriguez and Jesse Stolow,

15  from Buchanan Ingersoll & Rooney, and Brandon Fernandez from

16  the City Attorney's Office.

17         MR. STOLOW:  Good afternoon, Judge.  We also have Chad

18  Roberts joining shortly, our discovery expert.  So he will be

19  joining I assume in the next couple of seconds.

20         THE COURT:  OK.  Very good.  I don't know that we will

21  start with the issue -- we will start with an issue where he is

22  probably not needed, so that will make it simpler with regard

23  to the discovery disputes.

24         OK.  So we have a lot to cover, but we will do what we

25  can.  I am in agreement with the city's suggestion that we at

```
 1        least start first with the issue that is number one for the

 2        plaintiff as well.  So let's start with that.  That is the

 3        city's challenges to the upcoming depositions.

 4              Now, as I read the plaintiffs' email, the only

 5        challenges there are basically the apex doctrine, but now that

 6        I'm reading the city's challenge, they have also added the

 7        privilege, the legislative privilege as well to their

 8        objection.  I don't know if that is new to the plaintiff or not

 9        or if that's what you had already discussed before.

10              MS. RODRIGUEZ:  Your Honor, it should not be new

11        because we filed an omnibus motion for protective order when

12        the Rule 45 subpoenas were served on a number of city

13        officials, including the two Commissioners who they seek to

14        depose, Commissioner Carollo and Commissioner Russell.

15              At that time, in addition to numerous relevancy and

16        burden objections, we asserted that they were protected from

17        any inquiries into their mental impressions or opinions in

18        their capacity as members of the Commission, whether in a

19        legislative capacity or in some other capacity, such as

20        executive deliberative privilege or quasi-judicial.

21              There is no quasi-judicial involved here, but there

22        certainly are legislative issues because of facial and as

23        applied challenges to two city ordinances, as well as a

24        challenge to a resolution which the plaintiffs characterize as

25        legislative, which we believe is more of an executive action.
```

1    To the extent that it is an executive action, the judge has

2    already ruled that there is no substantive due process claim

3    challenging an executive action of any official, that the only

4    remaining claims, really substantive due process, are

5    legislative in nature.

6         In addition to all that, to the extent that they want

7    to invade the thinking processes of these Commissioners or

8    conversations that they had between themselves or with city

9    staff while in the process of exercising their Commission

10   duties, all of that for decades and decades has been protected

11   under both federal and state law because of separation of

12   powers in civil cases like this, and it plays directly with the

13   apex doctrine because they are at the apex of the organization,

14   as is city attorney Victoria Mendez.  She is a separate issue

15   as well.

16        So it is not new.  I just wanted to elucidate that

17   because it is something that we have raised numerous times with

18   opposing counsel and we also documented formally in our

19   subpoena objections.

20        THE COURT:  OK.  So I think, Ms. Fehretdinov -- can

21   you say your name so I can make sure I am saying it correctly.

22        MS. FEHRETDINOV:  Yes.  Fehretdinov.  But it is no

23   problem.  You can butcher it.  I married into it.  So I know it

24   is a long one.

25        THE COURT:  Fehretdinov.  Very good.

1            So I would have to start first with knowing -- first

2       of all, let's go with the apex doctrine.  Let's start with

3       that.

4            MS. FEHRETDINOV:  Yes.

5            THE COURT:  You can tell me your argument with respect

6       to that.  Then we will talk about the (inaudible), but then

7       more about exactly what you wanted to ask of these particular

8       witnesses.

9            MS. FEHRETDINOV:  Yes.  Thank you, your Honor.

10           To answer your first question, which is whether or not

11      this is new, as a matter of fact, this issue is newly raised

12      whereas only, the subpoenas for documents only, not testimony,

13      to Commissioners Russell and Commissioner Carollo, which

14      occurred just a little while ago.

15           If you will recall, we had a hearing on May 27, 2022

16      on this exact same issue, and I'd like to show the court your

17      Honor's order so you can be reminded of this, where you

18      essentially stated in that hearing that the plaintiffs -- and I

19      don't know if you can see my screen.  I'm trying to show you a

20      copy of that order here.

21           Are you able to see the screen by chance?

22           THE COURT:  I can see it now.  Yes.

23           MS. FEHRETDINOV:  Wonderful.

24           This is your order, where you stated:  The plaintiffs

25      are authorized to take 29 additional fact witness depositions.

```
1    The individuals to be deposed are those listed in the

2    plaintiffs' requested deponent's chart.

3              As part of that chart that your Honor looked at,

4    Commissioner Joe Carollo was listed as item No. 5.

5              So they never raised legislative privilege.  We talked

6    about this at length.  We talked about the apex doctrine.

7              Item No. 18 was Ms. Victoria Mendez.

8              We have a lot of discovery issues that we need to

9    cover.  We don't have time to go back and forth on issues that

10   you've already heard extensively and issues that we debated.

11   For instance, on this order, where they appealed this order --

12   I don't know if you remember.  This docket entry 92 was

13   appealed.  Then they withdrew that objection from Judge

14   Altman's consideration.  It is now a final order in this case.

15   OK.

16             So in other words, they have waived any bases to claim

17   that these depositions cannot go forward.

18             We scheduled the depositions for months.  We tried to

19   schedule Ms. Mendez's deposition.  She finally gave us dates.

20   It was nine different dates that we had proposed, that were

21   then provided and then retracted, and we have been working very

22   heavily.

23             After we obtained dates for the deposition, set them,

24   all three of these depositions that we're talking about here --

25   Ms. Mendez, Commissioner Carollo, and Commissioner Russell, OK,
```

1    because we did this back in -- Commissioner Russell we did this

2    back in August and Mendez and Carollo we discussed well before

3    that.  As you see, it was in May.

4         They told us that Commissioner Carollo's mother was

5    ill and so we needed to postpone the deposition.  Then in light

6    of the fact the discovery deadline was going to be postponed we

7    agreed that we're going to have all of these three depositions

8    take place after the 20th.

9         If you recall the hearing that we had on May 27th, and

10   I'd like to show you a little excerpt of that transcript.  That

11   is the May 27th hearing where you issued your order.  OK.

12        You said to Mr. Green, who was the attorney that was

13   present at the time on behalf of the city, and I'm showing you

14   a copy of the transcript here.  Page 17.  You state to

15   Mr. Green:  I'm not hearing any specific individual here that

16   you believe is not relevant to discovery in this case.

17        Mr. Green then replies:  What we're saying is that

18   they should be -- that they should have to, you know, like

19   we're not asserting the apex doctrine, but certainly the theory

20   of the apex doctrine, you know, applies here and eliminate

21   those witnesses you need before getting to the top officials

22   whose time is most valuable to the city.

23        OK.  That was the objection that they raised, the only

24   objection that they raised.  You then issued your order.

25        As a result of that, your Honor, we waited until the

1    very end, like we requested -- we deposed everybody else -- and

2    then went ahead and noticed these particular depositions.

3          If you will also recall, the Rule 26 disclosures on

4    behalf of the city that were filed in this case listed apex

5    people.  The number five person that they listed was

6    Commissioner Joe Carollo as a person with knowledge and a key

7    individual in this case.

8          As you're well aware, he is an individual that is

9    going to be highly scrutinized.  He was actually present for

10   testimony in an evidentiary hearing yesterday, I understand.  I

11   wasn't present.  I know that Buchanan Ingersoll,

12   Ms. Rodriguez's firm, was at counsel table for that hearing.

13   So I think that they can attest that Commissioner Carollo was

14   there and present.

15         He asked for a protective order to not testify in that

16   case.  Judge Louis had him testify.  And that is a parallel

17   matter here.

18         More importantly, Judge Altman ruled at the motion to

19   dismiss hearing, and I'm referring you to page 42 of the

20   transcript there, where he talked about how the intent of the

21   Commissioners at the February 14th resolution hearing -- and

22   that motive is critical for our substantive due processes

23   claim.

24         If you look at the transcript, that I'd like to show

25   you just an excerpt of here, he tells you a couple of things.

1          The first is that, on page 42, he outlines the

2     substantive due process claim that we have, which is based on

3     legislative acts.  The Commission resolution that we have been

4     talking about, as well as the equal protection claim, which

5     also requires a showing of animus, and he says, based on the

6     complaint:  They haven't, it's true, shown that a majority of

7     the city Commission members were acting with unconstitutional

8     motive, but that is neither here nor there on a motion to

9     dismiss.  Meaning at the motion to dismiss stage you're not

10    going to bring this up; you're going to bring this up for

11    summary judgment, right.

12         Then he says -- and if you'd like to go a little bit

13    further here.  On that same page he says, and I'd like to bring

14    it up so you can see.  He says:  In any event, a fair reading

15    of plaintiffs' complaint suggests that they all participated in

16    the decision making, that it was instigated by Mr. Carollo, and

17    that all of them went along knowing exactly what his purposes

18    were.

19         So in other words, as he's discussing the merits of

20    the claim that we've alleged, he recognizes that the

21    Commissioner's intent, the unconstitutional motive, the animus

22    in carrying out this policy is extremely relevant.

23         As a matter of fact, we have had multiple people come

24    in and testify and tell us that they cannot attest to the

25    intent of the Commissioners, what was in their minds, what was

1    in their head.  I'm happy to walk you through all of this

2    testimony.

3           For instance, Blom, Commissioner Carollo's chief of

4    staff, there were numerous questions where we asked and he

5    said, you're going to have to ask Mr. Carollo; I don't know

6    what was in his head.

7           The same was with Ms. Dooley with respect to

8    Ms. Mendez, who, by the way, I would submit, with all due

9    respect, she is the city attorney but she is just a head of a

10   department.  All the other heads of the departments have been

11   deposed here.  The head of the building department, the head of

12   the code compliance, the city manager, they have no problem

13   with us deposing.  He is a, quote-unquote, apex person

14   according to them.

15          So it is not an issue of apex; it is really an issue

16   of selectively picking and choosing who they want to come and

17   appear.  Frankly, I don't know how they are going to defend the

18   case without having his people present anyway.  So I think it's

19   a little bit strange.

20          That said, the case law in this district has been that

21   county Commissioners -- and, of course, then it would certainly

22   be the case for city Commissioners -- are not high-ranking

23   government officials who are excused from providing testimony.

24          I would like to show you just one case, because the

25   city did not provide any legal authority to us or to the court

1    in connection with their request for a protective order.

2    Perhaps because the issue was already decided back in May and

3    so there is no need to discuss it now.  But nevertheless, I'd

4    like to provide you with cases as an example of how the courts

5    treat this.

6         The case that I'd like to show you is the case

7    Kimberly Regenesis -- let me see if you can see it on the

8    screen.  The citation is up here on the screen, but for the

9    record it's 2021 WL 5285093.  It is out of the Middle District

10   of Florida, but it relies on cases all that would have been in

11   the district, in the Eleventh Circuit and whatnot.  I'd like to

12   direct your attention to page *5 where they talk about

13   commissioner depositions.

14        In this case the court raises an interesting point

15   here, because they say -- I'm going to highlight just this one

16   section here for you, where it says:  Here, defendant asserts

17   that the privilege of the Commissioners -- actually, let me

18   bring it up a little bit higher so you can see all this

19   language here.

20        Here we go.  This is a little bit more clear.

21        "Here the defendant asserts that the privilege of the

22   commissioners are immune from discovery," and then it says that

23   they are challenging the subpoenas.  They say that the

24   defendants are entitled to an immunity, but the court finds

25   this case is not a suit against the county commissioners, as is

```
1    the case here.

2           The court cites numerous cases, because this is the

3    law in this district here, which is the right to immunity is a

4    right to immunity from certain claims, not from litigation in

5    general.  Then it goes on to say:  Plaintiffs brought suit

6    against the defendant county rather than the Commissioners in

7    their individual capacities and, therefore, the quasi-judicial

8    immunity is inapposite here because it's not immunity from

9    discovery.  And then the court goes on to state, talking about

10   how --

11          THE COURT:  I do want to let you know,

12   Ms. Fehretdinov, that I do understand this argument and I

13   recall that I did make that ruling, and I'm glad you brought it

14   to my attention, and there was a whole discussion as to who

15   should be deposed first in order to get to the point where

16   we're ready for these high-level individuals to testify, and we

17   are here now, right.

18          Your argument is there are certainly extraordinary

19   circumstances here that would permit the court to allow these

20   people to be deposed.  This is a case where their testimony,

21   their reasoning, their thought process is important to the

22   facts, and I understand that.  I have read the depositions of

23   Blom and Gonzalez because of the other issues that were brought

24   up.  So I have a sense of that.

25          What I want to hear from the city, then, as to why
```

1    there are not extraordinary circumstances here under apex, and

2    that is just information that I haven't heard yet at this

3    point.

4         MS. RODRIGUEZ:  Well, your Honor, the reason being is

5    since the May 27th hearing before your Honor the case has

6    changed a lot.  Several claims in the operative complaint at

7    the time that you heard this issue and the depositions were set

8    have now been dismissed, and those are the substantive due

9    process claims based on the alleged executive actions of the

10   city and its officials, among others.

11        The tortious interference claim was dismissed.  The

12   substantive due process as to executive actions under the

13   Florida Constitution also was dismissed.  The equal protection

14   claim was dismissed.  Obviously, it's come back in a different

15   form or with additional allegations, and the alleged violation

16   of the city charter was dismissed.

17        What makes it different now is that with respect to

18   the facial and as applied challenges to the ordinances or the

19   Commission resolution, the voting is a matter of public record.

20   The language of those documents enacted by the Commission are a

21   matter of public record.  The statements of the Commissioners

22   are all a matter of public record.

23        I know that you have asked about apex, but there is

24   nothing to be gained because of the legislative privilege from

25   these witnesses.  It goes together.

1           I haven't had a chance to read counsel's case, which I

2     would like to review, but I also have done some research.  The

3     burden is on the proponent of the discovery to establish what

4     they have a need of.  What Ms. Fehretdinov has not asserted

5     here is, apart from the mental impressions of the Commissioners

6     or their motivations, which are completely off limits under

7     long-standing case law, dating up to the Supreme Court in this

8     Circuit, they haven't testified that there is anything unique

9     in the conduct of the city that only these high-level

10    individuals can testify to that cannot be obtained or has not

11    been obtained from lower-level officials.

12          So Mr. Green did preserve the idea that you have to go

13    through, and this was raised before you, all of the other

14    lower-level officials before you drill down into what is it

15    exactly that you want to inquire of these officials.  The

16    reason is you don't want to waste their time with generalized

17    inquiries.  So I haven't heard that yet.  We've heard that they

18    need to know the intent, but again, the intent violates

19    legislative immunity.

20          I would like to cite the case, and I'm happy to

21    forward copies during or after the hearing to everyone.  I

22    didn't also have the benefit of counsel's case, which is

23    Hubbard v. Bentley, 803 F.3d 1298 (11th Cir. 2015).

24          That was a First Amendment retaliatory conduct case,

25    very similar to what is being raised here.  The court held that

1   the legislative privilege shielded the legislature and the

2   governor of Alabama from discovery as to their motivations

3   regarding the legislation.

4         This case is no different.  The only exception would

5   be is if it was some kind of criminal action.  So certainly

6   with regard to facial challenges there is nothing relevant.

7         With regard to the as applied challenge, there is

8   plenty of discovery.  The as applied of the legislation, that

9   can be obtained from the people that implemented these

10  ordinances or applied them and shut down the plaintiffs, which

11  is what they claim is their damage, that they got shut down

12  without prior notice and opportunity to be heard.

13        The motivation of the Commission in enacting

14  legislation has nothing to do with their claim that they got

15  shut down without a notice of opportunity to defend.  The pure

16  enactment of the legislation is not what damaged them.  So you

17  have got the administrative officials that they can ask.

18        Secondly, the issue regarding the Fourth Amendment and

19  the equal protection claim, again, their claim of warrantless

20  search and seizure, that has nothing to do with the

21  Commissioners.  They are arguing that there was no rational

22  reason to go in and inspect the establishments for violations

23  of beverage laws and whatnot.  So again, that has nothing to do

24  with the Commissioners.

25        Their claim of equal protection, there's the

 1    legislative issue, which we have already covered, and then

 2    there is the implementation of how were the laws enforced

 3    against them versus everybody else.  Again, the Commissioners

 4    are not out there themselves enforcing the laws.

 5        So what they really want is to subject them to

 6    invasive questions to try to embarrass them, to harass them, to

 7    ask them things about which there is no reason to ask them and

 8    which the law prohibits inquiry into their actions as

 9    Commissioners, be it discussions with other commissioners, be

10    it discussions with staff about legislation, and so forth.

11        It is a privilege that until you waive it actually by

12    disclosing the matter, just like attorney-client privilege, you

13    don't have to raise it in advance.  But I'm raising it in

14    advance because we want to protect them from excessive

15    harassment and, at a minimum, limit the topics so that we don't

16    have a deposition where three-quarters of it is objection.

17        THE COURT:  All right.  I think I hear what you are

18    saying with respect to apex; however, I didn't quite

19    understand.  You're saying that the reason they shouldn't be

20    deposed is because portions of the amended complaint that would

21    go to their motives and reasons for their actions is no longer

22    part of the complaint?  I just want to be clear that those

23    portions of the complaint have been dismissed.

24        MS. RODRIGUEZ:  Well, that is part of it.  What I'm

25    saying is that the portions of the complaint that address their

1   actions as commissioners, legislative body enacting

2   ordinances --

3              THE COURT:  OK.

4              MS. RODRIGUEZ:  -- survived, but that cannot be

5   inquired into.

6              THE COURT:  OK.  All right.  I think I understand now.

7   You're saying that is what is still left but there is a

8   privilege now that we need to raise regardless of legislative

9   issues, that once we get to the deposition, if they start

10  asking them questions, we're trying to head it off ahead of

11  time.

12             MS. RODRIGUEZ:  Yes, your Honor.  The reason I

13  intertwined the two is because without the ability, the legal

14  ability or the legal right to inquire on a specific topic, they

15  cannot establish the exception to the apex doctrine.

16             It is their burden to show that the information not

17  only is relevant to their case but that the relevant

18  information with respect to their claim cannot be obtained from

19  anybody else.  So that is why I continue to intertwine the two,

20  because the apex is very intrusive and unless there is an

21  exception, such as you cannot get the relevant information from

22  someone else, there is no point to subjecting somebody to seven

23  hours of deposition testimony.

24             THE COURT:  And here the information can be obtained

25  from the public record.

1          MS. RODRIGUEZ:  In terms of everything about their

2    legislative motives, it is all in the record.  It is in the

3    face of the ordinances or the resolution.  They spoke on the

4    dais of why they were doing what they were doing.

5          I mean, I haven't found an exception to, other than

6    criminal activity or if somebody were to adopt a special law

7    that affected only one person on its face.  That is not the

8    case here.  The closest that they come is the resolution, and,

9    again, that was a deliberative process by the Commissioners.

10   Again, they're making an argument, hey, you only picked us, you

11   didn't pick other people, and that is it.

12         To subject them to seven hours of deposition over why

13   did you go and measure the sidewalk or why did you go on a walk

14   on the street with the commissioner, with the city manager,

15   that is not even an actionable claim.  It is not relevant to

16   the crux of the causes of action they're asserting here.

17         THE COURT:  OK.  All right.  Thank you.

18         Ms. Fehretdinov.

19         MS. FEHRETDINOV:  Yes.  Yes.  Your Honor, first of

20   all, we disagree with some things that I don't think the

21   parties should be disagreeing about, which is that the judge,

22   Judge Altman, dismissed without prejudice certain claims for us

23   to replead, which we did.  So we have done that.  A big, big

24   part of our case is this policy of animus, political animus by

25   the city against our clients.

1              The fact that Ms. Rodriguez has mentioned that

2    Commissioner Carollo himself was out there incognito with a hat

3    and measuring the distance between our property and the closest

4    religious institution to try to ding us as part of his

5    implementation so that we couldn't have a liquor license is

6    just an example of his personal involvement in the harassment

7    and the campaign to harass our clients.

8              So the personal issues, the personal involvement of

9    these commissioners and the city attorney in implementing this

10   policy is highly relevant.  But we dispute that a legislative

11   privilege at all exists as to why the Commissioners passed the

12   resolution that they did.  On the contrary, the cases in this

13   district say the opposite.

14             I'd like to show you two cases that address this.  The

15   first is the Hollywood Community Synagogue case, and that is a

16   case here in the Southern District of Florida.  If you can see

17   my screen, the citation is up there, but I'll also read it out.

18   That is the case 2006 WL 8431633.

19             In this case the court considered as part of summary

20   judgment, which is what we plan to do, in a 1983 action the

21   testimony of the actual commissioners in order to find

22   political animus in how they passed the legislation.

23             The public record just tells you what they said on the

24   record, but it doesn't go into why they made the statements

25   that they did.  As a matter of fact, with Commissioner Russell,

1    he voted against the resolution to target our clients, and we

2    have the right to inquire into why.  Why did he vote against

3    this resolution to target just these addresses which belonged

4    to our clients.

5           So here in this case it says that the Synagogue has

6    provided evidence of the various individuals, including in this

7    case it was commissioner testimony, where they said that

8    Commissioners -- in this case it was Commissioner Sal Oliveri

9    and Commissioner Kathy Anderson -- expressed concern over the

10   expenses, and they identified some of that, and talk about as

11   well in this case about the animus, because it says, in a

12   summary judgment pleading, in a summary judgment motion on a

13   1983 claim:  The court finds that the plaintiff has presented

14   substantial elements demonstrating a pattern of harassment and

15   selective enforcement to show this 1983 action took place on

16   the basis of that commissioner testimony.

17          For instance, it says here -- they quote some of the

18   testimony in the actual opinion, where they say:  Plaintiff

19   further notes that one commissioner testified that there was

20   lots of community opposition to conversion for both properties.

21   I mean, this is all very highly fact specific, but this would

22   be the facts that we would use in our case as well.

23          So regardless of the fact that it is the city's burden

24   on a motion for protective order to provide authority and case

25   law as to why this legislative privilege exists, they didn't do

1  so, they didn't provide it to the court.  Well, first of all,

2  they waived it by virtue of this issue already came up and the

3  order was appealed, it is a waste of time for us to have to be

4  dealing with this twice.  We have a lot of discovery issues to

5  deal with.  But moreover, the case law actually says the

6  opposite.  In this case and in other matters they show that not

7  only is it relevant, it's critical to a substantive due process

8  claim to inquire as to the motive and intent as to why certain

9  things were done.

10         So the test is not extraordinary circumstances.  It is

11  whether they have a unique knowledge of the facts, firsthand

12  account of them, and now that we have deposed everyone else and

13  all of these individuals have testified to us -- and I know I

14  offered this up to your Honor.  I could give you the questions,

15  because you did read Blom.  Because Ms. Rodriguez has mentioned

16  it again, I'm happy to show your Honor what the questions were

17  with respect to these people.

18         For instance, in this case we've got Blom testified at

19  page 34.  She says:  What's your opinion as to why you had to

20  sneak around the Fuller properties?  Because Commissioner

21  Carollo was sneaking around them at night.  And she even

22  testifies:  I can only speculate because I can't see what's in

23  Carollo's mind.  He might have been uncomfortable being seen.

24         These are just excerpts that we pulled from just one

25  deposition.  There have been many in this case.

1          The next Q and A goes on to say, about the city

2    attorney, it says:  Why is the city attorney's office sending a

3    specific complaint about a Fuller property?

4          That would be a question that the city attorney would

5    have to answer.

6          They constantly say that.  That is on page 80 of his

7    deposition.

8          Then it goes on later to state that -- page 102 goes

9    into some of the statements, and it says:  Why would

10   Mr. Carollo ask her to lie about you?

11         I don't know.  You have to ask Mr. Carollo.

12         I can go on and on, and I am prepared to do so if

13   you'd like, as to many other witnesses.  I don't want to waste

14   the court's time on these issues.

15         I don't think there is any debate that we have deposed

16   the other witnesses.  They have directly identified

17   Commissioner Carollo, Commissioner Russell, who was at the

18   hearing and, as a matter of fact, spoke with the city manager

19   Emilio Gonzalez.  And that is a document that we have -- that

20   the city itself produced as relevant evidence in this case,

21   where they talk about the resolution in the actual -- they talk

22   about the resolution here.  One of the issues that is raised is

23   Victoria Mendez's, which is the city attorney's, list, where

24   she says she wants to carry out the resolution and she goes

25   into why she needs assistance from all of the individuals to

1   carry out that resolution and what the intent was.  And then

2   Commissioner Russell goes on and talks about what the concerns

3   were by Emilio Gonzalez in this case, and he's there talking

4   about what they discussed.

5          So this is something that he voted against at the

6   resolution and also had direct conversations with key

7   witnesses.

8          So the necessity of the testimony can't be disputed.

9   The fact that a legislative privilege in this context does

10  exist also can't be disputed.  That is something that Judge

11  Altman identified as a key issue.

12         The unconstitutional motive, on page 42 of the

13  transcript, is a key item, and the fact that we're taking these

14  individuals at the end.  So there is no apex problem.  We've

15  complied with the city's requests.  The fact that they have

16  personal involvement is one thing, and we will ask questions

17  about their personal involvement, but we certainly don't want

18  there to be any objections at the testimony on behalf of

19  legislative privilege with respect to why they undertook the

20  actions that they did, the passing of the resolution, because

21  that is the unconstitutional motive that we need to get to and

22  that is the heart of the issue.

23         So there has been no law proffered that would say the

24  opposite, and --

25         THE COURT:  Let me ask you something.  I certainly

1    agree with the plaintiffs' position that there is nothing that

2    has changed here that would make a deposition of these

3    individuals improper.  So I agree with the plaintiff on that

4    issue.

5          With respect to the legislative privilege, I have read

6    that Bentley case, and I see the facts here as very different.

7    I also don't see anything in this case that has changed that

8    would raise or require the legislative privilege here under

9    these facts.

10          So I am going to rule in that manner, and I will put

11    that into a written order so that is available for the parties.

12          Let me ask you, when is discovery -- has Judge Altman

13    issued a new order regarding discovery in this case?

14          MS. FEHRETDINOV:  He has, your Honor.  We have a

15    deadline of December 27th for discovery.

16          We have been requesting a date from Commissioner

17    Carollo for quite some time, and they have not produced that

18    date.  So I think your order will help shed some light on that

19    issue.  So we would respectfully request a date from

20    Commissioner Carollo so we can get that set within the

21    discovery period.  We have very little time left.

22          MS. RODRIGUEZ:  Your Honor, we have been working on

23    it, and of course he also has additional counsel because of the

24    Fuller litigation against him personally.  So we have been

25    attempting to find a date.  We did get a date confirming the

1    availability of Commissioner Russell.

2         Your Honor, I understand your ruling, but I think that

3    it is one thing to rule in the abstract over whether the

4    deposition should go forward and with regard not in the context

5    of a specific question.  Mind you, Judge Altman never had the

6    issue of legislative testimonial privilege in front of him.  He

7    was simply ruling on a 12(b)(6) motion where he has to assume

8    the truth of what was in the complaint and take it as it is.

9         I haven't had a chance to read the case that

10   Ms. Fehretdinov cited.  I didn't see a word in there about

11   legislative privilege.  We don't know how that testimony that

12   she cited came in.

13        To me, the Bentley case is directly applicable and it

14   is more recent.  I would appreciate if there was an

15   opportunity, even on a very fast track, to provide your Honor

16   with each side's case law and our reading of it, and also to

17   postpone a particular peremptory objection in advance of a

18   deposition so we can take the questions in context.

19        THE COURT:  OK.  I hear you, and that was going to be

20   my next point.  Sorry.  I didn't want to interrupt you.  You

21   were on a role.

22        MS. RODRIGUEZ:  I appreciate it.

23        THE COURT:  With respect to this legislative

24   privilege, I am not saying you can't raise it at all.  Based on

25   my understanding of the amended complaint at this time I don't

1  see that there are issues that would require you to raise that

2  privilege.

3        Now, once you get to your deposition and there are

4  questions asked, specific questions that are of concern, I'm

5  assuming you're probably going to raise it, right.  You're

6  going to say, well, no, this is different somehow.

7        MS. RODRIGUEZ:  Yes, your Honor.

8        THE COURT:  At that point we can address it.  I can

9  tell you from what I see right now in the amended complaint and

10  the issues before the parties, I don't see that there is a

11  legislative privilege.  I will try to make my order as detailed

12  as I can so that I give the parties as much information

13  initially so that the deposition, I can hope, will go smoothly,

14  right.

15        Of course, I can't absolutely say that there is no

16  question they could possibly ask that is going to invade your

17  privilege, but I am going to try to be as clear as I can.

18        MS. RODRIGUEZ:  Understood, your Honor.

19        THE COURT:  Go ahead.

20        MS. RODRIGUEZ:  Well, out of deference to the

21  Commissioners and the city attorney because of their

22  obligations, your Honor has the discretion to limit the amount

23  of time for which they have to sit or to limit the topics, and

24  we would invoke your discretion to see if there is a way to

25  minimize the inconvenience on them.

1          THE COURT:  OK.  So let's talk about that.  Of course,

2     they are very busy officials paid by the taxpayers, but what I

3     want to know then from the plaintiff is, what is a reasonable

4     amount of time?  What do you project in terms of time that this

5     deposition will take?

6          MS. FEHRETDINOV:  Yes.  I appreciate that, your Honor,

7     because I don't want to call these individuals back.  So I

8     appreciate you giving your guidance in your order so then we

9     are not having a deposition where they invoke a privilege and

10    then they have to come back another time.

11         So I think that -- we have been very judicious with

12    our time with these individuals.  Just so that you know,

13    Ms. Mendez has been involved in over 2,000 communications just

14    with respect to our plaintiffs going back and forth over the

15    years.  She was a key person in this case.  Despite the fact

16    that we have had really, really people that have been

17    entrenched in the facts of this case, we have never once asked

18    you for more than the seven hours allotted under the rules,

19    which is pretty incredible because, as you know, in state court

20    these depositions can go on for days.  So we have been very

21    judicious with our time.

22         Any time they need to take a break or stay late or

23    whatever the day is, we are happy to do it.  As a matter of

24    fact, we had a witness from the city who requested to take the

25    deposition over multiple days because he had a medical

1    condition.  Absolutely no problem.  We will work with them.

2          I think at this point we feel comfortable, like we

3    did -- you asked me the same question back on May 27th when we

4    discussed the same exact issue, and I indicated to you I don't

5    believe that more than the standard allotted seven hours is

6    necessary at this time, but if so, we would certainly work with

7    the city and then, if necessary, get you involved.

8          I believe at this time we are able to work within the

9    rules, and the topics will be as identified as throughout our

10   amended complaint.

11         Their level of involvement and detail is very deep.  I

12   do think for Commissioner Russell it is going to be a very

13   short deposition.  I don't see it being the full seven hours.

14   I think it is going to be -- I imagine it is just a half day.

15   I really appreciate the fact that he is here and he has taken

16   his time.

17         I would also note, I believe, that these are

18   part-time.  Commissioner positions are part-time commissioner

19   positions.  They have time to work and do other things.  I do

20   believe Commissioner Russell is going to be off of the day I

21   believe in January.  So he may have his last commissioner

22   meeting soon.  We were actually trying to schedule that so it

23   wouldn't interfere with his work, because I think he is moving

24   on to other campaigns and other issues.

25         So that being said, I don't know that he is going to

1    be necessarily actively involved in commissioner duties, so to

2    speak, while we're taking his deposition because of the timing

3    of it.  I'm very much aware of that.  So at this time I don't

4    believe that we need additional time.  We would like to stay

5    within the rules that have been permitted.

6         THE COURT:  So Russell, you're saying half a day.

7         MS. FEHRETDINOV:  I believe so, yes, your Honor.

8         THE COURT:  Back to Commissioner Carollo and

9    Ms. Mendez.  No more than the seven hours allotted by the rule.

10        MS. FEHRETDINOV:  At this time I think that would be

11   useful.  Of course, if there are a lot of objections and a lot

12   of lawyer involvement, I would not have that count.  But yes,

13   the question and answers we have been able to do within the

14   seven hours.  We have moved very quickly.  We have had

15   documents available.

16        We're very cognizant of their time.  Like I said, when

17   there were health issues or problems or otherwise that came up

18   from Commissioner Carollo himself, we happily postponed it.  So

19   we have been very amenable to working with them on days and

20   times that work best.

21        THE COURT:  You have also said there were subpoenas

22   issued, and the subpoena I'm assuming will have the attachment

23   of the subject matters of the depositions.

24        MS. FEHRETDINOV:  That is actually something that

25   Ms. Rodriguez raised, but they weren't subpoenas for testimony.

1    So I'm not sure why she brought that up.

2            This issue of Commissioner Carollo being deposed and

3    Commissioner Russell has been noticed as of May.  So those were

4    just document subpoenas.  My colleague, Mr. Jason Koslowe, is

5    prepared to address the document subpoenas to them, but there

6    was no subpoenas for testimony because these witnesses are

7    appearing in connection with, like every other witness in this

8    case, that's been under city control.

9            I will let you know just for your own reference, the

10   city told us that they did not represent Commissioner Russell

11   and, therefore, we were forced to serve a subpoena, and then

12   later they backtracked and said we do represent him.  So that

13   is the only reason why we served him with a subpoena;

14   otherwise, we would have just communicated with the city like

15   we have done for all the other witness documents that we need

16   in this case.  It was a little bit strange, and that is

17   something that we noticed.

18           With respect to those subpoenas, if it is OK with

19   everyone, we can move on to the second topic and Mr. Koslowe

20   could address that question for you regarding the subpoenas.

21           THE COURT:  OK.  So that is an issue that we are

22   discussing today, the subpoenas with regard to documents from

23   these three individuals?

24           MR. KOSLOWE:  It is a little broader than that, your

25   Honor.  It's been a hearing and a half and you haven't heard

```
 1    from me.  I say that lightly.

 2            I am going to try to combine a couple of things

 3    together and so we can package a couple of issues, I think,

 4    into one and then get it all addressed with one request, one

 5    form of relief from the plaintiffs.  I think it will be

 6    efficient to do it that way.

 7            MR. FERNANDEZ:  Judge, if I may -- Mr. Koslowe, I

 8    didn't mean to cut you off.  But if we are going to get into

 9    RFP topics, Mr. Roberts has been waiting in the waiting room

10    for about 45 minutes.  If we could let him in so he is here for

11    the presentation.

12            MR. ROBERTS:  I'm in.  I'm in.

13            MR. STOLOW:  Oh, he's in.

14            Sorry, Mr. Koslowe.  Go ahead.

15            MR. ROBERTS:  It's all good.

16            MR. KOSLOWE:  OK.  Of course.

17            So I am going to combine the issues of text messages,

18    What's App messages, other forms of communications along with

19    Rule 45 subpoenas issued to certain city employees.  I am going

20    to try to explain what I think are four problems.  I will try

21    to explain them briefly.  Then one solution, one form of relief

22    that the plaintiffs are requesting.

23            So the starting point.  Your Honor held, and Judge

24    Altman affirmed, that the city has control for discovery

25    purposes over communications done by its employees even if
```

1    they're on private devices.  At the time your Honor believed

2    that we were only talking about purely private devices.  So

3    that is the employees' private cell phones.

4           Because of that your Honor devised an indirect method

5    of collection, which was to go and ask -- the city said to me,

6    go and ask these individuals for their phones and see if they

7    have anything, get an affidavit saying that they looked for it,

8    and then the city was compelled to produce the documents it got

9    from that indirect method.

10          I will just show your Honor the order so you will all

11   know what we're talking about here.

12          THE COURT:  I recall.

13          MR. KOSLOWE:  OK.  Sure.  That is at docket entry 65,

14   on page 6, at paragraph 3.

15          Here is problem one with the indirect method that

16   we've had so far.  There are seven employees that refused to

17   make the affidavit.  They wouldn't do the search.  So as

18   contemplated by your Honor's order, and, frankly, what the city

19   had originally asked, we then issued Rule 45 subpoenas to some

20   of those individuals to get the documents directly from them if

21   they weren't going to give them to the city through the method

22   that your Honor devised.  We were stonewalled again.

23          The city's lawyers responded on behalf of those

24   individuals to the Rule 45 subpoenas with objections, that the

25   indirect method was the only way we can get the documents.  So

1   we have a hold.  We have custodians who refuse to give

2   documents or affidavits to the city and now the city refuses to

3   allow us to get them through the Rule 45 subpoena.  That is the

4   first problem.

5       Just so the record is clear, I will list out those

6   custodians because we have them specifically.  It is

7   Ms. Bridgeman, Mr. de la Portilla, Mr. Watson, Mr. Carollo,

8   Mr. Russell, Mr. Noriega, Mr. Cagnin, Mr. Perez, that is Roldan

9   Perez, and Mr. Forfieri.

10      So that is problem one.

11      Problem two, the data we got from the city through the

12  indirect collection is woefully incomplete.  Here's what they

13  did.  Like we said, they asked individuals:  Take these five

14  terms, go look at your cell phones, see if you have anything.

15  Those individuals made their own calls as to what they thought

16  was relevant.  They took screenshots of the phones, sent them

17  to the city, who gave them to us.

18      So for some of those individuals, for some of those

19  text messages, we don't even have the custodian.  It just says

20  City of Miami.  So we're not even sure who it comes from.  For

21  none of them, for none of those text messages do we have the

22  "to" and the date.  So we don't know who the texts are sent to,

23  we don't know when.  We have asked the city for that metadata

24  repeatedly and they said, no, it is too difficult to go back

25  and ask these people, we're not going to do it.

 1          We have a list.  Pardon me.  I will try to get that

 2   list up for you.  Pardon me, your Honor.

 3          We have a list of what we've isolated as 32 specific

 4   text messages, right, where the content appears central to the

 5   case and we don't have the necessary to, from, and date

 6   information.

 7          As you can see over here, I am missing custodians for

 8   some of them.  So it just says City of Miami.  You don't

 9   actually know who the text comes from.  For none of them do we

10   have the from and the date, the to and the date.

11          So, for example, we have a text from Mr. Marrero,

12   director of the building department.  Not sure who it is to.

13   It could be to Mr. Pons on a specific text chain, which could

14   include others.

15          Here it is, your Honor.  It is a snippet in the middle

16   of a conversation, literally the middle of a conversation

17   because the last word isn't even there.  We don't have the

18   prior words, we don't have the words that come after it, and

19   obviously it's relevant.  It is talking about a meeting with

20   the city attorney and Adele.  Adele is someone else.  That is

21   from code compliance, talking about Bill Fuller's property,

22   being more stringent to shut them down.  That seems relevant to

23   the case.

24          We got this after Mr. Marrero's deposition.  We

25   couldn't ask him about it so we went to Mr. Pons because it

1    said -- it looks like it went to Mr. Pons.  He says:  I have no

2    recall of getting this text.  I don't know if I did, when it

3    was.

4              So we couldn't get any information about the document.

5              I can go through several more, but the bottom line is

6    the indirect collection has not yielded the information that we

7    think we need to actually make use of it.  So that is problem

8    two.

9              Problem three.  We did a deep dive into the text

10   messages that we received.  We have now established that the

11   collection was materially incomplete.  We got text messages

12   from some custodians in the same chain, but we didn't get the

13   text messages from the other custodians.  This wasn't an issue

14   of duplication, deduplication.  It is an issue of these are

15   just lay people, they're doing their own version of collection,

16   they're looking for what they think is relevant, and they just

17   didn't find stuff.

18             So, for example, if you look at No. 4 on the list, you

19   have a text message from Mr. Goldberg to several others on the

20   chain.  We didn't get this same text message from Ms. Mendez,

21   even though she is on the chain.  We didn't get it from

22   Ms. Dooley.  We didn't get it from Ms. Perez, who may not have

23   been a custodian.

24             The point is we know that -- our deep dive into these

25   text messages shows there are dozens of communications that we

1    got from one of the pair in the communication but not from the

2    other.  So we know that someone is not doing their collection

3    appropriately.

4         Now, this is not necessarily to blame any of the

5    custodians.  This sort of indirect way of picking up your cell

6    phone, scrolling through it and trying to find out which

7    messages to send is an odd one.  It is not one that typically

8    we have.  So I am not blaming the individuals, but the bottom

9    line is we know that the collection was materially incomplete,

10   fundamentally incomplete.  Who knows what else they missed if

11   they're missing ones that we already got.

12        Now, that is problem three.

13        Problem four I think is the capstone of it.  It is an

14   overarching one.  The bottom line is your Honor's order to

15   devise this indirect method was based on a misrepresentation to

16   the court.  The method was entirely correct based on the

17   misconception that all that we're dealing with here were purely

18   private devices.  It is just cell phones that these people

19   happened to have upon which they happen to do city business.

20        That turns out not to be true.  It turns out the city

21   issues cell phones directly to individuals that work for it,

22   and it knows that.  It also turns out that the city gives a

23   stipend to other individuals, other employees, to pay for cell

24   phones because they know those people are going to do city work

25   on the cell phones.  So those two types of devices -- direct

1    city issuance of devices and city stipends for devices.

2           What Judge Altman observed, when he affirmed in all

3    respects your Honor's order, was in principle, in the first

4    instance, this probably should have been an issue on direct

5    collection.  But by the time the issue got to him, he saw that

6    we had raised this issue of, oh, now we know that there are

7    actual city-issued phones and city-stipended phones, and he was

8    under the impression that the city had agreed to do a direct

9    collection of those devices, but that is not true.

10          The city said they would do a direct collection of the

11   city-issued phones but they are not going to do a direct

12   collection of the city-stipended phones.  Candidly, that is

13   inappropriate based on Judge Altman's order, affirming your

14   Honor's order.

15          Again, just going back, these are documents that are

16   within the city's control.  They have to have these documents.

17   The only reason why we had this indirect method was because

18   your Honor observed these cell phones are held by private

19   individuals, they have private stuff on them, we are going to

20   use that indirect method of collection, it is appropriate.  But

21   we now know that the vast majority of the individuals we're

22   dealing with either had actual city phones that were given to

23   them or the city paid for it because they knew they were doing

24   work on it.

25          THE COURT:  (Inaudible) agreed to do the dive, the

1    deep dive into their phone, the ones that they had given to the

2    city police?

3         MR. KOSLOWE:  The city has told us that they are going

4    to do a direct collection of the city-issued phones but they

5    are not doing anything more when it comes to the city-stipended

6    phones.

7         THE COURT:  These are the ones that are under debate

8    now, the city stipended.

9         MR. KOSLOWE:  Right.  I would say the debate is going

10   to be slightly broader only because we're not being told what

11   the method of collection is.  Normally you're right.  You go

12   through an ESI protocol or an ESI conversation.  If you have a

13   debate, you discuss and devise search terms.

14        We had that debate in this case.  Your Honor gave us

15   an order about search terms.  Those are the terms the city

16   applied to everything else.  We haven't been told if they are

17   using those terms for the cell phones.  We are not being told

18   about a date range.  So we don't know what we don't know.  We

19   don't know what is being done through direct collection of the

20   city-issued phones, and we know they are not doing anything for

21   the city-stipended phones.

22        Now, what I said before is I will try to get to one

23   proposal.

24        THE COURT:  OK.

25        MR. KOSLOWE:  That proposal is, look, I know we have

1    57 custodians.  Plaintiffs' request is not to look at all 57

2    custodians.  We have a list around ten custodians which we

3    think, after review of this case, are the ones that have the

4    most (inaudible) is collecting the list.

5           THE COURT:  OK.

6           MR. KOSLOWE:  The custodians that have, after review

7    of this case, are most likely to have information, and we

8    believe that they have city-issued or city-stipended phones.

9    The request would be that the court can tell the city to do a

10   direct collection of those individuals' cell phones,

11   city-issued or city-stipended phones, and just to tell us.

12          First of all, tell us if they fall within the ambit,

13   right, if they have a private device or a city-issued or

14   city-stipended device.  That's one.

15          Two, to do the direct collection in a forensically

16   secure manner and using the search terms that were already

17   agreed to and the date range already agreed to and provide it

18   to us.

19          Then plaintiffs have another proposal, because the

20   city has been telling us the burden is extreme on them going

21   back to people looking for stuff.  Plaintiffs' proposal would

22   be, we'll pay for the collection.  Based on our understanding

23   of what we have done on our side, we have used a third-party

24   program.  It costs about 1 to 2,000 dollars per phone to do the

25   collection of the material, to get it off the phone and onto a

1  review platform.

2          They can do their review.  Give us a hit count like

3  you always do.  300 documents hit, 50 documents hit, whatever,

4  and then they do their search and winnow it down to give us

5  whatever they think is responsive.  We'll pay for the

6  collection because we don't want there to be an undue burden on

7  the city.

8          The individuals that we will be asking for, just so it

9  is up there for the record, would be -- again, it is coming up

10  here -- Mr. Plasencia, Noriega, Marrero, Carollo, Torres,

11  Goldberg, Morales, Pons, Mendez, and Colina.  I apologize.  I

12  left off Mr. Colina.

13          So we are not asking for everyone.  We're asking for

14  those because we tend to think, based on our review, they are

15  apt to have the most responsive information.

16          The city should do a direct collection.  We will pay

17  for the actual collection, and then they can give us the hit

18  count on the search terms and they can do their review and get

19  us the documents in a timely manner.

20          THE COURT:  OK.  Let me hear from the city on the

21  response to that.

22          MR. FERNANDEZ:  Good afternoon, your Honor.  I think

23  we are all aware of the court's order in this case regarding

24  the specific issue.  They first came to the court, I think it

25  was March, maybe it was April.  I forget the date of the order.

1    But they requested the direct forensic collection of these

2    personal phones and we pushed back and the court declined to

3    order that.  Since then the city has complied with the court's

4    order on sending the declarations out, having them search their

5    cell phones.

6         On September 2nd you ordered the city to provide them

7    a list.  I gave them that list with finality.  That is all the

8    court's order required us to do, and I have complied with that.

9         Judge Altman did discuss on --

10   THE COURT:  Now we have additional information.  Now

11   we know that some of these are city telephones and now we know

12   that they are city-stipend telephones and that the city is

13   aware that business is being conducted on these phones.  I

14   don't think that was -- occasional use on personal phones, and

15   we're trying to find a way to protect the privacy of these

16   individuals.  So we are in a different place.

17   MR. FERNANDEZ:  Judge, yes but no.  The reason I say

18   that is because at the time of the first hearing when we were

19   on these issues, the city's stipended phones wasn't an unknown

20   thing to anybody.  Everybody knew we gave city issued -- not

21   city issued.  Stipended phones.  So that wasn't in question.

22   It was the city-issued phones.

23        Once we became aware that some of the city departments

24   issued phones, I went and forensically collected those.  I

25   grabbed those, I gave them to a vendor.  Those were collected,

1    and I produced documents that were in that phone.  I have that

2    data.  That is where the supplement came to our appeal, where I

3    recognized, OK, there are some city devices.  I grabbed those,

4    I collected them, I told that to the court.

5          THE COURT:  Let's talk about the phones.  So what I'm

6    hearing is that the collection and the way in which they first

7    were presented was not sufficiently clear for the plaintiffs to

8    be able to understand the evidence presented.

9          Do you have any objection to the procedure that they

10   just outlined with respect to the phones?

11         MR. FERNANDEZ:  To collecting those phones

12   forensically?

13         THE COURT:  Yes.

14         MR. FERNANDEZ:  I do, Judge.  It is because we are

15   reading into personal cell phones and we are a city government.

16   We have Fourth Amendment type issues.  That is really kind of

17   concerning to us as a city organization.

18         What I would say is when we began -- once we started

19   complying with the order and we started giving them text

20   messages -- they were getting screenshots.  At no time during

21   that point did they raise any issues about any metadata.  In

22   fact, it is just ironic because in the November 3rd, I think,

23   email, we were having issues with their metadata, and they

24   claimed they are under no obligation to give us any metadata.

25   So it is just kind of ironic that they are walking into court

```
 1    trying to force us to give metadata.

 2            One thing with the proposal is they want me to sit

 3    down with each one of these custodians and create metadata.  As

 4    an attorney all I'm required to do is hand over information in

 5    the manner that they are maintained, which is the screenshots

 6    that I got from the custodians.  It is improper to have an

 7    attorney create metadata, because for whatever reason if I'm

 8    wrong, it is going to fall back on me.

 9            THE COURT:  A third party would be collecting the data

10    off the phones.  Then it would go back to you so you could

11    determine if there is something privileged or if there is

12    something that is so personal that is not within the scope of

13    their work, and then you would turn over the remaining

14    (inaudible).

15            MR. FERNANDEZ:  Right.  Their proposal was -- go

16    ahead, Judge.  I didn't mean to cut you off.

17            THE COURT:  I'm sorry.  I just want to make sure.  Did

18    I understand that correctly?

19            MR. KOSLOWE:  Yes.  So in other words, we identified a

20    series of problems, but the solution is one.  We are not asking

21    go back with the metadate.  We're saying for these individuals

22    that we identified, right, do a direct forensic collection.

23    You take the phone, you plug it into a platform, it pulls all

24    the data off onto a platform, and then you conduct your review,

25    just as you would with regular emails.  We don't see any of it,
```

1    right.  Ms. Fehretdinov, Ms. Rodriguez and their teams go

2    through it, they run a search, the search terms that we have

3    already devised.  It produces a hit count.  Then they take the

4    documents that hit and they review them to make sure they are

5    actually responsive.  They make sure nothing is privileged.

6    They redact it if they need to.  And they produce it to us,

7    which is, by the way, precisely what we did with the devices of

8    our principals when we were asked to do so.

9              THE COURT:  So --

10             MR. FERNANDEZ:  Sorry, Judge.  Go ahead.

11             THE COURT:  I don't see the issue.

12             MR. FERNANDEZ:  I would say the issue, Judge, is, we

13   are talking about ten cell phones.  It is very expensive to do

14   these things.  Their proposal was, hey, give us your cell

15   phones, we'll keep the data, and then we'll run the search

16   terms and then we'll give you back the cell phones.

17             THE COURT:  But that is not (inaudible).

18             MR. FERNANDEZ:  That is what their proposal is, for

19   the direct collection of the -- Jason, please let me finish.  I

20   would like to finish, please.

21        That was their collection.  That is what they told me

22   in the meet and confers.  I mean, their email might say

23   something different, but that is what they had told me over the

24   phone.

25             There is a cost that comes to this.  I believe it is

1    about $1,000 per phone.  The amount of data it costs, it costs

2    about $5,000 just to maintain the data.  So there is some

3    burden to it.  I mean, I'm not sure -- their concern about

4    incompleteness I don't think is material and it doesn't

5    outweigh the burden and the cost associated with such forensic

6    collection.

7         They haven't given any concrete examples other than

8    the one that they showed up on the chart.  I don't think at

9    this point in the litigation -- I mean, they've gotten a bunch

10   of text messages in this case, and I think it's unproportional

11   under Rule 26.

12        MS. RODRIGUEZ:  Your Honor, if I could just add one

13   thing that is not clear from the explanation by Mr. Koslowe, is

14   when you are downloading from a phone, I don't believe there is

15   any way to isolate just text messages from everything else.  I

16   would like that clarified, number one.

17        Number two, I don't know about these individuals, but

18   I think most of us text on very personal issues that we do not

19   want our employer to know about.  Maybe we are unhappy with

20   employment.  Maybe we are speaking to our spouse about a

21   family, serious family issue.  Maybe we are communicating with

22   a doctor about a protected health information.

23        The idea that all of this would be reviewed by anybody

24   at the city or anybody, even a forensic collector, I think this

25   is what Mr. Fernandez has been articulating in terms of

1    particularly as a government, the sensitivity of doing it.

2           We understand the plaintiffs' desire for completeness

3    and for metadata, but, again, it is something that ought to be

4    balanced.  I would appreciate if counsel could explain how

5    those risks could be mitigated as they're proposing.

6           MR. KOSLOWE:  We can.  Your Honor, first of all, what

7    I'm showing you is actually the email exchange between counsel.

8    So just to be clear, we proposed this.  We proposed to pay for

9    it ourselves.  We proposed to do it double blind to avoid

10   specifically revealing personal nonresponsive content.

11          Let me just say, we did exactly this with our

12   principals.  We had the device connected to a third-party

13   platform.  The documents were brought on, right.  For certain

14   of the principals who believed there might have been sensitive

15   content, they were able to look, to pull off the sensitive

16   content first.  The easiest way to do it is simply pull all the

17   content onto the platform and run the search terms.  After you

18   have the hit count, you reduce dramatically everything that

19   needs to be reviewed by anybody.

20          I'm sure the city could have the individual -- what we

21   did actually, just candidly, was you can open the platform up

22   for the custodian themselves.  They can then tag through every

23   single device and make tagging requests to say this is not

24   responsive and it's personal, which, frankly, we didn't have a

25   problem at the end of the day because our guys are an open

1    book.  The bottom line is that that is available to them using

2    the platform.  Like I said, we'd pay for that initial

3    collection.

4          I would make the further comment, right, if you have a

5    device that you're doing city work on, right, don't do personal

6    work on it.  I mean, that is what they told me when I graduated

7    law school and went to work at a law firm.  Don't email about

8    your personal life from your work phone, because that might end

9    up on the front page of the New York Times.

10         My only point is that -- pardon me.

11         THE COURT:  Let me go back to the first question.  Can

12   this isolate only text messages?

13         MR. KOSLOWE:  Yes.  The device -- yes, your Honor, the

14   device can pull only text messages and only What's App

15   messages.  It won't touch the photos, it won't touch Instagram,

16   it won't touch Facebook, so on and so forth.

17         THE COURT:  So that answers that.  And with respect to

18   privacy, you're saying it's only going to pull out texts that

19   have to do with these search terms.  The rest are not even

20   going to be part of a document that can be reviewed.

21         MR. KOSLOWE:  Right.  What it would do is first pull

22   all the texts.  Then you run the search terms and you pull

23   anything that hits and delete the rest.

24         THE COURT:  OK.

25         MR. KOSLOWE:  Right.  Then the city only has what was

1    pulled off and hit on a search term.  Then they review those

2    for responsiveness to make sure they are actually responsive.

3           MR. FERNANDEZ:  Your Honor, this is --

4           THE COURT:  The plaintiffs are willing to pay for the

5    platform that does this.  It is just a matter of now the city

6    can talk to these ten people and decide, OK, you can look at it

7    yourself and then the attorney will look at it.

8           MR. KOSLOWE:  That's right.  The alternative would be,

9    let's say Mr. -- I am not going to use someone's name.  I don't

10   want to cast aspersions.

11          Let's say Mr. Smith was on our list and Mr. Smith said

12   go pound sand.  I'm not giving you the phone.  I don't care

13   what's city issued.  I don't care what's city stipended.  I

14   don't care I did city work.  I'm not giving you the phone.

15          OK.  Then your Honor would give us an order under Rule

16   45 to compel, and we'd go to that individual and get the

17   information like we're entitled to because there is still a

18   witness with relevant documents.  Not the city's fault at that

19   point.  But that would be the alternative.

20          MR. FERNANDEZ:  And, Judge, Mr. Koslowe's proposal is

21   to have these custodians do the same thing they already did,

22   which is go through the phones and pick what is responsive and

23   pick what's not.  I have given them search terms, I gave them

24   the RFPs, and now he just wants them to be forensically

25   collected so they can sit at a database and pick what is

1  responsive and what's not.

2         With the subpoenas, what plaintiffs aren't telling you

3  about the subpoenas is they didn't just request documents in

4  this case, they requested documents for any case or any matter

5  that related to their clients.  So that is why we issued the

6  subpoena because they are not relevant to -- we issued the

7  objections to the subpoenas because they weren't relevant to

8  this case.

9         THE COURT:  We haven't even gotten to that.

10        MR. FERNANDEZ:  Right.  We haven't even gotten to

11 that.

12        THE COURT:  Just on the terms, actually.  It is the

13 terms that you're most concerned about.

14        MR. FERNANDEZ:  Exactly right.  It is the terms have

15 changed a couple of times.  Either way the guidepost is the

16 complaint and the RFPs themselves.  So when the custodian gets

17 their RFP, they're reading the RFPs, they know what is

18 responsive to the RFPs.  They have sent text messages to the

19 plaintiffs that don't even respond to the search terms because

20 they're relevant to the case.

21        I just think there is a burden, a cost with having

22 these ten individuals -- one is a city manager, one is a

23 commissioner, all of them, I believe, are department heads --

24 sitting down going through this platform again, and it

25 shouldn't be the plaintiffs' platform.  It should be the

1    platform of the city's choice.  The city should host the data,

2    and then we can do it that way if they want to pay for it.

3           I think it is duplicative.  I think we have gone

4    through this before.  These custodians have gone through the

5    text messages a couple of times.  There are some that haven't

6    sign affidavits but they have given text messages.  I just

7    think it is burdensome and it is not proportional to Rule 26.

8           MR. KOSLOWE:  Your Honor, what I find troubling is the

9    concept that Mr. Fernandez thinks that all of these custodians

10   have to sit down there and read their documents.  I'm pretty

11   sure that of the 19 million documents we have been told are

12   sitting on some archive somewhere and of the hundred thousand

13   documents that hit on search terms, right, those are reviewed

14   by lawyers for responsiveness because that is the city's

15   obligation under the discovery rules, Rule 26 and Rule 34,

16   right.

17          The only reason why you'd involve a custodian to do a

18   review is, as Mr. Fernandez said, the custodian was troubled

19   that there may be sensitive or private information mixed in

20   among their work papers, and for sure if they want to take

21   their time to do it, they can, to resolve that issue.  But

22   otherwise these text messages, these What's App messages, they

23   are just like emails.  They are just another form of

24   communication that exists in another place.

25          For clarity, I wasn't suggesting that we would pull

1    the devices onto our review platform.  What I was saying was we

2    would pay for the same third-party service we used to pull

3    those documents onto the city's review platform, pull all the

4    text messages on, run the same search terms your Honor ordered

5    them to do, right, and then using all of those documents

6    elevate them for review for responsiveness.  That's it.  It is

7    very simple.

8         We'd have then all of the documents, not just some of

9    them, not just some that have some custodian selected out, we'd

10   have them forensically secure and we'd know who they were from,

11   who they were to, when they happened, and then we can end this

12   issue.

13        THE COURT:  I don't see the concerns.  I feel the

14   concerns have been addressed.

15        Is there something that Mr. Roberts -- I know you're

16   the expert and you understand this on a level that I don't --

17   is there something that you wanted to add or explain that I'm

18   not getting here?

19        MR. ROBERTS:  I would simply add it sounds

20   straightforward, but if you ask for the difficulties, I'll just

21   help you with the difficulties.

22        The notion of a document with text messages is not a

23   meaningful notion.  Just imagine a long scroll of a paper towel

24   that could go back years, and that is what a text message is.

25   The way it is presented on your phone has no meaning in the

1    concept of documents.  They are single exchanges.

2         What was produced --

3         THE COURT:  (Inaudible) when it happened.  You can

4    know who exchanged with whom, but there may not be a date like

5    an email.

6         MR. ROBERTS:  That's right.  That's right.  Sometimes

7    the little bubble picture has a date, and when there were those

8    bubble pictures I think we went out of our way to try to find a

9    way to include that in the screen grab.

10        This reflected a compromise.  It reflected -- this is

11   one of those make the perfect enemy of good kind of issues,

12   where for those folks -- again, I believe the entirety of this

13   is we're talking about folks -- these are not city-owned phones

14   at the end of the day.  I know they get a stipend and all that,

15   but at the end of the day they are not city-owned phones.  A

16   person could get a phone that exceeds his stipend if he wants.

17   They are personal phones.  It is just a reimbursement to defray

18   some of the costs.

19        These things can be done, but they are not trivial

20   undertakings.  That is all I would interject, is that the

21   burden of this is really substantial.  I don't know that it is

22   a practical way to turn the custodians into document reviewers,

23   but I understand that the principals of the plaintiffs

24   exercised some self-editing before their content was released.

25        There is only going to be a modicum of incremental

1    additional information that could be generated by the entirety

2    of this exercise, and that simply would be a date, perhaps,

3    more closely associated with the transmission, but it does --

4           THE COURT:  It would probably be more thorough than

5    the custodian themselves (inaudible) who had the time to do

6    what a machine can do.  Simply put in an algorithm for some

7    terms and spit it out on the other end.  It's got to be a lot

8    more efficient and more thorough.

9           MR. ROBERTS:  It may well be more thorough in that

10   strict sense, but generally the custodian knows who he's been

11   talking to or she's been talking to about some issue.  They

12   don't need to do necessarily, to go down the list of search

13   terms and enter all the addresses of the folks.

14          I think they got a pretty wholesome production of

15   this.  So the underlying content they have.  We are just

16   talking about some incremental content that would go along with

17   it.  That's all I point out.

18          THE COURT:  OK.  So you're giving me information,

19   though -- you're right about the dates with the text messages.

20   I don't know if that platform will be able to pull that off.

21          MR. KOSLOWE:  I can answer that.  So what Mr. Roberts

22   pointed out is a true fact about the way text message are

23   recorded, right.  If you go into your phone and if you don't

24   have an auto delete, let's say, for 90 or 60 days, you will see

25   a conversation stretching back with whoever you're speaking

 1    with going back until the last time that the phone decided to

 2    stop recording that, right.

 3         What this platform does is it grabs all the text

 4    messages and using whatever algorithm it does, it breaks them

 5    into lots of little snippets, right.  It tries to replicate

 6    what you would normally see a conversation looking like.  So it

 7    might block off a day or it might block off a week or a period

 8    of time of lack of communication on the text message chain.  It

 9    would break those off into what you'd normally see as a

10    conversation, and then it has them forensically secure.  So you

11    know exactly who spoke to who when, who's on the chain, when it

12    took place and all of that.

13         I would say in our estimation, based on the

14    deficiencies we've seen in the indirect collection -- and,

15    again, this is not to cast aspersions.  This is the way it

16    happens when people are going on their cell phones and looking

17    for what they think are relevant.  We think it is going to be

18    much more than an incremental benefit in terms of the content

19    we get.

20         I will also say we would then know what's there and

21    what isn't there and we can tie off this issue.

22         THE COURT:  OK.  I think that sounds doable.

23         What is the time frame for that search?

24         MR. KOSLOWE:  It takes two hours for a phone to run

25    the collection, and the review time is up to the city in terms

1    of how many lawyer hours they put into getting to review them.

2         THE COURT:  But the individual would be deprived of

3    their phone for a fairly short period of time.

4         MR. KOSLOWE:  I've had it when they're all, on a day

5    when they're at one of the meetings when they can't use their

6    phones anyway.  I say that in jest.  These are all hard-working

7    individuals at the city and so there are probably meetings

8    where they can give up their phone for two hours and get it

9    pulled and go back to their normal day.

10        THE COURT:  OK.  I find that that method seems

11   reasonable, that it provide relevant information.

12        The limited intrusion into the use of the individuals'

13   phones for a short period of time to do this seems to not be

14   out of proportion, and with plaintiffs offering to pay for the

15   cost that takes care of the undue burden issue as well.  So I

16   will put that into an order as well.

17        MR. KOSLOWE:  Thank you.

18        MR. FERNANDEZ:  Just to be clear, Judge, we're going

19   to have the option to choose our platform, they'll pay for the

20   cost of search, collection and maintaining the data on our

21   providers, correct?  Is that what I'm hearing from the court?

22        THE COURT:  The word platform I don't really

23   understand.

24        Mr. Koslowe.

25        MR. KOSLOWE:  Yes, let me explain.  There is a

1    third-party software, which I'm calling a platform, which takes

2    the stuff off the phone and puts it somewhere else, right.

3          I don't want to take it onto my Relativity workspace.

4    I want them to use that third party and take the documents onto

5    their work space and then run the search terms and then do what

6    they want with it.

7          In terms of data hosting, I think it is a bit odd that

8    they would have us pay to host the data that is their evidence

9    in the case.  If they want to throw it out, they can go and

10   throw it out, but everyone pays for their own data hosting.

11         Our proposal will be, we will pay to collect it

12   because they think it is expensive to collect.  Like I said, I

13   think it is 1 to 2 grand per phone for the license and to use

14   the third-party program, and we are happy to do that.

15         MR. FERNANDEZ:  Right, but it's like 5 grand for six

16   to eight phones to host it and then when we get rid of it, like

17   he suggests, he is going to come back to court and say we got

18   rid of the data and now he wants more search terms run.  I

19   think if this is what plaintiff wants, they offered to pay for

20   the costs before -- and it is not just half the cost.  It

21   should be the full cost.  It should be the cost of maintaining

22   it as well.  Because collecting it is just the top of the

23   cupcake, one way to say it.  Maintaining the data in the

24   platform costs money.  It costs a lot of money.  We are talking

25   about cell phones that have a lot of data on them.

1         MR. KOSLOWE:  Your Honor, I think that old phrase I

2    don't eat pigs or hogs, but I think it is pigs get fattened and

3    hogs get slaughtered, or one of the other, right.

4         I am sure your Honor read Judge Altman's order

5    affirming your Honor, where he said that Given our conclusion

6    that the city has a legal right to obtain these documents, we

7    if left to our devices would just have ordered you to do it.

8    Frankly, that is what Judge Reid should have done had you known

9    about this issue, which you didn't at the time.

10        We would have ordered you to collect those responsive

11   documents and we would have ordered you to produce them.

12        We are offering a compromise to pay for something

13   which under the rules we don't have to do because we think it's

14   an appropriate compromise, at least brought under Rule 26.

15        For them to say, well, we should get that plus pay to

16   host it and pay for our review time also for the lawyers.  I

17   don't know what else they're going to ask for.  Like I said,

18   you know, pigs and hogs, your Honor.

19        THE COURT:  Perhaps if there could be an agreed period

20   of time, at least through the conclusion of discovery, where

21   you pay for it and then the city can do with it what it wants.

22        I don't know, Mr. Fernandez, if that would address our

23   concern and that would address plaintiffs' concern.

24        MR. FERNANDEZ:  Judge, the city has spent a lot of

25   money on forensic collection when we have evidence plaintiffs

1    haven't forensically collected data and documents.  So I will

2    leave it to the court on that point.

3          THE COURT:  I don't want to go back to the issue days.

4    We want to talk about this.  I mean, if the city issues phones

5    for city business and is providing phones to its employees and

6    stipends, it is just like if they are using emails.  It is

7    simply the cost of doing business, Mr. Fernandez, and I don't

8    see that that is something that should necessarily be passed on

9    to the plaintiffs in this instance.

10          So I will have to disagree with you on the issue of

11    the hosting, but agree with the plaintiffs' proposal to

12    actually pay for getting the information.  So we will go with

13    that.

14          Then I think the next issue that seems most pressing,

15    because we are into almost an hour and a half, it is

16    third-party subpoenas that are going to be -- the dates are

17    November 10th and 11th.  That is tomorrow and Friday.  So we

18    need to talk about that.

19          MR. FERNANDEZ:  Yes, Judge, and the lawyer for those

20    entities actually filed a motion for protective order/quash

21    this morning on behalf of all of the businesses.  There are two

22    subpoenas.  There is one for documents and one for inspection

23    of the premises.

24          MS. FEHRETDINOV:  That is factually incorrect,

25    respectfully.  It was only on behalf of three parties that he

 1   filed, not the seven.  That is neither here nor there.

 2          But yes, that is correct, Mr. Fernandez, they did

 3   issue objections.  Just for the record, it is on behalf of

 4   three of the entities.  I think the proposal that we had sent

 5   out to the city was if you'll give us the information, then we

 6   don't need to go to these third parties.

 7          The city has refused to provide this data.  It is

 8   6,000 documents.  We have given them specific search terms for

 9   it.  It is actually our item No. (inaudible).  So that is all

10   we need.

11          They collected this data months ago.  They ran search

12   terms.  Mr. Roberts and Mr. Short so graciously gave us their

13   search term results and their call results, and I can show it

14   to your Honor.  It is very reasonable.  These are issues that

15   were already at issue before the court in the amended

16   complaint.  These are the comparators.

17          We have now an amended complaint where we're saying

18   under equal protection we have identified in addendum C the

19   specific businesses that are identically situated to us that

20   were treated differently.  So these are seven of those

21   businesses.  We have issued discovery requests, and the city

22   has said if you don't get an order, Ms. Fehretdinov, from Judge

23   Reid ordering us to do this, we're not going to do it.

24          MR. FERNANDEZ:  Your Honor --

25          MS. FEHRETDINOV:  We have been doing this for months.

```
 1            MR. FERNANDEZ:  Respectfully, Judge --

 2            THE COURT:  Let me make sure I can understand the

 3     issue first, Mr. Fernandez.  You understand it a lot better

 4     than I do.

 5            From what I am hearing there are seven businesses that

 6     the plaintiff believes were treated differently than

 7     Mr. Fuller's businesses.  They need certain information to be

 8     able to establish that and to present that to the court at

 9     trial, for a summary judgment motion, or whatever they want to

10     do.

11            Now, this information is part of a second RFP?

12            MS. FEHRETDINOV:  That's correct, your Honor.  We have

13     been working on this since September the 2nd, we have been

14     trying to get the information.

15            MR. FERNANDEZ:  Which your Honor sustained the

16     objection at that hearing.

17            THE COURT:  And they object to the second RFP.

18            MR. FERNANDEZ:  Right, Judge.  We were here on

19     September 2nd for about two-and-a-half hours arguing about

20     search terms.  Mr. Roberts went through search terms and you

21     sustained the objection at the end.

22            I could have Mr. Roberts bring up the transcript if

23     you'd like.

24            THE COURT:  The request was narrow the search terms

25     that was already at issue, and you are still not in agreement
```

1   that these search terms are going to be appropriate or you

2   agreed on the search terms and it still hasn't been turned

3   over.  I want to make sure I understand.

4         MR. FERNANDEZ:  The search terms, Judge, were

5   essentially identical to the ones we were here on September 2nd

6   arguing.  Nothing has changed in relation to the burden and

7   cost to produce these documents.  The requests themselves are

8   overbroad.

9         Mr. Roberts has more information on the specific

10  details of this, but you were at the hearing.

11        THE COURT:  You haven't been able to narrow the search

12  terms, Ms. Fehretdinov.  I just want to make sure.

13        MS. FEHRETDINOV:  What we did, your Honor, was because

14  your Honor at that hearing said to remove the Fuller-related

15  search terms, we did that.  That was a huge bulk of the data

16  that was reduced.  So now we don't have any of the

17  Fuller-related items on there.  It is strictly only -- it is

18  less than 6,000 documents.  I believe it is 5800 documents.

19        I can give you a copy of the report that we have been

20  going back and forth on that Mr. Roberts has gone through.  You

21  can see here where it says unique documents, you can see the

22  totals.  It is 191 for one of the addresses, 39 for the other.

23  That is the column that you look at.  So that is what is on the

24  review platform, and they gave a cull, which is the other set

25  here.

```
 1              So it is really a reasonable number.  I'm not sure
 2      what the issue is.  But this is it.  This is all of them on
 3      this one page.  It is two different ways to look at the data.
 4      Mr. Roberts could explain the differences between the two.  As
 5      you can see, most of the search terms have zero unique hits.
 6      So it is really just the top portion that we are talking about.
 7              We produced close to 80,000 documents in this case.
 8      We are talking about less than 6,000.  More importantly, these
 9      are items that are squarely at issue in our amended complaint.
10      You didn't have the luxury of seeing those details on September
11      the 2nd because we issued our new amended complaint and
12      identified the relevant and the identity of these specific
13      businesses in addendum C.
14              So this is all we're talking about here.  It is very
15      reasonable.  We did work very heavily to reduce the amount and
16      the number from 40,000 to less than 6.
17              MR. ROBERTS:  If I could just briefly, your Honor.
18              THE COURT:  Yes, please.
19              MR. ROBERTS:  So if we could put that back up, that
20      would be great.  Perhaps a little misunderstanding on the
21      interpretation of it.
22              The bottom line is that the most recent proposed
23      search terms generate about 24,000 new documents that would
24      have to be reviewed.
25              The unique docs means when you run ten search terms
```

 1  against a collection.  Let's just say ten search terms.  A
 2  unique document is a document that hits on one term but no
 3  other.  It uniquely hits on that document.
 4       What that actually is a metric of is how inaccurate
 5  the term is, right.  So, for example, statistically if you have
 6  ten terms that are related to the targeted subject matter,
 7  statistically a responsive document most often hits on more
 8  than one.  So if you're looking for Mr. Fuller, if you're
 9  looking for his address, it's very typically that the subject
10  line would be his address and you would say here's the thing
11  about Mr. Fuller.
12       So the unique document hits are instances where a
13  document has one search term but no others, and that is
14  actually a measure of how inaccurate they are.  So the more
15  accurate measure is total documents.  In the column for total
16  documents, it would be -- it would overstate the issue if they
17  were summed because there is some overlap, but I can just
18  represent to the court that this search term challenge that is
19  being presented is, and I can get the exact count here, it's
20  24,375 plus another 1700 or so.
21       Again, your Honor, what this does is it doesn't help
22  the issue of are we going to substitute search terms for what
23  the request to produce is.  The request to produce is
24  actually -- I will let merits counsel take up.  You have taken
25  up the request to produce and what its content is.

```
1           As you know, search terms are an imperfect -- it is

2    just a methodology for trying to capture some content that may

3    or may not be responsive to the referenced document, which is

4    the request for production.  The metrics kind of are what they

5    are.  The new search terms generate 24,000 documents that would

6    need to be reviewed, and that is almost, gosh, like another 25

7    percent of what we would do all over again for that.  That is

8    what the metrics are and it kind of just is what it is.

9           THE COURT:  Just so I understand, these 24,000

10   documents are emails, memos?  Where are you searching for them?

11          MR. ROBERTS:  Everywhere in our existing collection.

12   I will try to share the screen here.  That's OK.

13          Maria, if you want to unshare, I will try to share.

14          MS. FEHRETDINOV:  Yes.

15          MR. ROBERTS:  These are in the collection that's

16   already been advanced for review.  Briefly --

17          THE COURT:  So this collection started out at 80,000

18   documents and now it's refined down to about 24, 25,000.

19          MR. ROBERTS:  Yes.  I am going to try to get that one

20   in front of you here.

21          So this is the bottom-line number for what the effort

22   would be.  This is the bottom-line number for what the effort

23   would be, 24375, plus about 1700 that we saw in the others.

24   They are just in two different places on the document platform.

25   But you can see these are where those numbers that Maria shared
```

1   with you came from.

2          It just says what it is.  It is a very substantial

3   review.

4          MR. FERNANDEZ:  Judge, I have to touch briefly, if I

5   can.  I am not sure -- I mean, they claim and they allege that

6   there are comparators in their complaint.  They are here in

7   court saying the second RFP is related to those comparators,

8   but I just received a new request for production from them

9   about a week ago about the same comparators in their complaint.

10          I'm not sure emails will even help establish how

11   they're related other than if you're looking at their building

12   permits or you're looking at the layout of the property itself,

13   because it is property.  You're not dealing with anything else

14   in regards to that point.  I'm not sure how these emails will

15   get them there.

16          If we are talking about building permits, I think that

17   is a different conversation.  But I don't see how the emails or

18   these 24,000 documents that need to be reviewed help them get

19   there and get them to where they need to establish comparators

20   for purposes of an equal protection claim.

21          THE COURT:  I will let them make that argument.

22          MS. FEHRETDINOV:  Yes, your Honor.  Just to briefly

23   respond.  First of all, we would hope that all of this would be

24   pulled from building code, etc., so that we would be getting.

25   I mean, these search terms would be coming and getting the

1    building permits and other things that we are looking for.

2            As you noted, we had a huge number before, 84,000.

3    The number of the 6,000 that was provided to me by opposing

4    counsel is I understood based on unique docs because once you

5    look at a document that had the hit, if you find that it is not

6    responsive, then you don't need to look at the attachments.  So

7    let's say that it said I'm going to Sala O for a birthday party

8    and there's ten attachments or something, you don't need to

9    look at the attachments because you see that the word Sala O is

10   a miss hit.  So you take it off.  So it really is a small

11   number.

12           I think that the key issue here, though, is that Judge

13   Altman asked us to be very specific about these comparators.

14   He did that at the hearing.  We spent a considerable amount of

15   time and, frankly, money on behalf of our client to get all of

16   the underlying data reviewed, and these allegations in the

17   amended complaint are squarely at issue.  We haven't gotten a

18   single document from the city with respect to these

19   comparators, even though they're telling us, well, 24,000 is a

20   lot or 6,000 is a lot.  We haven't even gotten a single

21   building plan from these people.

22           I think the key is, for lack of a better term, we've

23   been stonewalled with it.  We are halted here because we need

24   guidance because they said that you made the determination on

25   September 2nd that we couldn't have discovery on our

1    comparators, which I don't believe is an accurate

2    representation of what you stated, frankly.  I believe that you

3    were looking at, perhaps, the volume with Fuller, and we took

4    that guidance and took out Fuller, which led to a dramatic

5    decrease in these terms.

6         This is a reason why this discovery is ongoing for

7    this period that Judge Altman ordered through December 27.  So

8    these documents which they're looking at doesn't require them

9    to pull new sources.  They've already got it there.  They

10   already had it ready.  It's been there for months.  We would

11   respectfully request that you not impose burden on these third

12   parties and have the city give us these documents that we have

13   a right to under a public records request and otherwise.

14        Moreover, now that we have issued the third RFP

15   delineating these issues that if you could just provide the

16   parties with guidance so we don't have to come back to you

17   again that if there is something in our amended complaint about

18   these comparators, that is what we are seeking discovery on,

19   and we have a right to discovery on these comparators.  You're

20   not taking the position that we can't get discovery on these

21   comparator businesses.

22        THE COURT:  Of course you are entitled to that

23   (inaudible) amended complaint.

24        I'm looking at the objections to the subpoenas that

25   the attorney has filed, and you're looking for documents

1    concerning notices, notices of violations, citations.  So you

2    are essentially trying to determine if these other companies

3    were also given some sort of citations from the city, permits

4    that they had, copies of tax business receipts, occupational

5    licenses.

6           How many requests are there?  It looks like there's

7    five.

8           MS. FEHRETDINOV:  There are seven subpoenas that were

9    issued, your Honor, for these seven comparator businesses.

10          THE COURT:  You are asking for five sets of documents

11   and then the request to inspect the premises, am I right?

12          MR. FERNANDEZ:  Yes, Judge.

13          MS. RODRIGUEZ:  We have an issue with the inspection,

14   which Mr. Fernandez will elaborate on, but we specifically have

15   asked that the inspection -- first of all, we don't think it is

16   relevant because we don't know -- what they look like today has

17   nothing to do with whatever was going on at Ball and Chain or

18   Taquerias two years ago when the events -- or a year ago when

19   the events in question occurred.  So we are not sure what an

20   inspection today would yield.

21          Secondly, we asked as a courtesy if their expert was

22   going to go into these businesses, if the inspection was going

23   to be allowed to occur, then it should be done at a time when

24   our expert can be available, and they have never even responded

25   to that --

1          MR. FERNANDEZ:  And these documents --

2          MS. RODRIGUEZ:  -- other than to say we should do our

3     own.

4          MR. FERNANDEZ:  They have submitted public records

5     requests to the city for these documents, and these other

6     entities that they are trying to inspect are direct competitors

7     of their client's businesses, which could be done for other

8     reasons and I will let the lawyer for that business make those

9     arguments.  I think there are a lot of problems with the

10    subpoenas for inspection.

11         THE COURT:  OK.  I just was looking at the subpoenas

12    trying to understand the context of this argument.  OK.

13         So the second RFP has the same request that the

14    subpoenas have that were sent directly to the companies,

15    Ms. Fehretdinov?

16         MS. FEHRETDINOV:  That's correct, your Honor, because

17    we requested the data from the city.  The city told us Judge

18    Reid said you can't have it.  So then we went out to the other

19    third parties.  The third parties said, hey, the city has it,

20    go get it from the city.  So we were forced to file public

21    records requests and pay and take that delay.

22         So I think we're right in discovery to get this data,

23    and we issued third RFPs on that same basis.  So we just need

24    guidance from your Honor saying this discovery can be had.

25         With respect to the inspections, which is a separate

1    issue, if Ms. Rodriguez is taking the position that no

2    inspections of any properties should be had, then as long as

3    she will withdraw her request for an inspection from our

4    properties, we are fine with that.  No parties can inspect

5    anybody's businesses officially through the court.  So she

6    would just need to withdraw her request to inspect plaintiffs'

7    properties given the fact that she said it is irrelevant and

8    that there is no relevant data there.

9           THE COURT:  OK.  So let's start with the requests, the

10   requests for these documents that we have now narrowed down to

11   about 24, 25,000 documents.  This is a request that is

12   necessary for this litigation.  It has been narrowed

13   significantly, and at this point it does not seem to be

14   overbroad in what it's requesting, and it is more efficient,

15   the request is from the city, than from these third parties.

16          These individuals were not parties to this case.

17   While I understand that it is also being requested through

18   other avenues, I think the idea was to try to get it in time to

19   be useful for this case and that a public records request might

20   take more time.

21          So these are documents that are readily available to

22   the city.  If the city can find some other even more efficient

23   way to find them and to collect them and give them to the

24   plaintiff, I'm willing to hear that, but it sounds like you

25   have already done the work.  It is just now a matter of

1    actually reviewing those documents and turning them over.

2         If you are looking at them to see whether there is any

3    privileged information in them, or what is it you're looking

4    for that stops you from simply turning them over?

5         MR. FERNANDEZ:  Well, I think there's two things.  One

6    is it is going to take resources and efforts to talk to the

7    relevant departments.  It is not just collecting these things.

8    I have to go talk to the employees and I have to have them go

9    into certain departmental platforms, pull all these things.  We

10   have Thanksgiving coming up, I think, in two weeks.  So there

11   might be some delay there, and the plaintiffs know that.

12        We went through this last year where I had issues with

13   timing because my city employees are out, they're on vacation.

14   Not me, but they're out.

15        Obviously, I do my best to try and pull these, but

16   when it comes to the hard documents I can try and pull those

17   and send them the PDFs.  I think the last time we did forensic.

18   I know when it comes to emails it is going to take a little bit

19   more time because we only have so many bodies to review those

20   24,000 documents.  I think the next thing --

21        THE COURT:  Mr. Fernandez.

22        MR. FERNANDEZ:  Sorry, Judge.

23        THE COURT:  Why do you need to review them in terms of

24   the city?  What are you reviewing them for essentially?

25        MR. FERNANDEZ:  Go ahead, Chad.

1          MR. ROBERTS:  Responsiveness and relevance and

2     responsiveness.

3          So basically the --

4          THE COURT:  So if the plaintiff says, OK, we'll just

5     take them.

6          MS. FEHRETDINOV:  Yes.  We have a November 23rd expert

7     deadline, expert report deadline.  So that is what we are

8     trying to comply with.  We really desperately want to stay on

9     schedule.  This case has really snowballed, and we would like

10    to get past discovery and get to the next -- no offense to your

11    Honor, but we'd like to get to the next stage in this

12    litigation.

13         Dispositive motions are due January 18th.  We'd like

14    to finish discovery on December 27th.  Expert reports are due

15    November 23rd.  We're happy to take stuff on a rolling basis.

16         We know they have had this since, I guess it was

17    September 2nd we had that lengthy hearing.  So they have had

18    these documents on their platform and Mr. Roberts has them

19    uploaded.  We'd love to get them, and we will do the responsive

20    review if your Honor would prefer.

21         MS. RODRIGUEZ:  Your Honor, they had an expert report

22    issued months ago, back in September, and their expert, as far

23    as I recall, didn't say that he lacked information in order to

24    express his opinions, and they had an equal protection claim

25    back then.  Other than them being more particular in what they

1    are asserting in the complaint, nothing else has changed.  It

2    is still the same claim that they had before.

3            So we are unclear about what new thing their expert

4    would need.  He already issued an opinion on the entire case.

5            THE COURT:  All I was trying to do was save the city

6    some time and expense for reviewing for relevance.  If the

7    plaintiff says, no, don't worry about the relevance, just send

8    them to us and we'll take it as it is, it is a matter of saving

9    you time and money.

10           MR. ROBERTS:  That doesn't help for privilege, though,

11   your Honor --

12           THE COURT:  You're looking for privilege.

13           MR. ROBERTS:  -- and responsiveness.  In other words,

14   we have never gotten to a place where we have to produce

15   information that is not neither relevant nor responsive.

16           Just to be clear, in the court's eyes of assessment

17   what I think Mr. Fernandez was describing was there are some

18   structured information sources from the various departments

19   outside of this search term thing, there is some structured

20   information sources in the city's code compliance and building

21   and all that, those will need to be interrogated and documents

22   retrieved from, but those are structured information.

23   Typically they can be accessed by reference to a street address

24   or a folio number or whatever.

25           So that is a little bit more discrete.

1          THE COURT:  (Inaudible) that as opposed to --

2          MR. ROBERTS:  Right.  Those don't tend to have

3    privileged information in it.

4          What the search term thing is about is the plaintiffs

5    are saying, look, we are going to take a stab at this, we are

6    going to help cull down the potential amount of documents you

7    would need to review.  We'll forget about the Fuller term,

8    etc., etc.

9          So where we are with the search term thing is our

10   unstructured information, that is just a big blob of collected

11   data from the city's information environment, and then the

12   plaintiffs say, well, these search terms we think are fairly

13   reasonable, accurate search terms that are likely to retrieve

14   responsive information and a whole lot of other stuff, but that

15   is part of the nature of the game.  So at least that effort has

16   resulted in about a 25, 26,000 document collection, and that

17   would need to be put through the city's review process for

18   responsiveness and privilege, just like all the other

19   collections that we have done.

20         THE COURT:  Well, in terms of responsiveness, they're

21   really (inaudible).  Privilege, you need the time to look for

22   privilege.  What seems reasonable?

23         MR. ROBERTS:  I would have to discuss with the city

24   how many resources.  It is really just a matter of -- this is

25   going to be an expensive thing.  It is expensive for everybody.

 1    It is an expensive thing.  It is just a matter of how, in terms

 2    of a delivery date, you just have to put a lot of resources on

 3    the problem.

 4             THE COURT:  Let me ask this.  Is there a way to remove

 5    the privilege issue, plaintiff, by simply saying, but not this,

 6    like taking out certain --

 7             MR. ROBERTS:  Yes.  It is, your Honor.  The first line

 8    of defense is to do our best to identify people in that

 9    collection of the 27,000 who have lawyer names, for example, or

10    who are lawyers.  So we can go through and comb those out and

11    put those in a different bucket and have people starting to

12    review those.  But it doesn't answer all the review issues.

13             It just boils down to a 27,000 document collection.

14    It is an unremarkable 27,000 document collection, and it is

15    just dollars.  It is just dollars.

16             THE COURT:  It is part of this case, though.  It comes

17    down to an important part of this case, and there is certainly

18    relevance.  The idea that we are trying to come up with is what

19    is the most efficient, cost effective way to do it.

20             MR. ROBERTS:  Look, we are highly motivated to come up

21    with an efficient way to do it, and we will, in a defensible

22    way.  We have always had that approach to making it efficient

23    but defensible and have it meet the standards that plaintiffs

24    would expect and that we would expect of plaintiffs in the same

25    circumstances.  So we will do our best to make it efficient,

1    but at the end of the day it is a big, heavy lift.

2           MR. FERNANDEZ:  The question I have for the

3    plaintiffs, Judge, is they served me with a new request for

4    documents, which they say is narrowly tailored to the new

5    allegations of the complaint, just like the second RFP.  So

6    where does that put us in terms of collection?  Is this it or

7    are they going to withdraw the third RFP?  I would just like to

8    get some input from them since this is going to be a task we

9    have to complete.

10           THE COURT:  Plaintiffs.

11           MS. FEHRETDINOV:  The third RFP is the RFP for the

12   amended complaint.  There was a lot of confusion, I think, with

13   respect to the second RFP because, like I said, the city

14   stonewalled and said we're not going to give you a single other

15   file.  I don't care if you're asking for a building permit,

16   we're not giving it to you.  Judge Reid said you can't have a

17   single thing.  She already ruled on September 2nd.

18           So we issued a third RFP with respect to the

19   comparators, and that is the operative RFP.

20           We are happy to work with the city on, if they need to

21   keep some of the terms in light of the third RFP, but I think

22   the key is that we need these documents produced on a rolling

23   basis.  So whatever doesn't hit the privilege QC, then if they

24   could give that to us, whether it is responsive or not, we are

25   happy to do that responsive review, but we want to comply with

1    the court's deadlines.

2            The city asked for an extension of discovery through

3    March and the court rejected that proposition, said we have to

4    be finished by December 27th.  The city also requested to file

5    its expert reports by November 23rd, and we would be filing our

6    expert report by November 23rd with respect to these new

7    allegations, with respect to the comparators.  We fully plan to

8    do that.  So we need to start the process of -- they have had

9    this on their database and tallied up since September.

10           MR. FERNANDEZ:  I'm kind of confused because --

11           THE COURT:  The second RFP is no longer on the table.

12   We are on the third RFP now, is the answer to the question.

13   They need to respond to the third RFP.

14           MS. FEHRETDINOV:  I think it is a lot of form over

15   substance.  To make the 30 day run and then issue objections

16   and then do a meet and confer and then come back here to your

17   Honor.  That is what I'm trying to avoid.  Let's just cut to

18   the chase.  OK.

19           We are here on the comparators.  We have search terms

20   that we've identified for these seven.  To the extent that

21   there are additional documents for the other comparators, let's

22   work together, but we need to get these documents out the door.

23           I'm not looking here to go through this 30-day process

24   and then they ask for an extension of time, which we have given

25   to them every single time they have asked for an extension.  We

1   have given it to them.  It is just objections and then we don't

2   get anywhere.  We just don't have the luxury of time at this

3   point, unfortunately.

4           MS. RODRIGUEZ:  Your Honor, they are talking about

5   seven comparators.  One of their exhibits has about 86

6   comparators that aren't even on Eighth Street or even in

7   Commissioner Carollo's district, which we will be pointing out

8   has nothing to do with their claims.

9           They're trying to get the nose of the camel under the

10  tent here with seven, and the next thing we know they are going

11  to ask us for all of our records on 86 different establishments

12  that are not even restaurants around the city.

13          THE COURT:  Let's deal with what we have right now and

14  find out how quickly you can respond.  I have a sense of how

15  quickly you can response.

16          We are talking about this RFP.  When can this be

17  produced?

18          MR. FERNANDEZ:  Right.  That is my confusion, Judge,

19  because I'm not sure if we are talking about the second or

20  third RFP because I was under the understanding that they were

21  to both.

22          THE COURT:  How quickly can you produce?

23          MR. FERNANDEZ:  I'm not sure.

24          Chad, what do you think?

25          MR. ROBERTS:  We can start a rolling production

1    probably with things rolling out of the pipeline in about two

2    weeks, and then we will have a better feel for the magnitude of

3    the task and can make better projections.  In other words, the

4    little further along we are, the more accurate we're able to

5    keep plaintiffs updated on the status of completeness.

6            We are used to this.  Whatever the court decides, we

7    can get the task done.  We will work with the plaintiffs to do

8    it.

9            THE COURT:  Plaintiffs.

10           MS. FEHRETDINOV:  Respectfully, your Honor, he is

11   saying that he is going to give us the documents after our

12   expert report deadline.  This is something that we issued,

13   requests that we issued and that we heard before your Honor

14   three or four months ago.

15           He already has these documents uploaded.  I would

16   kindly suggest that he take out the pot priv with no -- if he

17   needs to claw back something in this production on account of

18   something slipping through the cracks, understood, but give us

19   the rest of the stuff.  It is already on the database.  You

20   already have it uploaded.  It is already there.  Run your

21   (inaudible), strip it, and then dump the rest of it and we will

22   review it in 48 hours, because we can get through 24,000

23   documents in 48 hours.

24           THE COURT:  What is on the database right away, but

25   the things that have to be pulled by hand, you're willing to

1   wait for the two weeks on some of this.

2           MS. FEHRETDINOV:  Well, I mean, I would think that --

3           MR. ROBERTS:  To make sure, what would be helpful is

4   if, frankly, just to have the plaintiffs prioritize and tell us

5   what they want first.

6           The suggestion is that the structured information from

7   the database information, the place where all the records are

8   kept in the big database of things, I suspect that's likely to

9   have the best, most responsive content that is the richest

10   content.  It is the low-hanging fruit.

11           A suggestion would be for us to target that production

12   first and for us to just have a dialogue as to what your expert

13   needs first, and we can try to target that production and move

14   that content to the front of the cue for that.  We are not

15   going to go out of our way to slow walk anything.  We will

16   collaborate with you on that.  We have done that before.

17           MS. RODRIGUEZ:  For the record, I think the judge's

18   scheduling order does allow us some flexibility with the

19   deadlines as long as they don't affect the hard deadlines, the

20   dispositive motions, and so forth.

21           We have a prior practice that we mutually agreed to a

22   one-day extension of time already in the prior round of expert

23   opinions.  So perhaps that is an option that is available.  I

24   know we have a short time frame, but if it is not the 23rd,

25   perhaps it could be a week later, if that is an issue.

1          MR. FERNANDEZ:  The third RFP -- I hate to keep going

2     back to this.  I didn't get a square answer from the plaintiffs

3     that their expert deadline is the 24th and this other RFP is

4     due December 2nd.

5          Will this production resolve all the production issues

6     so we don't have to come back here or am I still working to

7     produce it seems like duplicative documents to the third RFP?

8     I am just confused.  I would request plaintiffs give a clear

9     answer on that.

10         MS. FEHRETDINOV:  Yes.  The third RFP is the operative

11    RFP, but we included in the third RFP the same things from the

12    second RFP in there because we didn't get anything in response

13    to that second RFP.

14         So what we did was we issued an RFP on comparators.

15    So the point is if they're able to give us -- Mr. Roberts

16    hopefully noted the most responsive stuff.  If he could give us

17    that within the next seven days, that would be really useful to

18    work there, and then we will work with that to stay on track

19    with our expert report deadline.

20         Ms. Rodriguez had proposed a rebuttal expert report

21    deadline three weeks later, which actually puts us then, if the

22    initial reports are due on November 23rd, rebuttals would be

23    December 14th.  Then you only have one week, the week before

24    Christmas, to do depos.  So we are already tight as it is.  I

25    think we need to all work together to get this stuff done

1    really quickly.

2              So I would suggest that within a week maybe get us the

3    low-hanging fruit that Mr. Roberts alluded to and then the

4    following week the rest of the hits that don't hit on pot priv,

5    and we are going to work with them on the comparators in the

6    third RFP so we can get search terms that are not going to be

7    overly burdensome.  Because a lot of this is there are no

8    documents for these people.  That's the whole point, is they

9    haven't scrutinized these other businesses.  So we just need

10   them to tell us that, and they have done that through some

11   interrogatories.

12             That actually dovetails into the last item I believe

13   that we have before your Honor, which is --

14             THE COURT:  Mr. Roberts, seven days.

15             MR. ROBERTS:  I would ask the court to not say seven

16   days on anything because it is just too hard to do it.  I think

17   the direction from the court is go do this as rapidly as you

18   possibly can and just continue to collaborate with the

19   plaintiffs on what we are collecting from.

20             We won't be able to say in seven days some component's

21   complete because it is just too hard.  But I think we could

22   probably do -- there are a lot of departments that are going to

23   need to be touched and have those employees pull these things

24   down.  So I think we can get on that rapidly.

25             Is next Thursday Thanksgiving?

```
 1              MR. FERNANDEZ:  It is the week after.

 2              MR. ROBERTS:  I'm sorry.  All right.  It's coming.

 3         I would just say give us the benefit of working in

 4    good faith as rapidly as possible to push out content as

 5    rapidly as possible and to stay in a dialogue with the

 6    plaintiffs on what their experts need the most and what we can

 7    target with them the most, and we'll make it a collaborative

 8    project.

 9              THE COURT:  I mean --

10              MS. RODRIGUEZ:  And to Ms. Fehretdinov's -- I'm sorry.

11              THE COURT:  When we had this hearing we talked about

12    narrowing the terms.  It was weeks ago, and here we are.  We

13    are talking we don't have time or we are getting close to the

14    deadline with a matter that we talked about weeks ago.

15         It doesn't seem like good faith when the court hears

16    that now, OK, now that you're really ordering this, now I am

17    going to start.  It doesn't sound like good faith.  I really

18    need to get at least some definitive answer from you on when

19    some documents can start the process and not just in good

20    faith.

21              MR. ROBERTS:  We can start documents over the fence

22    next week.  By this time next week we will be moving documents

23    over the fence on a rolling production as fast as we can.

24         The irony is I think the documents we could just come

25    to the court and say, look, we produced 10,000 documents may
```

1   not be the most helpful ones for their expert witness.  So what

2   we're just throwing out there is just talk to us and tell us

3   what's the most important to you soonest, we will put those at

4   the front of the queue.

5        Some of these things we'll do on a parallel track,

6   like having the city employees pull things down out of the

7   databases.  We don't have to wait for that to start the review

8   of the emails, for example, right.  We can walk and chew gum at

9   the same time.

10        So a lot of these things will be going over the fence,

11   but I'm just saying as a practical matter we can start getting

12   things out by next week.  I'm just inviting the plaintiffs to

13   help us prioritize things that will be the most important to

14   them soonest, and we can work with them on that as well.

15        THE COURT:  OK.  Plaintiff.

16        MS. FEHRETDINOV:  Your Honor, actually, we have worked

17   on this issue, I believe Mr. Koslowe has worked on this issue

18   in the past.  The structure documents could be out the door, he

19   was saying based on past practice, within just a couple of

20   days.

21        MR. KOSLOWE:  This is what I would say, right, and

22   your Honor noted there's 24, 25,000 documents that we know

23   exist.  They are sitting on the review platform.  They can

24   apply, as Mr. Roberts detailed for your Honor, they can apply a

25   limiting search to that.  It is called pot, potential,

```
 1      privilege.  They identify lawyer email names, lawyer names, and
 2      they pull those documents out.  Take as long as they want with
 3      that.  Take as long as they want with that.
 4           So let's assume out of those 24,000, let's assume 20
 5      percent are lawyer emails.  OK.  They pull that out.  Let's
 6      just assume.  Take the time they want to review if those are
 7      actually privileged.  Everything else can go out the door
 8      tomorrow.  Pot priv, a pot priv search, takes an hour to run.
 9      An hour to run.  They could send all those documents out the
10      door.  They could start processing that out the door tomorrow.
11           Everything else they need to search, they have to go
12      back to the department of X, department of Y.  Take seven days,
13      take ten days to get that stuff over the fence.  Otherwise I
14      don't really understand how we are going to get this done in
15      time for the court's deadline.
16           THE COURT:  If you put in the attorney's names and you
17      included that group of documents and you send the rest to the
18      plaintiff right away, why doesn't that (inaudible).
19           MR. ROBERTS:  Because, your Honor, we have never
20      gotten to a point in discovery where a party has to, one, not
21      even know what it is producing.  That would be the consequence
22      of your order.
23           THE COURT:  But you know you are not producing
24      anything that is privileged because there is no mention of the
25      attorneys' names in there.
```

1           MR. ROBERTS:  Well, we don't know that.  There is just

2      the first screen of that.

3           Respectfully, we know how to do this in a hurry.  All

4      right.  We can get this done.  That solution is not the answer.

5      We are not at a place in federal discovery where a court would

6      order a party to produce, just to produce things that hit on a

7      search term that aren't responsive.

8           This is a little bit of handwringing on how fast we

9      can get this done.  That is a bridge too far, I suggest, and it

10     is unnecessary.

11          They have always proposed this.  I don't think -- I

12     suspect their clients would not be happy if we just said just

13     deliver all of your emails and we'll sort through them and find

14     the good stuff, right.  I don't think they would, in a moment

15     of reflection, they would ever agree to that.  It is not really

16     reasonable to ask a party like the city to produce without even

17     knowing what is being produced.  A party has a right to

18     understand what is being produced and to be self-aware of its

19     production.

20          We can get things moving fast, and that is the issue,

21     is get it in a hurry and get the responsive stuff out first.  I

22     am representing to the court that with a little dialogue with

23     the plaintiffs we can do that.  We can get --

24          THE COURT:  We are having a dialogue now and I am

25     hoping we can resolve it now.

```
 1              MR. ROBERTS:  Yes.

 2              THE COURT:  So you don't have to come back.

 3              MR. ROBERTS:  Yes.  We know our data.

 4              THE COURT:  (Inaudible) can you dialogue this right

 5    now?

 6              MR. ROBERTS:  Actually, we do pretty well, actually.

 7    I mean, I know it doesn't always reflect that at hearings, but

 8    we do pretty well.

 9              Give us a chance to address their concerns for

10    timeliness and responsiveness and let us do our thing, and I

11    think we can get them to where they all need to be without --

12              THE COURT:  By what deadline?

13              MR. ROBERTS:  Well, we are going to start moving

14    things out.  They are going to start having documents, roll

15    over the fence, by early next week, I would say.  We could get

16    some things out early next week.

17              MS. RODRIGUEZ:  We already have a hearing before your

18    Honor on Monday afternoon, and perhaps at that point we could

19    provide a status report.

20              MR. ROBERTS:  That would be great.

21              MS. RODRIGUEZ:  And use the ensuing few days to work

22    with the plaintiffs to prioritize and we can report where we

23    are and have a plan.

24              MR. FERNANDEZ:  Veterans Day is Friday, and that is

25    only a problem for me because the city's closed and the
```

1   individuals in these departments aren't going to be there for

2   me to go talk to them and grab some of these documents, and

3   then you have Thanksgiving coming up.  It is just a logistical

4   issue.

5          When it comes to emails, we will put as many reviewers

6   as we can afford on there.  I just have certain hurdles I have

7   to go through.  It is not as easy as the plaintiffs speak to

8   it.  It is not that easy.  We will be working as fast as we

9   can.

10          THE COURT:  I am not saying it is.  I am just trying

11  to find a way to resolve it today so that there is an

12  expectation that by next week you're getting the documents and

13  by the week after you've gotten everything that there is.

14          MR. ROBERTS:  I would say to the plaintiffs, if their

15  search terms -- because the third RFP is as broad as the first

16  one was.  I would say if they are proposing search terms for

17  that now, so we are not over here during Christmas trying to

18  figure this out.  Because apparently they said the second RFP

19  was narrowed to the comparators.  Then they said it wasn't.

20  Now the third RFP is.  I'm not sure which one they really want

21  to go with.  So I am just trying to be efficient with

22  everyone's time.

23          MS. FEHRETDINOV:  I think your Honor's proposal is a

24  great one, which is that by next week, middle of next week,

25  they get us the low-hanging fruit, like he said, the few

1    thousand documents, the ones that are easiest to get, and then

2    the production is finished by the week after.  So it is giving

3    them the two weeks that he wanted.

4            We were here in August and then in September, and I

5    just don't want to come back.  So if we don't get a firm

6    deadline, then this whole, hey, let's meet and confer amongst

7    ourselves, it simply leads to delays that, frankly, now we

8    don't have time.

9            We will work with them on the additional comparators,

10   but in the meantime if we could have those two deadlines set,

11   that would be very useful.  Then as well, I think

12   Ms. Rodriguez's suggestion is wonderful on Monday to provide us

13   a status update of what they have already produced so far.

14           MR. ROBERTS:  I would just ask if the court wait until

15   the status hearing by next week to throw down a drop-dead

16   deadline, right.  It tends to create a bunch of drama.  An

17   order has a great amount of dignity.  When you can't put a

18   moonshot together in a week, and we could not -- NASA couldn't

19   put a moonshot together in a week, but I think we could make a

20   pretty good dent in it.  It just creates a lot of, actually,

21   unproductive and dislocation things if there is just some

22   artificial deadline there.

23           I understand the plaintiffs need to have some line in

24   the sand where they go, this is it, the court said this, we get

25   it, but we are reading the tea leaves.  We understand the

1   interest you have in getting this complete.

2          So I would say let's just take steps at a time.  Let's

3   say by next coming week we will anticipate retrieving the

4   low-hanging fruit from the fixed databases of the city

5   departments and we will put at the top of the cue whatever

6   Mr. Koslowe and Ms. Fehretdinov, in terms of their search

7   terms, want us to get through first.

8          Then typically by then we will be in a place to say

9   this particular methodology is generating the most relevant

10  things and we are going to focus in on it first.

11         I would say that is really going to be all that is

12  necessary at this point in time without the plaintiffs having

13  to reserve all their rights to come back to you if they don't

14  think we are getting things to them in a responsive way.

15         That would be my suggestion, is let's just get through

16  the first week, let the plaintiffs report to you on how we're

17  doing and our responsiveness and any other measures that you

18  may need to take at that point.

19         Also at that point, I will be in a better position to

20  give you some more accurate metrics that I am not just guessing

21  about.

22         THE COURT:  By Monday or a week from Monday?

23         MR. ROBERTS:  Let's shoot for -- a calendar week would

24  be the bomb.  A calendar week would be the bomb.

25         THE COURT:  Next Wednesday, correct?

```
 1              MR. ROBERTS:  Yes.

 2              THE COURT:  A status will be sent to me by email on

 3     Wednesday of next week --

 4              MR. ROBERTS:  OK.

 5              THE COURT:  -- regarding the production of what's been

 6     produced and how long (inaudible) left.

 7              MR. ROBERTS:  Perfect.  Yes.  We should have a lot to

 8     tell you by then.

 9              THE COURT:  OK.  But you're shooting for at least

10     having it done, all done within two weeks, but you're going to

11     be able to tell me after the first week what is left.

12              MR. ROBERTS:  That is a good way to put it.  That is a

13     great way to put it.

14              THE COURT:  All right.  All right.  But then let me

15     ask you this, plaintiff.  We are looking at actually doing

16     physical inspections as well?

17              MS. FEHRETDINOV:  The idea is that if Ms. Rodriguez is

18     going to withdraw her physical inspections and say that that

19     testimony cannot be used, then we will do the same.  We would

20     stipulate.  However, the city has requested inspections.  So if

21     that is going to be evidence that they are going to be using

22     against us, then we would need to also have that with the

23     comparators.

24              MS. RODRIGUEZ:  The two things have nothing to do with

25     each other.  The plaintiffs have put their property at issue.
```

1    The comparators are strangers to this case.  The plaintiff is

2    trying to claim that whatever was done a year or two ago with

3    regard to those comparators, or even before that -- I don't

4    know what their theory is -- has something to do with how the

5    city treated the plaintiff.  Going into those properties today

6    isn't going to prove anything about a violation.

7          The reason that I had requested an inspection of the

8    plaintiffs' property is, number one, they had put it at issue

9    in this case by filing the lawsuit; number two, their expert

10   said in his report that he had physically visited the property.

11         My expert had not had an opportunity to visit the

12   property.  All I want is for my expert -- it is not going to be

13   anything destructive or anything like that.  The reason why I

14   have asked for an inspection is so that Ms. Fehretdinov cannot

15   later say that my expert lacked some kind of competence by not

16   having physically been to the property like their expert.

17         So I am just asking for equal treatment with their

18   expert.  Nothing more, nothing less.  Just so that he can go

19   and get a sense.

20         Obviously, they already have studied the floor plans,

21   the diagrams, the plans, everything that is documentary, and so

22   because of the fact that plaintiffs' expert has been to the

23   property, his own client's property, we just want the same

24   look.

25         So the reason why we would ask to visit the

1    properties -- well, first, we object to them bringing in the

2    third-party inspection because it is not going to show anything

3    about alleged former violations, and we are not going into

4    their property now, to plaintiffs' property, to look for any

5    violation at all.  I mean, that is the job of code enforcement.

6    This is purely to get a sense of the space and match it with

7    the diagrams, the same as their expert did.  Nothing more.

8           THE COURT:  OK.  All right.  Because it was curious

9    that you wanted to inspect the plaintiffs' property when

10   certainly (inaudible) plaintiffs' property is open for

11   inspection at all times.

12          MS. RODRIGUEZ:  Well, we can't just walk in there as a

13   party because of the discovery process.  We would, but we like

14   to be up front and let people know, especially with the kinds

15   of accusations that have been leveled against the city.

16          THE COURT:  OK.  You're talking about bringing your

17   expert in.  OK.  At any rate, with respect to an expert going

18   into these other properties, that is the subject of this other

19   motion that the attorneys have filed on behalf of the third

20   parties anyway.  So we will be discussing that on Monday.

21   Perhaps we don't need to discuss it right now.  We are just

22   going -- now that we just finished talking about the actual

23   paper discovery from those third parties, we are done with that

24   for today.

25          Does that make sense, plaintiff, as a way to order

1   that?

2        MS. FEHRETDINOV:  That does, your Honor.  I think that

3   leads us to just the last issue --

4        MS. RODRIGUEZ:  Sorry.  Before Ms. Fehretdinov jumps

5   to the next issue, I just would like to clarify that by your

6   Honor saying we will look at this on Monday, does that mean

7   that the inspections that the plaintiffs scheduled for tomorrow

8   will be deferred until your Honor has a chance to consider the

9   pending third-party objections?  Because they are scheduled for

10  tomorrow and Friday.

11       MS. FEHRETDINOV:  Of course.  Of course.  We always

12  will defer to the court.  We would never do anything otherwise.

13  Of course.

14       THE COURT:  Yes.  So the pending motion, there will be

15  no inspections until I've had an opportunity to hear from those

16  third parties, their attorneys, and then the inspections, if

17  they are going to happen, will happen after that.

18       MS. FEHRETDINOV:  OK.

19       THE COURT:  Is that where we are?

20       MS. FEHRETDINOV:  We finished with all of them except

21  for the last one, which we just need ten interrogatories

22  related to the amended complaint.  Ms. Lopez can address that.

23  I think we will be done with the plaintiffs' issues, luckily.

24  I appreciate all the time you've spent.

25       MS. LOPEZ:  Good afternoon, your Honor.  So as

1   Ms. Fehretdinov said, the city has now objected or the

2   plaintiffs actually requested from the city to allow them to

3   serve just a mere additional ten interrogatories strictly

4   related to those comparators that we have been talking about

5   all day and that you understand now the relevance and why they

6   are now at issue.

7          I can take you through the history, but I know we are

8   short on time.  I know we have been here for a while.

9          If you recall, the first interrogatories we served in

10  this case were back in July.  We came before your Honor, and

11  the day of the hearing the city decided to serve -- take back

12  their objections as to the limit, the 25 interrogatory limit of

13  the interrogatories pursuant to the federal rules and sort of

14  say, OK, well, let's work through them, let's see if the

15  subparts are related, and then let's figure out a way to get

16  you responses to these interrogatories.

17         I actually think as to all the discovery disputes we

18  have had the interrogatories were actually working pretty well.

19  We have gotten actually some really useful information.  From

20  the responses they got us from the first RFPs, we were able to

21  draft a lot of our allegations for the amended complaint.

22         So we have been able to narrowly tailor the questions

23  that we need and we have been able to get some information

24  that, frankly, only the city has and that is not as useful to

25  obtain just through the RFPs.

1            As Mr. Fernandez admitted earlier, it is harder to go

2       through all these documents sort of on these comparators and

3       try to find exactly what it is we need when we have been able

4       to draft these ten interrogatories, which I can show you in a

5       minute, that go directly as to the issues that we need for the

6       comparators and to prove our equal protection claim, which

7       Judge Altman has been very adamant about.

8            So I will show you the ten interrogatories right now.

9            THE COURT:  OK.  While you are doing that, let me hear

10      from the defendants as to why you have any objections to these

11      interrogatories.

12           MR. FERNANDEZ:  Judge, there are a lot of issues

13      behind each interrogatory.  So yes, the first set of

14      interrogatories were extremely overbroad and they served

15      amended ones, which we were able to work through.

16           So they served a total of 25 interrogatories, which is

17      the limit under the rules, that limit is presumptively

18      reasonable under the rules.  They have to show good cause to

19      get more than 25 interrogatories.

20           They have served an additional ten interrogatories,

21      but they are not just ten.  They are actually more than just

22      ten.  They basically for each interrogatory go through each of

23      their addendums, which is A through G.

24           So B has 20 establishments that they list.  They want

25      information on each one of those 20 establishments.  Addendum C

1    has 86 establishments.  They want information for each one of

2    those individual establishments.  Addendum D has 26

3    establishments.  That is interrogatory 6.  They want

4    information on each one of those.  No. 7 is addendum F.  That

5    is 36 establishments.  No. 8, addendum F again -- sorry, the

6    first one was addendum B.  Then F has 12.

7        When you get to No. 9, they want information for

8    addendum G that has 305 businesses.  They want information for

9    each one of those 305.  Then No. 10 they want unsafe structure

10   violations issued to any business in the city.

11       A lot of these interrogatories -- first of all, one,

12   their equal protection claim has been pending since they filed

13   this complaint.  They have had ample opportunity, especially

14   now late in the game, to get this information.

15       Based on their addendums, that are very thorough, they

16   list a bunch of, what is it, 591, I believe, establishments,

17   they have this information.  First of all, it is unduly

18   burdensome absolutely on its face.  I don't think it is

19   necessary.  We are in this late of a game, close to the end of

20   discovery, it is just going to be another fight with these

21   interrogatories, and they are over the 25.

22       They already served them, by the way, too.  They

23   served them last week.  So my clock is already ticking.  So

24   they didn't ask for leave; they just served them on us.

25           THE COURT:  OK.

```
 1              MR. FERNANDEZ:  That is kind of where we are.

 2              MS. RODRIGUEZ:  And they had three years to put this

 3   case together.  They bombarded the city with public records

 4   requests.  They should have done their due diligence on the

 5   comparators before they ever even filed the complaint.  That we

 6   are here now with these interrogatories for all these

 7   businesses, that they suddenly added at the last minute as

 8   alleged comparators, most are not even on Eighth Street, not

 9   even Little Havana, not even District 3, is -- we are not ready

10   to argue relevance, but just the mere need for these is

11   completely beyond the pale.

12              MR. FERNANDEZ:  And some of this information were in

13   the first set of interrogatories.  They wanted an audit to

14   private providers.  That is No. 6 in the new one, that we gave

15   them information.  No. 9, 10, 11, the last one.  Unsafe

16   structure violations for three businesses.  We gave them the

17   No. 8.  That is No. 10.  Now they want more than that.

18              No. 6 and 7 dealt with CUs and certificate of

19   occupancy revokes, and that is a new request in this one.  They

20   are duplicative and they seem harassing and they are definitely

21   not drafted in good faith.

22              THE COURT:  Under that framework, let me hear from

23   defendants.  Go ahead, Ms. Lopez.

24              MS. LOPEZ:  Your Honor, if the issue is about the

25   narrowing of the interrogatories or what exactly is the
```

1    information that we need, the city knows that we have been

2    doing this back and forth in good faith and we have been able

3    to narrow the issues.  So if that is going to be the issue,

4    then just file the objections on that basis and we're willing

5    to work through these issues with the city.

6            Frankly, to now say that we have three years to

7    prosecute this claim --

8            THE COURT:  I don't really want to go to that length.

9            MS. LOPEZ:  I understand, your Honor.

10           What I am trying to say is that Judge Altman ordered

11   us -- we believe that we had already met the pleading standard

12   and that we already had sufficient evidence to show that we

13   have been treated unfairly (inaudible).

14           Judge Altman said that that was not the case.  We need

15   the specifics.  They are not going to provide us with this

16   information.  Then we are going to go into the summary judgment

17   stage and then they are going to file a summary judgment motion

18   stating that we didn't provide the information.

19           THE COURT:  OK.  This is in response to Judge Altman's

20   request for more detailed information regarding these

21   comparators.

22           MS. LOPEZ:  Correct.

23           MS. RODRIGUEZ:  Your Honor, we will be filing our

24   motion to dismiss in the coming days.  As I said, it is one

25   thing to talk about the seven or eight that they have

1    pinpointed now for this inspection that they want to do or the

2    document request, but they have now expanded this way beyond

3    that, and we still believe that it is excessive for them to

4    propound all these interrogatories on us at this point in time

5    with something that they should have been already dealing with.

6    But comparing the seven or eight to the 80 or the hundred or

7    the 300 other establishments that they listed in various other

8    exhibits, it is completely out of control.

9          THE COURT:  OK.  (Inaudible) has had the opportunity

10   to walk me through these interrogatories.  I have heard the

11   city's concerns, but I am ready to hear from the plaintiff.

12         Go ahead, Ms. Lopez.

13         MS. LOPEZ:  Your Honor, I'm sorry I don't have the

14   specific cites on this because I wasn't prepared for the

15   argument on the subparts and how they're related to each other.

16         In my July hearing -- where the city already had

17   admitted, OK, well, we are no longer going to make that

18   challenge to the interrogatories, let's just work through them.

19   So I thought we wouldn't be raising these issues now.

20         I would point you to the case of -- I have two cases

21   to point your Honor to.  It is a 2013 WL 546581, and that is

22   Brennan v. GEICO.

23         THE COURT:  Sorry.  Can you say the name of the case

24   again, please.  I couldn't understand you.

25         MS. LOPEZ:  Brennan v. GEICO.

1       There the parties had asked for 31 additional

2   interrogatories, and the court said that under the standard --

3   which it should only be limited to 25 -- if it is unreasonably

4   cumulative or duplicative and the party seeking discovery has

5   had ample opportunity to obtain the information or if the

6   burden or expense of the proposed discovery outweighs the

7   likely benefit, there the court found because they have filed a

8   second amended complaint -- a second amended complaint -- based

9   on new claims and theories there was good cause to allow leave

10  to file 31 excessive interrogatories.

11      Here, I am not even going into the details as to why

12  it is not even ten, it is more like six of them, because the

13  city, in bad faith, respectfully, has tried to sort of make us

14  break up more of the interrogatories that we had originally

15  served, and then even some that we tried to withdraw, they

16  would serve objections and say, we're not allowing you to

17  withdraw that.  So it seems that they are very, very focused on

18  this 25 limit when we are just trying to get necessary

19  information or our complaint.

20      So, for example, your Honor, I will give you an

21  example on the ones that are served, some of which fall into

22  the category of, for example, No. 5.

23      We believe, and the evidence so far has stated, that

24  there have been no other identical restaurants with the same

25  liquor license that Taquerias has that has come through an

1    in-house.  So the city conducted 51 percent rule audit, which

2    your Honor is familiar from the complaint what that is all

3    about.

4         The answer to this interrogatory would probably be

5    none.  So that would be some of the ones that are just easy,

6    low-hanging fruit that they can respond to very easily.

7         For example, the other ones that Mr. Fernandez talks

8    about as them being cumulative -- sorry.

9         MS. FEHRETDINOV:  The answer is none as well.

10        MS. LOPEZ:  For example, on No. 6, they did provide us

11   in addendum D showing us that all of the projects that our

12   private provider had been involved with.  So what we don't get

13   from the list that they provided us is, well, what was the

14   reason why only the two Fuller properties were audited as to

15   the private provider work.

16        So the only way that we are able to tell if we have an

17   equal protection claim as to the audit of the private provider

18   is if we have the information surrounding the other projects.

19   The most basic information, what was that about; was there was

20   work without a permit; was it something related to us that we

21   are able to tell, OK, these are similarly situated and we are

22   able to present to Judge Altman more specifics on those claims.

23        THE COURT:  I hear you.

24        MR. FERNANDEZ:  Judge, if I can.

25        THE COURT:  I need to hear from Ms. Lopez.  I think it

```
 1    is her turn.

 2            MS. LOPEZ:  I am happy to go through each one of these

 3    with Mr. Fernandez, which we have done in the past, and narrow

 4    them or make them more concise or more tailored to exactly what

 5    it is that we need, which we believe we have done so far, but

 6    if Mr. Fernandez needs more explanation, and then to work back

 7    and forth on those issues, that is fine.

 8            What I don't think is fair as to the burden that we

 9    have to meet on our equal protection claim is not having this

10    information either through the production or through the

11    interrogatories.  There has to be a way for us to get this

12    information, which we are trying to fire off on all ends,

13    because we are getting stonewalled.

14            THE COURT:  All right.  Thank you.

15            Ms. Lopez, can I see the second page.  There are two

16    more, I'm assuming.

17            MS. LOPEZ:  Yes, your Honor.  I'm sorry.

18            THE COURT:  All right.  So basically you're asking --

19    you have a list of questions that you want the city to look at

20    the range of properties and whether they comply or have

21    anything to produce in response to these ten questions.

22            The range of properties that they have to look at,

23    they are in the attachment to the amended complaint.  Do I

24    understand it correctly?

25            MS. LOPEZ:  Correct, your Honor, and specified by each
```

1      of them.

2              THE COURT:  OK.  All right.  So I think this is

3      information that the city should be able to readily produce

4      based on the information in their database.

5              I'm assuming the city is not working entirely in

6      archaic paper files.  They can simply do a search of their

7      records, a computer search, and determine whether they ever,

8      for instance, found that any of those businesses on that list

9      had a violation for those particular reasons.

10             Isn't that something pretty straightforward to do,

11     Mr. Fernandez?

12             MR. FERNANDEZ:  Your Honor, I would disagree because

13     you're talking about hundreds of businesses.  They didn't show

14     you the addendums which go through the interrogatories.

15             THE COURT:  Isn't this something that is in your

16     database?  This is not 100 files that have to be pulled out

17     manually and looked at.

18             MR. FERNANDEZ:  Well, I have to go through a period of

19     four years.  Just so the record is clear, they are accusing me

20     of acting in bad faith when I assert my objections.

21             THE COURT:  Mr. Fernandez, business X.  Any violations

22     of any kind for business X over the last four years.  How long

23     would it take to figure that out?

24             MR. FERNANDEZ:  I mean, I'd have to go through 305

25     businesses for No. 9.  I'd have to go through 86 for Nos. 4 and

1    5.  I'd have to go through over 500 businesses, and I don't

2    know --

3         MS. RODRIGUEZ:  It is not just a doc request.  They're

4    asking for explanations.

5         MR. FERNANDEZ:  Right.

6         MS. RODRIGUEZ:  The easy part is the list, your Honor.

7    The hard part is the 20 pages of definitions and instructions

8    that were not pointed out that now, unfortunately, accompany

9    interrogatories.

10        The method that we worked out in the prior

11   interrogatories, we were able to narrow that and get it out of

12   the way.  Of course, we are not here to argue the substance of

13   any objection we might have to interrogatories; it is just

14   whether they can serve them.

15        We haven't even had a chance to file objections to

16   them.  But obviously our point is that at this point in the

17   game they knew they were asserting an equal protection claim,

18   they knew the case law is that they had to assert comparators.

19   For some reason they chose not to on a complaint they filed two

20   years ago, and now they want to serve us with discovery that is

21   not even going to be complete after the motions to dismiss are

22   briefed again, and with regard to numerous establishments.

23        So the question really is should the city at this

24   point in time be put through this new burden that they are

25   bringing up on something they should have investigated when

```
1    they were formulating their claims.

2            MR. FERNANDEZ:  Which they claim the documents they

3    are going to receive in production will solve these issues

4    anyway.  It seems a little bit burdensome.  Not little.  It is

5    burdensome.  And we haven't even talked about my objections

6    yet.

7            MS. RODRIGUEZ:  By the way -- I'm sorry -- the case

8    that was cited with a new claim, the claim isn't new.  It's

9    been the same claim.  They just added entities they believe are

10   comparators, which we dispute, but it's always been the same

11   claim, equal protection, a class of one.  So there is no new

12   claim here to justify new discovery.  It is the same.

13           THE COURT:  OK.  So I think the plaintiffs are simply

14   trying to comply with the judge's requirement that they be

15   specific about the comparators and are trying to narrow down

16   those specific names.

17           While I understand the city's argument that the

18   argument has always been equal protection, they have to get the

19   specific information of which of the entities are the exact

20   comparators and for what points they're addressing.

21           At some point this information has to be obtained.  It

22   is still fairly early in the case since we are still talking

23   about amended complaints and motions to dismiss.  So I do

24   believe that this additional information is relevant and

25   timely.  The question is, is it overly burdensome because of
```

1    the number of businesses involved.

2          I still believe this is information that is kept by

3    the city in the normal course of business on its database, and

4    these searches, if they are going to produce any information,

5    it should be fairly straightforward to produce.

6          So I think that the ten interrogatories appear on

7    their face to be excessive for the case.  They appear to be

8    relevant and appropriate to the needs of the plaintiff in

9    presenting their case.

10         MS. RODRIGUEZ:  Your Honor, with due respect, our

11   response to the interrogatories isn't even close to mature.

12   What we are discussing is whether they can serve it.  We would

13   request that your Honor at least give us the opportunity to

14   serve formal responses and objections.  We understand your

15   thinking, but we haven't even had the benefit of being able to

16   assert appropriate objections.  I respectfully suggest that to

17   prejudge that issue now would be premature.

18         MR. FERNANDEZ:  Judge, especially when the response is

19   going to require about 500 individual written responses to

20   these answers, which are incredible and overly broad.

21         I would just request the court -- we can live with

22   your order to allow the additional interrogatories, but any

23   rulings on any potential objections I don't think are ripe yet.

24         THE COURT:  The interrogatories can be issued on their

25   face.  They seem to be appropriate to the case and relevant.

```
 1              When you have specific objections and you make them,
 2       then that is a separate issue.
 3              MR. FERNANDEZ:  OK.
 4              MS. RODRIGUEZ:  Thank you, your Honor.
 5              MR. FERNANDEZ:  Would those be served as of today?
 6       Because they served them before they sought leave from the
 7       court.
 8              THE COURT:  They are served as of when they were
 9       served.
10              MR. FERNANDEZ:  OK.
11              THE COURT:  OK.  I think we got a lot done.
12       Two-and-a-half hours.  Not too bad for this case.  Keep moving.
13              I understand the attorneys are simply doing their job,
14       and I respect all of your arguments.  I am doing my best to
15       resolve them as quickly and as fairly as I can.
16              Thank you so much, everyone.
17              MS. RODRIGUEZ:  We appreciate, your Honor.  You are
18       helping us do our job and we know that you have been paying a
19       lot of attention and you are very well versed in the case.
20       Please do not mistake our ambitious advocacy for anything other
21       than appreciation for the process
22              THE COURT:  Thank you.
23              (Adjourned)
24
25
```

C E R T I F I C A T E

    I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

November 16, 2022      s/ Joanne Mancari
                         Joanne Mancari, RPR, CRR, CSR
                         Court Reporter
                         jemancari@gmail.com

MR. FERNANDEZ: [49] 32/7 41/22
42/17 43/11 43/14 44/15 45/10 45/12
45/18 49/3 49/20 50/10 50/14 56/18
57/15 58/24 59/19 60/24 61/1 61/15
61/18 62/4 66/4 69/12 70/1 70/4 72/5
72/22 72/25 77/2 78/10 79/18 79/23 82/1
84/1 88/24 97/12 99/1 99/12 103/24
105/12 105/18 105/24 106/5 107/2
108/18 109/3 109/5 109/10
MR. KOSLOWE: [21] 31/24 32/16
33/13 39/3 39/9 39/25 40/6 44/19 47/6
48/13 48/21 48/25 49/8 51/8 54/21 55/24
56/4 56/17 56/25 58/1 85/21
MR. ROBERTS: [36] 32/12 32/15 52/19
53/6 54/9 63/17 63/19 65/11 65/15 65/19
73/1 74/10 74/13 75/2 75/23 76/7 76/20
79/25 81/3 83/15 84/2 84/21 86/19 87/1
88/1 88/3 88/6 88/13 88/20 89/14 90/14
91/23 92/1 92/4 92/7 92/12
MR. STOLOW: [2] 3/17 32/13
MS. FEHRETDINOV: [33] 3/8 5/22 6/4
6/9 6/23 19/19 25/14 28/6 30/7 30/10
30/24 59/24 60/25 61/12 62/13 65/14
66/22 69/8 70/16 73/6 77/11 78/14 80/10
81/2 82/10 85/16 89/23 92/17 95/2 95/11
95/18 95/20 103/9
MS. LOPEZ: [10] 95/25 99/24 100/9
100/22 101/13 101/25 103/10 104/2
104/17 104/25
MS. RODRIGUEZ: [32] 3/14 4/10 14/4
17/24 18/4 18/12 19/1 25/22 26/22 27/7
27/18 27/20 46/12 69/13 70/2 73/21 79/4
81/17 84/10 88/17 88/21 92/24 94/12
95/4 99/2 100/23 106/3 106/6 107/7
108/10 109/4 109/17
THE COURT: [120]

**$**

$1,000 [1] 46/1
$5,000 [1] 46/2

**1**

10 [3] 98/9 99/15 99/17
10,000 [1] 84/25
100 [1] 105/16
102 [1] 23/8
109 [1] 1/7
10th [1] 59/17
11 [1] 99/15
11th [2] 15/23 59/17
12 [2] 26/7 98/6
1298 [1] 15/23
14th [2] 9/21 82/23
150 [1] 1/15
16 [1] 110/8
17 [1] 8/14
1700 [2] 64/20 65/23
18 [1] 7/7
1800 [1] 2/11
18th [1] 73/13
19 [1] 51/11
191 [1] 62/22
1983 [3] 20/20 21/13 21/15

**2**

2,000 [2] 28/13 40/24
20 [4] 86/4 97/24 97/25 106/7
2006 [1] 20/18
2013 [1] 101/21

2015 [1] 15/23
2021 [2] 1/2 1/10
2022 [3] 1/5 6/15 110/8
20th [1] 8/8
21-CV-23485-RKA [1] 1/2
23rd [6] 73/6 73/15 78/5 78/6 81/24
82/22
24 [3] 65/18 71/11 85/22
24,000 [8] 63/23 65/5 65/9 66/18 67/19
72/20 80/22 86/4
24,375 [1] 64/20
24375 [1] 65/23
24th [1] 82/3
25 [8] 65/6 75/16 96/12 97/16 97/19
98/21 102/3 102/18
25,000 [3] 65/18 71/11 85/22
26 [6] 9/3 46/11 51/7 51/15 58/14 98/2
26,000 [1] 75/16
27 [2] 6/15 68/7
27,000 [3] 76/9 76/13 76/14
27th [7] 8/9 8/11 14/5 25/15 29/3 73/14
78/4
29 [1] 6/25
2nd [10] 2/10 42/6 61/13 61/19 62/5
63/11 67/25 73/17 77/17 82/4

**3**

30 [1] 78/15
30-day [1] 78/23
300 [2] 41/3 101/7
305 [6] 1/16 2/6 2/11 98/8 98/9 105/24
31 [2] 102/1 102/10
32 [1] 35/3
33130 [2] 1/16 2/10
33131 [1] 2/5
34 [2] 22/19 51/15
347-5913 [1] 2/6
3593 [1] 1/16
36 [1] 98/5
39 [1] 62/22
3rd [1] 43/22

**4**

40,000 [1] 63/16
416-1800 [1] 2/11
42 [3] 9/19 10/1 24/12
444 [1] 2/10
45 [7] 4/12 32/10 32/19 33/19 33/24
34/3 49/16
48 [2] 80/22 80/23

**5**

50 [1] 41/3
500 [2] 106/1 108/19
51 [1] 103/1
5285093 [1] 12/9
546581 [1] 101/21
57 [2] 40/1 40/1
5800 [1] 62/18
591 [1] 98/16
5913 [1] 2/6

**6**

6,000 [5] 60/8 62/18 63/8 67/3 67/20
60 [1] 54/24
65 [1] 33/13

**7**

789-3593 [1] 1/16

**8**

80 [2] 23/6 101/6
80,000 [2] 63/7 65/17
803 [1] 15/23
84,000 [1] 67/2
8431633 [1] 20/18
86 [4] 79/5 79/11 98/1 105/25

**9**

90 [1] 54/24
92 [1] 7/12

**A**

ability [3] 18/13 18/14 110/5
able [24] 6/21 29/8 30/13 43/8 47/15
54/20 61/8 62/11 80/4 82/15 83/20 92/11
96/20 96/22 96/23 97/3 97/15 100/2
103/16 103/21 103/22 105/3 106/11
108/15
about [102] 6/6 6/7 7/6 7/6 7/24 9/20
10/4 12/12 13/9 14/23 17/7 17/10 19/1
19/21 21/10 21/11 23/1 23/3 23/10 23/21
23/22 24/2 24/4 24/17 26/10 28/1 32/10
33/2 33/11 35/19 35/21 35/25 36/4 39/15
39/18 40/24 43/5 43/21 45/13 46/1 46/2
46/3 46/17 46/19 46/20 46/22 48/7 50/3
50/13 53/13 54/11 54/16 54/19 54/22
57/25 58/9 59/4 59/18 61/19 61/19 63/6
63/8 63/14 63/23 64/11 65/18 65/23 66/9
66/9 66/16 67/13 68/17 71/11 74/3 74/7
75/4 75/7 75/16 79/4 79/5 79/16 79/19
80/1 84/11 84/14 91/21 93/6 94/3 94/16
94/22 96/4 97/7 99/24 100/25 103/3
103/8 103/19 105/13 107/5 107/15
107/23 108/19
above [1] 110/6
above-entitled [1] 110/6
absolutely [3] 27/15 29/1 98/18
abstract [1] 26/3
accessed [1] 74/23
accompany [1] 106/8
according [1] 11/14
account [2] 22/12 80/17
accurate [6] 64/15 68/1 75/13 80/4 91/20
110/4
accusations [1] 94/15
accusing [1] 105/19
acting [2] 10/7 105/20
action [7] 4/25 5/1 5/3 16/5 19/16 20/20
21/15
actionable [1] 19/15
actions [6] 14/9 14/12 17/8 17/21 18/1
24/20
actively [1] 30/1
activity [1] 19/6
acts [1] 10/3
actual [7] 20/21 21/18 23/21 38/7 38/22
41/17 94/22
actually [33] 9/9 12/17 17/11 22/5 29/22
30/24 35/9 36/7 45/5 47/7 47/21 49/2
50/12 59/12 59/20 60/9 64/4 64/14 64/24
72/1 82/21 83/12 85/16 86/7 88/6 88/6
90/20 92/15 96/2 96/17 96/18 96/19
97/21
adamant [1] 97/7
add [3] 46/12 52/17 52/19
added [3] 4/6 99/7 107/9
addendum [9] 60/18 63/13 97/25 98/2
98/4 98/5 98/6 98/8 103/11
addendums [3] 97/23 98/15 105/14

**A**

addition [2] 4/15 5/6
additional [13] 6/25 14/15 25/23 30/4 42/10 54/1 78/21 90/9 96/3 97/20 102/1 107/24 108/22
address [12] 17/25 20/14 27/8 31/5 31/20 58/22 58/23 64/9 64/10 74/23 88/9 95/22
addressed [2] 32/4 52/14
addresses [3] 21/3 54/13 62/22
addressing [1] 107/20
Adele [2] 35/20 35/20
Adjourned [1] 109/23
administrative [1] 16/17
admitted [2] 97/1 101/17
adopt [1] 19/6
advance [3] 17/13 17/14 26/17
advanced [1] 65/16
advocacy [1] 109/20
affect [1] 81/19
affected [1] 19/7
affidavit [2] 33/7 33/17
affidavits [2] 34/2 51/6
affirmed [2] 32/24 38/2
affirming [2] 38/13 58/5
afford [1] 89/6
after [15] 7/23 8/8 15/21 35/18 35/24 40/3 40/6 47/17 80/11 84/1 89/13 90/2 92/11 95/17 106/21
afternoon [6] 3/3 3/8 3/17 41/22 88/18 95/25
again [20] 15/18 16/19 16/23 17/3 19/9 19/10 22/16 33/22 38/15 41/9 47/3 50/24 53/12 55/15 64/21 65/7 68/17 98/5 101/24 106/22
against [11] 12/25 13/6 17/3 19/25 21/1 21/2 24/5 25/24 64/1 92/22 94/15
ago [11] 6/14 60/11 66/9 69/18 69/18 73/22 80/14 84/12 84/14 93/2 106/20
agree [4] 25/1 25/3 59/11 87/15
agreed [8] 8/7 38/8 38/25 40/17 40/17 58/19 62/2 81/21
agreement [3] 3/25 61/25
ahead [9] 9/2 18/10 27/19 32/14 44/16 45/10 72/25 99/23 101/12
al [1] 1/3
Alabama [1] 16/2
algorithm [2] 54/6 55/4
ALHADEFF [1] 1/15
all [102] 5/6 5/10 6/2 7/24 8/7 10/15 10/17 11/1 11/8 11/10 12/10 12/18 14/22 15/13 17/17 18/6 19/2 19/17 19/20 20/11 21/21 22/1 22/13 23/25 26/24 31/15 32/4 32/15 33/10 37/17 38/2 40/1 40/12 41/23 42/7 44/4 44/23 46/23 47/6 47/16 48/22 50/23 51/9 52/3 52/5 52/8 53/14 53/20 54/13 54/17 55/3 55/12 56/4 56/6 59/21 60/9 63/2 63/14 65/7 66/23 66/23 67/15 69/15 72/9 74/5 74/21 75/18 76/12 79/11 81/7 82/5 82/25 84/2 86/9 87/3 87/13 88/11 91/11 91/13 92/10 92/14 92/14 93/12 94/5 94/8 94/11 95/20 95/24 96/5 96/17 97/2 98/11 98/17 99/6 101/4 103/2 103/11 104/12 104/14 104/18 105/2 109/14
allegations [5] 14/15 67/16 77/5 78/7 96/21
allege [1] 66/5
alleged [5] 10/20 14/9 14/15 94/3 99/8
allotted [1] 28/18 29/5 30/9

**A**

allow [6] 13/19 34/3 81/18 96/2 102/9 102/23
allowed [1] 69/24
allowing [1] 102/16
alluded [1] 83/3
almost [2] 59/15 65/6
along [4] 10/17 32/18 54/16 80/4
already [34] 4/9 5/2 7/10 12/2 17/1 22/2 37/11 40/16 40/17 45/3 49/21 60/15 61/25 65/16 68/9 68/10 71/25 74/4 77/17 80/15 80/19 80/20 80/20 81/22 82/24 88/17 90/13 93/20 98/22 98/23 100/11 100/12 101/5 101/16
also [24] 3/17 4/6 5/18 9/3 10/5 14/13 15/2 15/22 20/17 24/6 24/10 25/7 25/23 26/16 29/17 30/21 37/22 55/20 58/16 69/3 71/17 78/4 91/19 92/22
alternative [2] 49/8 49/19
Altman [14] 9/18 19/22 24/11 25/12 26/5 32/24 38/2 42/9 67/13 68/7 97/7 100/10 100/14 103/22
Altman's [4] 7/14 38/13 58/4 100/19
always [7] 41/3 76/22 87/11 88/7 95/11 107/10 107/18
am [34] 3/4 3/9 3/25 5/21 23/12 25/10 26/24 27/17 32/2 32/17 32/19 35/7 37/8 49/9 58/4 61/5 65/19 66/5 69/11 82/6 82/8 84/16 87/22 87/24 89/10 89/10 89/21 91/20 93/17 100/10 101/11 102/11 104/2 109/14
ambit [1] 40/12
ambitious [1] 109/20
amenable [1] 30/19
amended [19] 17/20 26/25 27/9 29/10 60/15 60/17 63/9 63/11 67/17 68/17 68/23 77/12 95/22 96/21 97/15 102/8 102/8 104/23 107/23
Amendment [3] 15/24 16/18 43/16
among [2] 14/10 51/20
amongst [1] 6/18
amount [7] 27/22 28/4 46/1 63/15 67/14 75/6 90/17
ample [2] 98/13 102/5
Anderson [1] 21/9
animus [6] 10/5 10/21 19/24 19/24 20/22 21/11
another [7] 28/10 40/19 51/23 51/24 64/20 65/6 98/20
answer [11] 6/10 23/5 54/21 76/12 78/12 82/2 82/9 84/18 87/4 103/4 103/9
answers [3] 30/13 48/17 108/20
anticipate [1] 91/3
any [35] 4/17 5/3 7/16 8/15 10/14 11/25 23/15 24/18 28/22 36/4 37/4 43/9 43/21 43/21 43/24 44/25 46/7 46/15 50/4 50/4 62/16 71/2 72/2 91/17 94/4 94/17 97/10 98/10 105/8 105/21 105/22 106/13 108/4 108/22 108/23
anybody [5] 18/19 42/20 46/23 46/24 47/19
anybody's [1] 71/5
anything [19] 15/8 25/7 33/7 34/14 39/5 39/20 48/23 66/13 81/15 82/12 83/16 86/24 93/6 93/13 93/13 94/2 95/12 104/21 109/20
anyway [4] 11/18 56/6 94/20 107/4
anywhere [1] 79/2
apart [1] 15/5
apex [16] 4/5 5/13 5/13 6/2 7/6 8/19 8/20 9/4 11/13 11/15 14/1 14/23 17/18 18/15

**A**

18/20 24/14
apologize [1] 4/11
App [3] 32/18 48/14 51/22
apparently [1] 89/18
appeal [1] 43/2
appealed [3] 7/11 7/13 22/3
appear [3] 11/17 108/6 108/7
appearance [1] 3/6
APPEARANCES [2] 1/11 1/19
appearing [1] 31/7
appears [1] 35/4
applicable [1] 26/13
applied [6] 4/23 14/18 16/7 16/8 16/10 39/16
applies [1] 8/20
apply [6] 85/24 85/24
appreciate [8] 26/14 26/22 28/6 28/8 29/15 47/4 95/24 109/17
appreciation [1] 109/21
approach [1] 76/22
appropriate [6] 38/20 58/14 62/1 108/8 108/16 108/25
appropriately [1] 37/3
April [1] 41/25
apt [1] 41/15
archaic [1] 105/6
archive [1] 51/12
are [273]
aren't [5] 50/2 79/6 87/7 89/1
argue [2] 99/10 106/12
arguing [3] 16/21 61/19 62/6
argument [9] 6/5 13/12 13/18 19/10 66/21 70/12 101/15 107/17 107/18
arguments [2] 70/9 109/14
around [4] 22/20 22/21 40/2 79/12
articulating [1] 46/25
artificial [1] 90/22
as [136]
ask [26] 6/7 11/5 16/17 17/7 17/7 23/10 23/11 24/16 24/25 25/12 27/16 33/5 33/6 34/25 35/25 52/20 58/17 76/4 78/24 79/11 83/15 87/16 90/14 92/15 93/25 98/24
asked [17] 9/15 11/4 14/23 27/4 28/17 29/3 33/19 34/13 34/23 45/8 67/13 69/15 69/21 78/2 78/25 93/14 102/1
asking [10] 18/10 41/8 41/13 41/13 44/20 69/10 77/15 93/17 104/18 106/4
aspersions [2] 49/10 55/15
assert [3] 105/20 106/18 108/16
asserted [2] 4/16 15/4
asserting [4] 8/19 19/16 74/1 106/17
asserts [2] 12/16 12/21
assessment [1] 74/16
assistance [2] 23/25
associated [2] 46/5 54/3
assume [5] 3/19 26/7 86/4 86/4 86/6
assuming [4] 27/5 30/22 104/16 105/5
at [111]
attachment [2] 30/22 104/23
attachments [3] 67/6 67/8 67/9
attempting [1] 25/25
attention [3] 12/12 13/14 109/19
attest [2] 9/13 10/24
attorney [14] 2/9 5/14 8/12 11/9 17/12 20/9 23/2 23/4 27/21 35/20 44/4 44/7 49/7 68/25
attorney's [4] 3/16 23/2 23/23 86/16
attorney-client [1] 17/12
attorneys [2] 94/19 95/16 109/13

**A**

attorneys' [1] 86/25
audio [2] 1/9 110/5
audit [3] 99/13 103/1 103/17
audited [1] 103/14
August [2] 8/2 90/4
authority [2] 11/25 21/24
authorized [1] 6/25
auto [1] 54/24
availability [1] 26/1
available [6] 25/11 30/15 48/1 69/24 71/21 81/23
Ave [1] 2/10
avenues [1] 71/18
avoid [2] 47/9 78/17
aware [6] 9/8 30/3 41/23 42/13 42/23 87/18
away [2] 80/24 86/18

**B**

back [42] 7/9 8/1 8/2 12/2 14/14 28/7 28/10 28/14 29/3 30/8 34/24 38/15 40/21 42/2 44/8 44/10 44/21 45/16 48/11 52/24 54/25 55/1 56/9 57/17 59/3 62/20 63/19 68/16 73/22 73/25 78/16 80/17 82/2 82/6 86/12 88/2 90/5 91/13 96/10 96/11 100/2 104/6
backtracked [1] 31/12
bad [3] 102/13 105/20 109/12
balanced [1] 47/4
Ball [1] 69/17
based [15] 10/2 10/5 14/9 26/24 37/15 37/16 38/13 40/22 41/14 55/13 67/4 85/19 98/15 102/8 105/4
bases [1] 7/16
basic [1] 103/19
basically [4] 4/5 73/3 97/22 104/18
basis [5] 21/16 70/23 73/15 77/23 100/4
be [175]
became [1] 42/23
because [95] 4/11 4/22 5/11 5/13 5/17 8/1 11/24 12/2 12/15 13/2 13/8 13/23 14/24 17/14 17/20 18/13 18/20 21/11 22/15 22/15 22/20 22/22 24/20 25/23 27/21 28/7 28/19 28/25 29/23 30/2 31/6 33/4 34/6 35/17 35/25 37/24 38/17 38/23 39/10 40/19 41/6 41/14 42/18 43/14 43/22 44/7 47/25 48/8 49/17 50/6 50/7 50/19 51/14 57/12 57/22 58/13 59/15 62/13 63/11 64/17 66/13 67/4 67/9 67/23 67/24 69/16 70/16 72/13 72/19 77/13 78/10 79/19 79/20 80/22 82/12 83/7 83/16 83/21 86/19 86/24 88/25 89/15 89/18 93/22 94/2 94/8 94/13 95/9 101/14 102/7 102/12 104/13 105/12 107/25 109/6
been [67] 5/10 7/21 10/3 11/10 11/20 12/10 14/8 15/11 17/23 22/23 22/25 24/23 25/16 25/22 25/24 28/11 28/13 28/16 28/20 30/5 30/13 30/19 31/3 31/8 31/25 32/9 36/23 38/4 39/16 40/20 46/25 47/14 51/11 51/16 54/11 60/25 61/13 61/13 62/2 62/11 62/19 65/16 67/23 68/10 71/12 92/5 93/16 93/22 94/15 96/4 96/8 96/22 96/23 97/3 97/7 98/12 100/1 100/2 100/13 101/5 102/24 103/12 107/9 107/10 107/18 109/18
before [25] 1/10 4/9 8/2 8/21 14/5 15/13 15/14 27/10 39/22 51/4 53/24 57/20 60/15 67/2 74/2 80/13 81/16 82/23 83/13

88/17 93/3 95/4 98/10 99/5 109/6
began [1] 43/17
behalf [10] 3/13 3/23 9/4 24/18 33/23 59/21 59/25 60/3 67/15 94/19
behind [1] 97/13
being [18] 14/4 15/25 22/23 29/13 29/25 31/2 35/22 39/10 39/17 39/19 42/13 64/19 71/17 73/25 87/17 87/18 103/8 108/15
believe [27] 4/25 8/16 29/5 29/8 29/17 29/20 29/21 30/4 30/7 40/8 45/25 46/14 50/23 53/12 62/18 68/1 68/2 83/12 85/17 98/16 100/11 101/3 102/23 104/5 107/9 107/24 108/2
believed [2] 33/1 47/14
believes [1] 61/6
belonged [1] 21/3
benefit [5] 15/22 55/18 84/3 102/7 108/15
Bentley [3] 15/23 25/6 26/13
best [7] 30/20 72/15 76/8 76/25 81/9 109/14 110/5
better [5] 61/3 67/22 80/2 80/3 91/19
between [4] 5/8 20/3 47/7 63/4
beverage [1] 16/23
beyond [2] 99/11 101/2
big [5] 19/23 19/23 75/10 77/1 81/8
Bill [1] 35/21
bipc.com [2] 2/6 2/7
birthday [1] 67/7
Biscayne [1] 2/5
bit [10] 10/12 11/9 12/18 12/20 31/16 57/7 72/18 74/25 87/8 107/4
blame [1] 37/4
blaming [1] 37/8
blind [1] 47/9
blob [1] 75/10
block [2] 55/7 55/7
Blom [4] 11/3 13/23 22/15 22/18
bodies [1] 72/19
body [1] 18/1
boils [1] 76/13
bomb [2] 91/24 91/24
bombarded [1] 99/3
book [1] 48/1
both [3] 5/11 21/20 79/21
bottom [7] 36/5 37/8 37/14 48/1 63/22 65/21 65/22
bottom-line [2] 65/21 65/22
Boulevard [1] 2/5
BRANDON [2] 2/9 3/15
break [3] 28/22 55/9 102/14
breaks [1] 55/4
Brennan [2] 101/22 101/25
bridge [1] 87/9
Bridgeman [1] 34/7
briefed [1] 106/22
briefly [5] 32/21 63/17 65/16 66/4 66/22
bring [5] 10/10 10/10 10/13 12/18 61/22
bringing [3] 94/1 94/16 106/25
broad [2] 89/15 108/20
broader [1] 31/24 39/10
brought [6] 13/5 13/13 13/23 31/1 47/13 58/14
bubble [2] 53/7 53/8
BUCHANAN [3] 2/4 3/15 9/11
bucket [1] 76/11
building [9] 11/11 35/12 66/11 66/16 66/24 67/1 67/21 74/20 77/15

bulk [1] 62/15
bunch [3] 46/9 90/16 98/16
burden [16] 4/16 15/3 18/16 21/23 40/20 41/6 46/3 46/5 50/21 53/21 56/15 62/6 68/11 102/6 104/8 106/24
burdensome [6] 51/7 83/7 98/18 107/4 107/5 107/25
business [10] 37/19 42/13 59/5 59/7 69/4 70/8 98/10 105/21 105/22 108/3
businesses [20] 59/21 60/19 60/21 61/5 61/7 63/13 68/21 69/9 69/22 70/7 71/5 83/9 98/8 99/7 99/16 105/8 105/13 105/25 106/1 108/1
busy [1] 28/2
but [113]
butcher [1] 5/23

**C**

Cagnin [1] 34/8
calendar [2] 91/23 91/24
call [2] 28/7 60/13
called [1] 85/25
calling [1] 57/1
calls [1] 34/15
came [7] 22/2 26/12 30/17 41/24 43/2 66/1 96/10
camel [1] 79/9
campaign [1] 20/7
campaigns [1] 29/24
can [120]
can't [11] 22/22 24/8 24/10 26/24 27/15 56/5 68/20 70/18 77/16 90/17 94/12
candidly [2] 38/12 47/21
cannot [9] 7/17 10/24 15/10 18/4 18/15 18/18 18/21 92/19 93/14
capacities [1] 13/7
capacity [3] 4/18 4/19 4/19
capstone [1] 37/13
capture [1] 65/2
care [5] 49/12 49/13 49/14 56/15 77/15
Carollo [21] 4/14 6/13 7/4 7/25 8/2 9/6 9/13 10/16 11/5 20/2 22/21 23/10 23/11 23/17 25/17 25/20 30/8 30/18 31/2 34/7 41/10
Carollo's [4] 8/4 11/3 22/23 79/7
carry [2] 23/24 24/1
carrying [1] 102/22
case [86] 1/2 7/14 8/16 9/4 9/7 9/16 11/18 11/20 11/22 11/24 12/6 12/6 12/14 12/25 13/1 13/20 14/5 15/1 15/7 15/20 15/22 15/24 16/4 18/17 19/8 19/24 20/15 20/16 20/18 20/19 21/5 21/7 21/8 21/11 21/22 21/24 22/5 22/6 22/18 22/25 23/20 24/3 25/6 25/7 25/13 26/9 26/13 26/16 28/15 28/17 31/8 31/16 35/5 35/23 39/14 40/3 40/7 41/23 46/10 50/4 50/8 50/20 57/9 63/7 71/16 71/19 73/9 74/4 76/16 76/17 93/1 93/9 96/10 99/3 100/14 101/20 101/23 106/18 107/7 107/22 108/7 108/9 108/25 109/12 109/19
cases [7] 5/12 12/4 12/10 13/2 20/12 20/14 101/20
cast [2] 49/10 55/15
category [1] 102/22
cause [2] 97/18 102/9
causes [1] 19/16
cell [17] 33/3 34/14 37/5 37/18 37/21 37/23 37/25 38/18 39/17 40/10 42/5 43/15 45/13 45/14 45/16 55/16 57/25
central [1] 35/4

**C**

certain [9]  13/4 19/22 22/8 32/19 47/13 61/7 72/9 76/6 89/6
certainly [10]  4/22 8/19 11/21 13/18 16/5 24/17 24/25 29/6 76/17 94/10
certificate [1]  99/18
certify [1]  110/4
Chad [3]  3/17 72/25 79/24
chain [7]  35/13 36/12 36/20 36/21 55/8 55/11 69/17
challenge [5]  4/6 4/24 16/7 64/18 101/18
challenges [5]  4/3 4/5 4/23 14/18 16/6
challenging [2]  5/3 12/23
chance [6]  6/21 15/1 26/9 88/9 95/8 106/15
changed [6]  14/6 25/2 25/7 50/15 62/6 74/1
characterize [1]  4/24
chart [3]  7/2 7/3 46/8
charter [1]  14/16
chase [1]  78/18
chew [1]  85/8
chief [1]  11/3
choice [1]  51/1
choose [1]  56/19
choosing [1]  11/16
chose [1]  106/19
Christmas [2]  82/24 89/17
Cir [1]  15/23
Circuit [2]  12/11 15/8
circumstances [4]  13/19 14/1 22/10 76/25
citation [2]  12/8 20/17
citations [2]  69/1 69/3
cite [1]  15/20
cited [3]  26/10 26/12 107/8
cites [2]  13/2 101/14
city [157]
city's [18]  3/25 4/3 4/6 21/23 24/15 33/23 38/16 42/19 49/18 51/1 51/14 52/3 74/20 75/11 75/17 88/25 101/11 107/17
city-issued [8]  38/7 38/11 39/4 39/20 40/8 40/11 40/13 42/22
city-owned [2]  53/13 53/15
city-stipend [1]  42/12
city-stipended [7]  38/7 38/12 39/5 39/21 40/8 40/11 40/14
civil [1]  5/12
claim [34]  5/2 7/16 9/23 10/2 10/4 10/20 14/11 14/14 16/11 16/14 16/19 16/19 16/25 18/18 19/15 21/13 22/8 66/5 66/20 73/24 74/2 93/2 97/6 98/12 100/7 103/17 104/9 106/17 107/2 107/8 107/8 107/9 107/11 107/12
claimed [1]  43/24
claims [9]  5/4 13/4 14/6 14/9 19/22 79/8 102/9 103/22 107/1
clarified [1]  46/16
clarify [1]  95/5
clarity [1]  51/25
class [1]  107/11
claw [1]  80/17
clear [11]  12/20 17/22 27/17 34/5 43/7 46/13 47/8 56/18 74/16 82/8 105/19
client [2]  17/12 67/15
client's [1]  70/7 93/23
clients [6]  19/25 20/7 21/1 21/4 50/5 87/12
clock [1]  98/23
clopez [1]  1/18

close [4]  63/7 84/13 98/19 108/11
closed [1]  88/23
closely [1]  54/3
closest [2]  19/8 20/3
code [5]  11/12 35/21 66/24 74/20 94/5
cognizant [1]  30/16
Colina [2]  41/11 41/12
collaborate [2]  81/16 83/18
collaborative [1]  84/7
colleague [1]  31/4
colleagues [1]  3/10
collect [4]  57/11 57/12 58/10 71/23
collected [7]  42/24 42/25 43/4 49/25 59/1 60/11 75/10
collecting [6]  40/4 43/11 44/9 57/22 72/7 83/19
collection [42]  33/5 34/12 36/6 36/11 36/15 37/2 37/9 38/5 38/9 38/10 38/12 38/20 39/4 39/11 39/19 40/10 40/15 40/22 40/25 41/6 41/16 41/17 42/1 43/6 44/22 45/19 45/21 46/6 48/3 55/14 55/25 56/20 58/25 64/1 65/11 65/15 65/17 75/16 76/9 76/13 76/14 77/6
collections [1]  75/19
collector [1]  46/24
column [2]  62/23 64/15
comb [1]  76/10
combine [2]  32/2 32/17
come [17]  10/23 11/16 14/14 19/8 28/10 35/18 57/17 68/16 76/18 76/20 78/16 82/6 84/24 88/2 90/5 91/13 102/25
comes [8]  34/20 35/9 39/5 45/25 72/16 72/18 76/16 89/5
comfortable [1]  29/2
coming [7]  41/9 66/25 72/10 84/2 89/3 91/3 100/24
comment [1]  48/4
Commission [7]  4/18 5/9 10/3 10/7 14/19 14/20 16/13
commissioner [40]  4/14 4/14 6/13 7/4 7/25 7/25 8/1 8/4 9/6 9/13 11/3 12/13 19/14 20/2 20/25 21/7 21/8 21/9 21/16 21/19 22/20 23/17 23/17 24/2 25/16 25/20 26/1 29/12 29/18 29/18 29/20 29/21 30/1 30/8 30/18 31/2 31/3 31/10 50/23 79/7
Commissioner's [1]  10/21
commissioners [25]  4/13 5/7 6/13 9/21 10/25 11/21 11/22 12/17 12/22 12/25 13/6 14/21 15/5 16/21 16/24 17/3 17/9 17/9 18/1 19/9 20/9 20/11 20/21 21/8 27/21
communicated [1]  31/14
communicating [1]  46/21
communication [3]  37/1 51/24 55/8
communications [4]  28/13 32/18 32/25 36/25
community [2]  20/15 21/20
companies [2]  69/2 70/14
comparator [2]  68/21 69/9
comparators [33]  60/16 66/6 66/7 66/9 66/19 67/13 67/19 68/1 68/18 68/19 77/19 78/7 78/19 78/21 79/5 79/6 82/14 83/5 89/19 90/9 92/23 93/1 93/3 96/4 97/2 97/6 99/5 99/8 100/21 106/18 107/10 107/15 107/20
comparing [1]  101/6
compel [1]  49/16
compelled [1]  33/8
competence [1]  93/15

competitors [1]  70/6
complaint [35]  10/6 10/19 14/6 17/20 17/22 17/23 17/25 23/3 26/8 26/25 27/9 29/10 50/16 60/16 60/17 63/9 63/11 66/6 66/9 67/17 68/17 68/23 74/1 77/5 77/12 95/22 96/21 98/13 99/5 102/8 102/8 102/19 103/2 104/23 106/19
complaints [1]  107/23
complete [4]  77/9 83/21 91/1 106/21
completely [3]  15/6 99/11 101/8
completeness [2]  47/2 80/5
compliance [3]  11/12 35/21 74/20
complied [3]  24/15 42/3 42/8
comply [4]  73/8 77/25 104/20 107/14
complying [1]  43/19
component's [1]  83/20
compromise [3]  53/10 58/12 58/14
computer [1]  105/7
concept [2]  51/9 53/1
concern [5]  21/9 27/4 46/3 58/23 58/23
concerned [2]  50/13
concerning [2]  43/17 69/1
concerns [5]  24/2 52/13 52/14 88/9 101/11
concise [1]  104/4
conclusion [2]  58/5 58/20
concrete [1]  46/7
condition [1]  29/1
conduct [3]  15/9 15/24 44/24
conducted [2]  42/13 103/1
confer [2]  78/16 90/6
confers [1]  45/22
confirming [1]  25/25
confused [2]  78/10 82/8
confusion [2]  77/12 79/18
connected [1]  47/12
connection [2]  12/1 31/7
consequence [1]  86/21
consider [1]  95/8
considerable [1]  67/14
consideration [1]  7/14
considered [1]  20/19
constantly [1]  23/6
Constitution [1]  14/13
CONT'D [1]  2/1
contemplated [1]  33/18
content [15]  35/4 47/10 47/15 47/16 47/17 53/24 54/15 54/16 55/18 64/25 65/2 81/9 81/10 81/14 84/4
context [4]  24/9 26/4 26/18 70/12
continue [2]  18/19 83/18
contrary [1]  20/12
control [4]  31/8 32/24 38/16 101/8
conversation [7]  35/16 35/16 39/12 54/25 55/6 55/10 66/17
conversations [2]  5/8 24/6
conversion [1]  21/20
copies [2]  15/21 69/4
copy [3]  6/20 8/14 62/19
CORAL [2]  1/13 3/10
correct [8]  37/16 56/21 60/2 61/12 70/16 91/25 100/22 104/25
correctly [1]  5/21 44/18 104/24
cost [11]  45/25 46/5 50/21 56/15 56/20 57/20 57/21 57/21 59/7 62/7 76/19
costs [7]  40/24 46/1 46/1 53/18 57/20 57/24 57/24
could [35]  3/4 22/14 27/16 31/20 32/10 35/13 35/14 44/10 46/12 47/4 47/5 47/20 52/24 53/16 54/1 58/19 61/22 63/4 63/17

**C**

could... [16]  63/19 68/15 70/7 77/24
  81/25 82/16 83/21 84/24 85/18 86/9
  86/10 88/15 88/18 90/10 90/18 90/19
couldn't [6]  20/5 35/25 36/4 67/25 90/18
  101/24
counsel [8]  3/6 5/18 9/12 25/23 47/4
  47/7 64/24 67/4
counsel's [2]  15/1 15/22
count [6]  30/12 41/2 41/18 45/3 47/18
  64/19
county [3]  11/21 12/25 13/6
couple [7]  3/19 9/25 32/2 32/3 50/15
  51/5 85/19
course [12]  11/21 25/23 27/15 28/1
  30/11 32/16 68/22 95/11 95/11 95/13
  106/12 108/3
court [45]  1/1 2/14 6/16 11/25 12/14
  12/24 13/2 13/9 13/19 15/7 15/25 20/19
  21/13 22/1 28/19 37/16 40/9 41/24 42/2
  43/4 43/25 56/21 56/17 59/2 60/15 61/8
  64/18 66/7 71/5 78/3 80/6 83/15 83/17
  84/15 84/25 87/5 87/22 90/14 90/24
  95/12 102/2 102/7 108/21 109/7 110/9
court's [7]  23/14 41/23 42/3 42/8 74/16
  78/1 86/15
courtesy [1]  69/21
courts [1]  12/4
cover [2]  3/24 7/9
covered [1]  17/1
cracks [1]  80/18
create [3]  44/3 44/7 90/16
creates [1]  90/20
criminal [2]  16/5 19/6
critical [2]  9/22 22/7
CRR [2]  2/14 110/8
crux [1]  19/16
CSR [2]  2/14 110/8
cue [2]  81/14 91/5
cull [2]  62/24 75/6
cumulative [2]  102/4 103/8
cupcake [1]  57/23
curious [1]  94/8
CUs [1]  99/18
custodian [9]  34/19 36/23 47/22 50/16
  51/17 51/18 52/9 54/5 54/10
custodians [16]  34/1 34/6 35/7 36/12
  36/13 37/5 40/1 40/2 40/2 40/6 44/3
  44/6 49/21 51/4 51/9 53/22
cut [3]  32/8 44/16 78/17
CV [1]  1/2

**D**

dais [1]  19/4
damage [1]  16/11
damaged [1]  16/16
data [26]  34/11 43/2 44/9 44/24 45/15
  46/1 46/2 51/1 56/20 57/7 57/8 57/10
  57/18 57/23 57/25 59/1 60/7 60/11 62/15
  63/3 67/16 70/17 70/22 71/8 75/11 88/3
database [9]  49/25 78/9 80/19 80/24
  81/7 81/8 105/4 105/16 108/3
databases [2]  85/7 91/4
date [16]  25/16 25/18 25/19 25/25 25/25
  34/22 35/5 35/10 35/10 39/18 40/17
  41/25 53/4 53/7 54/2 76/2
dates [5]  7/19 7/20 7/23 54/19 59/16
dating [1]  15/7
day [17]  28/23 29/14 29/20 30/6 47/25
  53/14 53/15 55/7 56/4 56/9 77/1 78/15

78/23 81/22 88/24 96/5 96/11
days [4]  28/23 28/25 30/19 54/24 59/3
  82/17 83/14 83/16 83/20 85/20 86/12
  86/13 88/21 100/24
de [1]  34/7
dead [1]  90/15
deadline [1]  8/6 25/15 73/7 73/7 80/12
  82/3 82/19 82/21 84/14 86/15 88/12 90/6
  90/16 90/22
deadlines [4]  78/1 81/19 81/19 90/10
deal [2]  22/5 79/13
dealing [5]  22/4 37/17 38/22 66/13 101/5
dealt [1]  99/18
debate [5]  23/15 39/7 39/9 39/13 39/14
debated [1]  7/10
decades [2]  5/10 5/10
December [6]  25/15 68/7 73/14 78/4
  82/4 82/23
decide [1]  49/6
decided [3]  12/2 55/1 96/11
decides [1]  80/6
decision [1]  10/16
declarations [1]  42/4
declined [1]  42/2
decrease [1]  68/5
deduplication [1]  36/14
deep [4]  29/11 36/9 36/24 39/1
defend [1]  11/17 16/15
defendant [5]  1/7 2/3 12/16 12/21 13/6
defendants [4]  3/13 12/24 97/10 99/23
defense [1]  76/8
defensible [2]  76/21 76/23
defer [1]  95/12
deference [1]  27/20
deferred [1]  95/8
deficiencies [1]  55/14
definitely [1]  99/20
definitions [1]  106/7
definitive [1]  84/18
defray [1]  53/17
DEL [1]  1/13
delay [2]  70/21 72/11
delays [1]  90/7
delete [2]  48/23 54/24
deliberative [1]  24/20 19/9
delineating [1]  68/15
deliver [1]  87/13
delivery [1]  76/2
demonstrating [1]  21/14
dent [1]  90/20
department [2]  11/10 11/11 35/12 50/23
  86/12 86/12
departmental [1]  72/9
departments [7]  11/10 42/23 72/7 74/18
  83/22 89/1 91/5
deponent's [1]  7/2
depos [1]  82/24
depose [1]  4/14
deposed [9]  7/1 9/1 11/11 13/15 13/20
  17/20 22/12 23/15 31/2
deposing [1]  11/13
deposition [20]  7/19 7/23 8/5 17/16 18/9
  18/23 19/12 22/25 23/7 25/2 26/4 26/18
  27/3 27/13 28/5 28/9 28/25 29/13 30/2
  35/24
depositions [12]  4/3 6/25 7/17 7/18 7/24
  8/7 9/2 12/13 13/22 14/7 28/20 30/23
deprived [1]  56/2
describing [1]  74/17
desire [1]  47/2

desperately [1]  73/8
despite [1]  28/15
destructive [1]  93/13
detail [1]  29/11
detailed [3]  27/11 85/24 100/20
determination [1]  67/24
determine [3]  44/11 69/2 105/7
device [7]  40/13 40/14 47/12 47/23 48/5
  48/13 48/14
devices [11]  33/1 33/2 37/18 37/25 38/1
  38/1 38/9 43/3 45/7 52/1 58/7
devise [2]  37/15 39/13
devised [3]  33/4 33/22 45/3
diagrams [3]  93/21 94/7
dialogue [5]  81/12 84/5 87/22 87/24 88/4
did [36]  8/1 8/11 11/25 13/13 15/12 19/13
  19/13 19/23 20/12 20/25 21/2 22/15
  24/20 25/25 29/23 31/10 34/13 36/2 36/9
  42/9 43/21 44/17 45/7 47/11 47/21 49/14
  49/21 60/2 62/13 62/15 63/15 67/14
  72/17 82/14 94/7 103/10
didn't [24]  15/22 17/18 19/11 21/25 22/1
  26/10 26/20 32/8 36/12 36/17 36/20
  36/21 36/22 44/16 47/24 50/3 58/9 63/10
  73/23 82/2 82/12 98/24 100/18 105/13
differences [1]  63/4
different [13]  7/20 14/14 14/17 16/4 25/6
  27/6 42/16 45/23 63/3 65/24 66/17 76/11
  79/11
differently [2]  60/20 61/6
difficult [1]  34/24
difficulties [2]  52/20 52/21
digital [2]  1/9 110/5
dignity [1]  90/17
diligence [1]  99/4
ding [1]  20/4
direct [16]  12/12 24/6 37/25 38/4 38/8
  38/10 38/11 39/4 39/19 40/10 40/15
  41/16 42/1 44/22 45/19 70/6
direction [1]  83/17
directly [7]  5/12 23/16 26/13 33/20 37/21
  70/14 97/5
director [1]  35/12
disagree [3]  19/20 59/10 105/12
disagreeing [1]  19/21
disclosing [1]  17/12
disclosures [1]  9/3
discovery [40]  1/9 3/18 3/23 7/8 8/6 8/16
  12/22 13/9 15/3 16/2 16/8 22/4 25/12
  25/13 25/15 25/21 32/24 51/15 58/20
  60/21 67/25 68/6 68/18 68/19 68/20
  70/22 70/24 73/10 73/14 74/8 78/2 86/20 87/5
  94/13 94/23 96/17 98/20 102/4 102/6
  106/20 107/12
discrete [1]  74/25
discretion [2]  27/22 27/24
discuss [5]  12/3 39/13 42/9 75/23 94/21
discussed [4]  4/9 8/2 24/4 29/4
discussing [4]  10/19 31/22 94/20 108/12
discussion [1]  13/14
discussions [2]  17/9 17/10
dislocation [1]  90/21
dismiss [6]  9/19 10/9 10/9 100/24
  106/21 107/23
dismissed [7]  14/8 14/11 14/13 14/14
  14/16 17/23 19/22
dispositive [2]  73/13 81/20
dispute [2]  20/10 107/10
disputed [2]  24/8 24/10

**D**

disputes [2]  3/23 96/17
distance [1]  20/3
district [10]  1/1 1/1 11/20 12/9 12/11
13/3 20/13 20/16 79/7 99/9
dive [4]  36/9 36/24 38/25 39/1
do [106]  3/4 3/24 13/11 13/12 16/14
16/20 16/23 20/20 21/25 23/12 28/4
28/23 29/12 29/19 29/19 30/13 31/12
32/6 33/17 34/21 34/25 35/9 37/19 37/24
38/8 38/10 38/11 38/25 39/4 40/9 40/15
40/24 41/2 41/3 41/4 41/16 41/18 42/8
43/9 43/14 44/4 44/22 45/8 45/13 46/18
47/9 47/16 48/5 48/19 48/21 49/21 51/2
51/17 51/21 52/5 54/5 54/6 54/12 56/13
57/5 57/14 58/7 58/13 58/21 60/23 60/23
61/4 61/10 65/7 69/17 70/2 72/15 72/23
73/19 74/5 76/8 76/19 76/21 76/25 77/25
78/8 78/16 79/8 79/24 80/7 82/24 83/16
83/17 83/22 85/5 87/3 87/23 88/6 88/8
88/10 92/19 92/24 93/4 95/12 101/1
104/23 105/6 105/10 107/23 109/18
109/20
doable [1]  55/22
doc [1]  106/3
docket [2]  7/12 33/13
docs [2]  63/25 67/4
doctor [1]  46/22
doctrine [7]  4/5 5/13 6/2 7/6 8/19 8/20
18/15
document [21]  23/19 31/4 31/5 36/4
48/20 52/22 53/22 64/2 64/2 64/3 64/7
64/12 64/13 65/3 65/24 67/5 67/18 75/16
76/13 76/14 101/2
documentary [1]  93/21
documented [1]  5/18
documents [85]  6/12 14/20 30/15 31/15
31/22 33/8 33/20 33/25 34/2 38/15 38/16
41/3 41/3 41/19 43/1 45/4 47/13 49/18
50/3 50/4 51/10 51/11 51/13 52/3 52/5
52/8 53/1 57/4 58/6 58/11 59/1 59/22
60/8 62/7 62/18 62/18 62/21 63/7 63/23
64/15 64/16 65/5 65/10 65/18 66/18 68/8
68/12 68/25 69/10 70/1 70/5 71/10 71/11
71/21 72/1 72/16 72/20 73/18 74/21 75/6
77/4 77/22 78/21 78/22 80/11 80/15
80/23 82/7 83/8 84/19 84/21 84/22 84/24
84/25 85/18 85/22 86/2 86/9 86/17 88/14
89/2 89/12 90/1 97/2 107/2
does [12]  24/9 49/5 54/3 55/3 55/4 64/21
71/13 77/6 81/18 94/25 95/2 95/6
doesn't [11]  20/24 46/4 64/21 68/8 74/10
76/12 77/23 84/15 84/17 86/18 88/7
doing [17]  19/4 19/4 36/15 37/2 38/23
39/5 39/20 47/1 48/5 59/7 60/25 91/17
92/15 97/9 100/2 103/19 109/14
dollars [4]  40/24 76/15 76/15
don't [102]  3/20 4/8 6/19 7/9 7/12 11/5
11/17 15/16 17/13 17/15 19/20 23/11
23/13 23/15 24/17 25/7 26/11 26/25
27/10 28/7 29/4 29/13 29/25 30/3 34/19
34/22 34/23 35/5 35/8 35/17 35/18 36/2
39/18 39/18 39/19 41/6 42/14 44/25
45/11 46/4 46/8 46/14 46/17 48/5 48/7
49/9 49/12 49/13 49/14 50/19 52/13
52/16 53/21 54/12 54/20 54/23 56/22
57/3 58/2 58/13 58/17 58/22 59/3 59/7
60/6 60/22 62/16 66/17 67/6 67/8 68/1
68/16 69/15 69/16 74/7 75/2 77/15 79/1
79/2 81/19 82/6 83/4 84/13 85/7 86/14

87/1 87/11 87/14 88/2 90/5 90/5 90/8
90/15 93/3 94/21 98/6 100/6 101/1
103/12 104/8 106/20 108/23
done [29]  15/2 19/23 22/9 31/15 32/25
39/19 40/23 53/19 58/8 69/23 70/7 71/25
75/19 80/7 81/16 82/25 83/10 86/14 87/4
87/9 92/10 92/10 93/2 94/23 95/23 99/4
104/3 104/5 109/11
Dooley [2]  11/7 36/22
door [5]  78/22 85/18 86/7 86/10 86/10
double [1]  47/9
dovetails [1]  83/12
down [19]  15/14 16/10 16/11 16/15
35/22 41/4 44/3 50/24 51/10 54/12 65/18
71/10 75/6 76/13 76/17 83/24 85/6 90/15
107/10
downloading [1]  46/14
dozens [1]  36/25
draft [2]  96/21 97/4
drafted [1]  99/21
drama [1]  90/16
dramatic [1]  68/4
dramatically [1]  47/18
drill [1]  15/14
drop [1]  90/15
drop-dead [1]  90/15
due [14]  5/2 5/4 9/22 10/2 11/8 14/8
14/12 22/7 73/13 73/14 82/4 82/22 99/4
108/10
dump [1]  80/21
duplication [1]  36/14
duplicative [4]  51/3 82/7 99/20 102/4
during [3]  15/21 43/20 89/17
duties [2]  5/10 30/1

**E**

each [13]  26/16 44/3 92/25 97/13 97/22
97/22 97/25 98/1 98/4 98/9 101/15 104/2
104/25
earlier [1]  97/1
early [3]  88/15 88/16 107/22
easiest [2]  47/16 90/1
easily [1]  103/6
easy [4]  89/7 89/8 103/5 106/6
eat [1]  58/2
editing [1]  53/24
effective [1]  76/19
efficient [9]  32/6 54/8 71/14 71/22 76/19
76/21 76/22 76/25 89/21
effort [2]  65/21 65/22 75/15
efforts [1]  72/6
eight [3]  57/16 100/25 101/6
Eighth [1]  79/6 99/8
either [3]  38/22 50/15 104/10
elaborate [1]  69/14
elements [1]  21/14
elevate [1]  52/6
Eleventh [1]  12/11
eliminate [1]  8/20
else [15]  9/1 17/3 18/19 18/22 22/12
35/20 37/10 39/16 46/15 57/2 58/17
66/13 74/1 86/7 86/11
elucidate [1]  5/16
email [8]  4/4 43/23 45/22 47/7 48/7 53/5
86/1 92/2
emails [12]  44/25 51/23 59/6 65/10
66/10 66/14 66/17 72/18 85/8 86/5 87/13
89/5
embarrass [1]  17/6
Emilio [2]  23/19 24/3

employees [9]  32/19 32/25 33/16 37/23
38/5 72/8 72/13 88/23 89/6
employees' [1]  33/3
employer [1]  46/19
employment [1]  46/20
enacted [1]  14/20
enacting [2]  16/13 18/1
enactment [1]  16/16
end [11]  9/1 24/14 47/25 48/8 52/11
53/14 53/15 54/7 61/21 77/1 98/19
ends [1]  104/12
enemy [1]  53/11
enforced [1]  17/2
enforcement [2]  21/15 94/5
enforcing [1]  17/4
ensuing [1]  88/21
enter [1]  54/13
entire [1]  74/4
entirely [2]  37/16 105/5
entirety [2]  53/12 54/1
entities [5]  59/20 60/4 70/6 107/9 107/19
entitled [4]  12/24 49/17 68/22 110/6
entrenched [1]  28/17
entry [2]  7/12 33/13
environment [1]  75/11
equal [15]  10/4 14/13 16/19 16/25 60/18
66/20 73/24 93/17 97/6 98/12 103/17
104/9 106/17 107/11 107/18
ESI [2]  39/12 39/12
especially [3]  94/14 98/13 108/18
ESQ [7]  1/12 1/13 1/13 1/14 2/3 2/4 2/9
essentially [4]  6/18 62/5 69/2 72/24
establish [5]  15/3 18/15 61/8 66/10
66/19
established [1]  36/10
establishments [11]  16/22 79/11 97/24
97/25 98/1 98/2 98/3 98/5 98/16 101/7
106/22
estimation [1]  55/13
et [1]  1/3
etc [3]  66/24 75/8 75/8
even [36]  19/15 22/21 26/15 32/25 34/19
34/20 35/17 36/21 46/24 48/19 50/9
50/10 50/19 66/10 67/19 67/20 69/24
71/22 79/6 79/6 79/12 86/21 87/16 93/3
99/5 99/8 99/9 99/9 102/11 102/12
102/15 106/15 106/21 107/5 108/11
108/15
event [1]  10/14
events [2]  69/18 69/19
ever [3]  87/15 99/5 105/7
every [3]  31/7 47/22 78/25
everybody [4]  9/1 17/3 42/20 75/25
everyone [7]  3/3 15/21 22/12 31/9
41/13 57/10 109/16
everyone's [1]  89/22
everything [8]  19/1 39/16 46/15 47/18
86/7 86/11 89/13 93/21
Everywhere [1]  65/11
evidence [8]  21/6 23/20 43/8 57/8 58/25
92/21 100/12 102/23
evidentiary [1]  9/10
exact [4]  6/16 29/4 64/19 107/19
exactly [9]  6/7 10/17 15/15 47/11 50/14
55/11 97/3 99/25 104/4
example [12]  12/4 20/6 35/11 36/18 64/5
76/9 85/8 102/20 102/21 102/22 103/7
103/10
examples [1]  46/7
exceeds [1]  53/16

E

except [1] 95/20
exception [4] 16/4 18/15 18/21 19/5
excerpt [2] 8/10 9/25
excerpts [1] 22/24
excessive [4] 17/14 101/3 102/10 108/7
exchange [1] 47/7
exchanged [1] 53/4
exchanges [1] 53/1
excused [1] 11/23
executive [6] 4/20 4/25 5/1 5/3 14/9
14/12
exercise [1] 54/2
exercised [1] 53/24
exercising [1] 5/9
exhibits [2] 79/5 101/8
exist [2] 24/10 85/23
existing [1] 65/11
exists [3] 20/11 21/25 51/24
expanded [1] 101/2
expect [2] 76/24 76/24
expectation [1] 89/12
expense [2] 74/6 102/6
expenses [1] 21/10
expensive [5] 45/13 57/12 75/25 75/25
76/1
expert [29] 3/18 52/16 69/21 69/24 73/6
73/7 73/14 73/21 73/22 74/3 78/5 78/6
80/12 81/12 81/22 82/3 82/19 82/20 85/1
93/9 93/11 93/12 93/15 93/16 93/18
93/22 94/7 94/17 94/17
experts [1] 84/6
explain [6] 32/20 32/21 47/4 52/17 56/25
63/4
explanation [2] 46/13 104/6
explanations [1] 106/4
express [1] 73/24
expressed [1] 21/9
extension [4] 78/2 78/24 78/25 81/22
extensively [1] 7/10
extent [3] 5/1 5/6 78/20
extraordinary [3] 13/18 14/1 22/10
extreme [1] 40/20
extremely [2] 10/22 97/14
eyes [1] 74/16

F

F.3d [1] 15/23
face [5] 19/3 19/7 98/18 108/7 108/25
Facebook [1] 48/16
facial [4] 4/22 14/18 16/6
fact [19] 6/11 6/25 8/6 10/23 20/1 20/25
21/21 21/23 23/18 24/9 24/13 24/15
28/15 28/24 29/15 43/22 54/22 71/7
93/22
facts [6] 13/22 21/22 22/11 25/6 25/9
28/17
factually [1] 59/24
fair [2] 10/14 104/8
fairly [5] 56/3 75/12 107/22 108/5 109/15
faith [8] 84/4 84/15 84/17 84/20 99/21
100/2 102/13 105/20
fall [3] 40/12 44/8 102/21
familiar [1] 103/2
family [2] 46/21 46/21
far [6] 33/16 73/22 87/9 90/13 102/23
104/5
fast [5] 26/15 84/23 87/8 87/20 89/8
fattened [1] 58/2
fault [1] 49/18

February [3] 9/21
federal [3] 5/1 15/25 96/13
feel [3] 29/2 52/4 90/2
FEHRETDINOV [17] 1/12 3/9 5/20 5/22
5/25 13/12 15/4 19/18 26/10 45/1 60/22
62/12 70/15 91/6 93/14 95/4 96/1
Fehretdinov's [1] 84/10
fence [5] 84/21 84/23 85/10 86/13 88/15
FERNANDEZ [18] 2/9 3/15 46/25 51/9
51/18 58/22 59/7 60/2 61/3 69/14 72/21
74/17 97/1 103/7 104/3 104/6 105/11
105/21
few [2] 88/21 89/25
fight [1] 98/20
figure [3] 89/18 96/15 105/23
file [7] 70/20 77/15 78/4 100/4 100/17
102/10 106/15
filed [10] 4/11 9/4 59/20 60/1 68/25
94/19 98/12 99/5 102/7 106/19
files [2] 105/6 105/16
filing [3] 78/5 93/9 100/23
final [1] 7/14
finality [1] 42/7
finally [1] 7/19
find [15] 20/21 25/25 36/17 37/6 42/15
51/8 53/8 56/10 67/5 71/22 71/23 79/14
87/13 89/11 97/3
finds [2] 12/24 21/13
fine [2] 71/4 104/7
finish [3] 45/19 45/20 73/14
finished [4] 78/4 90/2 94/22 95/20
fire [1] 104/12
firm [3] 9/12 48/7 90/5
first [42] 4/1 6/1 6/1 6/10 10/1 13/15
15/24 19/19 20/15 22/1 34/4 38/3 40/12
41/24 42/18 43/6 47/6 47/16 48/11 48/21
61/3 66/23 69/15 76/7 81/5 81/12 81/13
87/2 87/21 89/15 91/7 91/10 91/16 92/11
94/1 96/9 96/20 97/13 98/6 98/11 98/17
99/13
firsthand [1] 22/11
five [4] 9/5 34/13 69/7 69/10
fixed [1] 91/4
FL [3] 1/16 2/5 2/10
Flagler [1] 1/15
flexibility [1] 81/18
floor [1] 93/20
FLORIDA [6] 1/1 1/4 3/5 12/10 14/13
20/16
focus [1] 91/10
focused [1] 102/17
folio [1] 74/24
folks [3] 53/12 53/13 54/13
following [2] 3/2 83/4
force [1] 44/1
forced [2] 31/11 70/20
foregoing [1] 110/4
forensic [6] 42/1 44/22 46/5 46/24 58/25
72/17
forensically [7] 40/15 42/24 43/12 49/24
52/10 55/10 59/1
Forfieri [1] 34/9
forget [2] 41/25 75/7
form [5] 14/15 32/5 32/21 51/23 78/14
formal [1] 108/14
formally [1] 5/18
former [1] 94/3
forms [1] 32/18
formulating [1] 107/1
forth [6] 7/9 17/10 28/14 48/16 62/20

81/20 100/2 104/7
forward [3] 77/15 21 89/4
found [3] 19/5 102/7 105/8
four [5] 32/20 37/13 80/14 105/19
105/22
Fourth [2] 16/18 43/16
frame [2] 55/23 81/24
framework [1] 99/22
frankly [10] 11/17 33/18 47/24 58/8
67/15 68/2 81/4 90/7 96/24 100/6
Friday [3] 59/17 88/24 95/10
front [6] 26/6 48/9 65/20 81/14 85/4
94/14
fruit [5] 81/10 83/3 89/25 91/4 103/6
full [2] 29/13 57/21
Fuller [11] 22/20 23/3 25/24 62/14 62/17
64/8 64/11 68/3 68/4 75/7 103/14
Fuller's [2] 35/21 61/7
Fuller-related [2] 62/14 62/17
fully [1] 78/7
fundamentally [1] 37/10
further [4] 10/13 21/19 48/4 80/4

G

gained [1] 14/24
game [4] 75/15 98/14 98/19 106/17
gave [11] 7/19 34/17 39/14 42/7 42/20
42/25 49/23 60/12 62/24 99/14 99/16
GEICO [2] 101/22 101/25
general [1] 13/5
generalized [1] 15/16
generally [1] 54/10
generate [2] 63/23 65/5
generated [1] 54/1
generating [1] 91/9
get [90] 3/6 13/15 18/9 18/21 24/21
25/20 25/25 27/3 29/7 32/4 32/8 33/7
33/20 33/25 34/3 35/1 36/4 36/12 36/20
36/21 36/22 39/22 40/25 41/18 49/16
53/14 53/16 55/19 56/8 57/16 58/2 58/3
58/15 60/22 61/14 64/19 65/19 66/15
66/18 66/19 67/15 68/20 70/20 70/22
71/18 73/10 73/10 73/11 73/19 77/8
78/22 79/2 79/9 80/7 80/22 82/2 82/12
82/25 83/2 83/6 83/24 84/18 86/13 86/14
87/4 87/9 87/20 87/21 87/21 87/23 88/11
88/15 89/25 90/1 90/5 90/24 91/7 91/15
93/19 94/6 96/15 96/23 97/19 98/7 98/14
102/18 103/12 104/11 106/11 107/18
gets [1] 50/16
getting [14] 8/21 36/2 43/20 52/18 56/1
59/12 66/24 66/25 84/13 85/11 89/12
91/1 91/14 104/13
give [29] 22/14 27/12 33/21 34/1 41/2
41/4 41/17 43/24 44/1 45/14 45/16 49/15
56/8 60/5 62/19 68/12 71/23 77/14 77/24
80/11 80/18 82/8 82/15 82/16 84/3 88/9
91/20 102/20 108/13
given [11] 38/22 39/1 46/7 49/23 51/6
58/5 60/8 69/3 71/7 78/24 79/1
gives [1] 37/22
giving [7] 28/8 43/19 49/12 49/14 54/18
77/16 90/2
glad [2] 3/4 13/13
gmail.com [2] 2/15 110/9
go [71] 3/4 6/2 7/9 7/17 10/12 12/20
15/12 16/22 17/21 19/13 19/13 20/24
23/12 26/4 27/13 27/19 28/20 32/14 33/5
33/6 34/14 34/24 36/5 39/11 44/10 44/15
44/21 45/1 45/10 48/11 49/12 49/16

## G

go... [39]  49/22 52/24 54/12 54/16 54/23
56/9 57/9 59/3 59/12 60/6 69/22 70/20
72/8 72/8 72/25 76/10 78/23 81/15 83/17
86/7 86/11 89/2 89/7 89/21 90/24 93/18
97/1 97/5 97/22 99/23 100/8 100/16
101/12 104/2 105/14 105/18 105/24
105/25 106/1
goes [8]  13/5 13/9 14/25 23/1 23/8 23/8
23/24 24/2
going [100]  8/6 8/7 9/9 10/10 10/10 11/5
11/17 12/15 25/10 26/19 27/5 27/6 27/16
27/17 28/14 29/12 29/14 29/20 29/25
32/2 32/8 32/17 32/19 33/21 34/25 37/24
38/11 38/15 38/19 39/3 39/9 40/20 44/8
48/18 48/20 49/9 50/24 53/25 55/1 55/16
55/17 56/18 57/17 58/17 59/16 60/23
62/1 62/20 64/22 65/19 67/7 69/17 69/22
69/22 72/6 72/18 75/5 75/6 75/25 77/7
77/8 77/14 79/10 80/11 81/15 82/1 83/5
83/6 83/22 84/17 85/10 86/14 88/13
88/14 89/1 91/10 91/11 92/10 92/18
92/21 92/21 93/5 93/6 93/12 94/2 94/3
94/17 94/22 95/17 98/20 100/3 100/15
100/16 100/17 101/17 102/11 106/21
107/3 108/4 108/19
Goldberg [2]  36/19 41/11
gone [3]  51/3 51/4 62/20
Gonzalez [3]  13/23 23/19 24/3
good [21]  3/3 3/8 3/12 3/17 3/20 5/25
32/15 41/22 53/11 84/4 84/15 84/17
84/19 87/14 90/20 92/12 95/25 97/18
99/21 100/2 102/9
gosh [1]  65/6
got [18]  16/11 16/14 16/17 22/18 33/8
34/11 35/24 36/11 37/1 37/11 38/5 44/6
54/7 54/14 57/17 68/9 96/20 109/11
gotten [9]  46/9 50/9 50/10 67/17 67/20
74/14 86/20 89/13 96/19
government [3]  11/23 43/15 47/1
governor [1]  16/2
grab [2]  53/9 89/2
grabbed [2]  42/25 43/3
grabs [1]  55/3
graciously [1]  60/12
graduated [1]  48/6
grand [2]  57/13 57/15
great [5]  63/20 88/20 89/24 90/17 92/13
Green [4]  8/12 8/15 8/17 15/12
group [1]  86/17
guess [1]  73/16
guessing [1]  91/20
guidance [5]  28/8 67/24 68/4 68/16
70/24
guidepost [1]  50/15
gum [1]  85/8
guys [1]  47/25

## H

had [68]  4/9 5/8 6/15 7/20 8/9 9/16
10/23 15/1 22/19 24/6 26/5 26/9 28/16
28/24 28/25 30/5 34/16 33/19 38/6 38/8
38/17 38/22 39/1 39/14 45/23 47/12 54/5
56/4 58/8 60/4 67/2 67/5 68/10 69/4
70/24 71/2 72/12 73/16 73/17 73/17
73/21 73/24 74/2 76/22 78/8 82/20 84/11
93/7 93/8 93/10 93/11 93/11 95/15 96/18
98/13 99/2 100/11 100/12 101/9 101/16
102/1 102/5 102/14 103/12 105/9 106/15
106/18 108/15

half [7]  29/14 30/6 31/25 57/20 59/15
67/19 109/12
halted [1]  67/23
hand [2]  44/4 80/25
handwringing [1]  87/8
hanging [5]  81/10 83/3 89/25 91/4 103/6
happen [3]  37/19 95/17 95/17
happened [3]  37/19 52/11 53/3
happens [1]  55/16
happily [1]  30/18
happy [10]  11/1 15/20 22/16 28/23 57/14
73/15 77/20 77/25 87/12 104/2
harass [2]  17/6 20/7
harassing [1]  99/20
harassment [3]  17/15 20/6 21/14
hard [6]  56/6 72/16 81/19 83/16 83/21
106/7
harder [1]  97/1
has [81]  5/1 5/10 11/20 14/5 15/4 15/10
16/14 16/20 16/23 20/1 21/5 21/13 22/15
24/23 25/2 25/7 25/12 25/14 25/23 26/7
27/22 28/13 29/15 31/3 32/9 32/24 36/6
39/3 40/20 42/3 46/25 48/25 52/25 53/7
55/10 58/6 58/24 60/7 60/22 62/6 62/9
62/20 64/13 68/25 69/16 70/13 70/19
71/12 73/9 73/18 74/1 75/15 79/5 79/8
80/15 85/17 86/20 87/17 90/17 92/20
93/4 93/22 95/8 96/1 96/24 97/7 97/24
98/1 98/2 98/6 98/8 98/12 101/9 102/4
102/13 102/23 102/25 102/25 104/11
107/18 107/21
hasn't [1]  62/2
hat [1]  20/2
hate [1]  82/1
Havana [1]  99/9
have [290]
haven't [21]  10/6 14/2 15/1 15/8 15/17
19/5 26/9 31/25 39/16 46/7 50/9 50/10
51/5 59/1 62/11 67/17 67/20 83/9 106/15
107/5 108/15
having [13]  3/4 11/18 28/9 42/4 43/23
50/21 85/6 87/24 88/14 91/12 92/10
93/16 104/9
he [55]  3/18 3/21 9/8 9/9 9/15 9/20 9/25
10/1 10/5 10/12 10/13 10/14 10/20 11/4
11/13 21/1 21/2 22/23 24/5 25/14 25/23
26/6 26/7 28/25 29/15 29/15 29/21 29/23
29/25 32/10 36/1 38/2 38/5 38/7 49/24
53/16 57/17 57/17 57/18 58/5 59/25
67/14 73/23 74/4 80/10 80/11 80/15
80/16 80/16 82/16 85/18 89/25 90/3
93/10 93/18
he's [4]  10/19 24/3 32/13 54/10
head [6]  11/1 11/6 11/9 11/11 11/11
18/10
heads [2]  11/10 50/23
health [2]  30/17 46/22
hear [11]  13/25 17/17 26/19 41/20 71/24
95/15 97/9 99/22 101/11 103/23 103/25
heard [9]  7/10 14/2 14/7 15/17 15/17
16/12 31/25 80/13 110/6
hearing [28]  1/9 6/15 6/18 8/9 8/11 8/15
10/9 12/19 19/9 19/21 14/5 15/21 23/18
31/25 42/18 43/6 56/21 61/5 61/16 62/10
62/14 67/14 73/17 84/11 88/17 90/15
96/11 101/16
hearings [1]  88/7
hears [1]  84/15
heart [1]  24/22

heavily [2]  7/22 63/15
heavy [1]  77/22
held [4]  3/2 15/25 32/23 38/18
help [8]  25/18 52/21 64/21 66/10 66/18
74/10 75/6 85/13
helpful [2]  81/3 85/1
helping [1]  109/18
her [5]  23/10 71/3 71/6 92/18 104/1
here [71]  3/10 4/21 6/20 7/24 8/14 8/15
8/20 9/17 9/25 10/8 10/13 11/11 12/8
12/15 12/16 12/16 12/19 12/20 12/21
13/1 13/3 13/8 13/17 13/19 14/1 15/5
15/25 18/24 19/8 19/16 20/16 21/5 21/17
23/22 25/2 25/6 25/8 29/15 32/10 33/11
33/15 35/7 35/15 37/17 41/10 52/18 60/1
61/18 62/5 62/21 62/25 63/14 64/19
65/12 65/20 66/6 67/12 67/23 78/16
78/19 78/23 79/10 82/6 84/12 89/17 90/4
96/8 99/6 102/11 106/12 107/12
here's [2]  34/12 64/10
hereby [1]  110/4
hey [4]  19/10 45/14 70/19 90/6
high [3]  11/22 13/16 15/9
high-level [2]  13/16 15/9
high-ranking [1]  11/22
higher [1]  12/18
highlight [1]  12/15
highly [4]  9/9 20/10 21/21 76/20
him [8]  9/16 25/24 26/6 31/12 31/13
32/10 35/25 38/5
himself [2]  20/2 30/18
his [16]  10/17 11/6 11/18 20/4 20/6 23/6
29/16 29/21 29/23 30/2 53/16 64/9 64/10
73/24 93/10 93/23
history [1]  96/7
hit [14]  41/2 41/3 41/3 41/17 45/3 45/4
47/18 49/1 51/13 67/5 67/10 77/23 83/4
87/6
hits [7]  48/23 63/5 64/2 64/3 64/7 64/12
83/4
hogs [3]  58/2 58/3 58/18
hold [1]  34/1
Hollywood [1]  20/15
Honor [89]  3/8 4/10 6/9 7/3 8/25 14/4
14/5 18/12 19/19 22/14 22/16 25/14
25/22 26/2 26/15 27/7 27/18 27/22 28/6
30/7 31/25 32/23 33/1 33/4 33/10 33/22
35/2 35/15 38/18 39/14 41/22 46/12 47/6
48/13 49/3 49/15 51/8 52/4 58/1 58/4
58/5 58/18 60/14 60/24 61/12 61/15
62/13 62/14 63/17 64/21 66/22 69/9
70/16 70/24 73/11 73/20 73/21 74/11
76/7 78/17 79/4 80/10 80/13 81/13 85/16
85/22 85/24 86/19 88/18 95/2 95/6 95/8
95/25 96/10 99/24 100/9 100/23 101/13
101/21 102/20 103/2 104/17 104/25
105/12 106/6 108/10 108/13 109/4
109/17
Honor's [6]  6/17 33/18 37/14 38/3 38/14
89/23
HONORABLE [1]  1/10
hope [2]  27/13 66/23
hopefully [1]  82/16
hoping [1]  87/25
host [4]  51/1 57/8 57/16 58/16
hosting [3]  57/7 57/10 59/11
hour [3]  59/15 86/8 86/9
hours [14]  18/23 19/12 28/18 29/5 29/13
30/9 30/14 55/24 56/1 56/8 61/19 80/22
80/23 109/12

## H

house [1] 103/1
how [28] 9/20 11/17 12/4 13/10 17/2
20/22 26/11 47/4 56/1 64/4 64/14 66/10
66/14 66/17 69/6 75/24 76/1 79/14 79/14
79/22 86/14 87/3 87/8 91/16 92/6 93/4
101/15 105/22
however [2] 17/18 92/20
Hubbard [1] 15/23
huge [2] 62/15 67/2
hundred [2] 51/12 101/6
hundreds [1] 105/13
hurdles [1] 89/6
hurry [2] 87/3 87/21

## I

I'd [11] 6/16 8/10 9/24 10/13 12/3 12/6
12/11 20/14 105/24 105/25 106/1
I'll [2] 17/20 52/20
I'm [52] 4/6 6/19 8/13 8/15 9/19 11/1
12/15 13/13 15/20 17/13 17/24 22/16
27/4 30/3 30/22 31/1 32/12 32/12 43/5
44/4 44/7 44/17 46/3 47/7 47/20 49/12
49/14 51/10 52/17 56/21 57/1 63/1 66/10
66/14 67/7 68/24 71/24 78/10 78/17
78/23 79/19 79/23 84/2 84/10 85/11
85/12 89/20 101/13 104/16 104/17 105/5
107/7
I've [2] 56/4 95/15
idea [5] 15/12 46/23 71/18 76/18 92/17
identical [2] 62/5 102/24
identically [1] 60/19
identified [9] 21/10 23/16 24/11 29/9
44/19 44/22 60/18 63/12 78/20
identify [2] 76/8 86/1
identity [1] 63/12
if [116]
ill [1] 8/5
imagine [2] 29/14 52/23
immune [1] 12/22
immunity [6] 12/24 13/3 13/4 13/8 13/8
15/19
imperfect [1] 65/1
implementation [2] 17/2 20/5
implemented [1] 16/9
implementing [1] 14/23
important [4] 13/21 76/17 85/3 85/13
importantly [2] 9/18 63/8
impose [1] 68/11
impression [1] 38/8
impressions [2] 4/17 15/5
improper [2] 25/3 44/6
in [269]
in-house [1] 103/1
inaccurate [2] 64/4 64/14
inapposite [1] 13/8
inappropriate [1] 38/13
inaudible [18] 6/6 38/25 40/4 44/14
45/17 53/3 54/5 60/9 68/23 75/1 75/21
80/21 86/18 88/4 92/6 94/10 100/13
101/9
include [1] 35/14 53/9
included [2] 82/11 86/17
including [2] 4/13 21/6
incognito [1] 20/2
incomplete [4] 34/12 36/11 37/9 37/10
incompleteness [1] 46/4
inconvenience [1] 27/25
incorrect [1] 59/24
incredible [2] 28/19 108/20

incremental [3] 53/25 54/16 55/18
indicated [8] 29/18 39/3 54/16 55/14
36/6 37/5 37/15 38/17 38/20 55/14
individual [9] 8/15 9/7 9/8 13/7 47/20
49/16 56/2 98/2 108/19
individuals [30] 7/1 13/16 15/10 21/6
22/13 23/25 24/14 25/3 28/7 28/12 31/23
33/6 33/20 33/24 34/13 34/15 34/18 37/8
37/21 37/23 38/19 38/21 41/8 42/16
44/21 46/17 50/22 56/7 71/16 89/1
individuals' [2] 40/10 56/12
information [65] 14/2 18/16 18/18 18/21
18/24 27/12 35/6 36/4 36/6 40/7 41/15
42/10 44/4 46/22 49/17 51/19 54/1 54/18
56/11 59/12 60/5 61/7 61/11 61/14 62/9
72/3 73/23 74/15 74/18 74/20 74/22 75/3
75/10 75/11 75/14 81/6 81/7 96/19 96/23
97/25 98/1 98/4 98/7 98/8 98/14 98/17
99/12 99/15 100/1 100/16 100/18 100/20
102/5 102/19 103/18 103/19 104/10
104/12 105/3 105/4 107/19 107/21
107/24 108/2 108/4
INGERSOLL [2] 2/4 3/15 9/11
initial [2] 48/2 82/22
initially [1] 27/13
input [1] 77/8
inquire [4] 15/15 18/14 21/2 22/8
inquired [1] 18/5
inquiries [2] 4/17 15/17
inquiry [1] 17/8
inspect [6] 16/22 69/11 70/6 71/4 71/6
94/9
inspection [12] 59/22 69/13 69/15 69/20
69/22 70/10 71/3 93/7 93/14 94/2 94/11
101/1
inspections [8] 70/25 71/2 92/16 92/18
92/20 95/7 95/15 95/16
Instagram [1] 48/15
instance [7] 7/11 11/3 21/17 22/18 38/4
59/9 105/8
instances [1] 64/12
instigated [1] 10/16
institution [1] 20/4
instructions [1] 106/7
intent [7] 9/20 10/21 10/25 15/18 15/18
22/8 24/1
interest [1] 91/1
interesting [1] 12/14
interfere [1] 29/23
interference [1] 14/11
interject [1] 53/20
interpretation [1] 63/21
interrogated [1] 74/21
interrogatories [34] 83/11 95/21 96/3
96/9 96/13 96/16 96/18 97/4 97/8 97/11
97/14 97/16 97/19 97/20 98/11 98/21
99/6 99/13 99/25 101/4 101/10 101/18
102/2 102/10 102/14 104/11 105/14
106/9 106/11 106/18 106/6 108/11
108/22 108/24
interrogatory [5] 96/12 97/13 97/22 98/3
103/4
interrupt [1] 26/20
intertwine [1] 18/19
intertwined [1] 18/13
into [36] 3/5 4/17 5/23 15/14 17/8 18/5
20/24 21/2 23/9 23/25 25/11 32/4 32/8
36/9 36/24 39/1 43/15 43/25 44/23 53/22
54/23 55/5 55/9 56/1 56/12 56/16 59/15

69/22 72/9 83/12 93/5 94/3 94/18 100/16
99/2 17 99/23 12
intrusion [1] 56/12
intrusive [1] 18/20
invade [2] 5/7 27/16
invasive [1] 17/6
investigated [1] 106/25
inviting [1] 85/12
invoke [2] 27/24 28/9
involve [1] 51/17
involved [6] 4/21 28/13 29/7 30/1 103/12
108/1
involvement [6] 20/6 20/8 24/16 24/17
29/11 30/12
ironic [2] 43/22 43/25
irony [1] 84/24
irrelevant [1] 71/7
is [591]
isn't [7] 35/17 55/21 93/6 105/10 105/15
107/8 108/11
isolate [2] 46/15 48/12
isolated [1] 35/3
issuance [1] 38/1
issue [67] 3/21 3/21 4/1 5/14 6/11 6/16
11/15 11/15 12/2 14/7 16/18 17/1 22/2
24/11 24/22 25/4 25/19 26/9 29/4 31/2
31/21 36/13 36/14 38/4 38/5 38/6 41/24
45/11 45/12 46/21 51/21 52/12 54/11
55/21 56/15 58/9 59/3 59/10 59/14 60/3
60/15 61/3 61/25 63/2 63/9 64/16 64/22
67/12 67/17 69/13 71/1 76/5 78/15 81/25
85/17 85/17 87/20 89/4 92/25 93/8 95/3
95/5 96/6 99/24 100/3 108/17 109/2
issued [33] 8/11 8/24 25/13 30/22 32/19
33/19 38/7 38/11 39/4 39/20 40/8 40/11
40/13 42/20 42/21 42/22 42/24 49/13
50/5 50/6 60/21 63/11 68/14 69/9 70/23
73/22 74/4 77/18 80/12 80/13 82/14
98/10 108/24
issues [71] 4/22 7/8 7/9 7/10 13/23 18/9
20/8 22/4 23/14 23/22 27/1 27/10 29/24
30/17 32/3 32/17 37/21 42/19 43/16
43/21 43/23 46/18 53/11 59/4 60/14
68/15 72/12 76/12 82/5 95/23 97/5 97/12
97/13 100/5 101/19 104/7 107/3
it [403]
it's [23] 10/6 11/18 12/9 13/8 14/14 22/7
31/25 32/15 35/19 46/10 47/24 48/18
54/7 57/15 58/13 64/9 64/19 65/18 68/10
71/14 84/2 107/8 107/10
item [5] 7/4 7/7 24/13 60/9 83/12
items [2] 62/17 63/9
its [9] 14/10 19/7 32/25 59/5 64/25 78/5
87/18 98/18 108/3
itself [2] 23/20 66/12

## J

January [2] 29/21 73/13
JASON [4] 1/13 3/10 31/4 45/19
jemancari [2] 2/15 110/9
JESSE [2] 2/4 3/14
jesse.stolow [1] 2/7
jest [1] 56/6
jkoslowe [1] 1/17
Joanne [3] 2/14 110/8 110/8
job [3] 94/5 109/13 109/18
Joe [2] 7/4 9/6
joined [1] 3/9
joining [2] 3/18 3/19
judge [48] 1/10 3/17 5/1 7/13 9/16 9/18

## J

judge... [42]   19/21 19/22 24/10 25/12
26/5 32/7 32/23 38/2 38/13 42/9 42/17
43/14 44/16 45/10 45/12 49/20 56/18
58/4 58/8 58/24 59/19 60/22 61/1 61/18
62/4 66/4 67/12 68/7 69/12 70/17 72/22
77/3 77/16 79/18 97/7 97/12 100/10
100/14 100/19 103/22 103/24 108/18
judge's [2]   81/17 107/14
judgment [7]   10/11 20/20 21/12 21/12
61/9 100/16 100/17
judicial [3]   4/20 4/21 13/7
judicious [2]   28/11 28/21
July [2]   96/10 101/16
jumps [1]   95/4
just [151]
justify [1]   107/12

## K

Kathy [1]   21/9
keep [5]   45/15 77/21 80/5 82/1 109/12
kept [2]   81/8 108/2
key [8]   9/6 24/6 24/11 24/13 28/15 67/12
67/22 77/22
Kimberly [1]   12/7
kind [10]   16/5 43/16 43/25 53/11 65/4
65/8 78/10 93/15 99/1 105/22
kindly [1]   80/16
kinds [1]   94/14
knew [4]   38/23 42/20 106/17 106/18
know [73]   3/20 4/8 5/23 6/19 7/12 8/18
8/20 9/11 11/5 11/17 13/11 14/23 15/18
22/13 23/11 26/11 28/3 28/12 28/19
29/25 31/9 33/11 34/22 34/23 35/9 36/2
36/24 37/2 37/9 37/24 38/6 38/21 39/18
39/18 39/19 39/20 39/25 42/11 42/11
46/17 46/19 50/7 52/10 52/15 53/4
53/14 53/21 54/20 55/11 55/20 58/17
58/18 58/22 65/1 69/16 72/11 72/18
73/16 79/10 81/24 85/22 86/21 86/23
87/1 87/3 88/3 88/7 93/4 94/14 96/7
96/8 106/2 109/18
knowing [3]   6/1 10/17 87/17
knowledge [2]   9/6 22/11
known [1]   58/8
knows [4]   37/10 37/22 54/10 100/1
KOSLOWE [10]   1/13 3/10 31/4 31/19
32/7 32/14 46/13 56/24 85/17 91/6
Koslowe's [1]   49/20

## L

la [1]   34/7
lack [2]   55/8 67/22
lacked [2]   73/23 93/15
language [2]   12/19 14/20
last [12]   29/21 35/17 55/1 72/12 72/17
83/12 95/3 95/21 98/23 99/7 99/15
105/22
late [3]   28/22 98/14 98/19
later [5]   23/8 31/12 81/25 82/21 93/15
law [13]   5/11 11/20 13/3 15/7 17/8 19/6
21/25 22/5 24/23 26/16 48/7 48/7 106/18
laws [3]   16/23 17/2 17/4
lawsuit [1]   93/9
lawyer [8]   30/12 56/1 59/19 70/8 76/9
86/1 86/1 86/5
lawyers [4]   33/23 51/14 58/16 76/10
lay [1]   36/15
layout [1]   66/12
leads [2]   90/7 95/3

least [7]   4/1 58/14 58/20 75/15 84/18
92/8 108/13
leave [4]   59/2 93/24 102/9 109/6
leaves [1]   90/25
led [1]   68/4
left [6]   18/7 25/21 41/12 58/7 92/6 92/11
legal [4]   11/25 18/13 18/14 58/6
legislation [6]   16/3 16/8 16/14 16/16
17/10 20/22
legislative [24]   4/7 4/19 4/22 4/25 5/5 7/5
10/3 14/24 15/19 16/1 17/1 18/1 18/8
19/2 20/10 21/25 24/9 24/19 25/5 25/8
26/6 26/11 26/23 27/11
legislature [1]   16/1
length [2]   7/6 100/8
lengthy [1]   73/17
less [4]   62/18 63/8 63/16 93/18
let [23]   12/7 12/17 13/11 24/25 25/12
31/9 32/10 41/20 45/19 47/11 48/11
56/25 61/2 64/24 66/21 70/8 76/4 88/10
91/16 92/14 94/14 97/9 99/22
let's [26]   4/2 6/2 6/2 28/1 43/5 49/9
49/11 54/24 64/1 67/7 71/9 78/17 78/21
79/13 86/4 86/4 86/5 90/6 91/2 91/2
91/15 91/23 96/14 96/14 96/15 101/18
level [6]   13/16 15/9 15/11 15/14 29/11
52/16
leveled [1]   94/15
license [3]   20/5 57/13 102/25
licenses [1]   69/5
lie [1]   23/10
life [1]   48/8
lift [1]   77/1
light [3]   8/5 25/18 77/21
lightly [1]   32/1
like [61]   5/12 6/16 8/10 8/18 9/1 9/24
10/12 10/13 11/24 12/4 12/6 12/11 15/2
15/20 17/12 20/14 23/13 29/2 30/4 30/16
31/7 31/14 34/13 36/1 41/2 45/20 46/16
48/2 49/17 51/23 53/4 55/6 57/12 57/15
57/16 58/17 59/6 61/23 65/6 69/6 69/16
71/24 73/9 73/11 73/13 75/18 76/6 77/5
77/7 77/13 82/7 84/15 84/17 85/6 87/16
89/25 93/13 93/16 94/13 95/5 102/12
likely [4]   40/7 75/13 81/8 102/7
limit [8]   17/15 27/22 27/23 96/12 96/12
97/17 97/17 102/18
limited [2]   56/12 102/3
limiting [1]   85/25
limits [1]   15/6
line [10]   36/5 37/9 37/14 48/1 63/22
64/10 65/21 65/22 76/7 90/23
liquor [2]   20/5 102/25
LISETTE [1]   1/10
list [18]   23/23 34/5 35/1 35/2 35/3 36/18
40/2 40/4 42/7 42/7 49/11 54/12 97/24
98/16 103/13 104/19 105/8 106/6
listed [5]   7/1 7/4 9/4 9/5 101/7
literally [1]   35/16
litigation [5]   13/4 25/24 46/9 71/12 73/12
little [20]   6/14 8/10 10/12 11/19 12/18
12/20 25/21 31/16 31/24 53/7 55/5 63/20
72/18 74/25 80/4 87/8 87/22 99/9 107/4
107/4
live [1]   108/21
LLC [1]   1/3
logistical [1]   89/3
long [9]   5/24 15/7 52/23 71/2 81/19 86/2
86/3 92/6 105/22
long-standing [1]   15/7

longer [3]   17/21 78/11 101/17
look [23]   3/24 34/14 36/19 39/23 40/1
47/15 49/6 49/7 62/23 63/3 67/5 67/6
67/9 67/16 75/5 75/21 76/20 84/25 93/24
94/4 95/6 104/19 104/22
looked [3]   7/3 33/7 105/17
looking [19]   36/16 40/21 55/6 55/16 64/8
64/9 66/11 66/12 67/1 68/3 68/8 68/24
68/25 70/11 72/2 72/3 74/12 78/23 92/15
looks [2]   36/1 69/6
LOPEZ [7]   1/13 3/10 95/22 99/23 101/12
103/25 104/15
lot [28]   3/24 7/8 14/6 22/4 30/11 30/11
54/7 57/24 57/25 58/24 61/3 67/20 67/20
70/9 75/14 76/2 77/12 78/14 83/7 83/22
85/10 90/20 92/7 96/21 97/12 98/11
109/11 109/19
lots [2]   21/20 55/5
Louis [1]   9/16
love [1]   73/19
low [5]   81/10 83/3 89/25 91/4 103/6
low-hanging [5]   81/10 83/3 89/25 91/4
103/6
lower [2]   15/11 15/14
lower-level [2]   15/11 15/14
luckily [1]   95/23
luxury [2]   63/10 79/2

## M

machine [1]   54/6
MAD [1]   1/3
made [3]   20/24 34/15 67/24
MAGISTRATE [1]   1/10
magnitude [1]   80/2
maintain [1]   46/2
maintained [1]   44/5
maintaining [3]   56/20 57/21 57/23
majority [2]   10/6 38/21
make [30]   3/22 5/21 13/13 25/2 27/11
33/17 36/7 44/17 45/4 45/5 47/23 48/4
49/2 53/11 61/2 62/3 62/12 66/21 70/8
76/25 78/15 80/3 81/3 84/7 90/19 94/25
101/17 102/13 104/4 109/1
makes [1]   14/17
making [3]   10/16 19/10 76/22
manager [4]   11/12 19/14 23/18 50/22
Mancari [3]   2/14 110/8 110/8
manner [4]   25/10 40/16 41/19 44/5
manually [1]   105/17
many [7]   22/25 23/13 56/1 69/6 72/19
75/24 89/5
MAR [1]   1/13
March [2]   41/25 78/3
MARIA [4]   1/12 3/9 65/13 65/25
Marrero [2]   35/11 41/10
Marrero's [1]   35/24
married [1]   5/23
match [1]   94/6
material [2]   40/25 46/4
materially [2]   36/11 37/9
matter [20]   6/11 9/17 10/23 14/19 14/21
14/22 17/12 20/25 23/18 28/23 49/5 50/4
64/6 71/25 74/8 75/24 76/1 84/14 85/11
110/6
matters [2]   22/6 30/23
mature [1]   108/11
may [17]   6/15 8/3 8/9 8/11 12/2 14/5
29/3 29/21 31/3 32/7 36/22 51/19 53/4
54/9 65/2 65/3 84/25 91/18
maybe [3]   41/25 46/19 46/20 46/21 83/2

**M**

me [37]  6/5 12/7 12/17 24/25 25/12 26/13 29/3 32/1 33/5 35/1 35/2 41/20 44/2 44/8 45/19 45/21 45/23 47/11 48/6 48/10 48/11 54/18 56/25 61/2 67/3 72/14 76/4 77/3 88/25 89/2 92/2 92/11 92/14 97/9 99/22 101/10 105/19
mean [17]  19/5 21/21 32/8 44/16 45/22 46/3 46/9 48/6 59/4 66/5 66/25 81/2 84/9 88/7 94/5 95/6 105/24
meaning [2]  10/9 52/25
meaningful [1]  52/23
means [1]  63/25
meantime [1]  90/10
measure [3]  19/13 64/14 64/15
measures [1]  91/17
measuring [1]  20/3
medical [1]  28/25
meet [5]  45/22 76/23 78/16 90/6 104/9
meeting [2]  29/22 35/19
meetings [2]  56/5 56/7
members [2]  4/18 10/7
memos [1]  65/10
Mendez [9]  5/14 7/7 7/25 8/2 11/8 28/13 30/9 36/20 41/11
Mendez's [2]  7/19 23/23
mental [2]  4/17 15/5
mention [1]  86/24
mentioned [2]  20/1 22/15
mere [2]  96/3 99/10
merits [2]  10/19 64/24
message [5]  36/19 36/20 52/24 54/22 55/8
messages [25]  32/17 32/18 34/19 34/21 35/4 36/10 36/11 36/13 36/25 37/7 43/20 46/10 46/15 48/12 48/14 48/15 50/18 51/5 51/6 51/22 51/22 52/4 52/22 54/19 55/4
met [1]  100/11
metadata [8]  34/23 43/21 43/23 43/24 44/1 44/3 44/7 47/3
metadate [1]  44/21
method [12]  33/4 33/9 33/15 33/21 33/25 37/15 37/16 38/17 38/20 39/11 56/10 106/10
methodology [2]  65/2 91/9
metric [1]  64/4
metrics [3]  65/4 65/8 91/20
mfehretdinov [1]  1/17
Miami [7]  1/4 1/6 1/16 2/5 2/10 34/20 35/8
miamigov.com [1]  2/11
middle [4]  12/9 35/15 35/16 89/24
might [9]  22/23 45/22 47/14 48/8 55/7 55/7 71/19 72/11 106/13
MILLER [2]  1/14 3/9
million [1]  51/11
mind [2]  22/23 26/5
minds [1]  10/25
minimize [1]  27/25
minimum [1]  17/15
minute [2]  97/5 99/7
minutes [1]  32/10
misconception [1]  37/17
misrepresentation [1]  37/15
miss [1]  67/10
missed [1]  37/10
missing [2]  35/7 37/11
mistake [1]  109/20
misunderstanding [1]  63/20

mitigated [1]  47/5
mixed [1]  51/19
modicum [1]  53/20
moment [1]  87/14
Monday [6]  88/18 90/12 91/22 91/22 94/20 95/6
money [5]  57/24 57/24 58/25 67/15 74/9
months [6]  7/18 60/11 60/25 68/10 73/22 80/14
moonshot [2]  90/18 90/19
Morales [1]  41/11
more [43]  4/25 6/7 9/18 12/20 26/14 28/18 29/5 30/9 35/22 36/5 39/5 54/3 54/4 54/8 54/8 54/9 55/18 57/18 62/9 63/8 64/7 64/14 71/14 71/20 71/22 72/19 73/25 74/25 80/4 91/20 93/18 94/7 97/19 97/21 99/17 100/20 102/12 102/14 103/22 104/4 104/4 104/6 104/16
moreover [2]  22/5 68/14
morning [1]  59/21
most [21]  8/22 40/4 40/7 41/15 46/18 50/13 59/14 63/5 63/22 64/7 76/19 81/9 82/16 84/6 84/7 85/1 85/3 85/13 91/9 99/8 103/19
mother [1]  8/4
motion [13]  4/11 9/18 10/8 10/9 21/12 21/24 26/7 59/20 61/9 94/19 95/14 100/17 100/24
motions [4]  73/13 81/20 106/21 107/23
motivated [1]  76/20
motivation [1]  16/13
motivations [2]  15/6 16/2
motive [6]  9/22 10/8 10/21 22/8 24/12 24/21
motives [2]  17/21 19/2
move [2]  31/19 81/13
moved [1]  30/14
moving [5]  29/23 84/22 87/20 88/13 109/12
Mr [1]  49/9
Mr. [71]  3/10 3/11 8/12 8/15 8/17 10/16 11/5 15/12 23/10 23/11 31/4 31/19 32/7 32/9 32/14 34/7 34/7 34/7 34/8 34/8 34/8 34/8 34/9 35/11 35/13 35/24 35/25 36/1 36/19 41/10 41/12 46/13 46/25 49/11 49/11 49/20 51/9 51/18 52/15 54/21 56/24 58/22 59/7 60/2 60/12 60/12 61/3 61/7 61/20 61/22 62/9 62/20 63/4 64/8 64/11 69/14 72/21 73/18 74/17 82/15 83/3 83/14 85/17 85/24 91/6 97/1 103/7 104/3 104/6 105/11 105/21
Mr. Cagnin [1]  34/8
Mr. Carollo [5]  10/16 11/5 23/10 23/11 34/7
Mr. Colina [1]  41/12
Mr. de [1]  34/7
Mr. Fernandez [16]  46/25 51/9 51/18 58/22 59/7 60/2 61/3 69/14 72/21 74/17 97/1 103/7 104/3 104/6 105/11 105/21
Mr. Forfieri [1]  34/9
Mr. Fuller [2]  64/8 64/11
Mr. Fuller's [1]  61/7
Mr. Goldberg [1]  36/19
Mr. Green [4]  8/12 8/15 8/17 15/12
Mr. Jason [2]  3/10 31/4
Mr. Koslowe [5]  31/19 32/7 32/14 46/13 56/24 85/17 91/6
Mr. Koslowe's [1]  49/20
Mr. Marrero [1]  35/11
Mr. Marrero's [1]  35/24

Mr. Noriega [1]  34/8
Mr. Perez [1]  34/8
Mr. Plasencia [1]  41/10
Mr. Pons [3]  35/13 35/25 36/1
Mr. Roberts [14]  32/9 52/15 54/21 60/12 61/20 61/22 62/9 62/20 63/4 73/18 82/15 83/3 83/14 85/24
Mr. Russell [1]  34/8
Mr. Ryan [1]  3/11
Mr. Short [1]  60/12
Mr. Smith [2]  49/11 49/11
Mr. Watson [1]  34/7
Ms [1]  11/7
Ms. [39]  3/10 5/20 7/7 7/19 7/25 9/12 11/8 13/12 15/4 19/18 20/1 22/15 26/10 28/13 30/9 30/25 34/7 36/20 36/22 36/22 45/1 45/1 60/22 62/12 70/15 71/1 82/20 84/10 90/12 91/6 92/17 93/14 95/4 95/22 96/1 99/23 101/12 103/25 104/15
Ms. Bridgeman [1]  34/7
Ms. Coral [1]  3/10
Ms. Dooley [1]  36/22
Ms. Fehretdinov [13]  5/20 13/12 15/4 19/18 26/10 45/1 60/22 62/12 70/15 91/6 93/14 95/4 96/1
Ms. Fehretdinov's [1]  84/10
Ms. Lopez [5]  95/22 99/23 101/12 103/25 104/15
Ms. Mendez [5]  7/25 11/8 28/13 30/9 36/20
Ms. Mendez's [1]  7/19
Ms. Perez [1]  36/22
Ms. Rodriguez [7]  20/1 22/15 30/25 45/1 71/1 82/20 92/17
Ms. Rodriguez's [2]  9/12 90/12
Ms. Victoria [1]  7/7
much [4]  27/12 30/3 55/18 109/16
multiple [2]  10/23 28/25
mutually [1]  81/21
my [23]  3/10 6/19 13/14 20/17 26/20 26/25 27/11 31/4 48/10 57/3 72/13 72/15 79/18 91/15 93/11 93/12 93/15 98/23 101/16 105/20 107/5 109/14 110/5

**N**

name [3]  5/21 49/9 101/23
names [6]  76/9 86/1 86/1 86/16 86/25 107/16
narrow [6]  61/24 62/11 100/3 104/3 106/11 107/15
narrowed [3]  71/10 71/12 89/19
narrowing [2]  84/12 99/25
narrowly [2]  77/4 96/22
NASA [1]  90/18
nature [2]  5/5 75/15
necessarily [4]  30/1 37/4 54/12 59/8
necessary [7]  29/6 29/7 35/5 71/12 91/12 98/19 102/18
necessity [1]  24/8
need [56]  7/8 8/21 12/3 15/4 15/18 18/8 24/21 28/22 30/4 31/15 36/7 45/6 54/12 59/18 60/6 60/10 61/7 65/6 66/18 66/19 67/6 67/8 67/23 70/23 71/6 72/23 74/4 74/21 75/7 75/17 75/21 77/20 77/22 78/8 78/13 78/22 82/25 83/9 83/23 84/6 84/18 86/11 88/11 90/23 91/18 92/22 94/1 95/21 96/23 97/3 97/5 99/10 100/1 100/14 103/25 104/5
needed [2]  3/22 8/5
needs [6]  23/25 47/19 80/17 81/13 104/6

**N**

needs... [1] 108/8
neither [3] 10/8 60/1 74/15
never [7] 7/5 26/5 28/17 69/24 74/14
86/19 95/12
nevertheless [1] 12/3
new [23] 4/8 4/10 5/16 6/11 25/13 48/9
63/11 63/23 65/5 66/8 68/9 74/3 77/3
77/4 78/6 99/14 99/19 102/9 106/24
107/8 107/8 107/11 107/12
newly [1] 6/11
next [23] 3/19 23/1 26/20 59/14 72/20
73/10 73/11 79/10 82/17 83/25 84/22
84/22 85/12 88/15 88/16 89/12 89/24
89/24 90/15 91/3 91/25 92/3 95/5
night [1] 22/21
nine [1] 7/20
no [55] 1/2 4/21 5/2 5/22 7/4 7/7 11/12
12/3 16/4 16/21 17/7 17/21 18/22 24/14
24/23 27/6 27/15 29/1 30/9 31/6 34/24
36/1 36/18 42/17 43/20 43/24 52/25 60/9
64/2 64/13 71/1 71/4 71/8 73/10 74/7
78/11 80/16 83/7 86/24 95/15 98/4 98/5
98/7 98/9 99/14 99/15 99/17 99/17 99/18
101/17 102/22 102/24 103/10 105/25
107/11
none [5] 34/21 34/21 35/9 103/5 103/9
nonresponsive [1] 47/10
nor [3] 10/8 60/1 74/15
Noriega [2] 34/8 41/10
normal [2] 56/9 108/3
normally [3] 39/11 55/6 55/9
Nos [1] 105/25
nose [1] 79/9
not [157]
note [1] 29/17
noted [3] 67/2 82/16 85/22
notes [1] 21/19
nothing [16] 14/24 16/6 16/14 16/20
16/23 25/1 45/5 62/6 69/17 74/1 79/8
92/24 93/18 93/18 94/7
notice [2] 16/12 16/15
noticed [3] 9/2 31/3 31/17
notices [2] 69/1 69/1
notion [2] 52/22 52/23
November [9] 1/5 43/22 59/17 73/6
73/15 78/5 78/6 82/22 110/8
now [62] 4/4 4/5 6/22 7/14 12/3 13/17
14/8 14/17 18/6 18/8 22/12 27/3 27/9
34/2 36/10 37/4 37/12 38/6 38/21 39/8
39/22 42/10 42/10 42/11 49/5 49/24
57/18 60/17 61/11 62/16 65/18 68/14
71/10 71/25 78/12 79/13 84/16 84/16
84/16 87/24 87/25 88/5 89/17 89/20 90/7
94/4 94/21 94/22 96/1 96/5 96/6 97/8
98/14 99/6 99/17 100/6 101/1 101/2
101/19 106/8 106/20 108/17
number [16] 4/1 4/12 9/5 46/16 46/17
63/1 63/16 65/21 65/22 67/2 67/3 67/11
74/24 93/8 93/9 108/1
numbers [1] 65/25
numerous [5] 4/15 5/17 11/4 13/2
106/22

**O**

object [2] 61/17 94/1
objected [1] 96/1
objection [10] 4/8 7/13 8/23 8/24 17/16
26/17 43/9 61/16 61/21 106/13
objections [22] 4/16 5/19 24/18 30/11
33/24 50/7 60/3 68/24 78/15 79/1 95/9
98/12 97/10 100/2 102/18 105/20 106/19
107/5 108/14 108/16 108/23 109/1
obligation [2] 43/24 51/15
obligations [1] 27/22
observed [2] 38/2 38/18
obtain [3] 58/6 96/25 102/5
obtained [7] 7/23 15/10 15/11 16/9 18/18
18/24 107/21
obviously [5] 14/14 35/19 72/15 93/20
106/16
occasional [1] 42/14
occupancy [1] 99/19
occupational [1] 69/4
occur [1] 69/23
occurred [2] 6/14 69/19
odd [2] 37/7 57/7
off [19] 15/6 18/10 29/20 32/8 40/25
41/12 44/10 44/16 44/24 47/15 49/1
54/20 55/7 55/7 55/9 55/21 57/2 67/10
104/12
offense [1] 73/10
offered [2] 22/14 57/19
offering [2] 56/14 58/12
office [3] 2/9 3/16 23/2
official [1] 5/3
officially [1] 71/5
officials [9] 4/13 8/21 11/23 14/10 15/11
15/14 15/15 16/17 28/2
often [1] 64/7
oh [2] 32/13 38/6
OK [55] 3/6 3/12 3/20 3/24 5/20 7/15
7/25 8/11 8/23 18/3 18/6 19/17 26/19
28/1 31/18 31/21 32/16 33/13 39/24 40/5
41/20 43/3 48/24 49/6 49/15 54/18 55/22
56/10 65/12 70/11 70/12 71/9 73/4 78/18
84/16 85/15 86/5 92/4 92/9 94/8 94/16
94/17 95/18 96/14 97/9 98/25 100/19
101/9 101/17 103/21 105/2 107/13 109/3
109/10 109/11
old [1] 58/1
Oliveri [1] 21/8
omnibus [1] 4/11
on [218]
once [6] 18/9 27/3 28/17 42/23 43/18
67/4
one [65] 4/1 5/24 11/24 12/15 19/7
21/19 22/24 23/22 24/16 26/3 32/4 32/4
32/4 32/21 32/21 33/15 34/10 37/1 37/7
37/7 37/14 39/22 40/14 44/2 44/3 44/20
46/8 46/12 46/16 50/22 50/22 53/11 56/5
57/23 58/3 59/22 59/22 62/22 63/3 64/2
64/8 64/13 65/19 72/5 79/5 81/22 82/23
86/20 89/16 89/20 89/24 93/8 95/21
97/25 98/1 98/4 98/6 98/9 98/11 99/14
99/15 99/19 100/24 104/2 107/11
one-day [1] 81/22
ones [11] 37/11 39/1 39/7 40/3 62/5 85/1
90/1 97/15 102/21 103/5 103/7
ongoing [1] 68/6
only [34] 4/4 5/3 6/12 6/12 8/23 15/9
16/4 18/17 19/7 19/10 22/7 22/22 31/13
33/2 33/25 38/17 39/10 48/10 48/12
48/14 48/14 48/18 48/25 51/17 53/25
59/25 62/17 72/19 82/23 88/25 96/24
102/3 103/14 103/16
onto [7] 40/25 44/24 47/17 52/1 52/3
57/3 57/4
open [3] 47/21 47/25 94/10
operative [1] 14/6 77/19 82/10

opinion [3] 21/18 22/19 74/4
opinions [3] 4/17 73/24 89/23
opportunity [9] 16/12 16/15 26/5 93/11
95/15 98/13 101/9 102/5 108/13
opposed [1] 75/1
opposing [2] 5/18 67/3
opposite [3] 20/13 22/6 24/24
opposition [1] 21/20
option [2] 56/19 81/23
or [83] 4/8 4/9 4/17 4/19 4/20 5/7 5/8
6/10 11/25 14/15 14/18 15/6 15/10 15/21
16/10 18/14 19/3 19/6 19/13 25/8 27/23
28/22 28/22 30/17 30/17 34/2 38/23
39/12 40/8 40/11 40/13 40/13 44/11
46/24 50/4 51/19 52/17 54/11 54/24 55/7
55/7 58/22 58/3 61/9 62/1 64/20 65/3
66/12 66/17 67/8 67/20 69/17 69/18 72/3
74/24 74/24 76/9 77/6 77/24 79/6 79/19
80/14 82/6 84/13 91/22 93/2 93/3 93/13
96/1 99/25 100/25 101/1 101/6 101/6
101/6 102/4 102/5 102/6 102/19 104/4
104/4 104/10 104/20
order [45] 4/11 6/17 6/20 6/24 7/11 7/11
7/14 8/11 8/24 9/15 12/1 13/15 20/21
21/24 22/3 25/11 25/13 25/18 27/11 28/8
33/10 33/18 37/14 38/3 38/8 38/14
39/15 41/23 41/25 42/3 42/4 42/8 43/19
49/15 56/16 58/4 59/20 60/22 73/23
81/18 86/22 87/6 90/17 94/25 108/22
order/quash [1] 59/20
ordered [7] 42/6 52/4 58/7 58/10 58/11
68/7 100/10
ordering [2] 60/23 84/16
ordinances [4] 4/23 14/18 16/10 18/2
19/3
organization [2] 5/13 43/17
originally [2] 33/19 102/14
other [58] 4/19 7/16 10/19 11/10 13/23
15/13 17/9 19/5 19/11 22/6 23/13 23/16
29/19 29/24 29/24 31/7 31/15 32/18
36/13 37/2 37/23 37/23 44/19 46/7 54/7
58/3 62/22 62/24 64/3 66/11 67/1 69/2
70/2 70/5 70/7 70/18 71/18 71/22 73/25
74/13 75/14 75/18 77/14 78/21 80/3 82/3
83/9 91/17 92/25 94/18 94/18 101/7
101/7 101/15 102/24 103/7 103/18
109/20
others [5] 14/10 35/14 36/19 64/13
65/23
otherwise [6] 30/17 31/14 51/22 68/13
86/13 95/12
ought [1] 47/3
our [67] 3/18 5/18 9/22 19/24 19/25 20/3
20/7 21/1 21/4 21/22 26/16 28/12 28/14
28/21 29/9 36/24 40/22 40/23 41/14 43/2
45/8 46/19 46/20 47/11 47/25 49/11 52/1
53/8 55/13 56/19 56/20 57/11 58/5 58/7
58/16 58/22 60/9 63/9 63/11 65/11 67/15
67/25 68/17 69/24 70/2 71/3 75/9 76/8
76/25 78/5 79/11 80/11 81/15 82/19 88/3
88/10 91/17 96/21 97/6 100/23 102/19
103/11 104/9 106/16 108/10 109/18
109/20
ourselves [1] 47/9 90/7
out [61] 3/5 3/5 10/12 12/9 17/4 20/2
20/17 23/24 24/1 27/20 34/5 37/6 37/20
37/20 37/22 42/4 48/18 52/9 53/8 54/7
54/17 54/22 56/14 57/9 57/10 60/5 65/17
68/7 70/18 72/13 72/14 76/6 76/10 78/22
79/7 79/11 80/16 81/15 84/4 85/2

**O**

out... [20]  85/6 85/12 85/18 86/2 86/4
86/5 86/7 86/9 86/10 87/21 88/14 88/16
89/18 96/15 101/8 105/16 105/23 106/8
106/10 106/11
outlined [1]  43/10
outlines [1]  10/1
outside [1]  74/19
outweigh [1]  46/5
outweighs [1]  102/6
over [25]  19/12 21/9 26/3 28/13 28/14
28/25 32/25 35/7 44/4 44/13 45/23 62/3
65/7 72/1 72/4 78/14 84/21 84/23 85/10
86/13 88/15 89/17 98/21 105/22 106/1
overarching [1]  37/14
overbroad [3]  62/8 71/14 97/14
overlap [1]  64/17
overly [3]  83/7 107/25 108/20
overstate [1]  64/16
own [6]  31/9 34/15 36/15 57/10 70/3
93/23
owned [2]  53/13 53/15

**P**

P.A [1]  1/15
P.C [1]  2/4
package [1]  32/3
page [13]  8/14 9/19 10/1 10/13 12/12
22/19 23/6 23/8 24/12 33/14 48/9 63/3
104/15
pages [2]  1/7 106/7
paid [2]  28/2 38/23
pair [1]  37/1
pale [1]  99/11
paper [3]  52/23 94/23 105/6
papers [1]  51/20
paragraph [1]  33/14
parallel [2]  9/16 85/5
pardon [2]  35/1 35/2 48/10
part [15]  7/3 17/22 17/24 19/24 20/4
20/19 29/18 29/18 48/20 61/11 75/15
76/16 76/17 106/6 106/7
part-time [2]  29/18 29/18
participated [1]  10/15
particular [6]  6/7 9/2 26/17 73/25 91/9
105/9
particularly [1]  47/1
parties [17]  19/21 25/11 27/10 27/12
59/25 60/6 68/12 68/16 70/19 70/19 71/4
71/15 71/16 94/20 94/23 95/16 102/1
party [17]  40/23 44/9 47/12 52/2 57/1
57/4 57/14 59/16 67/7 86/20 87/6 87/16
87/17 94/2 94/13 95/9 102/4
passed [3]  20/11 20/22 59/8
passing [1]  24/20
past [4]  73/10 85/18 85/19 104/3
pattern [1]  21/14
pay [20]  37/23 40/22 41/5 41/16 47/8
48/2 49/4 51/2 52/2 56/14 56/19 57/8
57/11 57/19 58/12 58/15 58/16 58/21
59/12 70/21
paying [1]  109/18
pays [1]  57/10
PDFs [1]  72/17
pending [3]  95/9 95/14 98/12
people [20]  9/5 10/23 11/18 13/20 16/9
19/11 22/17 28/16 34/25 36/15 37/18
37/24 40/21 49/6 55/16 67/21 76/8 76/11
83/8 94/14
per [3]  40/24 46/1 57/13

percent [3]  65/7 86/5 103/1
peremptory [1]  35/1
Perez [3]  34/8 34/9 36/22
perfect [2]  53/11 92/7
perhaps [9]  12/2 54/2 58/19 63/20 68/3
81/23 81/25 88/18 94/21
period [7]  25/21 55/7 56/3 56/13 58/19
68/7 105/18
permit [3]  13/19 77/15 103/20
permits [4]  66/12 66/16 67/1 69/3
permitted [1]  30/5
person [6]  9/5 9/6 11/13 19/7 28/15
53/16
personal [15]  20/6 20/8 20/8 24/16 24/17
42/2 42/14 43/15 44/12 46/18 47/10
47/24 48/5 48/8 53/17
personally [1]  25/24
phone [21]  37/6 39/1 40/24 40/25 43/1
44/23 45/24 46/1 46/14 48/8 49/12 49/14
52/25 53/16 54/23 55/1 55/24 56/3 56/8
57/2 57/13
phones [49]  33/3 33/6 34/14 34/16 37/18
37/21 37/24 37/25 38/7 38/7 38/11 38/12
38/18 38/22 39/4 39/6 39/17 39/20 39/21
40/8 40/10 40/11 42/2 42/5 42/13 42/14
42/19 42/21 42/22 42/24 43/5 43/10
43/11 43/15 44/10 45/13 45/15 45/16
49/22 53/13 53/15 53/17 55/16 56/6
56/13 57/16 57/25 59/4 59/5
photos [1]  48/15
phrase [1]  58/1
physical [2]  92/16 92/18
physically [2]  93/10 93/16
pick [4]  19/11 49/22 49/23 49/25
picked [1]  19/10
picking [2]  11/16 37/5
picture [1]  53/7
pictures [1]  53/8
pigs [3]  58/2 58/2 58/18
pinpointed [1]  101/1
pipeline [1]  80/1
place [9]  8/8 21/15 42/16 51/24 55/12
74/14 81/7 87/5 91/8
places [1]  65/24
plaintiff [25]  1/4 1/12 4/2 4/8 21/13 21/18
25/3 28/3 57/19 61/6 71/24 73/4 74/7
76/5 85/15 86/18 92/15 93/1 93/5 94/25
101/11 108/8
plaintiffs [45]  3/7 4/24 6/18 6/24 13/5
16/10 28/14 32/5 32/22 40/19 43/7 49/4
50/2 50/19 53/23 56/14 58/25 59/9 72/11
75/4 75/12 76/23 76/24 77/3 77/10 80/5
80/7 80/9 81/4 82/2 82/8 83/19 84/6
85/12 87/23 88/22 89/7 89/14 90/23
91/12 91/16 92/25 95/7 96/2 107/13
plaintiffs' [17]  4/4 7/2 10/15 25/1 40/1
40/21 47/2 50/25 58/23 59/11 71/6 93/8
93/22 94/4 94/9 94/10 95/23
plan [2]  20/20 67/21 78/7 88/23
plans [2]  93/20 93/21
Plasencia [1]  41/10
platform [21]  41/1 44/23 44/24 47/13
47/17 47/21 48/2 49/5 50/24 50/25 51/1
52/1 52/3 54/20 55/3 56/19 56/22 57/1
57/24 62/24 65/24 73/18 85/23
platforms [1]  72/9
plays [1]  5/12
pleading [2]  21/12 100/11
please [5]  45/19 45/20 63/18 101/24
109/20

plenty [1]  16/8
plug [1]  44/23
plus [3]  58/15 64/20 65/23
point [32]  12/14 13/15 14/3 18/22 26/20
27/8 29/2 32/23 36/24 43/21 46/9 48/10
49/19 54/17 59/2 66/14 71/13 79/3 82/15
83/8 86/20 88/18 91/12 91/18 91/19
101/4 101/20 101/21 106/16 106/16
106/24 107/21
pointed [2]  54/22 106/8
pointing [1]  79/7
points [1]  107/20
police [1]  39/2
policy [3]  10/22 19/24 20/10
political [2]  19/24 20/22
Pons [3]  35/13 35/25 36/1 41/11
Portilla [1]  34/7
portion [1]  63/6
portions [3]  17/20 17/23 17/25
position [2]  25/1 68/20 71/1 91/19
positions [2]  29/18 29/19
possible [2]  84/4 84/5
possibly [2]  27/16 83/18
postpone [2]  8/5 26/17
postponed [2]  8/6 30/18
pot [5]  80/16 83/4 85/25 86/8 86/8
potential [2]  75/6 85/25 108/23
pound [1]  49/12
powers [1]  5/12
practical [2]  53/22 85/11
practice [2]  81/21 85/19
precisely [1]  45/7
prefer [1]  73/20
prejudge [1]  108/17
prejudice [1]  19/22
premature [1]  108/17
premises [2]  59/23 69/11
prepared [2]  23/12 31/5 101/14
present [7]  8/13 9/9 9/11 9/14 11/18
61/8 103/22
presentation [1]  32/11
presented [5]  21/13 43/7 43/8 52/25
64/19
presenting [1]  108/9
preserve [1]  15/12
pressing [1]  59/14
presumptively [1]  97/17
pretty [8]  28/19 51/10 54/14 88/6 88/8
90/20 96/18 105/10
principals [4]  45/8 47/12 47/14 53/23
principle [1]  38/3
prior [5]  16/12 35/18 81/21 81/22 106/10
prioritize [3]  81/4 85/13 88/22
priv [4]  80/16 83/4 86/8 86/8
privacy [2]  42/15 48/18
private [12]  33/1 33/2 33/3 37/18 38/18
38/19 40/13 51/19 99/14 103/12 103/15
103/17
privilege [32]  4/7 4/7 4/20 7/5 12/17
12/21 14/24 16/1 17/11 17/12 18/8 20/11
21/25 24/9 24/19 25/5 25/8 26/6 26/11
26/24 27/2 27/11 27/17 28/9 74/10 74/12
75/18 75/21 75/22 76/5 77/23 86/1
privileged [6]  44/11 45/5 72/3 75/3 86/7
86/24
probably [8]  3/22 27/5 38/4 54/4 56/7
80/1 83/22 103/4
problem [15]  5/23 11/12 24/14 29/1
33/15 34/4 34/10 34/11 36/7 36/9 37/12
37/13 47/25 76/3 88/25

**P**

problems [4]  30/17 32/20 44/20 70/9
procedure [1]  43/9
proceedings [1]  3/2
process [15]  5/2 5/4 5/9 9/10 2 13/21 14/9 14/12 19/9 22/7 75/17 78/8 78/23 84/19 94/13 109/21
processes [2]  5/7 9/22
processing [1]  86/10
produce [17]  33/8 45/6 58/11 62/7 64/23 64/23 64/25 74/14 79/22 82/7 87/6 87/6 87/16 104/21 105/3 108/4 108/5
produced [12]  23/20 25/17 43/1 53/2 63/7 77/22 79/17 84/25 87/17 87/18 90/13 92/6
produces [1]  45/3
producing [2]  86/21 86/23
production [15]  54/14 65/4 66/8 79/25 80/17 81/11 81/13 82/5 82/5 84/23 87/19 90/2 92/5 104/10 107/3
proffered [1]  24/23
program [2]  40/24 57/14
prohibits [1]  17/8
project [2]  28/4 84/8
projections [1]  80/3
projects [2]  103/11 103/18
properties [11]  21/20 22/20 71/2 71/4 71/7 93/5 94/1 94/18 103/14 104/20 104/22
property [16]  20/3 23/3 35/21 66/12 66/13 92/25 93/8 93/10 93/12 93/16 93/23 93/23 94/4 94/4 94/9 94/10
proponent [1]  15/3
proportion [1]  56/14
proportional [1]  51/7
proposal [13]  39/23 39/25 40/19 40/21 44/2 44/15 45/14 45/18 49/20 57/11 59/11 60/4 89/23
proposed [8]  7/20 47/8 47/8 47/9 63/22 82/20 87/11 102/6
proposing [2]  47/5 89/16
proposition [1]  78/3
propound [1]  101/4
prosecute [1]  100/7
protect [2]  17/14 42/15
protected [3]  4/16 5/10 46/22
protection [14]  10/4 14/13 16/19 16/25 60/18 66/20 73/24 97/6 98/12 103/17 104/9 106/17 107/11 107/18
protective [5]  4/11 9/15 12/1 21/24 59/20
protocol [1]  39/12
prove [2]  93/6 97/6
provide [15]  11/25 12/4 21/24 22/1 26/15 40/17 42/6 56/11 60/7 68/15 88/19 90/12 100/15 100/18 103/10
provided [4]  7/21 21/6 67/3 103/13
provider [3]  103/12 103/15 103/17
providers [2]  56/21 99/14
providing [2]  11/23 59/5
public [10]  14/19 14/21 14/22 18/25 20/23 68/13 70/4 70/20 71/19 99/3
pull [18]  47/15 47/16 48/14 48/18 48/21 48/22 51/25 52/2 52/3 54/20 68/9 72/9 72/15 72/16 83/23 85/6 86/2 86/5
pulled [6]  22/24 49/1 56/9 66/24 80/25 105/16
pulls [1]  44/23
pure [1]  16/15
purely [3]  33/2 37/17 94/6
purposes [3]  10/17 32/25 66/20

pursuant [1]  96/13
push [1]  84/4
pushed [1]  42/21
put [21]  25/10 54/6 56/1 56/16 63/19 75/17 76/2 76/11 77/6 85/3 86/16 89/5 90/17 90/19 91/5 92/12 92/25 93/8 99/2 106/24
puts [2]  57/2 82/21

**Q**

QC [1]  77/23
quarters [1]  17/16
quash [1]  59/20
quasi [3]  4/20 4/21 13/7
quasi-judicial [3]  4/20 4/21 13/7
question [14]  6/10 23/4 26/5 27/16 29/3 30/13 31/20 42/21 48/11 69/19 77/2 78/12 106/23 107/25
questions [12]  11/4 17/6 18/10 22/14 22/16 24/16 26/18 27/4 27/4 96/22 104/19 104/21
queue [1]  85/4
quickly [6]  30/14 79/14 79/15 79/22 83/1 109/15
quite [2]  17/18 25/17
quote [2]  11/13 21/17
quote-unquote [1]  11/13

**R**

raise [7]  17/13 18/8 25/8 26/24 27/1 27/5 43/21
raised [10]  5/17 6/11 7/5 8/23 8/24 15/13 15/25 23/22 30/25 38/6
raises [1]  12/14
raising [2]  17/13 101/19
ran [1]  60/11
range [4]  39/18 40/17 104/20 104/22
ranking [1]  11/22
rapidly [4]  83/17 83/24 84/4 84/5
RAQUEL [2]  2/3 3/14
raquel.rodriguez [1]  2/6
rate [1]  94/17
rather [1]  13/6
rational [1]  16/21
read [9]  4/4 13/22 15/1 20/17 22/15 25/5 26/9 51/10 58/4
readily [2]  71/21 105/3
reading [6]  4/6 10/14 26/16 43/15 50/17 90/25
ready [4]  13/16 68/10 99/9 101/11
really [28]  3/4 5/4 11/15 17/5 28/16 28/16 29/15 43/16 53/21 56/22 63/1 63/6 67/10 73/8 73/9 75/21 75/24 82/17 83/1 84/16 84/17 86/14 87/15 89/20 91/11 96/19 100/8 106/23
reason [17]  14/4 15/16 16/22 17/7 17/19 18/12 31/13 38/17 42/17 44/7 51/17 68/6 93/7 93/13 93/25 103/14 106/19
reasonable [9]  28/3 56/11 60/14 63/1 63/15 75/13 75/22 87/16 97/18
reasoning [1]  13/21
reasons [3]  17/21 70/8 105/9
rebuttal [1]  82/20
rebuttals [1]  82/22
recall [8]  6/15 8/9 9/3 13/13 33/12 36/2 73/23 96/9
receipts [1]  69/4
receive [1]  107/3
received [2]  36/10 66/8
recent [2]  26/14 63/22

recognized [1]  43/3
recognizes [1]  10/20
record [13]  12/9 14/19 14/21 14/22 18/25 19/2 20/23 20/24 34/5 41/9 60/3 81/17 105/19
recorded [1]  54/23
recording [3]  1/9 55/2 110/6
records [8]  68/13 70/4 70/21 71/19 79/11 81/7 99/3 105/7
redact [1]  45/6
reduce [2]  47/18 63/15
reduced [1]  62/16
reference [2]  31/9 74/23
referenced [1]  65/3
referring [1]  9/19
refined [1]  65/18
reflect [1]  88/7
reflected [2]  53/10 53/10
reflection [1]  87/15
refuse [1]  34/1
refused [2]  33/16 60/7
refuses [1]  34/2
regard [7]  3/22 16/6 16/7 26/4 31/22 93/3 106/22
regarding [7]  16/3 16/18 25/13 31/20 41/23 92/5 100/20
regardless [2]  18/8 21/23
regards [1]  66/14
Regenesis [1]  12/7
regular [1]  44/25
REID [5]  1/10 58/8 60/23 70/18 77/16
reimbursement [1]  53/17
rejected [1]  78/3
related [11]  50/5 62/14 62/17 64/6 66/7 66/11 95/22 96/4 96/15 101/15 103/20
relation [1]  62/6
Relativity [1]  57/3
released [1]  53/24
relevance [6]  73/1 74/6 74/7 76/18 96/5 99/10
relevancy [1]  4/15
relevant [29]  8/16 10/22 16/6 18/17 18/17 18/21 19/15 20/10 22/7 23/20 34/16 35/19 35/22 36/16 49/18 50/6 50/7 50/20 55/17 56/11 63/12 69/16 71/8 72/7 74/15 91/9 107/24 108/8 108/25
relief [2]  32/5 32/21
relies [1]  12/10
religious [1]  20/4
remaining [2]  5/4 44/13
remember [1]  7/12
reminded [1]  6/17
remove [2]  62/14 76/4
repeatedly [1]  34/24
replead [1]  19/23
replicate [1]  55/5
replies [1]  8/17
report [11]  62/19 73/7 73/21 78/6 80/12 82/19 82/20 88/19 88/22 91/16 93/10
Reporter [2]  2/14 110/9
reports [3]  73/14 78/5 82/22
represent [3]  31/10 31/12 64/18
representation [1]  68/2
representing [1]  87/22
request [29]  12/1 25/19 32/4 40/1 40/9 50/3 61/24 64/23 64/23 64/25 65/4 66/8 68/11 68/13 69/11 70/13 71/3 71/6 71/11 71/15 71/19 77/3 82/8 99/19 100/20 102/1 106/3 108/13 108/21
requested [11]  7/2 9/1 28/24 42/1 50/4

**R**

requested... [6]  70/17 71/17 78/4 92/20
93/7 96/2
requesting [3]  25/16 32/22 71/14
requests [11]  24/15 47/23 60/21 62/7
69/6 70/5 70/21 71/9 71/10 80/13 99/4
require [4]  25/8 27/1 68/8 108/19
required [2]  42/8 44/4
requirement [1]  107/14
requires [1]  10/5
research [1]  15/2
reserve [1]  91/13
resolution [15]  4/24 9/21 10/3 14/19 19/3
19/8 20/12 21/1 21/3 23/21 23/22 23/24
24/1 24/6 24/20
resolve [5]  51/21 82/5 87/25 89/11
109/15
resources [3]  72/6 75/24 76/2
respect [23]  6/5 11/7 11/9 14/7 17/18
18/18 22/17 24/19 25/5 26/23 28/14
31/18 43/10 48/17 67/18 70/25 77/13
77/18 78/6 78/7 94/17 108/10 109/14
respectfully [8]  25/19 59/25 61/1 68/11
80/10 87/3 102/13 108/16
respects [1]  38/3
respond [5]  50/19 66/23 78/13 79/14
103/6
responded [2]  33/23 69/24
response [7]  41/21 79/15 82/12 100/19
104/21 108/11 108/18
responses [4]  96/16 96/20 108/14
108/19
responsive [22]  41/5 41/15 45/5 47/24
49/2 49/22 50/1 50/18 58/10 64/7 65/3
67/6 73/19 74/15 75/14 77/24 77/25 81/9
82/16 87/7 87/21 91/14
responsiveness [10]  49/2 51/14 52/6
73/1 73/2 74/13 75/18 75/20 88/10 91/17
rest [6]  48/19 48/23 80/19 80/21 83/4
86/17
restaurants [1]  79/12 102/24
result [1]  8/25
resulted [1]  75/16
results [2]  60/13 60/13
retaliatory [1]  15/24
retracted [1]  7/21
retrieve [1]  75/13
retrieved [1]  74/22
retrieving [1]  91/3
revealing [1]  47/10
review [32]  15/2 40/3 40/6 41/1 41/2
41/14 41/18 44/24 45/4 49/1 51/18 52/1
52/3 52/6 55/25 56/1 58/16 62/24 65/16
66/3 72/19 72/23 73/20 75/7 75/17 76/12
76/12 77/25 80/22 85/7 85/23 86/6
reviewed [8]  46/23 47/19 48/20 51/13
63/24 65/6 66/18 67/16
reviewers [2]  53/22 89/5
reviewing [3]  72/1 72/24 74/6
revokes [1]  99/19
RFP [33]  32/9 50/17 61/11 61/17 66/7
68/14 70/13 77/5 77/7 77/11 77/11 77/13
77/18 77/19 77/21 78/11 78/12 78/13
79/16 79/20 82/1 82/3 82/7 82/10 82/11
82/11 82/12 82/13 82/14 83/6 89/15
89/18 89/20
RFPs [7]  49/24 50/16 50/17 50/18 70/23
96/20 96/25
richest [1]  81/9
rid [1]  57/16 57/18

right [68]  10/11 13/3 13/4 13/7 17/17
18/6 18/14 19/17 18/22 29/5 27/9 27/14
35/4 39/9 39/11 43/3 44/15 44/22 45/1
47/13 48/4 48/5 48/21 48/25 49/8 50/10
50/14 51/13 51/16 52/5 53/6 53/6 54/19
54/23 55/2 55/5 57/2 57/15 58/3 58/6
61/18 64/5 68/13 68/19 69/11 70/22 75/2
79/13 79/18 80/24 84/2 85/8 85/21 86/18
87/4 87/14 87/17 88/4 90/16 92/14 92/14
94/8 94/21 97/8 104/14 104/18 105/2
106/5
rights [1]  91/13
ripe [1]  108/23
risks [1]  47/5
RKA [1]  1/2
Roberts [15]  3/18 32/9 52/15 54/21
60/12 61/20 61/22 62/9 62/20 63/4 73/18
82/15 83/3 83/14 85/24
RODRIGUEZ [9]  2/3 3/14 20/1 22/15
30/25 45/1 71/1 82/20 92/17
Rodriguez's [2]  9/12 90/12
Roldan [1]  34/8
role [1]  26/21
roll [1]  88/14
rolling [5]  73/15 77/22 79/25 80/1 84/23
room [2]  1/3 32/9
ROONEY [2]  2/4 3/15
round [1]  81/22
RPR [2]  2/14 110/8
rthornton [1]  1/18
rule [16]  4/12 9/3 25/10 26/3 30/9 32/19
33/19 33/24 34/3 46/11 49/15 51/7 51/15
51/15 58/14 103/1
ruled [3]  5/2 9/18 77/17
rules [8]  28/18 29/9 30/5 51/15 58/13
96/13 97/17 97/18
ruling [3]  13/13 26/2 26/7
rulings [1]  108/23
run [13]  45/2 45/15 47/17 48/22 52/4
55/24 57/5 57/18 63/25 78/15 80/20 86/8
86/9
Russell [14]  4/14 6/13 7/25 8/1 20/25
23/17 24/2 26/1 29/12 29/20 30/6 31/3
31/10 34/8
RYAN [2]  1/14 3/11

**S**

said [42]  8/12 11/5 11/20 20/23 21/7
29/25 30/16 30/21 31/12 33/5 34/13
34/24 36/1 38/10 39/22 48/2 49/11 51/18
57/12 58/5 58/17 60/22 62/14 67/7 67/24
70/18 70/19 71/7 77/13 77/14 77/16 78/3
87/12 89/18 89/19 89/25 90/24 93/10
96/1 100/14 100/24 102/2
Sal [1]  21/8
Sala [2]  67/7 67/9
same [24]  6/16 10/13 11/7 29/3 29/4
36/12 36/20 49/21 52/2 52/4 66/9 70/13
70/23 74/2 76/24 82/11 85/9 92/19 93/23
94/7 102/24 107/9 107/10 107/12
sand [2]  49/12 90/24
save [1]  74/5
saving [1]  74/8
saw [2]  38/5 65/23
say [54]  5/21 12/15 12/23 13/5 20/13
21/8 23/1 23/6 24/23 27/6 27/15 32/1
39/9 42/17 43/18 45/12 45/22 47/11
47/23 49/9 49/11 54/24 55/13 55/20 56/6
57/17 57/23 58/15 64/1 64/10 67/7 70/2
73/23 75/12 77/4 81/15 83/20 84/3 84/25

85/21 88/15 89/14 89/16 91/2 91/3 91/8
91/11 92/18 93/15 96/19 96/6 100/10
101/23 102/16
saying [22]  5/21 8/17 17/18 17/19 17/25
18/7 26/24 30/6 33/7 44/21 48/18 52/1
60/17 66/7 70/24 75/5 76/5 80/11 85/11
85/19 89/10 95/6
says [21]  10/5 10/12 10/13 10/14 12/16
12/22 21/5 21/11 21/17 22/5 22/19 23/2
23/9 23/24 34/19 35/8 36/1 62/21 66/2
73/4 74/7
schedule [3]  7/19 29/22 73/9
scheduled [3]  7/18 95/7 95/9
scheduling [1]  81/18
school [1]  48/7
scope [1]  44/12
screen [8]  6/19 6/21 12/8 12/8 20/17
53/9 65/12 87/2
screenshots [3]  34/16 43/20 44/5
scroll [1]  52/23
scrolling [1]  37/6
scrutinized [2]  9/9 83/9
search [61]  16/20 33/17 39/13 39/15
40/16 41/4 41/18 42/4 45/2 45/2 45/15
47/17 48/19 48/22 49/1 49/23 50/19
51/13 52/4 54/19 55/20 56/20 57/5 57/18
60/8 60/11 60/13 61/20 61/20 61/24 62/1
62/2 62/4 62/11 62/15 63/5 63/23 63/25
64/1 64/13 64/18 64/22 65/1 65/5 66/25
74/19 75/4 75/9 75/12 75/13 78/19 83/6
85/25 86/8 86/11 87/7 89/15 89/16 91/6
105/6 105/7
searches [1]  108/4
searching [1]  65/10
second [15]  31/19 61/11 61/17 66/7
70/13 77/5 77/13 78/11 79/19 82/12
82/13 89/18 102/8 102/8 104/15
Secondly [2]  16/18 69/21
seconds [1]  3/19
section [1]  12/16
secure [3]  40/16 52/10 55/10
see [37]  6/19 6/21 6/22 8/3 10/14 12/7
12/7 12/18 20/16 22/22 25/6 25/7 26/10
27/1 27/9 27/10 27/24 29/13 33/6 34/14
45/19 53/14 54/12 54/24 55/6 55/9 55/9
59/8 62/21 62/21 63/5 65/25 66/17 67/9
72/2 96/14 104/19
seeing [1]  63/10
seek [1]  4/13
seeking [2]  68/18 102/4
seem [4]  71/13 84/15 99/20 108/25
seems [8]  35/22 56/10 56/13 59/14
75/22 82/7 102/17 107/4
seen [2]  22/23 55/14
seizure [1]  16/20
selected [1]  52/9
selective [1]  21/15
selectively [1]  11/16
self [2]  53/24 87/18
self-aware [1]  87/18
self-editing [1]  53/24
send [5]  37/7 72/17 74/7 86/9 86/17
sending [2]  23/2 42/4
sense [6]  13/24 54/10 79/14 93/19 94/6
94/25
sensitive [3]  47/14 47/15 51/19
sensitivity [1]  47/1
sent [6]  34/16 34/22 50/18 60/4 70/14
92/2
separate [3]  5/14 70/25 109/2

separation [1]  5/11
September [11]  42/6 61/13 61/19 62/5
63/10 67/25 73/17 73/22 77/17 78/9 90/4
series [1]  44/20
serious [1]  46/21
serve [8]  31/11 96/3 96/11 102/16
106/14 106/20 108/12 108/14
served [16]  4/12 31/13 77/3 96/9 97/14
97/16 97/20 98/22 98/23 98/24 102/15
102/21 109/5 109/6 109/8 109/9
service [1]  52/2
set [7]  7/23 14/7 25/20 62/24 90/12
97/13 99/13
sets [1]  69/10
seven [23]  18/22 19/12 28/18 29/5 29/13
30/9 30/14 33/16 60/1 60/20 61/5 69/8
69/9 78/20 79/5 79/10 82/17 83/14 83/15
83/20 86/12 100/25 101/6
several [3]  14/6 36/5 36/19
share [2]  65/12 65/13
shared [1]  65/25
she [18]  5/14 7/19 11/9 11/9 22/19 22/21
23/24 23/24 23/24 23/25 26/12 28/15
31/1 36/21 71/3 71/5 71/7 77/17
she's [1]  54/11
shed [1]  25/18
shielded [1]  16/1
shoot [1]  91/23
shooting [1]  92/9
short [6]  29/13 56/3 56/13 60/12 81/24
96/8
shortly [1]  3/18
should [26]  4/10 8/18 8/18 13/15 19/21
26/4 38/4 41/16 50/25 51/1 57/21 57/21
58/8 58/15 59/8 69/23 70/2 71/2 92/7
99/4 101/5 102/3 105/3 106/23 106/25
108/5
shouldn't [2]  17/19 50/25
show [19]  6/16 6/19 8/10 9/24 11/24
12/6 18/16 20/14 21/15 22/6 22/16 33/10
60/13 94/2 97/4 97/8 97/18 100/12
105/13
showed [1]  46/8
showing [4]  8/13 10/5 47/7 103/11
shown [1]  10/6
shows [1]  36/25
shut [4]  16/10 16/11 16/15 35/22
side [1]  40/23
side's [1]  26/16
sidewalk [1]  19/13
sign [1]  51/6
significantly [1]  71/13
similar [1]  15/25
similarly [1]  103/21
simple [1]  52/7
simpler [1]  3/22
simply [12]  26/7 47/16 52/19 54/2 54/6
59/7 72/4 76/5 90/7 105/6 107/13 109/13
since [8]  14/5 42/3 61/13 73/16 77/8
78/9 98/12 107/22
single [7]  47/23 53/1 67/18 67/20 77/14
77/17 78/25
sit [4]  27/23 44/2 49/25 51/10
SITTERSON [1]  1/15
sitting [3]  50/24 51/12 85/23
situated [2]  60/19 103/21
six [2]  57/15 102/12
slaughtered [1]  58/3
slightly [1]  39/10

slipping [1]  80/18
slow [1]  81/15
small [1]  67/10
Smith [2]  49/11 49/11
smoothly [1]  27/13
sneak [1]  22/20
sneaking [1]  22/20
snippet [1]  35/15
snippets [1]  55/5
snowballed [1]  73/9
so [231]
software [1]  57/1
solution [3]  32/21 44/20 87/4
solve [1]  107/3
some [59]  4/19 15/2 16/5 19/20 21/10
21/17 23/9 25/17 25/18 33/14 34/18
34/18 35/8 36/12 42/11 42/23 43/3 46/2
51/5 51/12 52/8 52/9 52/9 53/18 53/24
54/6 54/11 54/16 64/17 65/2 69/3 72/12
72/11 74/6 74/17 74/19 77/8 77/21 81/1
81/18 83/10 83/20 84/18 84/19 85/5
88/16 89/2 90/21 90/23 91/20 93/15
96/19 96/23 99/12 102/15 102/21 103/5
106/19 107/21
somebody [2]  18/22 19/6
somehow [1]  27/6
someone [3]  18/22 35/20 37/2
someone's [1]  49/9
something [5]  5/17 24/5 24/10 24/25
30/24 31/17 44/11 44/12 45/23 47/3
52/15 52/17 58/12 59/8 67/8 68/17 80/12
80/17 80/18 93/4 101/5 103/20 105/10
105/15 106/25
Sometimes [1]  53/6
somewhere [2]  51/12 57/2
soon [1]  29/22
soonest [2]  85/3 85/14
sorry [14]  26/20 32/14 44/17 45/10 72/22
84/2 84/10 95/4 98/5 101/13 101/23
103/8 104/17 107/7
sort [6]  37/5 69/3 87/13 96/13 97/2
102/13
sought [1]  109/6
sound [1]  84/17
sounds [3]  52/19 55/22 71/24
sources [3]  68/9 74/18 74/20
South [1]  2/5
SOUTHERN [2]  1/1 20/16
space [2]  57/5 94/6
speak [2]  30/2 89/7
speaking [2]  46/20 54/25
special [1]  19/6
specific [19]  8/15 18/14 21/21 23/3 26/5
27/4 35/3 35/13 41/24 60/8 60/19 62/9
63/12 67/13 101/14 107/15 107/16
107/19 109/1
specifically [3]  34/6 47/10 69/14
specifics [2]  100/15 103/22
specified [1]  104/25
speculate [1]  22/22
spent [3]  58/24 67/14 95/24
spit [1]  54/7
spoke [3]  19/3 23/18 55/11
spouse [1]  46/20
square [1]  82/2
squarely [2]  63/9 67/17
stab [1]  75/5
staff [3]  5/9 11/4 17/10
stage [3]  10/9 73/11 100/17
standard [5]  29/5 100/11 102/2

standards [1]  76/23
standing [1]  75/7
start [18]  3/21 3/21 4/1 4/2 6/1 6/2 18/9
71/9 78/8 79/25 84/17 84/19 84/21 85/7
85/11 86/10 88/13 88/14
started [3]  43/18 43/19 65/17
starting [2]  32/23 76/11
state [5]  5/11 8/14 13/9 23/8 28/19
stated [4]  6/18 6/24 68/2 102/23
statements [3]  14/21 20/24 23/9
STATES [2]  1/1 1/10
stating [1]  100/18
statistically [2]  64/5 64/7
status [5]  80/5 88/19 90/13 90/15 92/2
stay [5]  28/22 30/4 73/8 82/18 84/5
STEARNS [1]  1/14 3/9
stearnsweaver.com [4]  1/17 1/17 1/18
1/18
steps [1]  91/2
still [10]  18/7 49/17 61/25 62/2 74/2 82/6
101/3 107/22 107/22 108/2
stipend [4]  37/23 42/12 53/14 53/16
stipended [11]  38/7 38/12 39/5 39/8
39/21 40/8 40/11 40/14 42/19 42/21
49/13
stipends [2]  38/1 59/6
stipulate [1]  92/20
STOLOW [2]  2/4 3/14
stonewalled [4]  33/22 67/23 77/14
104/13
stop [1]  55/2
stops [1]  72/4
straightforward [3]  52/20 105/10 108/5
strange [2]  11/19 31/16
strangers [1]  93/1
street [5]  1/15 19/14 74/23 79/6 99/8
stretching [1]  54/25
strict [1]  54/10
strictly [2]  62/17 96/3
stringent [1]  35/22
strip [1]  80/21
structure [3]  85/18 98/9 99/16
structured [5]  74/18 74/19 74/22 81/6
studied [1]  93/20
stuff [12]  36/17 38/19 40/21 57/2 73/15
75/14 80/19 82/16 82/25 86/13 87/14
87/21
subject [6]  17/5 19/12 30/23 64/6 64/9
94/18
subjecting [1]  18/22
submit [1]  11/8
submitted [1]  70/4
subparts [2]  96/15 101/15
subpoena [6]  5/19 30/22 31/11 31/13
34/3 50/6
subpoenas [24]  4/12 6/12 12/23 30/21
30/25 31/4 31/5 31/6 31/18 31/20 31/22
32/19 33/19 33/24 50/2 50/3 50/7 59/16
59/22 68/24 69/8 70/10 70/11 70/14
substance [2]  78/15 106/12
substantial [3]  21/14 53/21 66/2
substantive [7]  5/2 5/4 9/22 10/2 14/8
14/12 22/7
substitute [1]  64/22
such [5]  4/19 18/21 46/5
suddenly [1]  99/7
sufficient [1]  100/12
sufficiently [1]  43/7
suggest [4]  80/16 83/2 87/9 108/16
suggesting [1]  51/25

**S**

suggestion [5]  3/25 81/6 81/11 90/12
91/15
suggests [2]  10/15 57/17
suit [2]  12/25 13/5
summary [7]  10/11 20/19 21/12 21/12
61/9 100/16 100/17
summed [1]  64/17
supplement [1]  43/2
Supreme [1]  15/7
sure [26]  5/21 31/1 33/13 34/20 35/12
44/17 45/4 45/5 46/3 47/20 49/2 51/11
51/20 58/4 61/2 62/3 62/12 63/1 66/5
66/10 66/14 69/19 79/19 79/23 81/3
89/20
surrounding [1]  103/18
survived [1]  18/4
suspect [2]  81/8 87/12
sustained [2]  61/15 61/21
SW [1]  2/10
Synagogue [2]  20/15 21/5

**T**

table [2]  9/12 78/11
tag [1]  47/22
tagging [1]  47/23
tailor [1]  96/22
tailored [2]  77/4 104/4
take [34]  6/25 8/8 26/8 26/18 28/5 28/22
28/24 34/13 44/23 45/3 51/20 57/3 57/4
64/24 67/10 70/21 71/20 72/6 72/18 73/5
73/15 74/8 75/5 80/16 86/2 86/3 86/6
86/12 86/13 91/2 91/18 96/7 96/11
105/23
taken [2]  29/15 64/24
takes [4]  55/24 56/15 57/1 86/8
taking [5]  24/13 30/2 68/20 71/1 76/6
talk [15]  6/6 12/12 21/10 23/21 23/21
28/1 43/5 49/6 59/4 59/18 72/6 72/8
85/2 89/2 100/25
talked [6]  7/5 7/6 9/20 84/11 84/14 107/5
talking [27]  7/24 10/4 13/9 24/3 33/2
33/11 35/19 35/21 45/13 53/13 54/11
54/11 54/16 57/24 63/6 63/8 63/14 66/16
79/4 79/16 79/19 84/13 94/16 94/22 96/4
105/13 107/22
talks [2]  24/2 103/7
tallied [1]  78/9
Taquerias [2]  69/18 102/25
target [5]  21/1 21/3 81/11 81/13 84/7
targeted [1]  64/6
task [3]  77/8 80/3 80/7
tax [1]  69/4
taxpayers [1]  28/2
tea [1]  90/25
teams [1]  45/1
telephones [2]  42/11 42/12
tell [13]  6/5 10/24 27/9 40/9 40/11 40/12
81/4 83/10 85/2 92/8 92/11 103/16
103/21
telling [3]  40/20 50/2 67/19
tells [2]  9/25 20/23
ten [19]  40/2 45/13 49/6 50/22 63/25
64/1 64/6 67/8 86/13 95/21 96/3 97/4
97/8 97/20 97/21 97/22 102/12 104/21
108/6
tend [2]  41/14 75/2
tends [1]  90/16
tent [1]  79/10
term [12]  49/1 60/13 64/2 64/5 64/13

64/18 67/22 74/19 75/4 75/7 75/8 87/7
terms [63]  8/19 19/24 34/1 35/13 39/13
39/15 39/17 40/4 41/18 45/2 45/16
46/25 47/17 48/19 48/22 49/23 50/12
50/13 50/14 50/19 51/13 52/4 54/7 54/13
55/18 55/25 57/5 57/7 57/18 60/8 60/12
61/20 61/20 61/24 62/1 62/2 62/4 62/12
62/15 63/5 63/23 63/25 64/1 64/6 64/22
65/1 65/5 66/25 68/5 72/23 75/12 75/13
75/20 76/1 77/6 77/21 78/19 83/6 84/12
89/15 89/16 91/6 91/7
test [1]  22/10
testified [4]  15/8 21/19 22/13 22/18
testifies [1]  22/22
testify [5]  9/15 9/16 10/24 13/16 15/10
testimonial [1]  26/6
testimony [16]  6/12 9/10 11/2 11/23
13/20 18/23 20/21 21/7 21/16 21/18 24/8
24/18 26/11 30/25 31/6 92/19
text [31]  32/17 34/19 34/21 35/4 35/9
35/11 35/13 36/2 36/9 36/11 36/13 36/19
36/20 36/25 43/19 46/10 46/15 46/18
48/12 48/14 50/18 51/5 51/6 51/22 52/4
52/22 52/24 54/19 54/22 55/3 55/8
texts [3]  34/22 48/18 48/22
than [23]  13/6 19/5 28/18 29/5 30/9
31/24 46/7 54/4 55/18 61/4 61/6 62/18
63/8 63/16 64/8 66/11 70/2 71/15 73/25
97/19 97/21 99/17 109/21
Thank [7]  6/9 19/17 56/17 104/14 109/4
109/16 109/22
Thanksgiving [3]  72/10 83/25 89/3
that [775]
that's [14]  4/9 31/8 40/14 49/8 52/6 53/6
53/6 54/17 61/12 65/12 65/15 70/16 81/8
83/8
their [103]  4/7 4/17 4/18 5/9 10/25 11/1
12/1 13/7 13/20 13/21 13/21 15/6 15/16
16/2 16/11 16/14 16/19 16/25 17/8 17/21
17/21 17/25 18/16 18/17 18/18 19/1
24/17 27/21 29/11 30/16 33/6 34/15
36/15 37/2 39/1 41/2 41/4 41/18 42/4
42/23 44/13 44/15 45/1 45/14 45/18
45/21 45/22 46/3 50/5 50/17 51/10 51/20
52/21 53/24 55/16 56/3 56/5 56/8 56/9
57/5 57/8 57/10 60/12 60/13 66/6 66/9
66/11 69/21 70/7 73/18 73/22 74/3 78/9
79/5 79/8 82/3 84/6 85/1 87/12 88/9
89/14 91/6 91/13 92/25 93/4 93/9 93/16
93/17 94/4 94/7 95/16 96/12 97/23 98/12
98/15 99/4 105/4 105/6 107/1 108/7
108/9 108/24 109/13
them [117]
themselves [6]  5/8 17/4 47/22 50/16
54/5 62/7
then [96]  6/6 6/6 7/13 7/21 7/21 8/5 8/17
8/24 9/2 10/12 11/21 12/22 13/5 13/9
13/25 17/1 23/8 24/1 28/3 28/8 28/10
29/7 31/11 32/4 32/21 33/8 33/19 40/19
41/4 41/17 42/3 44/10 44/13 44/24 45/3
45/15 45/16 47/22 48/22 48/25 49/1 49/7
49/15 51/2 52/5 52/8 52/11 55/10 55/20
57/5 57/5 57/16 58/21 59/14 60/5 67/6
69/11 69/23 70/18 71/2 73/25 75/11
77/23 78/15 78/16 78/16 78/24 79/1 80/2
80/21 82/18 82/21 82/23 83/3 89/3 89/19
90/1 90/4 90/6 90/11 91/8 91/8 92/8
92/14 92/19 92/22 95/16 96/15 98/6 98/9
100/4 100/16 100/17 102/15 104/6 109/2
theories [1]  102/9

theory [2]  8/19 93/4
there's [5]  16/25 67/8 69/6 72/5 85/22
therefore [2]  13/7 31/11
Thereupon [1]  2/16
these [133]
they [331]
they'll [1]  56/19
they're [23]  19/10 19/16 33/1 36/15
36/16 37/11 47/5 50/17 50/20 56/4 56/5
58/17 66/11 67/19 68/8 72/13 72/14
75/20 79/9 82/15 101/15 106/3 107/20
they've [2]  46/9 68/9
thing [188]  24/16 26/3 42/20 44/2 46/13
49/21 64/10 72/20 74/3 74/19 75/4 75/9
75/25 76/1 77/17 79/10 88/10 100/25
things [30]  9/25 17/7 19/20 22/9 29/19
32/2 45/14 53/19 67/1 72/5 72/7 72/9
80/1 80/25 81/8 82/11 83/23 85/5 85/6
85/10 85/12 85/13 87/6 87/20 88/14
88/16 90/21 91/10 91/14 92/24
think [93]  5/20 9/13 11/18 17/17 18/6
19/20 23/15 25/18 26/2 28/11 29/2 29/12
29/14 29/23 30/10 32/3 32/5 32/20 36/7
36/16 37/13 40/3 41/5 41/14 41/22 41/24
42/14 43/22 46/4 46/8 46/10 46/18 46/24
50/21 51/3 51/3 51/7 53/8 54/14 55/17
55/17 55/22 57/7 57/12 57/13 57/19 58/1
58/2 58/13 59/14 60/4 66/16 67/12 67/22
69/15 70/9 70/22 71/18 72/5 72/10 72/17
72/20 74/17 75/12 77/12 77/21 78/14
79/24 81/2 81/17 82/25 83/16 83/21
83/24 84/24 87/11 87/14 88/11 89/23
90/11 90/19 91/14 95/2 95/23 96/17
98/18 103/25 104/8 105/2 107/13 108/6
108/23 109/11
thinking [2]  5/7 108/15
thinks [1]  51/9
third [34]  40/23 44/9 47/12 52/2 57/1
57/4 57/14 59/16 60/6 68/11 68/14 70/19
70/19 70/23 71/15 77/7 77/11 77/18
77/21 78/12 78/13 79/20 82/1 82/7 82/10
82/11 83/6 89/15 89/20 94/2 94/19 94/23
95/9 95/16
third-party [8]  40/23 47/12 52/2 57/1
57/14 59/16 94/2 95/9
this [237]
THORNTON [2]  1/14 3/11
thorough [4]  54/4 54/8 54/9 98/15
those [73]  7/1 8/21 14/8 14/20 17/22
31/3 31/18 33/20 33/23 34/5 34/15 34/18
34/18 34/21 37/24 37/25 38/9 39/15
39/17 40/10 41/14 42/24 42/25 42/25
43/3 43/11 47/5 49/1 51/13 52/3 52/5
53/7 53/11 53/12 55/9 58/10 59/19 60/20
63/10 65/25 66/7 70/8 72/1 72/16 72/19
74/21 74/22 75/2 76/10 76/11 76/12
83/23 85/3 86/2 86/4 86/6 86/9 90/10
93/3 93/5 94/23 95/15 96/4 97/25 98/2
98/4 98/9 103/22 104/7 105/8 105/9
107/16 109/5
though [6]  36/21 54/19 67/12 67/19
74/10 76/16
thought [3]  13/21 34/15 101/19
thousand [2]  51/12 90/1
three [13]  7/24 8/7 17/16 31/23 36/9
37/12 59/25 60/4 80/14 82/21 99/2 99/16
100/6
three-quarters [1]  17/16
through [53]  11/1 15/13 33/21 34/3

**T**

through... [49]  34/11 36/5 37/6 39/12
39/19 45/2 47/22 49/22 50/24 51/4 51/4
58/20 61/20 62/20 68/7 71/5 71/17 72/12
75/17 76/10 78/2 78/23 80/18 80/22
83/10 87/13 89/7 91/7 91/15 96/7 96/14
96/25 97/2 97/15 97/22 97/23 100/5
101/10 101/18 102/25 104/2 104/10
104/10 105/14 105/18 105/24 105/25
106/1 106/24
throughout [1]  29/9
throw [3]  57/9 57/10 90/15
throwing [1]  85/2
Thursday [1]  83/25
ticking [1]  98/23
tie [1]  55/21
tight [1]  82/24
time [71]  4/15 7/9 8/13 8/22 14/7 15/16
18/11 22/3 23/14 25/17 25/21 26/25
27/23 28/4 28/4 28/10 28/12 28/21 28/22
29/6 29/8 29/16 29/18 29/18 29/19 30/3
30/4 30/10 30/16 33/1 38/5 42/18 43/20
51/21 54/5 55/1 55/8 55/23 55/25 56/3
56/13 58/9 58/16 58/20 67/15 69/23
71/18 71/20 72/17 72/19 74/6 74/9 75/21
78/24 78/25 79/2 81/22 81/24 84/13
84/22 85/9 86/6 86/15 89/22 90/8 91/2
91/12 95/24 96/8 101/4 106/24
timeliness [1]  88/10
timely [1]  41/19 107/25
times [6]  5/17 30/20 48/9 50/15 51/5
94/11
timing [2]  30/2 72/13
today [7]  31/22 69/16 69/20 89/11 93/5
94/24 109/5
together [7]  14/25 32/3 78/22 82/25
90/18 90/19 99/3
told [12]  8/4 31/10 39/3 39/10 39/16
39/17 43/4 45/21 45/23 48/6 51/11 70/17
tomorrow [5]  59/17 86/8 86/10 95/7
95/10
too [6]  34/24 83/16 83/21 87/9 98/22
109/12
took [5]  21/15 34/16 55/12 68/3 68/4
top [4]  8/21 57/22 63/6 91/5
topic [2]  18/14 31/19
topics [7]  17/15 27/23 29/9 32/9
Torres [1]  41/10
tortious [1]  14/11
total [3]  64/15 64/15 97/16
totals [1]  62/22
touch [4]  48/15 48/15 48/16 66/4
touched [1]  83/23
towel [1]  52/23
track [3]  26/15 82/18 85/5
TRANSCRIBED [2]  1/9 2/14
transcript [6]  8/10 8/14 9/20 9/24 24/13
61/22
transcription [1]  110/5
transmission [1]  54/3
treat [1]  12/5
treated [4]  60/20 61/6 93/5 100/13
treatment [1]  93/17
trial [1]  61/9
tried [3]  17/18 102/13 102/15
tries [1]  55/5
trivial [1]  53/19
troubled [1]  51/18
troubling [1]  51/8
true [4]  10/6 37/20 38/9 54/22

truth [1]  26/8
try [18]  17/6 26/4 27/11 27/17 32/2 32/20
32/20 35/1 39/22 63/8 65/12 65/13 65/19
71/18 72/15 72/16 81/13 97/3
trying [25]  6/19 18/10 29/22 37/6 42/15
44/1 61/14 65/2 69/2 70/6 70/12 73/8
74/5 76/18 78/17 79/9 89/10 89/17 89/21
93/2 100/10 102/18 104/12 107/14
107/15
turn [3]  44/13 53/22 104/1
turned [1]  62/2
turning [2]  72/1 72/4
turns [3]  37/20 37/20 37/22
twice [1]  22/4
two [34]  2/5 4/13 4/23 18/13 18/19 20/14
34/11 36/8 37/25 40/15 46/17 55/24 56/8
59/21 61/19 63/3 63/4 65/24 69/18 72/5
72/10 80/1 81/1 90/3 90/10 92/10 92/24
93/2 93/9 101/20 103/14 104/15 106/19
109/12
type [1]  43/16
types [1]  37/25
typically [4]  37/7 64/9 74/23 91/8

**U**

unclear [1]  74/3
uncomfortable [1]  22/23
unconstitutional [4]  10/7 10/21 24/12
24/21
under [23]  5/11 14/1 14/12 15/6 25/8
28/18 31/8 38/8 39/7 43/24 46/11 49/15
51/15 58/13 58/14 60/18 68/13 79/9
79/20 97/17 97/18 99/22 102/2
underlying [2]  54/15 67/16
understand [29]  9/10 13/12 13/22 17/19
18/6 26/2 43/8 44/18 47/2 52/16 53/23
56/23 61/2 61/3 62/3 65/9 70/12 71/17
86/14 87/18 90/23 90/25 96/5 100/9
101/24 104/24 107/17 108/14 109/13
understanding [3]  26/25 40/22 79/20
understood [3]  27/18 67/4 80/18
undertakings [1]  53/20
undertook [1]  24/19
undue [2]  41/6 56/15
unduly [1]  98/17
unfairly [1]  100/13
unfortunately [2]  79/3 106/8
unhappy [1]  46/19
unique [8]  15/8 22/11 62/21 63/5 63/25
64/2 64/12 67/4
uniquely [1]  64/3
UNITED [2]  1/1 1/10
unknown [1]  42/19
unless [1]  18/20
unnecessary [1]  87/10
unproductive [1]  90/21
unproportional [1]  46/10
unquote [1]  11/13
unreasonably [1]  102/3
unremarkable [1]  76/14
unsafe [2]  98/9 99/15
unshare [1]  65/13
unstructured [1]  75/10
until [6]  8/25 17/11 55/1 90/14 95/8
95/15
up [33]  10/10 10/10 10/14 12/8 12/18
13/24 15/7 20/17 22/2 22/14 30/17 31/1
35/2 37/5 41/9 41/9 46/8 47/21 48/9
55/25 56/8 61/22 63/19 64/24 64/25
72/10 76/18 76/20 79/8 89/3 94/14

102/14 106/25
upcoming [1]  4/3
update [1]  90/13
updated [1]  80/5
uploaded [3]  73/19 80/15 80/20
upon [1]  37/19
us [80]  7/19 8/4 10/24 11/13 11/25 19/10
19/22 20/4 22/3 22/13 31/10 34/3 34/17
39/3 39/14 40/11 40/12 40/18 40/20 41/2
41/4 41/17 41/19 42/8 43/17 43/24 44/1
45/6 45/14 46/18 49/15 57/8 60/5 60/12
60/19 60/23 67/13 67/19 68/12 70/17
74/8 77/6 77/24 79/11 80/11 80/18 81/4
81/11 81/12 81/18 82/15 82/16 82/21
83/2 83/10 84/3 85/2 85/2 85/13 88/9
88/10 89/25 90/12 91/7 92/22 95/3 96/20
98/24 100/11 100/15 101/4 102/13
103/10 103/11 103/13 103/20 104/11
106/20 108/13 109/18
use [10]  21/22 36/7 38/20 42/14 49/9
56/5 56/12 57/4 57/13 88/21
used [4]  40/23 52/2 80/6 92/19
useful [6]  30/11 71/19 82/17 90/11 96/19
96/24
using [7]  39/17 40/16 48/1 52/5 55/4
59/6 92/21

**V**

vacation [1]  72/13
valuable [1]  8/22
various [3]  21/6 74/18 101/7
vast [3]  38/21
vendor [1]  42/25
versed [1]  109/19
version [1]  36/15
versus [1]  17/3
very [36]  3/12 3/20 5/25 7/21 9/1 15/25
18/20 21/21 25/6 25/21 26/15 28/2 28/11
28/20 29/11 29/12 30/3 30/14 30/16
30/19 45/13 46/18 52/7 60/14 63/14
63/15 64/9 66/2 67/13 90/11 97/7 98/15
102/17 102/17 103/6 109/19
Veterans [1]  88/24
via [1]  3/2
Victoria [3]  5/14 7/7 23/23
videoconference [1]  3/2
violates [1]  15/18
violation [4]  14/15 93/6 94/5 105/9
violations [6]  16/22 69/1 94/3 98/10
99/16 105/21
virtue [1]  22/2
visit [2]  93/11 93/25
visited [1]  93/10
volume [1]  68/3
vote [1]  21/2
voted [2]  21/1 24/5
voting [1]  14/19

**W**

wait [3]  81/1 85/7 90/14
waited [1]  8/25
waiting [2]  32/9 32/9
waive [1]  17/11
waived [2]  7/16 22/2
walk [6]  11/1 19/13 81/15 85/8 94/12
101/10
walking [1]  43/25
want [53]  5/6 11/16 13/11 13/25 15/15
15/16 17/5 17/14 17/22 23/13 24/17
26/20 28/3 28/7 41/6 44/2 44/17 46/19

W

want... [35]  49/10 51/2 51/20 57/3 57/4
57/6 57/9 59/3 59/4 61/9 62/3 62/12
65/13 73/8 77/25 81/5 86/2 86/3 86/6
89/20 90/5 91/7 93/12 93/23 97/24 98/1
98/3 98/7 98/8 98/9 99/17 100/8 101/1
104/19 106/20
wanted [6]  5/16 6/7 52/17 90/3 94/9
99/13
wants [6]  23/24 49/24 53/16 57/18 57/19
58/21
warrantless [1]  16/19
was [109]  7/4 7/7 7/12 7/20 8/3 8/4 8/6
8/12 8/12 8/23 9/5 9/9 9/12 9/13 10/16
10/25 10/25 11/6 11/7 12/2 13/14 14/11
14/13 14/14 14/16 15/13 15/24 16/5
16/21 19/9 20/2 21/7 21/8 21/19 22/3
22/21 23/17 24/1 26/7 26/8 26/14 26/19
28/15 31/6 31/16 33/5 33/8 33/25 34/16
36/3 36/11 37/9 37/15 37/16 38/3 38/7
38/17 41/25 41/25 42/14 42/22 43/7
44/15 45/14 45/21 47/21 48/25 49/11
51/18 52/1 52/1 53/2 53/24 59/25 60/5
61/24 61/25 62/13 62/15 62/16 67/3
69/17 69/21 69/22 70/11 71/18 73/16
74/5 74/5 74/17 74/17 77/12 79/20 82/14
84/12 85/19 89/16 89/19 93/2 94/8 98/6
100/14 102/9 103/13 103/19 103/19
103/19 103/20 107/8
wasn't [7]  9/11 36/13 42/19 42/21 51/25
89/19 101/14
waste [3]  15/16 22/3 23/13
Watson [1]  34/7
way [37]  11/8 27/24 32/6 33/25 37/5
42/15 43/6 45/7 46/15 47/16 50/15 51/2
52/25 53/8 53/9 53/22 54/22 55/15 57/23
71/23 76/4 76/19 76/21 76/22 81/15
89/11 91/14 92/12 92/13 94/25 96/15
98/22 101/2 103/16 104/11 106/12 107/7
ways [1]  63/3
we [539]
we'd [8]  48/2 49/16 52/8 52/9 52/10
73/11 73/13 73/19
we'll [11]  40/22 41/5 45/15 45/15 45/16
73/4 74/8 75/7 84/7 85/5 87/13
we're [33]  7/24 8/7 8/17 8/19 13/16
18/10 24/13 30/2 30/16 33/11 34/20
34/25 37/17 38/21 39/10 41/13 42/15
44/21 49/17 53/13 56/18 60/17 60/23
63/14 70/22 73/15 77/14 77/16 80/4 85/2
91/16 100/4 102/16
we've [9]  10/20 15/17 22/18 24/14 33/16
35/3 55/14 67/22 78/20
weather [2]  3/5 3/5
WEAVER [2]  1/14 3/9
Wednesday [1]  91/25 92/3
week [29]  55/7 66/9 81/25 82/23 82/23
83/2 83/4 84/1 84/22 84/22 85/12 88/15
88/16 89/12 89/13 89/24 89/24 90/2
90/15 90/18 90/19 91/13 91/16 91/22
91/23 91/24 92/3 92/11 98/23
weeks [8]  72/10 80/2 81/1 82/21 84/12
84/14 90/3 92/10
WEISSLER [1]  1/14
well [40]  4/2 4/7 4/23 5/15 8/2 9/8 10/4
14/4 17/24 21/11 21/22 22/1 27/6 27/20
54/9 56/15 56/16 57/22 58/15 67/19 72/5
75/12 75/20 81/2 85/14 87/1 88/6 88/8
88/13 90/11 92/16 94/1 94/12 96/14
96/18 101/17 103/9 103/13 105/18

went [10]  9/2 10/12 39/23 36/1 42/24
48/7 53/8 61/20 70/18 72/12
were [69]  3/2 4/12 4/16 7/20 9/4 10/7
10/18 11/4 13/23 14/7 17/2 19/4 19/4
19/6 22/9 22/16 24/3 26/21 29/22 30/17
30/21 31/3 31/11 33/2 33/22 37/17 38/22
38/23 40/16 42/18 42/25 43/1 43/7 43/20
43/23 45/8 47/13 47/15 52/10 52/11 53/7
60/15 60/20 61/6 61/18 62/4 62/5 62/10
64/17 68/3 69/3 69/8 70/14 70/20 71/16
79/20 90/4 96/10 96/18 96/20 97/14
97/15 99/12 103/14 106/8 106/11 106/17
107/1 109/8
weren't [3]  30/25 33/21 50/7
what [141]
what's [12]  22/19 22/22 32/18 48/14
49/13 49/13 49/23 50/1 51/22 55/20 85/3
92/5
whatever [12]  28/23 41/3 41/5 44/7 55/4
61/9 69/17 74/24 77/23 80/6 91/5 93/2
whatnot [2]  12/11 16/23
when [46]  4/11 25/12 29/3 30/16 34/23
36/2 38/2 39/5 42/18 43/18 45/8 46/14
48/6 50/16 52/11 53/3 53/7 55/11 55/11
55/16 56/4 56/5 56/5 57/16 58/25 63/25
69/18 69/18 69/23 72/16 72/18 79/16
84/11 84/15 84/18 89/5 90/17 94/9 97/3
98/7 102/18 105/20 106/25 108/18 109/1
109/8
where [44]  3/21 6/17 6/24 7/11 8/11 9/20
11/4 12/12 12/16 13/15 13/20 17/16 21/7
21/18 23/21 23/23 26/7 28/9 35/4 43/2
43/2 53/12 56/8 58/5 58/20 60/17 62/21
64/12 65/10 65/25 66/19 72/12 74/14
75/9 77/6 81/7 86/20 87/5 88/11 88/22
90/24 95/19 99/1 101/16
whereas [1]  6/12
whether [10]  4/18 6/10 22/11 26/3 72/2
77/24 104/20 105/7 106/14 108/12
which [68]  4/24 4/25 6/10 6/13 10/2 10/4
13/3 15/1 15/6 15/22 16/10 17/1 17/7
17/8 19/21 19/23 20/20 21/3 23/23 27/23
28/19 33/5 35/13 37/6 37/19 40/2 43/6
44/5 45/7 47/24 49/22 57/1 57/1 58/9
58/13 61/15 62/24 65/3 68/1 68/4 68/8
69/14 70/7 70/25 77/4 78/24 79/7 82/21
83/13 89/20 89/24 95/21 97/4 97/6 97/15
97/16 97/23 102/3 102/21 103/1 104/3
104/5 104/12 105/14 107/2 107/10
107/19 108/20
while [7]  5/9 6/14 30/2 71/17 96/8 97/9
107/17
who [26]  4/13 8/12 11/8 11/16 11/23
13/14 23/17 28/24 34/1 34/17 34/20
34/22 35/9 35/12 36/22 37/10 47/14
52/10 52/11 53/4 54/5 54/10 55/11 55/11
76/9 76/10
who's [1]  55/11
whoever [1]  54/25
whole [4]  13/14 75/14 83/8 90/6
wholesome [1]  54/14
whom [1]  53/4
whose [1]  83/2
why [30]  13/25 18/19 19/4 19/12 19/13
20/11 20/24 21/2 21/2 21/25 22/8 22/19
23/2 23/9 23/25 24/19 31/1 31/13 38/17
50/5 51/17 68/6 72/23 86/18 93/13 93/25
96/5 97/10 102/11 103/14
will [82]  3/6 3/18 3/20 3/21 3/22 3/24 6/6

33/10 33/10 34/5 35/1 39/22 41/8 41/16
49/7 54/20 54/24 55/20 56/16 57/11
57/11 59/1 59/10 59/12 64/24 65/12
65/13 66/10 66/14 66/21 69/14 70/8 71/3
73/19 74/21 76/21 76/25 79/7 80/2 80/7
80/21 81/15 82/5 82/18 84/22 85/3 85/10
85/13 89/5 89/8 90/9 91/3 91/5 91/8
91/19 92/2 92/19 94/20 95/6 95/8 95/12
95/14 95/17 95/23 97/8 100/23 102/20
willing [4]  49/4 71/24 80/25 100/4
winnow [1]  41/4
withdraw [6]  71/3 71/6 77/7 92/18
102/15 102/17
withdrew [1]  7/13
within [11]  25/20 29/8 30/5 30/13 38/16
40/12 44/12 82/17 83/2 85/19 92/10
without [10]  3/4 11/18 16/12 16/15 18/13
19/22 87/16 88/11 91/12 103/20
witness [6]  6/25 28/24 31/7 31/15 49/18
85/1
witnesses [7]  6/8 8/21 14/25 23/13 23/16
24/7 31/6
WL [3]  12/9 20/18 101/21
woefully [1]  34/12
won't [4]  48/15 48/15 48/16 83/20
wonderful [2]  6/23 90/12
word [4]  26/10 35/17 56/22 67/9
words [7]  7/16 10/19 35/18 35/18 44/19
74/13 80/3
work [36]  29/1 29/6 29/8 29/19 29/23
30/20 37/21 37/24 38/24 44/13 48/5 48/6
48/7 48/8 49/14 51/20 57/5 63/15 71/25
77/20 78/22 80/7 82/18 82/18 82/25 83/5
85/14 88/21 90/9 96/14 97/15 100/5
101/18 103/15 103/20 104/6
worked [3]  85/16 85/17 106/10
working [10]  7/21 25/22 30/19 56/6
61/13 82/6 84/3 89/8 96/18 105/5
workspace [1]  57/3
worry [1]  74/7
would [136]
wouldn't [3]  29/23 33/17 101/19
written [2]  25/11 108/19
wrong [1]  44/8

Y

year [3]  69/18 72/12 93/2
years [8]  28/15 52/24 69/18 99/2 100/6
105/19 105/22 106/20
yes [35]  3/8 5/22 6/4 6/9 6/22 18/12
19/19 19/19 27/7 28/6 30/7 30/12 42/17
43/13 44/19 48/13 48/13 56/25 59/19
60/2 63/18 65/14 65/19 66/22 69/12 73/6
76/7 82/10 88/1 88/3 92/1 92/7 95/14
97/13 104/17
yesterday [1]  9/10
yet [4]  14/2 15/17 107/6 108/23
yield [1]  69/20
yielded [1]  36/6
York [1]  48/9
you [248]
you'd [5]  10/12 23/13 51/17 55/9 61/23
you'll [1]  60/5
you're [35]  9/18 10/9 10/10 11/5 17/19
18/7 27/5 27/5 30/6 39/11 48/5 48/18
50/13 52/15 54/18 54/19 54/25 64/8 64/8
66/11 66/12 66/13 68/19 68/25 72/3

## Y

you're... [10]  74/12 77/15 80/25 84/16
 89/12 92/9 92/10 94/16 104/18 105/13
you've [3]  7/10 89/13 95/24
your [129]
yourself [1]  49/7

## Z

zero [1]  63/5
Zoom [1]  3/2