# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:21-cv-23485-RKA

THE MAD ROOM LLC D/B/A BALL AND
CHAIN, ALTOS MEXICANO, LLC, D/B/A
TAQUERIAS EL MEXICANO, LITTLE
HAVANA ARTS BUILDING, LLC, AND
LA GRAN FIESTA, LLC

       Plaintiffs,

v.

CITY OF MIAMI,

       Defendant.

_____/

## DEFENDANT CITY OF MIAMI'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO THE AMENDED COMPLAINT AND COUNTERCLAIM[1]

---

[1] Pursuant to ECF No. 365, Defendant City of Miami has amended only its Affirmative Defenses and has not amended or modified the responses contained in the City's Answer or the allegations contained in the City's Counterclaim filed on January 9, 2024 [ECF No. 347].

# TABLE OF CONTENTS

ANSWER ................................................................................................................. 1

INTRODUCTION ............................................................................................... 1

PARTIES ............................................................................................................ 3

JURISDICTION, VENUE & APPLICABLE LAW ............................................ 4

BACKGROUND ................................................................................................ 4

CAUSES OF ACTION ...................................................................................... 64

    Count I .......................................................................................................... 64

    Count II ......................................................................................................... 65

    Count III ........................................................................................................ 66

    Count IV ........................................................................................................ 66

    Count V ......................................................................................................... 67

    Count VI ........................................................................................................ 68

    Count VII ....................................................................................................... 69

DEMAND FOR JURY TRIAL .......................................................................... 71

AFFIRMATIVE DEFENSES ................................................................................. 71

First Affirmative Defense ................................................................................. 71

Second Affirmative Defense ............................................................................. 72

Third Affirmative Defense ................................................................................ 72

Fourth Affirmative Defense .............................................................................. 72

Fifth Affirmative Defense ................................................................................. 73

Sixth Affirmative Defense ................................................................................ 73

Seventh Affirmative Defense ............................................................................ 73

Eighth Affirmative Defense .............................................................................. 74

Ninth Affirmative Defense ................................................................................................................ 74

Tenth Affirmative Defense ............................................................................................................... 75

Eleventh Affirmative Defense .......................................................................................................... 76

Twelfth Affirmative Defense ............................................................................................................ 77

Thirteenth Affirmative Defense ....................................................................................................... 77

Fourteenth Affirmative Defense ...................................................................................................... 77

Fifteenth Affirmative Defense ......................................................................................................... 77

Sixteenth Affirmative Defense ......................................................................................................... 79

Seventeenth Affirmative Defense .................................................................................................... 79

Eighteenth Affirmative Defense ...................................................................................................... 80

Nineteenth Affirmative Defense ...................................................................................................... 80

Twentieth Affirmative Defense ........................................................................................................ 80

Twenty-First Affirmative Defense ................................................................................................... 80

Twenty-Second Affirmative Defense ............................................................................................... 81

Twenty-Third Affirmative Defense .................................................................................................. 81

Twenty-Fourth Affirmative Defense ................................................................................................ 82

Twenty-Fifth Affirmative Defense ................................................................................................... 83

Twenty-Sixth Affirmative Defense .................................................................................................. 84

Twenty-Seventh Affirmative Defense .............................................................................................. 84

Twenty-Eighth Affirmative Defense ................................................................................................ 84

Twenty-Ninth Affirmative Defense ................................................................................................. 86

Thirtieth Affirmative Defense .......................................................................................................... 86

Thirty-First Affirmative Defense ..................................................................................................... 87

Thirty-Second Affirmative Defense ............................................................................. 87

Thirty-Third Affirmative Defense ............................................................................... 87

Thirty-Fourth Affirmative Defense ............................................................................. 87

Thirty-Fifth Affirmative Defense ................................................................................ 88

Thirty-Sixth Affirmative Defense ............................................................................... 89

Thirty-Seventh Affirmative Defense ........................................................................... 89

Thirty-Eighth Affirmative Defense ............................................................................. 89

Thirty-Ninth Affirmative Defense .............................................................................. 90

Fortieth Affirmative Defense ...................................................................................... 91

Forty-First Affirmative Defense .................................................................................. 91

Forty-Second Affirmative Defense ............................................................................. 91

COUNTERCLAIM ............................................................................................................ 93

INTRODUCTION .......................................................................................................... 93

PARTIES, JURISDICTION AND VENUE .................................................................. 96

FACTUAL ALLEGATIONS ......................................................................................... 98

The Long-Standing Scheme to Avoid Permit Fees and Increased Tax Assessments .... 98

State and Local Building Codes Require Permits for All Construction ...................... 101

Counter-Defendants Continue Their Principals' Scheme and Enterprise................... 103

LHAB and Mad Room Illegally Carry Out Unpermitted Work and Lie to the City ... 105

Mad Room and LHAB Use the City's Online Permit Portals in Violation of the
Communications Fraud Act in Furtherance of Their Scheme .................................... 108

LGF and Taquerias Also Carry Out Unpermitted Work ............................................ 109

Taquerias and LFG Also Use the City's Online Permit Portals in Violation of the
Communications Fraud Act to Further Their Scheme ................................................ 112

CAUSES OF ACTION ................................................................................................. 113

Count I – Violations of Florida Statutes §§ 772.103 and 895.03 ................................. 113

Count II – Violations of Florida Statutes §§ 772.103 and 895.03 .............................. 117

Count III – Violation of Florida Statutes § 772.103(4) ................................................. 120

Count IV – Common Law Fraud .................................................................................... 122

Count V – Common Law Fraud...................................................................................... 124

DEMAND FOR JURY TRIAL ........................................................................................ 125

Defendant, the City of Miami (the "City"), hereby answers and responds to the First Amended Complaint ("Complaint"), filed November 17, 2022 (Dkt. 212) by Plaintiffs Mad Room LLC d/b/a Ball and Chain ("Mad Room" or "Ball & Chain"), Altos Mexicano, LLC d/b/a Taquerias El Mexicano ("Altos Mexicano" or "Taquerias"), Little Havana Arts Building, LLC, and La Gran Fiesta, LLC (collectively, "Plaintiffs"). To the extent not specifically admitted herein, the City denies all of the allegations in the Complaint. In addition, to the extent Plaintiffs purport to quote from documents or portions of written allegations not attached as exhibits to the Complaint, the City refers to the documents themselves for their actual and complete contents. The City has not attempted to verify the accuracy of Plaintiffs' quotations or even that the documents exist. To the extent the quotations are incomplete, inaccurate, or misleading, or the underlying documents do not exist, the City denies the allegations. The City will insist on strict proof of any allegations, assuming such allegations are deemed admissible, as to which the City reserves its rights. The City's use of the Complaint's defined terms is intended solely for the Court's convenience; the City denies that Plaintiffs have defined these terms appropriately. To the extent any of the section or subsection headings in the Complaint – whether in the Table of Contents or in the body of the Complaint – are construed as allegations (which the City asserts they cannot be because they are not part of the "numbered paragraphs" setting forth Plaintiffs' claims), the City denies in full each and every such heading.

## ANSWER

### INTRODUCTION

1.      The City denies the allegations in paragraph 1.

2.      The City admits only that two Plaintiffs, Little Havana Arts Building, LLC and La Gran Fiesta, LLC, own property in Miami's Calle Ocho and two Plaintiffs, Mad Room and

Taquerias, operate businesses in Miami's Calle Ocho. The City denies the remaining allegations in paragraph 2.

3.      With respect to the seventh sentence in paragraph 3, the City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. With respect to the eighth sentence in paragraph 3, the City admits only that Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 3.

4.      Paragraph 4 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 4.

5.      The City denies the allegations in paragraph 5.

6.      Paragraph 6 states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations.

7.      Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, the City admits only that Plaintiffs purport to seek damages and equitable relief pursuant to 42 U.S.C. § 1983. The City denies that it has engaged in any violation of

Plaintiffs' constitutional rights or the City Charter. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in paragraph 7 and pages 88, 89-90, 91, 93, 94, 97, 101-102 of Plaintiffs' Complaint.

## PARTIES

8.      The City admits that Plaintiff Mad Room d/b/a Ball & Chain is a Florida limited liability company with a principal place of business in Miami, Florida. The City admits that Mad Room operates a bar called Ball & Chain located at 1513 SW 8th Street but denies that Ball & Chain operates as a restaurant. The City does not have sufficient information to admit or deny whether Ball & Chain is "popular." The City further denies the statement that "Ball & Chain is owned by Bill Fuller ("Fuller"), Ben Bush, and Zack Bush" as incomplete and misleading. Upon information and belief, there is at least one other owner of Ball & Chain through a corporate entity. All other allegations not specifically admitted are herein denied.

9.      The City admits that Plaintiff Altos Mexicano, LLC is a Florida limited liability company with a principal place of business in Miami, Florida. The City admits that Altos Mexicano operates Taquerias El Mexicano, a Mexican restaurant located at 521 SW 8th Street, but does not have sufficient information to admit or deny whether that restaurant is "prominent." The City denies that Altos Mexicano operates only a Mexican restaurant; in November 2018, "Los Altos," a bar and lounge area designed to operate as a historical speakeasy opened on the second floor of Taquerias El Mexicano. The City further denies the statement that "Taquerias is owned by Fuller, Ben Bush, and Zack Bush" as incomplete and misleading. Upon information and belief, there were at least three other owners of Taquerias through corporate entities during the relevant timeframe. All other allegations not specifically admitted are herein denied.

10.     The City admits only that Plaintiff Little Havana Arts Building, LLC is a Florida limited liability company with a principal place of business in Miami, Florida and is the owner of the building leased by Mad Room. The City denies the statement that "Little Havana Arts Building, LLC is owned by Fuller" as incomplete and misleading. Upon information and belief, there were at least two other owners of Plaintiff Little Havana Arts Building, LLC during the relevant timeframe. All other allegations not specifically admitted are herein denied.

11.     The City admits only that Plaintiff La Gran Fiesta, LLC is a Florida limited liability company with a principal place of business in Miami, Florida and is the owner of the building leased by Taquerias. The City denies the statement that "La Gran Fiesta, LLC is owned by Fuller, Ben Bush, and Zack Bush" as incomplete and misleading. Upon information and belief, there were at least three other owners of Plaintiff La Gran Fiesta, LLC through corporate entities during the relevant timeframe. All other allegations not specifically admitted are herein denied.

12.     The City admits that it is a municipality in Miami-Dade County, Florida, organized under the laws of the State of Florida. The remaining allegations in paragraph 12 state legal conclusions to which no response is required.

## JURISDICTION, VENUE & APPLICABLE LAW

13.     The City admits the statements in paragraph 13.

14.     The City admits the statements in paragraph 14.

15.     The City denies the allegations in paragraph 15.

## BACKGROUND

16.     The City admits only that The Mad Room, LLC operates Ball & Chain and Altos Mexicano, LLC operates Taquerias el Mexicano, which are located in the area of Miami known as the Calle Ocho District of Little Havana. The City is without knowledge or information

4

sufficient to admit or deny Plaintiffs' allegations that Ball & Chain and Taquerias employed local residents and paid state taxes, in part because Plaintiffs have not provided information as to all of their employees or provide state sales or income tax returns. The City denies that Plaintiffs have paid all taxes to the City or Miami-Dade County. The City denies the remaining allegations in paragraph 16.

17.     The City denies that Plaintiffs own or operate any other businesses in Little Havana. The City is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 17.

18.     The City admits only that tourists and local residents visit Little Havana, and that the National Trust for Historic Preservation added Miami's Little Havana Neighborhood to its list of "National Treasures" in 2017. The City denies the remaining allegations in paragraph 18.

19.     The City can neither admit nor deny the allegation that Calle Ocho "is a coherent and discrete district" within the City of Miami because Plaintiffs do not define which parts of Calle Ocho make us the "coherent and discrete district." The City denies the remaining allegations in paragraph 19.

20.     The City admits only that Ball & Chain reopened in 2014. The City is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 20.

21.     The City admits only that Ball & Chain operated from 2014 to January 2018. The City is unable to admit or deny the remaining allegations in paragraph 21 because "served the community" and "unnecessary interference" are vague and conclusory.

22.     The City admits only that elections were held in 2017, which resulted in some new officials taking office. The City denies the remaining allegations in paragraph 22.

23.     Paragraph 23 states a legal conclusion that "the City passed unconstitutional ordinances" to which no response it required. To the extent a response is required, the City denies the allegations. The City admits only that it issued notices of violation to Ball & Chain, and that Ball & Chain's patio remains closed due to Ball & Chain's failure to correct the violations. The City denies the remaining allegations in paragraph 23.

24.     The City is without knowledge or information sufficient to admit or deny allegations related to the prior owners of Taquerias or its operations prior to purchase by Plaintiffs. The City admits only that Bill Fuller, Ben Bush, and Zack Bush have owned Taquerias, with others, since 2017, as alleged, and that Taquerias is located on Calle Ocho and S.W. 5th Avenue. The City is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 24.

25.     The City admits that it has conducted on-site inspections of Taquerias to enforce applicable codes and ordinances. The City is without knowledge or information sufficient to admit or deny the allegations in paragraph 25 that refer to the mental impressions of persons or entities other than the City. The City denies the remaining allegations as worded in paragraph 25.

26.     The allegations in the second sentence of Paragraph 26 purport to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. With respect to the fourth sentence, the City admits only that Taquerias/Los Altos was temporarily shut down in August 2021, its General Manager was served with a notice to appear, and that the charges were subsequently dropped by the State Attorney's Office. The City denies the remaining allegations in paragraph 26.

27.     The City admits only that Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 27.

28.     The City denies the allegations in paragraph 28.

29.     The City admits only that Fuller claims an indirect ownership interest in each of the four Plaintiffs. The City denies the remaining allegations in paragraph 29.

30.     Paragraph 30 contains unsourced alleged quotations attributed to City Commissioner Carollo to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 30.

31.     The City denies the allegations in paragraph 31, except that the City admits that it conducted inspections of Plaintiffs' properties to enforce City codes.

32.     Paragraph 32 contains unsourced quotations to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 32.

33.     Paragraph 33 contains unsourced alleged quotations attributed to the Assistant City Manager to which no response is required. To the extent a response is required, the City denies the allegations. The fourth sentence of paragraph 33 purports to characterize testimony, which is contained in a written document, not attached as an exhibit. The City denies any such characterization inconsistent with the testimony. The City admits only that Mr. Diez was reassigned in 2018 and became a Vertical Construction Manager for the City. The City denies that

Mr. Diez was "terminated" from his position of Code Compliance Director. The City denies the remaining allegations in paragraph 33.

34.     The City admits only that Adele Valencia was hired as the Director of Code compliance in early 2019. The City denies the remaining allegations in paragraph 34.

35.     The City admits only that Art Noriega served as the CEO of Miami Parking Authority until approximately February 2020 when he was hired as the City Manager. The City denies the remaining allegations in paragraph 35.

36.     The City denies the allegations in paragraph 36.

37.     The City denies the allegations in paragraph 37.

38.     Paragraph 38 purports to characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that Commissioner Carollo conducts routine walkthroughs with other City officials in neighborhoods in the district he was elected to represent, including Little Havana. The City denies the insinuation in paragraph 38 that it was improper or unlawful for Commissioner Carollo to be on public property; the Commissioner has a right to be on public property. The City also admits only that it is the responsibility of each City department to inspect properties for compliance with City codes and ordinances. The City denies the remaining allegations in paragraph 38.

39.     Paragraph 39 purports to characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City denies the remaining allegations in paragraph 39.

40.     The City denies the allegations in paragraph 40.

41.    The City denies the allegations in paragraph 41.

42.    The City denies the allegations in paragraph 42.

43.    The City denies the allegations in paragraph 43.

44.    The City admits only that "Bill Fuller c/o The Barlington Group" filed an Ethics Complaint against certain City officials in March 2018 with the Miami-Dade Commission on Ethics and Public Trust, which he then withdrew in August 2018. The City lacks knowledge or information sufficient to form a belief as to why Mr. Fuller withdrew the Ethics Complaint. The City further admits that, in October 2018, Mr. Fuller and Martin Pinilla filed a lawsuit in the U.S. District Court for the Southern District of Florida captioned *Fuller et al. v. Carollo*, Case No.: 1:18-cv-24190, which Plaintiffs refer to as "the Related Case." The City refers to the Ethics Complaint and complaint in the Related Case for their actual and complete contents. The City denies the remaining allegations in paragraph 44.

45.    The City admits only that City departments enforce local codes and ordinances as appropriate, including "in the fall if 2018" and "early 2019." The City denies the remaining allegations in paragraph 45.

46.    Paragraph 46 references unsourced alleged statements not attached as exhibits, to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 46.

47.    The City denies the allegations in paragraph 47.

48.    The City admits that Commissioner Carollo spoke at the public Commission meeting on February 14, 2019. Paragraph 48 purports to summarize the public meeting, to which no response is required. The record of the public meeting speaks for itself, and the City denies

Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 48.

49.     Paragraph 49 purports to summarize the discussion at the public Commission meeting on February 14, 2019 to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 49.

50.     Paragraph 50 purports to summarize the discussion at the public Commission meeting on February 14, 2019 to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 50.

51.     Paragraph 51 purports to summarize the discussion at the public Commission meeting on February 14, 2019 to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 51.

52.     Paragraph 52 purports to summarize the discussion at the public Commission meeting on February 14, 2019 to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The first sentence of paragraph 52 states legal conclusions to which no response is required. To the extent

10

a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 52.

53.     The City admits only that Commissioner Russell voted against Resolution No. R-19-0072 at the public Commission meeting on February 14, 2019. Paragraph 53 purports to summarize the discussion at the public Commission meeting on February 14, 2019 to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 53.

54.     The City admits only that Resolution R-19-0072 was passed at the public Commission meeting on February 14, 2019. Paragraph 54 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs.

55.     The City admits only that in compliance with the direction of the Commission, the City Attorney sent an email on February 20, 2019 that states, in part, "I need your assistance (please) in carrying out the above mentioned resolution," and a separate email sent on February 20, 2019 states "[p]lease add 1513 SW 8 ST (work without a permit-compare to plans for Casa de Tula, prior business on site-potential full unpermitted remodel)." Paragraph 55 purports to characterize and quote the City Attorney's emails, which are not attached as exhibits. All these emails included the City Manager in the recipient list. These documents speak for themselves, and any characterization that is inconsistent with those documents is denied. The City denies the remaining allegations in paragraph 55.

56.     The City denies the allegations in paragraph 56.

57.     Paragraph 57 references one or more written documents not attached as exhibits that are purported to be summarized in Plaintiffs' Addendum A, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City admits that the City Attorney's February 20, 2019 email identified ten addresses that she recalled as having been "discussed at Commission last week," including "521 SW 8 ST," which is the address for Taquerias. The City further admits that the address for Ball & Chain, "1513 SW 8 ST", was identified in a separate email sent by the City Attorney on February 20, 2019. The City also admits that Mr. Fuller has an indirect ownership in properties located at "1450 SW 7 ST," "1551 SW 8 ST," "1530 SW 7 ST," and "1380 SW 8 ST." The City is without knowledge or information sufficient to admit or deny Plaintiffs' allegations that the remaining addresses identified in the February 20, 2019 emails are "Fuller-affiliated properties." The City denies the remaining allegations in paragraph 57.

58.     The first and second sentences of Paragraph 58 reference unsourced alleged statements from individuals and purport to characterize one or more written documents not attached as exhibits, to which no response is required. Any characterization inconsistent with the unsourced alleged statements or written documents is denied. The third sentence of Paragraph 58 states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations.

59.     The first, second, and third sentences of Paragraph 59 reference unsourced alleged statements from individuals and purport to characterize one or more written documents not attached as exhibits, to which no response is required. Any characterization inconsistent with the unsourced alleged statements or written documents is denied. The City lacks knowledge or

information sufficient to form a belief as to the allegations in the third sentence of Paragraph 59 concerning the mental impressions of the City Manager.

60.     The City admits only that City staff appropriately acted in accordance with Resolution No. R-19-0072. The City denies the remaining allegations in paragraph 60.

61.     The first and second sentences of paragraph 61 state legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 61.

62.     The City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act; Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 62.

63.     Paragraph 63 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 63.

64.     Paragraph 64 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete

contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 64.

65. Paragraph 65 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 65.

66. Paragraph 66 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 66.

67. Paragraph 67 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 67.

68. Paragraph 68 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 68.

69. Paragraph 69 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Resolution R-19-0072 for its actual and complete contents, and denies any characterization or editorialization of the Resolution made by the Plaintiffs. The City denies the remaining allegations in paragraph 69.

70.     The third, fifth, seventh, and eighth sentences of Paragraph 70 reference unsourced alleged statements from individuals and/or purport to characterize one or more written documents not attached as exhibits, to which no response is required. Any characterization inconsistent with the unsourced alleged statements or written documents is denied. Paragraph 70 further states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 70.

71.     Paragraph 71 states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 71.

72.     The City admits only that Ball & Chain's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City further admits that Ortus Engineering, Inc. is a Private Provider pursuant to Florida Statutes Section 553.791. The City is without knowledge or information sufficient to admit or deny Plaintiffs' allegations regarding the profitability of Ball & Chain as compared to other businesses in Little Havana, but denies this allegation to the extent Plaintiffs suggest they own or operate any businesses or properties other than Ball & Chain, Taquerias/Los Altos, Little Havana Arts Building, or La Gran Fiesta. The City denies the remaining allegations in paragraph 72.

73.     Paragraph 73 references unsourced alleged statements from individuals, to which no response is required. Any characterization inconsistent with the unsourced alleged statements is denied. Paragraph 73 further references one or more written documents not attached as exhibits

that are purported to be summarized in Plaintiffs' Addendum B, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum B are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 73.

74.    The second sentence of Paragraph 74 states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The sixth sentence of Paragraph 74 references unsourced alleged statements from individuals, to which no response is required. Any characterization inconsistent with the unsourced alleged statements is denied. Paragraph 74 also references one or more written documents not attached as exhibits that are purported to be summarized in Plaintiffs' Addenda B & C, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addenda B & C are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 74.

75.    The City denies the allegations contained in footnote 2 to paragraph 75. The City answers the sub-paragraphs to paragraph 75 as follows:

    (a)    Sub-paragraph 75(a) contains unsourced alleged statements attributed to a City Commissioner to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in sub-paragraph 75(a).

    (b)    The City admits that on March 14, 2018, City officials conducted a "park and walk" with City employees from other departments. The City further admits that certain City officials visited residents in a building located to the rear of Ball & Chain on 7th Street, close to 15th Avenue and provided the residents with contact information in case the residents had any questions. Sub-paragraph 75(b) contains information regarding actions by the owners of Ball & Chain about which the City lacks knowledge or information sufficient to admit or deny Plaintiffs' allegations, including whether Ball &

16

Chain installed "high-tech noise cancellation equipment and a master switch to control the volume of the music," whether staff could by-pass this master switch, whether stage speakers were re-positioned, whether the use of musician monitors were eliminated, and whether the times of live music performances were changed. The City denies the insinuation in paragraph 75(b) that it was improper or unlawful for City officials to be on public property; the City officials have a right to be on public property and speak to City residents. The City denies the remaining allegations in sub-paragraph 75(b).

(c)     The City admits only that the Fire Department issued a Notice of Violation to Ball & Chain dated July 6, 2018. Sub-paragraph 75(c) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in sub-paragraph 75(c).

(d)     Sub-paragraph 75(d) contains unsourced alleged quotations attributed to the City's fire inspector to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in sub-paragraph 75(d).

(e)     The City admits only that no violation was issued to Ball & Chain on August 31, 2018. There is no record of an inspection at Ball & Chain on August 31, 2018; the City therefore denies the remaining allegations in sub-paragraph 75(e).

(f)     The City admits only that no violation was issued to Ball & Chain on September 14, 2018. There is no record of an inspection at Ball & Chain on September 14, 2018; the City therefore denies the remaining allegations in sub-paragraph 75(f).

(g)     Sub-paragraph 75(g) purports to quote a written document not attached as an exhibit, to which no response is required. To the extent a response is required, the City denies the allegations. The City admits that on September 15, 2018, three City of Miami Code Enforcement Officers and a police officer visited Ball & Chain after receiving a code complaint regarding parking lot operations at 1530 SW 7th Street. The City denies that this lot is owned by any Plaintiff to this lawsuit; upon information and belief, the lot is owned by Little Havana Arts Too, LLC. The City further admits that Ball & Chain employees were asked to move their cars until it could be validated that the location could be used as a parking lot, and it was later confirmed to be zoned to allow parking. The City denies the remaining allegations in sub-paragraph 75(g).

(h)     The City admits only that it issued a noise citation to Ball & Chain on September 15, 2018. Sub-paragraph 75(h) purports to characterize a written

17

document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in sub-paragraph 75(h).

(i)   The City admits only that on September 27, 2018 code enforcement and police officers conducted a Dry Hour business inspection at Ball & Chain and 5 other establishments and issued no violations to Ball & Chain. The City denies the remaining allegations in sub-paragraph 75(i).

(j)   The City admits only that on October 2, 2018 a City Commissioner and a member of the Code Enforcement Board visited residents located near Ball & Chain. The City denies the insinuation in paragraph 75(j) that it was improper or unlawful for a City commissioner or employees to be on public property; the Commissioner and employees have a right to be on public property and speak to City residents. The City is without knowledge or information sufficient to admit or deny Plaintiffs' allegations regarding the actions of Ball & Chain's manager or the alleged statements of Ball & Chain's neighbors. The City denies the remaining allegations in sub-paragraph 75(j).

(k)   The City denies that code enforcement inspectors issued "another" noise violation to Ball & Chain on October 17, 2018. The City admits only that code enforcement inspectors issued an amended noise violation to Ball & Chain on October 17, 2018, to reflect the correct address for the violation that occurred on September 15, 2018. The City denies the remaining allegations in sub-paragraph 75(k).

(l)   Sub-paragraph 75(l) contains unsourced information from an unnamed "staff member" about which the City has no information or knowledge, and therefore the City denies the allegations in sub-paragraph 75(l). The City further denies the insinuation in paragraph 75(l) that it was improper or unlawful for a Commissioner to drive on public property; the Commissioner has a right to be on public property.

(m)   Sub-paragraph 75(m) contains unsourced information about which the City has no information or knowledge, and therefore the City denies the allegations in sub-paragraph 75(m). The City further denies the insinuation in paragraph 75(m) that it was improper or unlawful for a Commissioner and City employees to be on public property; the Commissioner has a right to be on public property. Subparagraph 75(m) states a legal conclusion by using the term "loitering" to which no response is required.

(n)   The City admits only that no violation was issued to Ball & Chain on February 20, 2019. There is no record of an inspection at Ball & Chain on February 20, 2019; the City therefore denies the remaining allegations in sub-paragraph 75(n).

(o)     The City admits only that The Mad Room LLC hired Ortus on March 26, 2019. Sub-paragraph 75(o) purports to characterize one or more written documents not attached as exhibits, to which no response is required. These documents speak for themselves, and any characterization that is inconsistent with the documents is denied. The City denies the remaining allegations in sub-paragraph 75(o).

(p)     The City admits only that it issued a violation numbered CE2019005418 to Little Havana Arts Building, LLC dated March 27, 2019 and that it issued a building permit to Fuller on March 11, 2020. Sub-paragraph 75(p) purports to quote a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in sub-paragraph 75(p).

(q)     The City admits only that no violation was issued to Ball & Chain on September 12, 2019. There is no record of an inspection at Ball & Chain on September 12, 2019; the City therefore denies the remaining allegations in sub-paragraph 75(q).

(r)     The City admits only that a warrant application for outdoor dining was filed on October 15, 2019 by Little Havana Arts Building, LLC and that the City issued an outdoor dining warrant in January 2021 and an alcohol warrant in April 2021. Sub-paragraph 75(r) purports to characterize one or more written documents not attached as an exhibit, to which no response is required. These documents speak for themselves, and any characterization that is inconsistent with the documents is denied. The City denies that CubaOcho Museum & Performing Arts Center (located at 1465 SW 8th St.) is identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in sub-paragraph 75(r), including allegations included in footnote 3.

(s)     The City admits only that no violation was issued to Ball & Chain on January 7, 2020. The City denies the remaining allegations in sub-paragraph 75(s).

(t)     The City admits only that no violation was issued to Ball & Chain on January 8, 2020. There is no record of a health inspection at Ball & Chain on January 8, 2020; the City therefore denies the remaining allegations in sub-paragraph 75(t).

(u)     Sub-paragraph 75(u) contains unsourced alleged quotations attributed to Fire Department Officials to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in sub-paragraph 75(u).

(v) Sub-paragraph 75(v) purports to characterize written documents not attached as exhibits, to which no response is required. These documents speak for themselves, and any characterization that is inconsistent with the document is denied. The City admits that on March 20, 2020, Governor De Santis enacted Executive Order Number 20-71, relating to the Emergency Management -COVID-19 - Alcohol Sales, Restaurants and Gyms. The City refers to Executive Order Number 20-71 for its actual and complete contents. The City further admits that on May 4, 2020, Governor De Santis enacted Executive Order Number 20-112 relating to Phase 1: Safe. Smart. Step-by-Step. Plan for Florida's Recovery, which included guidance regarding bars and restaurants. The City refers to Executive Order Number 20-112 for its actual and complete contents. The City further admits that on May 26, 2020, the City Manager enacted a local emergency measure titled "Amendment No. 1 to Order 20-11." The City refers to the local emergency measure titled "Amendment No. 1 to Order 20-11" for its actual and complete contents. The City further admits that on May 15, 2020, Miami-Dade County enacted Emergency Order 23-20. The City refers to Emergency Order 23-20 for its actual and complete contents. There is no record of police officers visiting Ball & Chain on April 21, 2020, and therefore that allegation is denied. The City admits that the police conducted a COVID-19 compliance check at Ball & Chain on May 16, 2020. The City is without information or knowledge regarding allegations in the fifth sentence regarding the spending of Ball & Chain, and therefore denies that allegation. The eighth sentence contains unsourced alleged statements attributed to "The City" to which no response is required. To the extent a response is required, the City denies the allegations. The fifth, sixth, and ninth sentences states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations The City denies the remaining allegations in sub-paragraph 75(v).

(w) The City admits only that a Certificate of Occupancy was issued to Ball & Chain on September 11, 2020 and that the Certificate of Occupancy was based on plans submitted by Saladino Design Studios. The City denies the remaining allegations in sub-paragraph 75(w).

(x) The City admits only that Ordinance No. 13936 was passed on October 8, 2020. Sub-paragraph 75(x) states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance No. 13936 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs. The City denies the remaining allegations in sub-paragraph 75(x).

(y) The City admits only that it conducted an audit of Ortus which was completed on October 13, 2020. The City denies the remaining allegations in sub-paragraph 75(y).

76. The City answers Paragraph 76 and the sub-paragraphs as follows:

(a)     The City admits only that the City adopted Ordinance No. 13936 on October 22, 2020. Sub-paragraph 76(a) states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance No. 13936 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs.

(b)     The City admits only that on October 22, 2020 a Building Official issued a certified letter to Ball & Chain notifying it that its Certificate of Occupancy was suspended because an audit of Ortus revealed that "the Certificate of Occupancy was provided based on incomplete, misleading, an/or erroneous information as it relates to the requirements for fire safety and the American [sic] with Disabilities Act." Sub-paragraph 76(b) purports to characterize the October 22, 2020 letter not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in sub-paragraph 76(b).

(c)     The City admits only that on October 22, 2020 the Zoning Administrator issued a certified letter to Ball & Chain notifying it that its Certificates of Use were revoked. Sub-paragraph 76(c) purports to characterize the October 22, 2020 letter not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in sub-paragraph 76(c).

(d)     The City admits only that on October 22, 2020 it passed on first reading Ordinance No. 13941. Sub-paragraph 76(d) states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance No. 13941 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs.

(e)     The City admits only that on November 19, 2020 it adopted on second reading Ordinance No. 13941. Sub-paragraph 76(e) states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance No. 13941 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs. The City denies the remaining allegations in sub-paragraph 76(e).

77.     The City denies the allegations in paragraph 77.

78.     Paragraph 78 and footnote 4 purport to characterize one or more written documents

not attached as an exhibit and state legal conclusions, to which no response is required. Any such

document speaks for itself, and any characterization that is inconsistent with the document is denied.

79.     The City denies the allegations in paragraph 79.

80.     The City denies the allegations in paragraph 80.

81.     The City admits only that on March 27, 2019, Ball & Chain received a citation for failure to "pull/obtain building permit for the construction work performed (overhang attached to structure, floor windows, interior remodeling, stage/band shell)" and that Ball & Chain filed a new building permit on April 15, 2019, which triggered a fire safety plan review. The City is without information or knowledge regarding Ball & Chain's relationship with Ortus, or whether or not Ortus violated its contract with Plaintiffs as alleged in footnote 5, and therefore denies those allegations. The City denies the remaining allegations in paragraph 81.

82.     Paragraph 82 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Florida Statutes Section 553.791 for its actual and complete contents, and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City admits only that Section 553.791 of Florida's Statutes allows for private companies to offer services to the public relating to local building and codes. The City denies the remaining allegations in paragraph 82.

83.     The City admits only that it issued the building permit for Ball & Chain on March 11, 2020. The City is without information or knowledge regarding Ball & Chain's relationship with Ortus, and therefore denies those allegations. The City denies the remaining allegations in paragraph 83.

84.     The City admits only that Ortus, on behalf of Ball & Chain, filed certain affidavits with the City pursuant to Florida Statutes Section 553.791. The City is without information or

knowledge regarding the details of Ball & Chain's relationship with Ortus or any other professionals that Ball & Chain may have hired, and therefore denies those allegations. The second sentence of paragraph 84 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Florida Statutes Section 553.791 for its actual and complete contents and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City denies the remaining allegations in paragraph 84.

85.     The City admits only that a law firm purporting to represent some or all of the Plaintiffs corresponded with the City regarding work conducted at Ball & Chain. The City denies the remaining allegations in paragraph 85.

86.     The City admits only that on September 11, 2020, the City's Building Department issued a Certificate of Occupancy to Ball & Chain. The City denies the remaining allegations in paragraph 86.

87.     The City denies the allegations in paragraph 87.

88.     Paragraph 88 purports to reference an unspecified "City Code" and states a legal conclusion to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the City Code or Florida Statutes Section 553.791 made by the Plaintiffs. The City admits only that it conducted an audit of projects associated with Ortus. The City denies the remaining allegations in paragraph 88.

89.     Paragraph 89 references unsourced information from "the City" regarding the number of private providers operating within the City of Miami, to which no response is required. To the extent a response is required, the City admits only that Ortus is a private provider that can perform work pursuant to Florida Statutes Section 553.791. The City denies the third and sixth sentences because the allegation "top private providers" is vague. The City admits that other

private providers that can perform work pursuant to Florida Statutes Section 553.791 include MDCI, Universal/Pacifica, ARC, NV5 and NTCI. The City further admits that private providers must complete certain documents and registration requirements to have all relevant and required qualifications, licensures, and insurance. The City is without information or knowledge regarding the number of project that Ortus has reviewed in the past five years, and therefore denies that allegation. The City denies the remaining allegations in paragraph 89.

90.     Paragraph 90 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum D, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum D are identical in all relevant respects to any of Plaintiffs' properties. The City denies the first sentence because the allegation about the "relevant time period" is vague. The City admits only that it conducted an audit of Ortus in connection with four projects related to Ball & Chain and the Tower Hotel. The City denies the remaining allegations in paragraph 90.

91.     Paragraph 91 references an unsourced and unspecified "conce[ssion]" by "the City" regarding whether Ortus had been previously audited purportedly in some document not attached as an exhibit, to which no response is required. The City admits that it conducted an audit of Ortus in connection with four projects related to Ball & Chain and the Tower Hotel (not a plaintiff here), as permitted pursuant to Florida Statutes Section 553.791(18). The City further admits that Ball & Chain and the Tower Hotel are both owned, in part, by Bill Fuller, among others. The City also admits that the City had not previously audited Ortus. The City further admits that Ball & Chain was issued a CO on September 11, 2020. The fourth sentence states a legal conclusion to which no response is required. The City denies the remaining allegations in paragraph 91.

92.     The first sentence of Paragraph 92 purports to quote a written document not attached as an exhibit, to which no response is required. The document speaks for itself, and any characterization that is inconsistent with the document is denied. The second sentence of Paragraph 92 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Florida Building Code Section 111.4 for its actual and complete contents, and denies any characterization or editorialization of the Building Code made by the Plaintiffs. The City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act.

93.     Paragraph 93 purports to quote a written document not attached as an exhibit, to which no response is required. The document speaks for itself, and any characterization that is inconsistent with the document is denied. City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City denies the remaining allegations in paragraph 93.

94.     Paragraph 94 purports to quote one or more written documents not attached as exhibits, to which no response is required. The documents speak for themselves, and any characterization that is inconsistent with the documents is denied. The City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on

October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City denies the remaining allegations in paragraph 94.

95.     Paragraph 95 purports to characterize testimony not attached as an exhibit, to which no response is required. Any such testimony speaks for itself, and the City denies Plaintiffs' characterization and editorializing. Paragraph 95 also references one or more written documents that are purported to be summarized in Plaintiffs' Addenda B & G, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addenda B & G are identical in all relevant respects to any of Plaintiffs' properties. The City admits only that a suspension of a Certificate of Occupancy requires corresponding Certificates of Use to be revoked. The City denies the remaining allegations in paragraph 95.

96.     Paragraph 96 states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that the City adopted Ordinance No. 13936 on October 22, 2020. The City denies the remaining allegations in paragraph 96.

97.     Paragraph 97 purports to characterize written documents not attached as exhibits, to which no response is required. These documents speak for themselves, and the City denies Plaintiffs' characterization and editorializing. The City admits only that (a) it notified Sabor Borinqueno, located at 1644 SW 8 Street, on December 20, 2021 that its Certificate of Use No.

1804-000760 was revoked pursuant to City of Miami Code Section 2-211(b)(7) and, as of November 17, 2022, Sabor Borinqueno was open for business; (b) it notified Oriental Chinese Restaurant D/B/A Sala'o Cuban Restaurant, located at 1642 SW 8 Street, on December 20, 2021 that its Certificate of Use No. 0000-002510 was revoked pursuant to City of Miami Code Section 2-211(b)(7) and, as of November 17, 2022, Oriental Chinese Restaurant D/B/A Sala'o Cuban Restaurant was open for business; (c) it notified Latin Art Core, Inc., located at 1646/1648 SW 8 Street, on December 20, 2021 that its Certificate of Use No. 1908-001593 was revoked pursuant to City of Miami Code Section 2-211(b)(7) and, as of November 17, 2022, Latin Art Core, Inc. was open for business. The City denies that Sabor Borinqueno, Oriental Chinese Restaurant D/B/A Sala'o Cuban Restaurant, and Latin Art Core, Inc. are identical in all relevant respects to any of Plaintiffs' properties. The first, second, and last sentences of paragraph 97 state legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 97.

98.     Paragraph 98 purports to quote an email from Plaintiffs' counsel not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization that is inconsistent with the document is denied. The City further denies the allegations within the quoted email.

99.     The first sentence of Paragraph 99 purports to quote an email from the City Attorney not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization that is inconsistent with the document is denied. The second sentence of Paragraph 99 references an unsourced "attest[ation] by the City," not attached as an exhibit, to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 99, including the allegation or

suggestion that Sabor Borinqueno, Oriental Chinese Restaurant D/B/A Sala'o Cuban Restaurant, and Latin Art Core, Inc. are identical in all relevant respects to Ball & Chain or any other Plaintiffs.

100.     The City denies the allegations in paragraph 100.

101.     The first sentence, footnote 6, and sixth sentence of paragraph 101 state legal conclusions to which no response is required. To the extent a response is required, the City refers to Florida Statutes Section 553.791 for its actual and complete contents, and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City admits only that a violation was issued to Little Havana Arts Building LLC on March 27, 2019. The City denies the remaining allegations in paragraph 101.

102.     The City admits only that the City issued a building permit to Ball & Chain on March 11, 2020. The City denies the remaining allegations in paragraph 102.

103.     Paragraph 103 states legal conclusions to which no response is required. To the extent a response is required, the City refers to Miami Code Sections 19-26 and 19-27 for their actual and complete contents, and denies any characterization or editorialization of the Miami Code made by the Plaintiffs. Paragraph 103 also contains legal conclusions to which no response is required. The City denies the remaining allegations in paragraph 103.

104.     Paragraph 104 and footnote 7 state legal conclusions to which no response is required. To the extent a response is required, the City refers to Miami Code Section 2-211 for its actual and complete contents, and denies any characterization or editorialization of the Miami Code made by the Plaintiffs. The City admits only that Certificates of Use for Ball & Chain were issued in 2010 and 2014. The City denies the remaining allegations in paragraph 104.

105.    Paragraph 105 state a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 105.

106.    The City denies the allegations in paragraph 106.

107.    Paragraph 107 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Florida Statutes Section § 553.79(13) for its actual and complete contents, and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City admits only that that the City issued a building permit to Ball & Chain on March 11, 2020. The City denies the remaining allegations in paragraph 107.

108.    The City admits only that it issued a Certificate of Occupancy to Ball & Chain on September 11, 2020 and that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City denies the remaining allegations in paragraph 108.

109.    The City denies the allegations in paragraph 109.

110.    The City admits only that Ball & Chain submitted an appeal to the City of Miami Planning and Zoning Hearing Board ("PZAB") on November 5, 2020 and an appeal to the Board of Rules and Appeals ("BORA") on November 18, 2020. The City denies the remaining allegations in paragraph 110.

111.    The City admits the statements in paragraph 111.

112.    The City denies the allegations in paragraph 112.

113.    Paragraph 113 and footnote 8 reference one or more documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the documents is denied. The City admits only that employees of the City analyzed Microfilm records and discovered work had been performed without a permit at Ball & Chain after Little Havana Arts Building, LLC purchased the property in 2007. The City denies the remaining allegations in paragraph 113.

114.    Paragraph 114 references information in documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the documents is denied. Paragraph 114 states legal conclusions to which no response is required. To the extent a response is required, the City refers to Code Section 804.2 for its actual and complete contents, and denies any characterization or editorialization of the Building Code made by the Plaintiffs. The City admits only that it determined the work area at Ball & Chain exceeded 50% of the building area, triggering a Level 3 review under the Florida Building Code. The City denies the remaining allegations in paragraph 114.

115.    The City admits only that the Level 3 review was initiated after the City's audit revealed the Certificate of Occupancy was provided based upon incomplete, misleading, and/or erroneous information as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City denies the allegations in paragraph 115.

116.    The City denies the allegations in paragraph 116.

117.    Paragraph 117 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that Mad Room deferred the PZAB Appeal and BORA Appeal; the City lacks knowledge or information sufficient

to form a belief as to why Mad Room deferred the appeals. The City denies the remaining allegations in paragraph 117.

118.    The City admits only that the appeal to the Board of Rules and Appeals would have addressed the issue of whether the scope of work triggered a Level 2 or Level 3 review. The City denies the remaining allegations in paragraph 118.

119.    The City denies the allegations in paragraph 119.

120.    Paragraph 120 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that the January 27, 2021 email from the City Attorney's office said that "Zoning and Building are in agreement that when all the corrections from comments have been taken care of the permit issues, once Fire provides their okay with a fire watch, then the TCO and temp CU can be done and the establishment re-opened." The City denies the remaining allegations in paragraph 120.

121.    The City admits only that the building department issued Ball & Chain a permit on April 2, 2021. The City denies the remaining allegations in paragraph 121.

122.    The City denies the allegations in paragraph 122.

123.    Paragraph 123 references unsourced alleged statements from City employees, to which no response is required. Any characterization that is inconsistent with these alleged statements is denied. The City denies the remaining allegations in paragraph 123.

124.    Paragraph 124 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that it required

the completion of the tap-in and the approval of all other inspections prior to the issuance of the TCO. The City denies the remaining allegations in paragraph 124.

125.    The City admits only that it required the completion of the tap-in and the approval of all other inspections prior to the issuance of the TCO. The City denies the remaining allegations in paragraph 125.

126.    Paragraph 126 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that, for the issuance of the TCO for the entire site (including both the interior and exterior), it required revised plans to correct the "[o]pening/exit on West side of [the] property leading into neighboring property" and for the "[p]ineapple stage to reflect [the] fire rating." These requirements were not necessary for Ball & Chain to obtain a partial TCO (interior space only). The City denies the remaining the allegations in paragraph 126.

127.    The City denies the allegations in paragraph 127.

128.    Paragraph 128 purports to characterize written documents not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the documents is denied. The City admits that a ticket warning letter was issued to Little Havana Arts Building, LLC on June 26, 2021 for an unlit letter in the Ball & Chain sign. The City further admits that a notice of violation was issued on July 13, 2021 for construction of a sign without a finalized permit. The City denies that the Plaintiffs' purported comparators in Addendum E are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 128.

129.     Paragraph 129 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that the City Attorney said that communications regarding the project should be done through the professionals involved in the project and/or through the project's attorneys due to Ball & Chain's treatment of City staff. The City denies the remaining allegations in paragraph 129.

130.     Paragraph 130 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City denies the remaining allegations in paragraph 130.

131.     The City denies the allegations in paragraph 131.

132.     The City admits that Ball & Chain received a temporary certificate of occupancy for the interior of the premises on September 21, 2021. The City denies the remaining allegations in paragraph 132.

133.     Paragraph 133 purports to characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City denies the remaining allegations in paragraph 133.

134.     The City denies the allegations in paragraph 134.

135.     The City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 and that the City also passed on first reading Ordinance No. 13941 on October 22, 2020. The City denies that Ordinance No. 13936 was

passed on October 22, 2020; rather, it was passed on October 8, 2020 and then adopted on second reading on October 22, 2020. The City denies the remaining allegations in paragraph 135.

136.    Paragraph 136 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance 13941 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs. Ordinance No. 13941 was adopted on November 19, 2020, and not October 22, 2020 as Plaintiffs allege. The City denies the remaining allegations in paragraph 136.

137.    Paragraph 137 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Ordinance 13941 for its actual and complete contents, and denies any characterization or editorialization of the Ordinance made by the Plaintiffs. The City denies the remaining allegations in paragraph 137.

138.    Paragraph 138 and footnote 9 state legal conclusions to which no response is required. To the extent a response is required, the City refers to Ordinance 13946 and City Code Section 2-211 for their actual and complete contents, and denies any characterization or editorialization of the Ordinance and City Code Section 2-211 made by the Plaintiffs. The City admits only that the City adopted Ordinance No. 13936 on October 22, 2020, which amends Section 2-211 of the City Code. The City denies the remaining allegations in paragraph 138 and footnote 9.

139.    The first sentence of Paragraph 139 states legal conclusions to which no response is required. To the extent a response is required, the City refers to Section 2-211(c) of the City Code for its actual and complete contents, and denies any characterization or editorialization of the City Code made by the Plaintiffs. The second sentence of paragraph 139 states legal

conclusions to which no response is required. To the extent a response is required, the City denies the allegation. The City denies the remaining allegations in paragraph 139.

140.     Paragraph 140 purports to summarize the discussion at the public Commission meeting on October 22, 2020, to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 140.

141.     Paragraph 141 purports to summarize the discussion at the public Commission meeting on October 22, 2020, to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City denies the remaining allegations in paragraph 141.

142.     Paragraph 142 purports to summarize the discussion at the public Commission meeting on October 22, 2020, to which no response is required. The record of the public meeting, which the Complaint does not attach, is the best evidence of the statements and speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City has no information or knowledge regarding the Plaintiffs' requests to the Florida Attorney General and therefore denies those allegations. The City denies the remaining allegations in paragraph 142.

143.     The City denies the allegations in paragraph 143.

144.     Paragraph 144 purports to characterize written documents not attached as exhibits, to which no response is required. These documents speak for themselves, and any characterization that is inconsistent with the documents is denied. The City admits only that Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from

the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5, for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The fourth sentence of paragraph 144 states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 144.

145.    The City denies the allegations contained in paragraph 145 and footnote 10 to paragraph 145. The City answers the sub-paragraphs to paragraph 145 as follows:

(a)    The City admits only that on November 17, 2018 an Interim Code Supervisor entered Taquerias and was asked to leave by the manager. The City denies the remaining allegations in sub-paragraph 145(a).

(b)    Sub-paragraph 145(b) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits that on December 15, 2018 it conducted multidisciplinary "Dry Hour" inspections at Taquerias and 9 other locations. The City further admits that Code issued notices of violation to Altos Mexicano for failure to obtain a valid CU and BTR for the type of business being conducted, failure to obtain a zoning warrant needed for outside patio seating and tickets for alcohol served without food and inability to provide documentation for sales. The City further admits that ABT reported that it took no action. The City denies the remaining allegations in sub-paragraph 145(b).

(c)    Sub-paragraph 145(c) references unsourced alleged statements attributed to the City's Fire Marshal and ABT to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that the no violations were issued to Taquerias on December 16, 2018. There is no record of an inspection at Taquerias on December 16, 2018; the City therefore denies the remaining allegations in sub-paragraph 145(c).

(d)    Sub-paragraph 145(d) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that on December 19, 2018, a Code Enforcement Inspector posted Violation CE2018025722 at Taquerias. The City denies the remaining allegations in sub-paragraph 145(d).

(e)     Sub-paragraph 145(e) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies that on December 26, 2018, two violations were posted as to Taquerias. The City denies the remaining allegations in sub-paragraph 145(e).

(f)     The City admits only that Plaintiffs have produced a text message between the owners of Altos Mexicano and others stating that the Fire Marshal visited Taquerias on January 24, 2019, but the City has insufficient information to admit or deny the authenticity of the text or the date of the activities it describes. The City denies that there is any record of an inspection at Taquerias from January 24, 2019. The City further admits that there is no record of a notice of violation. The City denies the remaining allegations in sub-paragraph 145(f).

(g)     Sub-paragraph 145(g) contains unsourced alleged quotations attributed to the City's Fire Marshal to which no response is required. To the extent a response is required, the City denies the allegations. Sub-paragraph 145(g) also purports to characterize a written document not attached as an exhibit. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that Plaintiffs have produced a text message between the owners of Altos Mexicano and others stating that the Fire Marshal visited Taquerias on January 25, 2019, but the City has insufficient information to admit or deny the authenticity of the text or the date of the activities it describes. The City denies the remaining allegations in sub-paragraph 145(g).

(h)     Sub-paragraph 145(h) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies that on February 6, 2019 "another" violation was posted at Taquerias. The City denies the remaining allegations in sub-paragraph 145(h).

(i)     Sub-paragraph 145(i) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that on February 14, 2019 the Fire Marshal inspected Taquerias and issued a notice of violation. The City denies the remaining allegations in sub-paragraph 145(i).

(j)     The City admits only that no notices of violation were issued to Taquerias by the Fire Department on March 10, 2019 or March 23, 2019. There is no record of an inspection at Taquerias on March 10, 2019 or March 23, 2019; the City therefore denies the remaining allegations in sub-paragraph 145(j).

(k)     Sub-paragraph 145(k) contains unsourced alleged quotations attributed to an ABT Inspector to which no response is required. To the extent a response is required, the City denies the allegations. The City does not have sufficient information to admit or deny whether Inspector Lowry stated Taquerias had "no license to sell alcohol" or whether "the Inspector retracted the statement." The City denies the remaining allegations in sub-paragraph 145(k).

(l)     Sub-paragraph 145(l) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that on March 28, 2019 a violation was posted at Taquerias for failure to provide the minimum off-street parking in SD2 zoning district, which was subsequently voided by Code Enforcement. The City denies the remaining allegations in sub-paragraph 145(l).

(m)    The City admits only that Taquerias did not receive a noise violation on September 13, 2019. There is no record of an inspection at Taquerias on September 13, 2019; the City therefore denies the remaining allegations in sub-paragraph 145(m).

(n)     Sub-paragraph 145(n) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies that "another" violation was posted on November 8, 2019 at Taquerias. The City denies the remaining allegations in sub-paragraph 145(n).

(o)     Sub-paragraph 145(n) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that a notice of violation was posted on January 13, 2020 at Taquerias. The City denies the remaining allegations in sub-paragraph 145(o).

(p)     The City admits only that no notices of violation were issued to Taquerias by the Fire Department on March 7, 2020. There is no record of an inspection at Taquerias on March 7, 2020; the City therefore denies the remaining allegations in sub-paragraph 145(p).

146.    The City is without sufficient information or knowledge to admit or deny whether "Plaintiffs counsel has to expend considerable time and legal fees." The City denies the remaining allegations in paragraph 146.

147.    The second sentence of paragraph 147 contains a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 147.

148.    Paragraph 148 contains unsourced alleged statements attributed to an unnamed person in "the City Attorneys' Office" to which no response is required. To the extent a response is required, the City denies the allegations. The City is without sufficient information or knowledge to admit or deny whether Taquerias "lost [a] business opportunity and thousands in lost profits." The third sentence of paragraph 148 states a legal conclusion, to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that there is an open case number associated with Taquerias that notes "Failure to provide BTR for restaurant" dated May 6, 2021, and that on May 12, 2021, it was determined that Taquerias was then operating under the terms of its current CU and BTR and those violations were closed. The City denies the remaining allegations in paragraph 148.

149.    Paragraph 149 states legal conclusions to which no response is required. To the extent a response is required, the City refers to Article 6.3 of Miami 21, Chapter 4 of the City Code, and the Florida Beverage Law for their actual and complete contents, and denies any characterization or editorialization made by the Plaintiffs. The City admits only that an outdoor dining application was submitted for Taquerias on January 14, 2019, and that the City requested a "liquor distance survey" on December 11, 2020. The City denies the remaining allegations in paragraph 149.

150.    Paragraph 150 references one or more written documents not attached as exhibits that are purported to be summarized in Plaintiffs' Addendum F, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization,

characterization and editorializing. The City admits only that Ministerio de Juan is in the same building as El Gato Tuerto, which is a liquor store. The City denies that El Gato Tuerto or the other purported comparators in Addendum F are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 150.

151.    The City admits only that on April 2, 2021 Zack Bush claimed in an email that "Commissioner Carollo was seen with two gentlemen taking measurements up beside our business/property Taquerias El Mexicano located at 521 SW 8 Street." The City further admits only that on April 6, 2021, Mr. Noriega responded to the email that it was he, not Commissioner Carollo, who was taking measurements stating "[t]he purpose being to verify the distance from your restaurant to the property which contains a religious establishment. To ascertain as to whether or not there are any discrepancies from the liquor license application. Commissioner Carollo happened to be with me as part of a 2 1/2 hour drive around we did in his district. He took no part in that measurement taking and I inconvenienced him and asked him to indulge me since we were in the neighborhood. The measurement taken, for your information, was 245 feet to be exact. Since you and your partners are habitual offenders and have had multiple violations spread over a number of properties, I feel it's important for me to follow up personally." The City denies the insinuation in paragraph 151 that it was improper or unlawful for Commissioner Carollo to be on public property; the Commissioner has a right to be on public property. The City denies the remaining allegations in paragraph 151.

152.    Paragraph 152 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum C, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum C

are identical in all relevant respects to any of Plaintiffs' properties. The City admits only that it conducted an audit of Taquerias' point of sale data to confirm Taquerias was operating within the scope of its Certificate of Use, which required that the restaurant derive at least 51% of its gross food and beverage revenue from the sale of food and non-alcoholic beverages. The City denies remaining the allegations in paragraph 152.

153.    The City denies that Operation Dry Hour includes zoning inspectors. The City admits the remaining statements in paragraph 153.

154.    Paragraph 154 purports to quote and characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City denies the remaining allegations in paragraph 154.

155.    Paragraph 155 purports to quote and characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied.

156.    The City admits only that the City Building Inspectors attend Dry Hour business inspections with police, code and ABT "to ensure each [alcohol service] establishment is in legal compliance with all state laws, City codes and Miami-Dade County Ordinances," and admits further that the Building Department received additional resources over time. The City denies the remaining allegations in paragraph 156.

157.    The City admits only that the Dry Hour task force includes Police personnel. The City denies the allegations in paragraph 157.

158.    Paragraph 158 purports to quote and characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied.

159.    The City denies the allegations in paragraph 159.

160.    Paragraph 160 contains unsourced alleged statements attributed to the City's Chief of Police and Police commander in charge of Dry Hour operations, to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 160.

161.    Paragraph 161 states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations.

162.    The City admits only that the Dry Hour program was conducted in 2018 and 2019; Dry Hour operations ceased in 2020 due to the COVID-19 pandemic and resumed in April 2021. The City denies the remaining allegations in paragraph 162.

163.    The City admits only that it implemented the Dry Hour program throughout the City of Miami "to ensure each [alcohol service] establishment is in legal compliance with all state laws, City codes and Miami-Dade County Ordinances," and that it has conducted business inspections of Ball & Chain and Taquerias, as well as other establishments throughout the City, during Dry Hour operations. The City denies the remaining allegations in paragraph 163.

164.    Paragraph 164 purports to quote and characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that it along with ABT conduct Dry Hour operations and that, between November 2018 and February

42

2019, the City has conducted business inspections of Taquerias during Dry Hour operations. The City denies the remaining allegations in paragraph 164.

165.     Paragraph 165 purports to characterize a March 8, 2019 report, which is a written document not attached as an exhibit, to which no response is required. This written document speaks for itself, and any characterization inconsistent with the document is denied. The City admits a Dry Hour inspection was conducted on December 15, 2018 that included agents from ABT. The City further admits that an ABT special agent confirmed there were no open violations at Taquerias in late January 2019. The City admits that an ABT special agent conducted a site inspection at Taquerias on March 4, 2019 based on the issuance of a quota license and recommended approval of the site. The City denies the remaining allegations in paragraph 165.

166.     Paragraph 166 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum C, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum C are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 166.

167.     Paragraph 167 references one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits that it conducted an audit of Taquerias' point of sale data to confirm Taquerias was operating within the scope of its Certificate of Use, which required that the restaurant derive at least 51% of its gross food and beverage revenue from the sale of food and non-alcoholic beverages. The City further admits that it reviewed and accepted

the audit report submitted by Taquerias' Certified Public Accountant. The City denies the remaining allegations in paragraph 167.

168.    Paragraph 168 states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City refers to Miami Code Section 4-2 for its actual and complete contents and denies any characterization or editorialization of the City Code made by the Plaintiffs.

169.    The City admits only that it conducted an audit of Taquerias' point of sale data to confirm Taquerias was operating within the scope of its Certificate of Use, which required that the restaurant derive at least 51% of its gross food and beverage revenue from the sale of food and non-alcoholic beverages. The City denies the remaining allegations in paragraph 169.

170.    Paragraph 170 references multiple unsourced alleged statements not attached as exhibits, to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that it conducted an audit of Taquerias' point of sale data to confirm Taquerias was operating within the scope of its Certificate of Use, which required that the restaurant derive at least 51% of its gross food and beverage revenue from the sale of food and non-alcoholic beverages. The City denies the remaining allegations in paragraph 170.

171.    Paragraph 171 purports to quote a written document not attached as an exhibit, to which no response is required. The document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that the City's Director of Code Compliance requested an audit of Taquerias on March 12, 2019. The City denies the remaining allegations in paragraph 171.

172.    Paragraph 172 purports to characterize a written document not attached as an exhibit, to which no response is required. The document speaks for itself, and any characterization

inconsistent with the document is denied. The City admits only that on March 13, 2019 Taquerias provided the City with a letter from its CPA and a sales summary. The City denies the remaining allegations in paragraph 172.

173.    Paragraph 173 purports to quote and characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that on March 28, 2019 the City requested a formal audit and that, on May 8, 2019, Taquerias CPA provided the City with the audit report. The City denies the remaining allegations in paragraph 173.

174.    Paragraph 174 purports to characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. Paragraph 174 further states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that it reviewed and accepted the audit report submitted by Taquerias' Certified Public Accountant. The City denies the remaining allegations in paragraph 174.

175.    Paragraph 175 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum C, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum C are identical in all relevant respects to any of Plaintiffs' properties. The City admits only that it conducted an audit of Taquerias' point of sale data to confirm Taquerias was operating within the scope of its Certificate of Use, which required that the restaurant derive at least 51% of its gross

food and beverage revenue from the sale of food and non-alcoholic beverages. The City denies the remaining allegations in paragraph 175.

176.    The City admits only that police and code enforcement inspected Taquerias/Los Altos on August 20, 2021 during a Dry Hour operation and Taquerias/Los Altos was temporarily shut down for operating Los Altos without a BTR for a nightclub, and the General Manager was served with a notice to appear. The City denies the remaining allegations in paragraph 176.

177.    Paragraph 177 purports to reference unsourced and unidentified "demands" to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 177.

178.    The first sentence of paragraph 178 references unsourced alleged statements attributed to unidentified police officers and "Taquerias ownership," to which no response is required. To the extent a response is required, the City denies the allegations. The City admits that Plaintiffs produced a video purporting to show the police at Taquerias on April 3, 2021, but has insufficient information to admit or deny the authenticity of the video or the date of activities which it purports to depict; body camera footage produced by the City, however, is timestamped April 4, 2021. The City further admits that no enforcement action was taken. The City denies the remaining allegations in paragraph 178.

179.    The second and third sentences of paragraph 179 reference unsourced alleged statements attributed to Mr. Fuller and police officers, which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that code enforcement employees and police officers visited Taquerias on May 1, 2021, but Code Enforcement was denied entry to Taquerias. The City further admits that the after action report relating to the Taquerias inspection on May 1, 2021 indicates that ABT issued a written warning for liquor law

violation and that ABT stated "No violations observed at this time," but further noted that the owner was instructed that the second floor needs access as listed by the SFS license. The City denies the remaining allegations in paragraph 179.

180.    The first sentence of paragraph 180 purports to characterize the intentions of the Miami Chief of Police, which the City is without sufficient information or knowledge to admit or deny. The third sentence of paragraph 180 purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The fourth sentence of paragraph 180 references unsourced alleged statements attributed to Plaintiffs and the Chief of Police, which no response is required. To the extent a response is required, the City denies the allegations. The City further admits only that the after action report relating to the Taquerias inspection on May 1, 2021 indicates that ABT issued a written warning for liquor law violation and that the ABT report stated "No violations observed at this time," but further noted that the owner was instructed that the second floor needs access as listed by the SFS license. The City denies the remaining allegations in paragraph 180.

181.    The second sentence of paragraph 181 references unsourced alleged statements attributed to Taquerias' staff and police officers to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 181.

182.    Paragraph 182 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to City of Miami Code Section 4-2 and the Florida Beverage Law for their actual and complete contents, and denies any characterization or editorialization of the City Code made by the Plaintiffs. Paragraph 182 also references

unsubstantiated alleged statements attributed to Plaintiffs' counsel to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that Taquerias El Mexicano and Los Altos operate as one business entity under the same Certificate of Use and license to serve alcohol. The City denies the remaining allegations in paragraph 182.

183.     Paragraph 183 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City denies the remaining allegations in 183.

184.     Paragraph 184 purports to quote a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits only that the ABT report relating to the inspection of Taquerias on May 1, 2021 stated "No violations observed at this time," but further noted that the owner was instructed that the second floor needs access as listed by the SFS license. The City denies the remaining allegations in paragraph 184.

185.     The City admits only that the ABT report relating to the inspection of Taquerias on May 1, 2021 stated "No violations observed at this time," but further noted that the owner was instructed that the second floor needs access as listed by the SFS license. The City further admits that there is an open case number associated with Taquerias that notes "Failure to provide BTR for restaurant" dated May 6, 2021. The City is without information or knowledge to admit or deny the intentions of the Plaintiffs in deciding to pursue a 4COP SFS license instead of a 4COP Quota license, as alleged in footnote 11. The City denies the remaining allegations in paragraph 185, including the remaining allegations in footnote 11.

186.     The third sentence of paragraph 186 purports to reference unsubstantiated alleged statements by city employees to which no response is required. To the extent a response is required,

the City denies the allegation. The City admits only that there was an inspection conducted on May 5, 2021 at Taquerias and ticket number CE2021009158 was issued for "Failure to provide BTR for restaurant." The City also admits that there was an inspection conducted on May 5, 2021 at El Taquito Café Restaurant and a notice of violation number CE2021009157 was issued. The City denies the remaining allegations in paragraph 186.

187.    Paragraph 187 references an unsourced alleged statement attributed to "the City" to which no response is required. To the extent a response is required, the City denies the allegation. The City admits only that there is an open case number associated with Taquerias that notes "Failure to provide BTR for restaurant" dated May 6, 2021. The City further admits only that on May 12, 2021, the Zoning Department determined that Taquerias/Los Altos was operating within the scope of the CU and BTR and authorized the closure of the violation. The City denies the remaining allegations in paragraph 187.

188.    The second sentence of Paragraph 188 references an unsubstantiated statement by a Taquerias employee to which no response is required. Paragraph 188 further states legal conclusions to which no response is required. To the extent a response is required, the City refers to Florida Statutes Section 933.29 for its actual and complete contents, and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City admits only that employees from the Police Department, Fire Department and Code Enforcement visited Taquerias on June 19, 2021 pursuant to Dry Hour operations, but Code Enforcement was denied entry. The City also admits that no citation was issued. The City denies the remaining allegations in paragraph 188.

189.    Paragraph 189 states legal conclusions to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that police and

code enforcement inspected Taquerias/Los Altos on August 20, 2021 during a Dry Hour operation and Taquerias/Los Altos was temporarily shut down for operating Los Altos without a BTR for a nightclub, and the General Manager was served with a notice to appear. The City denies the remaining allegations in paragraph 189.

190.    The City admits only that Taquerias/Los Altos was temporarily shut down for operating Los Altos without a BTR for a nightclub. The City denies the remaining allegations in paragraph 190.

191.    The City admits only that police and code enforcement inspected Taquerias/Los Altos on August 20, 2021 and Taquerias was temporarily shut down for operating Los Altos without a BTR for a nightclub. City denies the remaining allegations in paragraph 191.

192.    The City denies the allegations in paragraph 192.

193.    The second and third sentence of paragraph 193 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The fourth sentence of paragraph 193 states a legal conclusion to which no response is required. The City is without sufficient information or knowledge to admit or deny the allegations in the fourth sentence regarding the Plaintiffs' hiring counsel for the General Manager or the length of time counsel spent on that engagement. The City admits only that the General Manager was served with a notice to appear, and that the charges were subsequently dropped by the State Attorney's Office. The City denies the remaining allegations in paragraph 193.

194.    Paragraph 194 references one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The first clause of paragraph 194 is a legal

conclusion to which no response is required. The City denies the remaining allegations in paragraph 194.

195.    Paragraph 195 contains quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The second sentence of paragraph 195 contains a legal conclusion to which no response is required. The City denies the remaining allegations in paragraph 195.

196.    The City denies the allegations in paragraph 196.

197.    The second sentence of Paragraph 197 purports to describe unsourced communications to Taquerias staff to which no response is required. To the extent a response is required, the City denies the allegations. The first and second sentences of Paragraph 197 further purport to describe communications with "the City" without identifying the dates of those communications or the individuals involved; therefore the City can neither admit nor deny those sentences. The City denies the remaining allegations in paragraph 197.

198.    Paragraph 198 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum C, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum C are identical in all relevant respects to any of Plaintiffs' properties. Paragraph 198 also contains unsourced alleged statements attributed to "the City" to which no response is required. To the extent a response is required, the City denies the allegations. The City denies the remaining allegations in paragraph 198.

199.    The City denies the allegations in paragraph 199.

200.     Paragraph 200 references unsourced, unsubstantiated alleged statements from "the City" to which no response is required. To the extent a response is required, the City denies the allegations. The City does not have sufficient information or knowledge to admit or deny the allegations in the second and fourth sentences regarding the timing of Plaintiffs' hiring of architects, or the amount or money, time, or "frustration" spent by Plaintiffs. The City admits only that on March 27, 2019 a violation was issued to La Gran Fiesta for work performed at Taquerias/Los Altos without a finalized permit. The City denies the remaining allegations in paragraph 200.

201.     Paragraph 201 references unsourced, unsubstantiated alleged statements from "the City" to which no response is required. To the extent a response is required, the City denies the allegations. The City does not have sufficient information or knowledge to admit or deny the allegations regarding the religious observations of Plaintiffs and their employees. The City denies the remaining allegations in paragraph 201.

202.     Paragraph 202 references unsubstantiated alleged statements attributed to "the City Attorneys' Office" to which no response is required. To the extent a response is required, the City denies the allegations. Paragraph 202 also states a legal conclusion to which no response is required.

203.     Paragraph 203 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to the City Code Section 2-211 for its actual and complete contents and denies any characterization or editorialization of the City Code made by the Plaintiffs. The City admits only that Taquerias' CU was revoked on September 21, 2021 following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of

ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 203.

204.     Paragraph 204 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum G, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum G are identical in all relevant respects to any of Plaintiffs' properties. Paragraph 204 also contains unsourced alleged statements attributed to the Zoning Department director and the City to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that businesses other than Ball & Chain and Taquerias have had their CUs revoked. The City incorporates its Response to ¶ 97, *supra*. The City denies the remaining allegations in paragraph 204.

205.     The City denies the allegations in paragraph 205.

206.     Paragraph 206 states a legal conclusion to which no response is required. To the extent a response is required, the City refers to Florida Building Code § 1027.5 for its actual and complete contents and denies any characterization or editorialization of the Building Code made by the Plaintiffs. The City admits only that Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 206.

207.     The allegations in the first sentence of Paragraph 207 purport to characterize a 2019 building permit (BD19-05503-001) not attached as an exhibit, to which no response is required.

The written document speaks for itself, and any characterization inconsistent with the document is denied. The City is without sufficient information or knowledge to admit or deny the allegation that Altos Mexicano "spent the last two years and many tens of thousands of dollars." The City admits only that Taquerias' Certificate of Use was revoked following an inspection that revealed that the secondary means of egress from the 2nd floor of the property was in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line, which constituted a life-safety issue. The City denies the remaining allegations in paragraph 207.

208.    The City admits only that on July 21, 2021 Zach Bush was provided a copy of a field check that recorded "Exterior stairway located at SW side less than 10 FT from lot line requiring fire protection (Code Section FBC1027/1027.5Location" and "Opening located at south side stairway located less than 10 FT from the lot line require T.B in compliance with 1027.5Location." The City denies the remaining allegations in paragraph 208.

209.    The City is without sufficient information or knowledge to admit or deny the allegations in the first sentence of paragraph 209. Paragraph 209 references building plans, which contents speak for themselves and therefore no response is required. Any characterization that is inconsistent with the content of the documents is denied. The City denies the remaining allegations in paragraph 209.

210.    The City admits only that Taquerias was open between July 21, 2021 and September 21, 2021. The City denies the remaining allegations in paragraph 210.

211.    Paragraph 211 purports to characterize one or more written documents not attached as an exhibit, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City admits only that an

Inspection History report on Taquerias documented that on February 16, 2021 plans and permits were missing but that "Final Fire" indicated "Passed." The City denies the remaining allegations in paragraph 211.

212.    The City admits only that it received a letter from Plaintiffs' counsel on September 22, 2021 challenging the September 21, 2021 revocation of Certificate of Use No. 1712-002617. The City denies the remaining allegations in paragraph 212.

213.    Paragraph 213 purports to quote and characterize a written document not attached as an exhibit, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City admits only that on September 22, 2021, the City Attorney responded to Plaintiffs' counsel, stating "Your client has been harassing and mistreating City staff long enough. Your client does not have a constitutional right to cause harm, scream, berate, and threaten City employees. Their attorneys (through our office) and contract professionals on their own are allowed to contact staff as needed. Your clients do not have that right at this time. If your clients would have followed the Florida Building Code, treated City staff with respect, they would not be in the precarious situations they find themselves in today. We will work with your clients' professional staff to bring the properties into compliance."

214.    Paragraph 214 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum G, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum G are identical in all relevant respects to any of Plaintiffs' properties. Paragraph 214, footnote 12, states legal conclusions to which no response is required. To the extent a response is required, the

City refers to the Florida Statutes Section 162.06 for its actual and complete contents and denies any characterization or editorialization of the Florida Statutes made by the Plaintiffs. The City denies the remaining allegations in paragraph 214.

215.    Paragraph 215 references one or more written documents that are purported to be summarized in Plaintiffs' Addendum G, to which no response is required. Any underlying document speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City further denies that the Plaintiffs' purported comparators in Addendum G are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 215.

216.    Paragraph 216 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City admits only that former Chief of Police for the City of Miami, Art Acevedo, was sworn in on April 5, 2021. The City denies the remaining allegations in paragraph 216.

217.    Paragraph 217 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 217.

218.    Paragraph 218 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 218.

219.     Paragraph 219 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 219.

220.     Paragraph 220 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 220.

221.     The City admits only that Chief Colina and Chief Acevedo are no longer employed by the City. The City denies the remaining allegations in paragraph 221.

222.     The City admits the Plaintiffs filed this action on September 30, 2021. The City denies the remaining allegations in paragraph 222.

223.     The City denies the allegations in paragraph 223 and answers the sub-paragraphs to paragraph 223 as follows:

(a)     Subparagraph 223(a) states a legal conclusion by using the term "loitering" to which no response is required. The City denies the insinuation in paragraph 223(a) that it was improper or unlawful for Commissioner Carollo to be on public property; the Commissioner has a right to be on public property. The City is also without knowledge or information sufficient to admit or deny the allegation that "numerous City inspectors then proceeded to inspect the business" because the allegation is vague. The City denies the remaining allegations in sub-paragraph 223(a).

(b)     Sub-paragraph 223(b) references alleged statements by individuals about which the City has no information or knowledge and therefore denies. The City denies the remaining allegations in sub-paragraph 223(b).

(c)     The City denies the allegations in sub-paragraph 223(c). The City further denies the insinuation in paragraph 223(c) that it was improper or unlawful for City police to drive or park on public property; the City police have a right to be on public property.

(d)     The City denies the allegations in sub-paragraph 223(d).

(e)     The fourth sentence of sub-paragraph 223(e) purports to characterize a written document not attached as an exhibit, to which no response is required. This document speaks for itself, and any characterization that is inconsistent with the document is denied. The City admits that on November 21, 2021 the Operation Dry Hour task force was conducting business inspections when it heard loud music emanating from Ball & Chain. The City further admits that a measuring wheel or Keson tool was utilized, it revealed that Ball & Chain's music was audible from a distance of greater than 100 feet from the location, and code issued a noise violation. The City admits that the Dry Hour task force consisted of five members of the police department, including Commander Chin-Quee, as well as members of the fire department and code enforcement. The City denies the remaining allegations in sub-paragraph 223(e).

(f)     The City denies the allegations in sub-paragraph 223(f).

(g)     Sub-paragraph 223(g) contains unsourced alleged statements attributed to individuals from the Fire Department to which no response is required. To the extent a response is required, the City denies the allegations. The City admits that two individuals from the Fire Department visited Ball & Chain and 10 other establishments on December 3, 2021 to check occupancy loads. The City denies the remaining allegations in sub-paragraph 223(g).

(h)     The City denies the allegations in sub-paragraph 223(h). The City further denies the insinuation in paragraph 223(h) that it was improper or unlawful for City police to drive or park on public property; the City police have a right to be on public property.

(i)     The City admits only that Ball & Chain was not issued any violations on December 9, 2021. The City denies the remaining allegations in sub-paragraph 223(i).

(j)     The City denies the allegations in sub-paragraph 223(j).

(k)     The City denies the allegations in sub-paragraph 223(k).

(l)     Sub-paragraph 223(l) contains unsourced alleged statements attributed to individuals from the Fire Department to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that individuals from the Fire Department visited Ball & Chain and at least 18 other establishments on December 18, 2021 to check occupancy loads and that no action was taken at Ball & Chain. The City denies the remaining allegations in sub-paragraph 223(l).

(m)     Sub-paragraph 223(m) contains unsourced alleged statements attributed to individuals from the Fire Department to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that individuals from the Fire Department visited Ball & Chain

and 6 other establishments on February 11, 2022 to check occupancy load and that no action was taken at Ball & Chain. The City denies the remaining allegations in sub-paragraph 223(m).

(n)     The City denies the insinuation in paragraph 223(n) that it was improper or unlawful for Commissioner Carollo to be on public property; the Commissioner has a right to be on public property and speak to City residents.. The second sentence of sub-paragraph 223(n) references alleged statements by "staff from Ball & Chain" about which the City has no information or knowledge and therefore denies. The City denies the remaining allegations in sub-paragraph 223(n).

224.    The City admits only that Mad Room's Certificate of Occupancy was suspended and its Certificate of Use was revoked on October 22, 2020 following an audit that revealed that the Certificate of Occupancy was issued based upon incomplete, misleading, and/or erroneous information provided by Mad Room and Little Havana Arts Building, LLC's private provider as it relates to the requirements for fire safety and the Americans with Disabilities Act. The City further admits that a temporary Certificate of Occupancy was issued to Ball & Chain on September 21, 2021, but that Ball & Chain's patio remains closed due to Ball & Chain's failure to correct certain violations. The City denies the remaining allegations in paragraph 224.

225.    The City admits only that on September 1, 2021, it received a draft "Covenant in Lieu of Title" from Plaintiffs' counsel relating to ingress/egress for Ball & Chain. The City denies the remaining allegations in paragraph 225.

226.    The City admits only that on September 1, 2021, it received a draft "Covenant in Lieu of Title" from Plaintiffs' counsel relating to ingress/egress for Ball & Chain, which did not conform to the standard form. The City denies the remaining allegations in paragraph 226.

227.    The fifth and sixth sentences of paragraph 227 contain unsourced alleged statements attributed to "Ball & Chain" and "the City" to which no response is required. To the extent a response is required, the City denies the allegations. The City admits only that, incident to a Dry Hour operation on surrounding businesses, the police department issued a noise citation

to Ball & Chain on November 21, 2021. There is no record that the Fire Department visited Ball & Chain on November 21, 2021, therefore the City denies the allegations in the first and second sentences of paragraph 227. The City denies the remaining allegations in paragraph 227.

228.     Paragraph 228 purports to summarize a public hearing, to which no response is required. The record of the public hearing speaks for itself, and the City denies Plaintiffs' summarization, characterization and editorializing. The City admits only that Ball & Chain appealed the noise citation issued on November 21, 2021, that Ball & Chain's appeal of the noise citation was denied, and the hearing officer concluded that a noise violation did occur on November 21, 2021. The City denies the remaining allegations in paragraph 228.

229.     The City denies the allegations in paragraph 229.

230.     Paragraph 230 purports to characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and any characterization inconsistent with the document is denied. The City admits only that on December 3, 2021, the Director of the Code Compliance department stated he had "no objection to allow the covenant application to proceed" as a result of the November 21, 2022 noise citation. The City further admits that on December 6, 2021, the City Attorneys' Office clarified that "Zoning cannot issue anything on the covenant in lieu per the City Code. It does not matter if departmental personnel do not object as they should have not been asked and put in that position is the first place. Mr. Goldberg is required to follow the City Code. The City Code does not provide for some sort of 'work around.' If there is a pending code case, nothing can be done." The City denies the remaining allegations in paragraph 230.

231.     The City denies the allegations in paragraph 231.

232.    The City admits only that a noise violation was issued to Guantanamera Café and Lounge on November 21, 2021. The City denies the remaining allegations in paragraph 232.

233.    Paragraph 233 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that the Covenant in Lieu of Unity of Title was signed by Fuller on October 14, 2021 and was recorded by the City on June 23, 2022. The City denies the remaining allegations in paragraph 233.

234.    Paragraph 234 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that the City Attorney and the Zoning Administrator reviewed and approved the Covenant in Lieu of Unity of Title. The City further admits that the approval of the City Attorney, the Zoning Director, the Director of Planning, the Building Department and the Department of Resilience and Public Works were all required. The City denies the remaining allegations in paragraph 234.

235.    The City denies the allegations in paragraph 235.

236.    Paragraph 236 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that the Covenant in Lieu was recorded on June 23, 2022. The City denies the remaining allegations in paragraph 236.

237.    Paragraph 237 references a written document not attached as an exhibit, to which no response is required. This document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that revised building permit plans

were required to match the life safety plans. The City denies the remaining allegations in paragraph 237.

238.    Paragraph 238 states legal conclusions to which no response is required. s to the extent o the extent a response is required, the City refers to Florida Building Code Section 1004.3 for its actual and complete contents, and denies any characterization or editorialization of the Building Code made by the Plaintiffs. Paragraph 238 also references other written documents not attached as exhibits, to which no response is required. The documents speak for themselves, and any characterization inconsistent with the documents is denied. The City admits only that the Occupant Load Certificate issued to Ball & Chain on December 9, 2021 allowed 123 occupants while using tables and chairs and 200 occupants when the tables and chairs were removed. The City denies the remaining allegations in paragraph 238.

239.    Paragraph 239 references one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that on January 31, 2022, the City advised Ball & Chain and five other establishments that "the City of Miami Law Department had determined that the issuance of two occupant load certificates for the same exact space is currently not allowed by the City of Miami Code or Miami, 21, the Zoning Ordinance of the City of Miami, Florida," and reinstated the original occupant load. The City denies the remaining allegations in paragraph 239.

240.    Paragraph 240 references one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that the building permit

plans did not match the life safety plans on file, which required Ball & Chain to submit new building permit and life safety plans. The City denies the remaining allegations in paragraph 240.

241.    The City denies the allegations in paragraph 241.

242.    Paragraph 242 references one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself and any characterization that is inconsistent with the document is denied. The City admits only that the building permit plans did not match the life safety plans on file, which required Ball & Chain to submit new building permit and life safety plans. The City denies the allegations in paragraph 242.

243.    The City admits only that as of November 17, 2022, a final Certificate of Occupancy and Certificate of Use could not be issued to Ball & Chain due to outstanding issues. The City further admits only that Ball & Chain was required to install fire alarms and an automatic fire sprinkler system in order to comply with local fire and safety ordinances. The City is without sufficient information or knowledge to admit or deny the allegation that Ball & Chain's patio constitutes "more than 50% of revenues." The City denies the remaining allegations in paragraph 243.

244.    The City is without sufficient information or knowledge to admit or deny the allegations regarding Mad Room's revenues in the second sentence of Paragraph 244. The City denies the remaining allegations in paragraph 244.

245.    The City admits that it purchased the property located at 1510 SW 7th Street in 2022 and that the building on the property was subsequently demolished. The City denies the remaining allegations in paragraph 245.

246.    The City denies that the purported comparators alleged in the Complaint or the Addenda, including but not limited to CubaOcho Museum & Performing Arts Center and

Guantanamera Café and Lounge (both located at 1465 SW 8th St.), Sala'o Cuban Restaurant & Bar (1642 SW 8th St.), Sabor Borinqueno (1644 SW 8th St), and Latin Art Core Inc. (1646 SW 8th St), are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 246.

247. The City denies that Plaintiffs are entitled to damages, injunctions or any other form of relief, and therefore denies paragraph 247.

## CAUSES OF ACTION

### Count I

### (Substantive Due Process – 42 U.S.C. § 1983)

248. The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 247 as if fully set forth herein.

249. Paragraph 249 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

250. Paragraph 250 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

251. The City denies the allegations in paragraph 251.

252. The City denies the allegations in paragraph 252.

253. The City denies the allegations in paragraph 253.

254. The City denies the allegations in paragraph 254.

255. The City denies the allegations in paragraph 255.

256. The City denies the allegations in paragraph 256.

257. The City denies the allegations in paragraph 257.

258.     The City denies the allegations in paragraph 258.

259.     The City denies the allegations in paragraph 259. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 259.

**Count II**

**(Substantive Due Process, Florida Constitution)**

260.     The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 259 as if fully set forth herein.

261.     Paragraph 261 alleges legal conclusions to which no response is required. The City denies any characterization or editorialization of the Florida Constitution made by the Plaintiffs.

262.     Paragraph 262 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Florida Constitution made by the Plaintiffs.

263.     Paragraph 263 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Florida Constitution made by the Plaintiffs.

264.     The City denies the allegations in paragraph 264.

265.     The City denies the allegations in paragraph 265.

266.     The City denies the allegations in paragraph 266.

267.     The City denies the allegations in paragraph 267.

268.     The City denies the allegations in paragraph 268.

269.     The City denies the allegations in paragraph 269. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 269.

**Count III**

**(Procedural Due Process – 42 U.S.C. § 1983)**

270.     The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 269 as if fully set forth herein.

271.     Paragraph 271 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

272.     Paragraph 272 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

273.     The City denies the allegations in paragraph 273.

274.     The City denies the allegations in paragraph 274.

275.     The City denies the allegations in paragraph 275.

276.     The City denies the allegations in paragraph 276.

277.     The City denies the allegations in paragraph 277.

278.     The City denies the allegations in paragraph 278.

279.     The City denies the allegations in paragraph 279. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 279.

**Count IV**

**(Procedural Due Process, Facial, Quasi-Facial,**
**As Applied Challenges To Ordinance/Code – 42 U.S.C. § 1983)**

280.     The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 279 as if fully set forth herein.

281.     Paragraph 281 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

282.     Paragraph 282 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

283.     The City denies the allegations in paragraph 283.

284.     The City denies the allegations in paragraph 284.

285.     The City denies the allegations in paragraph 285.

286.     The City denies the allegations in paragraph 286. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 286.

**Count V**

**(Equal Protection, Class Of One – 42 U.S.C. § 1983)**

287.     The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 286 as if fully set forth herein.

288.      Paragraph 288 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

289.     Paragraph 289 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

290.     The City reasserts and incorporates by reference each response in the preceding paragraphs 57, 73, 74, 75, 89, 91, 95, 97, 98, 99, 128, 150, 152, 166, 175, 198, 204, 215, 233, &

246 as if fully incorporated herein. The City further denies that the Plaintiffs' purported comparators in Addenda A thru G are identical in all relevant respects to any of Plaintiffs' properties. The City denies the remaining allegations in paragraph 290.

291.    The City denies the allegations in paragraph 291.

292.    The City denies the allegations in paragraph 292.

293.    The City denies the allegations in paragraph 293. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 293.

## Count VI

### (UNLAWFUL SEARCH & SEIZURE – 42 U.S.C. § 1983)

294.    The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 293 as if fully set forth herein.

295.    Paragraph 295 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

296.    Paragraph 296 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the United States Constitution made by the Plaintiffs.

297.    The City denies the allegations in paragraph 297.

298.    The City denies the allegations in paragraph 298.

299.    The City denies the allegations in paragraph 299.

300.    The City denies the allegations in paragraph 300.

301.    The City denies the allegations in paragraph 301.

302.    The City denies the allegations in paragraph 302.

303.    The City denies the allegations in paragraph 303.

304.    The City denies the allegations in paragraph 304.

305.    The City denies the allegations in paragraph 305. The City further denies that Plaintiffs are entitled to judgment in their favor or for any relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 305.

## Count VII
### (Violation of City Charter)

306.    The City reasserts and incorporates by reference each response in the preceding paragraphs 1 through 305 as if fully set forth herein.

307.    The City denies the allegations in paragraph 307.

308.    The City admits the allegations in paragraph 308.

309.    Paragraph 309 alleges legal conclusions to which not response is required. To the extent a response is required, the City denies any characterization or editorialization of the Charter's Bill of Rights made by the Plaintiffs, and refers to the Charter for its actual and complete contents.

310.    Paragraph 310 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Charter made by the Plaintiffs, and refers to the Charter for its actual and complete contents.

311.    Paragraph 311 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Charter made by the Plaintiffs, and refers to the Charter for its actual and complete contents.

312.    The City denies the allegations in paragraph 312.

313.    The City denies the allegations in paragraph 313.

314.     Paragraph 314 purports to quote or characterize one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 314.

315.     Paragraph 315 references unsubstantiated allegations and quotations from one or more written documents not attached as exhibits, to which no response is required. Any such document speaks for itself, and the City denies Plaintiffs' characterization and editorializing. The City denies the remaining allegations in paragraph 315.

316.     Paragraph 316 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Charter's Bill of Rights made by the Plaintiffs, and refers to the Charter for its actual and complete contents.

317.     The City denies the allegations in paragraph 317.

318.     Paragraph 318 alleges legal conclusions to which no response is required. To the extent a response is required, the City denies any characterization or editorialization of the Charter's Bill of Rights made by the Plaintiffs, and refers to the Charter for its actual and complete contents.

319.     Paragraph 319 references multiple court decisions and states legal conclusions, and therefore no response is required. Any characterization that is inconsistent with the cited caselaw is denied.

320.     Paragraph 320 references court rulings and states legal conclusions, and therefore no response is required. Any characterization that is inconsistent with the referenced ruling is denied. The City further denies that Plaintiffs are entitled to judgment in their favor or for any

relief whatsoever, including the relief requested in the WHEREFORE clause following paragraph 320.

## DEMAND FOR JURY TRIAL

321.    Paragraph 321 makes no allegations, therefore no response is required.

## <u>AFFIRMATIVE DEFENSES</u>

### First Affirmative Defense

1.    Plaintiffs' claims are barred due to their pattern and practice of seeking to evade, and concealing their evasion of, state and local building codes. Plaintiffs have a pattern and practice of engaging in, and conspiring to engage in unlawful conduct to avoid paying lawfully required permitting fees and property taxes that would have been owed had the additions and remodeling work performed on Plaintiffs' properties and establishments been fully disclosed to City. By engaging in such conduct, Plaintiffs not only avoided incurring such expenses, but they also obtained unfair advantages over their competitors who followed the permitting requirements, because they were able to accelerate their work and open or expand their establishments more quickly than their competitors and avoid having to expend funds on changes to plans or improvements as required by the City Code of Ordinances and the Florida Building Code. Rather than taking responsibility and changing their behavior to become compliant, Plaintiffs and their principals used every possible legal and public relations tool available to them, including this and other litigation, to excuse their actions by accusing the City and its officials of somehow "targeting" them unfairly. To the extent the City focused extensive attention on Plaintiffs, which Plaintiffs claim is "targeting," such focus was necessitated by and caused as a result of Plaintiffs' own actions in direct repudiation of their lawful obligations under applicable state and local codes.

**Second Affirmative Defense**

2.      Plaintiffs' actions have directly or indirectly cost the City and, thus its taxpayers, thousands of dollars in lost revenue from its lawful share of property taxes that would have been assessed against Plaintiffs' properties had Plaintiffs obtained the required permits at the required times for the actual scope of work performed. In addition, these actions required the City to expend resources in enforcing the State Building Code and City Code, which in most instances Plaintiffs conceded and paid the assessed fines or challenged and then dropped. Accordingly, the City is entitled to setoff and recoupment for all such fees, taxes and unnecessary expenditure of taxpayer funds necessitated by having to enforce the applicable state and local building codes against Plaintiffs.

**Third Affirmative Defense**

3.      Plaintiffs have failed to state a cause of action for substantive due process in violation of their rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, the alleged actions by the City are executive acts that cannot form the basis of a substantive due process violation under the United States Constitution, and there is a rational basis for any legislative acts at issue.

**Fourth Affirmative Defense**

4.      Plaintiffs have failed to state a cause of action for substantive due process in violation of their rights under Article I, Section 9 of the Florida Constitution. The Florida Constitution provides no right of action for damages. Further, the alleged actions by the City are executive acts that cannot form the basis of a substantive due process violation under the Florida Constitution, and there is a rational basis for any legislative acts at issue.

**Fifth Affirmative Defense**

5.      Plaintiffs have failed to state a cause of action for procedural due process under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, Plaintiffs have failed to allege sufficiently protectible property interests to support a procedural due process claim, the City provided Plaintiffs with adequate process and the Plaintiffs have not exhausted the due process provided.

**Sixth Affirmative Defense**

6.      Plaintiffs have failed to state a cause of action for equal protection (class of one) under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, Plaintiffs have failed to identify sufficiently identical comparators to support a class of one claim. Furthermore, none of the Plaintiffs is a member of a suspect class and none exercised any constitutional right such that any alleged difference in treatment of any Plaintiff in comparison to any alleged comparator is subject to rational basis review. The City had a rational basis for its discretionary decisions with respect to enforcement of state, county and/or local laws with respect to each of the Plaintiffs. To the extent intermediate scrutiny or strict scrutiny applies to some or all of the City's actions, the threats to health, safety and welfare of residents and visitors (including protection from threats to life or safety) by Plaintiffs' repeated and ongoing violations of state and local building, fire and/or other codes justified the City's actions.

**Seventh Affirmative Defense**

7.      Plaintiffs have failed to state a cause of action for unlawful search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, as holders of liquor licenses, they consented to inspections; moreover, the City's administrative searches of Plaintiffs' properties were objectionably reasonable.

**Eighth Affirmative Defense**

8.     Plaintiffs have failed to state a cause of action for violation of the Charter of the City of Miami ("Charter") because it does not create a private right of action.

**Ninth Affirmative Defense**

9.     No violation of the Charter occurred, because the City Attorney acted wholly within her authority under the Charter. Section 21 of the Charter specifies that the City Attorney shall be the legal advisor and counsel "for the [City], and for all officers and departments thereof in matters relating to their official duties."  This provision must be read *in pari materia* with Section 15 of the Charter, on which Plaintiffs exclusively rely. In addition to requiring or authorizing the City Attorney to communicate with city officials and employees as part of her representation of the City and/or its departments and officials, Section 21 provides in pertinent part, "When required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinances, be directed to prosecute or defend."  Pursuant to Resolution No. R-19-0082, the City Attorney was directed by the City Commission to research and initiate injunctive proceedings against properties for code enforcement issues. These types of issues are the ones alleged in the Complaint. Accordingly, the City Attorney was at all times acting within the scope of her prescribed duties and responsibilities under Section 21 of the Charter. Furthermore, notwithstanding the fact that such contact would be within the City Attorney's express powers under the Charter, any contact between the City Attorney and any employee of the City that may otherwise be under the direction of the City Manager was with the express or tacit consent of the City Manager.

**Tenth Affirmative Defense**

10.     Plaintiffs' claims are barred, in whole or in part, because any alleged damages that Plaintiffs sustained are the result of Plaintiffs' own conduct, or the conduct of Plaintiffs' agents, representatives, or consultants. Plaintiffs had a custom or practice of failing to apply for building permits or to obtain building permits for less than the intended work planned to avoid paying full permit fees and/or increased property tax assessments, which directly led to the code enforcement actions at issue in the Complaint and caused Plaintiffs' alleged damages. These include but are not limited to:

      a.   Actions of their private provider Ortus Engineering, P.A. and engineer Elvis Torres as a result of their misleading, erroneous, and negligent submissions to the City as alleged in the complaint filed by Mad Room in the Eleventh Judicial Circuit styled *Mad Room LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 11th Cir. Ct. 2021);

      b.   Plaintiffs' own misleading statements or failure to disclose material information to their private provider Ortus Engineering, P.A. and engineer Elvis Torres, which resulted in the latter's misleading, erroneous, and negligent submissions to the City as alleged in the Affirmative Defenses in the Eleventh Judicial Circuit styled *Mad Room LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 11th Cir. Ct. 2021);

      c.   Interior alterations at Mad Room that exceed the threshold for Level 3 alterations while wrongfully maintaining that such alterations only constitute Level 2 alterations;

d.  Failure to adhere to the requirements set forth in the applicable codes, statutes, and standards as they pertain to Level 3 alterations at Mad Room, including the installation of an automatic sprinkler system;

e.  Obtaining a Certificate of Occupancy for Mad Room based on incomplete, misleading, and erroneous information, especially related to the requirements for Fire Safety and Accessibility under the Florida Building Code;

f.  Mad Room Manager Fuller's misrepresentation in the liquor license application for Mad Room that no part of the outdoor or northside space was intended to be a part of the licensed premises;

g.  Mad Room construction of the "Pineapple Stage," band shell, outside counter, and overhand/balcony attached to the building without permits;

h.  Rear stairs at Taquerias that were constructed without authorization or permit and were in violation of the Florida Building Code for failing to provide a minimum of ten feet of separation from the adjacent property line;

i.  Taquerias Manager Fuller's misrepresentations in the liquor license application for Taquerias that the establishment had capacity to seat 150 people.

**Eleventh Affirmative Defense**

11.  Plaintiffs' claims are barred, in whole or in part, to the extent they have failed to mitigate their claimed damages.  Among other things, Plaintiffs unreasonably delayed in bringing their properties into compliance, which ultimately led to the prolonged closure of Plaintiffs' businesses.  By way of example, Plaintiff Taquerias, knowing for years that its property was in violation of certain City code requirements, did not perform the necessary improvements to bring

its property into compliance for issuance of a Certificate of Use until only recently, and a Certificate of Use for Taquerias was issued by the City on January 22, 2024.

## Twelfth Affirmative Defense

12.     Plaintiffs' claimed lost profits damages are not recoverable in whole or in part to the extent Plaintiffs' claims for lost profits are too speculative, because, among other things, they are based on unquantified and unsupported assumed growth rates.  Further, assumptions that lost profits will continue into the future are based on speculation about events or actions that may or may not occur over time.

## Thirteenth Affirmative Defense

13.     Plaintiffs LHAB and LGF have no damages as a result of the City's actions alleged in the Complaint, as they continued to receive full payment of rent and other amounts due from the Plaintiffs Mad Room and Taquerias.

## Fourteenth Affirmative Defense

14.     To the extent Plaintiffs LHAB and LGF assert damages as a result of the City's enforcement actions against Plaintiffs Mad Room and Taquerias, Plaintiffs were the sole and proximate cause of their own damages by failing to exercise their rights under the respective lease agreements to require Mad Room and Taquerias to abide by all state and local laws and to obtain proper permits and licenses for all construction and activities on the properties, or in the alternative, conspiring with Plaintiffs Mad Room and Taquerias in the plan to improve their properties without any or full permits for each of the improvements.

## Fifteenth Affirmative Defense

15.     The City is not liable to Plaintiffs because any injury, loss, or damage that Plaintiffs claim to have suffered is the result of intervening causes beyond the control of the City, including

but not limited to the COVID-19 pandemic. The alleged loss of clientele and/or closings of Plaintiffs' businesses subsequent to March 2020 were caused in whole or in part by emergency actions of various governments responding to the COVID-19 pandemic, including Governor emergency declarations, County emergency orders, and City emergency orders applicable to numerous food and drink establishments throughout the City. The United States Department of Health and Human Services ("HHS") issued a determination on January 31, 2020 the a public health emergency existed at that time and had existed since January 27, 2020, nationwide. That determination was renewed by HHS on April 20, 2020; July 23, 2020; October 2, 2020; January 7, 2021; April 15, 2021; July 19. 2021; October 15, 2021; January 14, 2022; April 12, 2022; July 15, 2022; October 13, 2022; January 11, 2023; and February 9, 2023. These emergency declarations were intervening acts for which the City has no liability. Further, the City is immune from liability for taking actions consistent with such emergency orders and declarations and in protecting the life, health and safety of its residents and visitors. Furthermore, Plaintiffs' loss of business from March 2020 through the filing of this action was wholly or partially caused by the impacts of the COVID-19 pandemic on tourism and the ability or willingness of residents or visitors to go to entertainment establishments with the same frequency as prior to the pandemic. Further, capacity controls and social distancing requirements imposed by governmental mandates reduced the total patronage during this time period. Even after the establishments reopened, it took time to reestablish patronage at the levels pre-existing the pandemic. Available personnel also were in shorter supply due to the government's extended unemployment compensation and COVID-related funds offered directly to employees who lost jobs during the pandemic, which caused or contributed to Plaintiffs' alleged inability to meet its employment targets for PPP loan forgiveness.

**Sixteenth Affirmative Defense**

16.      The City is entitled to a credit and/or setoff for all collateral sources or other sources or setoff, including settlement funds received from any entity in the past and/or future as related to the subject incidents as well as any funds received in the form of Paycheck Protection Program ("PPP") or COVID-19 Economic Injury Disaster Loan ("EIDL") loans. Thus, Plaintiffs' claim is limited and/or reduced by said credits and/or setoffs.

**Seventeenth Affirmative Defense**

17.      Any failure of Plaintiffs to obtain forgiveness of any PPP or EIDL loans was due to Plaintiffs' own actions, independent decisions of prospective employees, independent decisions of other government actors or lenders or other causes beyond control of the City and not attributable to the City.   For instance, Plaintiffs have unreasonably delayed in bringing their properties into compliance, resulting in their businesses remaining fully or partially closed.   Any failure to obtain forgiveness of any PPP or EIDL loans was directly caused by Plaintiffs' actions in failing to maintain or improve their properties as required by City code, and those failures contributed directly or indirectly to the inability to keep or add employees on staff.   Further, Plaintiffs unreasonably "added" "employees" which were used to obtain PPP or EIDL loans and expanded the payroll without consideration for whether or not those payroll numbers could be maintained subsequently.   Among other things, the COVID-19 pandemic re-shaped the work force, with many prospective employees relocating or opting for higher paying jobs.   Furthermore, any inability of Plaintiffs to obtain forgiveness of PPP or EIDL loans was caused by Plaintiffs' own employment or termination practices or independent decisions of employees, which actions were beyond the control of the City and not attributable to the City.

**Eighteenth Affirmative Defense**

18.     Plaintiffs cannot claim damages for failure to have PPP or EIDL loans forgiven to the extent they have failed to allege or provide discovery as to the specific employment and termination of their employees and their compliance with the requirements of the PPP and EIDL programs.  The lack of such information, which is integral to the City's defense of such claims, violates the City's rights to procedural due process.

**Nineteenth Affirmative Defense**

19.     Ordinance No. 13941 ("Noise Ordinance") bears a rational basis to a legitimate government purpose. The Noise Ordinance has general applicability, with only limited exceptions, and is designed to address the legitimate government purpose of protecting residential uses from unwanted noise, among other rational bases.

**Twentieth Affirmative Defense**

20.     Whether or not Resolution No. R-19-0072 ("Resolution") is a legislative or executive act, it bears a rational basis to a legitimate government purpose. The Resolution directs the City Attorney to investigate and enforce violations of the City of Miami Code of Ordinances, which is a legitimate government purpose. Further, it is an executive act of the Commission.

**Twenty-First Affirmative Defense**

21.     Ordinance No. 13936 ("Revocation Ordinance") bears a rational relationship to a legitimate government purpose and was supported by a rational basis. The Revocation Ordinance requires revocation of a certificate of use for, *inter alia*, materially false statements made in connection with the application, as well as the certificate of use holder engaging in an activity from the premises that is not in compliance with a City of Miami ordinance. The Revocation Ordinance applies to all persons. Those justifications for revoking a certificate of use are rationally related to

the legitimate government purpose of protecting the health, safety and welfare of residents and citizens as well as ensuring that no properties are constructed, remodeled or used based on false pretenses or in violation of state or local codes, and they are consistent with the revocation procedures and justifications contained within the Florida Building Code.

## Twenty-Second Affirmative Defense

22.     Plaintiffs' claim of a facial or quasi-facial procedural due process challenge to the Revocation Ordinance under the Fifth and Fourteenth Amendments to the United States Constitution fails as there are circumstances under which the Revocation Ordinance could be applied in a constitutional manner.

## Twenty-Third Affirmative Defense

23.     Plaintiffs have failed to join an indispensable party or parties whose participation is required in their due process claims. In this action Plaintiffs challenge the constitutionality of the certificate of use revocation provisions contained in Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance, in circumstances that Plaintiffs allege "do not implicate emergent life-safety hazards, without pre-deprivation notice or an opportunity to cure." *See* Am. Compl. ¶ 284. The City disputes that the code enforcement violations at issue in the Amended Complaint do not implicate emergent life-safety hazards, but regardless, the provisions of Section 2-211 of the City of Miami Code of Ordinances are consistent with Section 111.4 of the Florida Building Code , as well as other provisions, which allows for a building official to suspend or revoke a certificate of occupancy or completion for any certificate issued in error or on the basis of incorrect information supplied or where any building or structure is determined to be in violation of any ordinance or regulation, the same rationales contained in Section 2-211 and relied upon by the City to revoke Plaintiffs' Certificates of Use in the instant matter. There is no

"pre-deprivation notice or an opportunity to cure" contained in the applicable provisions of the Florida Building Code. Furthermore, Section 2-211 of the City of Miami Code of Ordinances is also consistent with Section 8-21.1(f) of the Miami-Dade County Code, which provides that "[w]henever any building or portion thereof is being used or occupied contrary to the provisions of this Chapter, the Building Official shall order such use or occupancy discontinued and the building or portion thereof vacated."   Accordingly, Plaintiffs' claims that Section 2-211 is unconstitutional also implicate the constitutionality of the Florida Building Code as well as the Miami-Dade County Code. As such, the State of Florida and Miami-Dade County are indispensable parties to this matter.

### Twenty-Fourth Affirmative Defense

24.     Plaintiffs have failed to satisfy conditions precedent in order to challenge the constitutionality of Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance, which draws into question the Florida Building Code. Section 86.091, Florida Statutes, provides in pertinent part, "In any proceeding concerning the validity of a county or municipal charter, ordinance, or franchise, such county or municipality shall be made a party and shall be entitled to be heard. If the statute, charter, ordinance, or franchise is alleged to be unconstitutional, the Attorney General or the state attorney of the judicial circuit in which the action is pending shall be served with a copy of the complaint and be entitled to be heard." Additionally, pursuant to Fed. R. Civ. P. 5.1(a), which is consistent with the provisions of Fla. R. Civ. P. 1.071, any party that files a pleading drawing into question the constitutionality of a state statute must promptly: (i) "file a notice of constitutional question stating the question and identifying the paper that raises it, if…a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity;" and (ii)

"serve the notice and paper on the…state attorney general if a state statute is questioned – either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose." Because Plaintiffs challenge the constitutionality of an ordinance of the City of Miami, the notice provisions in Section 86.091, Florida Statutes, apply. Furthermore, because Plaintiffs' claims draw into question the constitutionality of the Florida Building Code, the notice provisions in Fed. R. Civ. P. 5.1 also apply. No such notice has been served, and Plaintiffs have therefore failed to satisfy these conditions precedent in order to maintain their claims as to the constitutionality of Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance.

**Twenty-Fifth Affirmative Defense**

25.     Plaintiffs' claims for equitable relief are barred by the doctrine of unclean hands. As detailed further in the Counterclaim filed along with these Affirmative Defenses, Plaintiffs had an unlawful conspiracy and pattern of racketeering and criminal activities, the goal and purpose of which was to avoid paying lawfully required permitting fees and property taxes that would have been due had the additions and remodeling work performed on Plaintiffs' properties and establishments been fully disclosed to the City and consequently to County officials. As a result, Plaintiffs' properties were often in violation of the City of Miami Code of Ordinances, which is the direct cause of the code enforcement issues alleged in the Complaint. Plaintiffs' actions constitute violations of the Florida Racketeer Influenced and Corrupt Organization Act and common law fraud. Accordingly, Plaintiffs' own wrongful actions caused any alleged damage asserted in the Complaint, and Plaintiffs are inappropriately attempting to shift blame to the City for enforcing its Code of Ordinances.

### Twenty-Sixth Affirmative Defense

26.     Plaintiffs have failed to exhaust their available administrative remedies. Plaintiffs initiated, then abandoned, appeals to the Miami-Dade County Board of Rules and Appeals ("BORA") and the City of Miami Planning, Zoning, and Appeals Board ("PZAB"). Plaintiffs' appeal to BORA concerned the suspension of Plaintiffs' Certificates of Occupancy, and Plaintiffs' appeal to PZAB concerned the revocation of Plaintiffs' Certificates of Use, both of which form the basis of Plaintiffs' Complaint. Because Plaintiffs have not pursued their BORA and PZAB appeals, Plaintiffs have failed to avail themselves of administrative remedies that would address their claims.

### Twenty-Seventh Affirmative Defense

27.     Plaintiffs cannot maintain a cause of action for procedural due process because the City afforded Plaintiffs adequate process under *Matthews v. Eldridge*, 424 U.S. 319 (1976). First, there is no constitutionally protected private interest affected by the City's revocation of Plaintiffs' CO and CU. Second, there is no legitimate risk of an erroneous deprivation of Plaintiffs' interests through the procedures afforded to them, including available appeals to PZAB and BORA as described above. Third, the City's interest in ensuring fire safety and protection for patrons of Plaintiffs' properties far outweighs the property rights claimed by Plaintiffs, and any further process would be unnecessary and would create undue burden on the City of Miami.

### Twenty-Eighth Affirmative Defense

28.     Plaintiffs have failed to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and therefore there can be no liability against the City of Miami. The alleged actions complained of in the Complaint do not implement or execute a "policy statement, ordinance, regulation, or decision officially adopted and promulgated

by" the City. *See id.* at 690. The alleged actions complained of in the Complaint were not undertaken pursuant to any official policy enacted by the City Commission, no final policymaker acquiesced in a longstanding practice that constitutes the City of Miami's standard operating procedure, and no subordinate public official made an unconstitutional decision that was then adopted by someone with final policymaking authority. Even former City Manager, Emilio Gonzalez, who was in office during a substantial part of the actions of which Plaintiffs complain, has testified under oath that he, the chief administrative officer of the City, did not and would not engage in any actions of targeting the Plaintiffs. Additionally, due to Plaintiffs' available appellate rights with BORA and PZAB as described above, which afford Plaintiffs meaningful appellate review concerning the revocation of Plaintiffs' CU and CO, Plaintiffs cannot possibly identify any City official with final policymaking authority that acted on those particular issues. Furthermore, in the related case of *William O. Fuller and Martin Pinilla, II v. Joe Carollo*, Case No. 1:18-cv-24190 (Smith, R.) ("Related Matter"), in the United States District Court for the Southern District of Florida, principals of the Plaintiff entities, Fuller and Pinilla, asserted causes of action against City of Miami Commissioner Joe Carollo in his individual capacity for allegedly instigating code enforcement actions against Fuller's and Pinilla's businesses, including those complained of in the Complaint at issue in this matter. The Related Case went to trial, and a jury verdict was returned in favor of Fuller and Pinilla on June 1, 2023. [*See* Verdict Form in the Related Matter, ECF No. 470]. Nowhere on the Verdict Form did plaintiffs seek a determination from the jury, and the jury never made any findings, on any *Monell* issue, therefore liability in the Related Case was pursued only against Commissioner Joe Carollo as an individual. It is inherently inconsistent to now claim in this action that the same code enforcement actions at issue in the Related Case are the result of a City of Miami policy or practice, when plaintiffs in the Related Case sought and received a jury

finding that the actions were the responsibility of Commissioner Joe Carollo in his individual capacity.

## Twenty-Ninth Affirmative Defense

29.     The City had probable cause for any code enforcement actions alleged in the Complaint.  Plaintiffs' Complaint is based on allegedly unfounded citations for code violations at Plaintiffs' properties, but in direct contradiction with the positions advanced in the Complaint, Plaintiffs previously pled guilty to the City of Miami Code Enforcement Board and/or the City of Miami Special Master for the same or similar code enforcement efforts challenged in the Complaint, explicitly or implicitly recognizing Plaintiffs' fault and the veracity of the code complaints.  In fact, Plaintiffs had at least thirty-six scheduled Code Enforcement Board or Special Master hearings in multiple matters between 2017 and 2021 to address code enforcement concerns, and in several of those matters, Plaintiffs accepted the code enforcement violation(s) and pled guilty.  Still, Plaintiffs continued their pattern and practice of seeking to evade, and concealing the evasion of, state and local building codes.

## Thirtieth Affirmative Defense

30.     The City had reasonable suspicion or probable cause for any searches of Plaintiffs' properties as alleged in the Complaint.  Any searches of Plaintiffs' properties as alleged in the Amended Complaint, to the extent they qualify as searches under the United States Constitution, were based on reasonable suspicion or probable cause to justify said searches or were otherwise conducted with the consent of Plaintiffs.

## Thirty-First Affirmative Defense

31.     Plaintiffs, by acceptance of their liquor licenses, agreed to the inspection and search of their places of business without the need for a search warrant under Section 562.41, Florida Statutes.

## Thirty-Second Affirmative Defense

32.     The City properly exercised its prosecutorial discretion in determining whether, when and against whom to issue violations, and the actions alleged in the Complaint were not motivated by any constitutionally protected conduct of Plaintiffs.

## Thirty-Third Affirmative Defense

33.     Plaintiffs' claims are barred by the doctrine of judicial estoppel. Plaintiffs' Complaint is based on allegedly unfounded citations for code violations at Plaintiffs' properties. However, in direct contradiction with the positions advanced in the Complaint, Plaintiffs previously pled guilty to the City of Miami Code Enforcement Board and/or the City of Miami Special Master for the same or similar code enforcement efforts challenged in the Complaint, including for work performed without a permit and failure to obtain a warrant. Plaintiffs had at least thirty-six scheduled Code Enforcement Board or Special Master hearings in multiple matters between 2017 and 2021 to address code enforcement concerns. In several of those matters, Plaintiffs accepted the code enforcement violation(s) and pled guilty. It is inconsistent to now claim that the City of Miami's code enforcement efforts were unjustified and unconstitutional when Plaintiffs previously accepted responsibility for the same or similar violations.

## Thirty-Fourth Affirmative Defense

34.     Plaintiffs' claims are barred by the doctrine of judicial estoppel on separate grounds. As stated above, in the Related Matter principals of the Plaintiff entities, Fuller and

Pinilla, asserted causes of action against City of Miami Commissioner Joe Carollo in his individual capacity for allegedly instigating code enforcement actions and taking other actions against Fuller and Pinilla's businesses, including those complained of in the Complaint at issue in this matter. The Related Case went to trial, and a jury verdict was returned in favor of Fuller and Pinilla on June 1, 2023. [*See* Verdict Form in the Related Matter, ECF No. 470]. As a part of that verdict, Fuller and Pinilla specifically requested a finding from the jury as to whether (i) Commissioner Joe Carollo intentionally committed acts to violate Fuller's and Pinilla's rights to free speech and assembly (answered in the affirmative) and (ii) whether, as a result, punitive damages should be awarded against Commissioner Joe Carollo (answered in the affirmative, with combined punitive damages awarded in the amount of $47,600,000.00). At such trial, many or most of the allegations in the instant Compliant were presented as evidence to the jury. It is legally inconsistent to claim, in the Related Matter, that the damages sustained by principals of Plaintiffs' entities here were caused by Commissioner Joe Carollo's intentional acts, such that an excessive punitive damage award would be appropriate, and then to claim here that Plaintiffs' damages are caused by the official policies of the City of Miami. Accordingly, Plaintiffs are barred from bringing such contradictory claims.

**Thirty-Fifth Affirmative Defense**

35.     Plaintiffs' claims are barred by the doctrine of judicial estoppel on still separate grounds. On April 5, 2021, Plaintiff Mad Room LLC filed a state-court Complaint against Ortus Engineering, P.A. ("Ortus"), which was Plaintiffs' chosen private provider, along with Elvis Torres, the engineer associated with Plaintiff's alternate plans review process, for professional negligence, breach of fiduciary duty, and breach of contract related to Ortus's professional services in providing alternate plans review and inspections related to Ball & Chain's voluntary compliance

with a December 4, 2019 final order for work without a permit. In that litigation, Plaintiff alleged that Ortus's and Torres's misleading, erroneous, and negligent submissions to the City were the direct and proximate cause of the City's suspension and revocation of Ball & Chain's CO and CU. *See Mad Room, LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 15th Circuit Ct. 2021). It is legally inconsistent to claim now that the City of Miami itself is responsible for actions Plaintiff has already judicially admitted were directly and proximately caused by a private entity and individual.

**Thirty-Sixth Affirmative Defense**

36.     Plaintiffs cannot demonstrate threat of an irreparable injury as required to receive injunctive relief. Injunctive relief is not available for past actions.

**Thirty-Seventh Affirmative Defense**

37.     Plaintiffs' claims for injunctive relief cannot succeed as the imposition of an injunction preventing the City from enforcing its Code of Ordinances would be adverse to the public interest of protecting the health and safety of all residents and visitors. Plaintiffs are essentially asking this Court to grant it a free pass that would prohibit the City of Miami from ever enforcing its own ordinances or other State of Florida laws and regulations against Plaintiffs. Further, Plaintiffs' demand that permits be granted by court order violates separation of powers and federalism principles by asking the judicial system to substitute its judgment for that of the duly elected or appointed officials of the City.

**Thirty-Eighth Affirmative Defense**

38.     Plaintiffs' claims are barred due to their impermissible claim splitting. Plaintiffs' principals and affiliates collectively have filed no fewer than three separate lawsuits in the United States District Court for the Southern District of Florida and one in the Eleventh Judicial Circuit

in and for Miami-Dade County, Florida for claims based on the same allegedly unconstitutional First Amendment violations and code enforcement actions of the City, including the following cases: (i) this matter; (ii) *William O. Fuller, et al. v. Joe Carollo*, Case No. 18-cv-24190 (S.D. Fla. 2018); (iii) *William Fuller, et al. v. The City of Miami, et al.*, Case No. 23-cv-24251 (S.D. Fla. 2023); and (ix) *Tower Hotel, LLC, et al. v. City of Miami*, Case No. 2022-008069-CA-44 (Fla. 11th Cir. Ct. 2022).

**Thirty-Ninth Affirmative Defense**

39.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of *res judicata*. Consistent with the Order Denying Motion to Clarify Judgment, entered by Judge Rodney Smith in the Related Matter (ECF No. 618 in the Related Matter), *William Fuller, et al. v. Joe Carollo*, Case No. 18-24190-CIV (S.D. Fla. February 6, 2024), principals of Plaintiff entities previously sued the City in a constitutional violation case based upon the same or similar facts as those alleged in the instant matter.  Plaintiffs in the Related Matter filed an Amended Complaint and Demand for Jury Trial against several defendants, including the City, on January 8, 2019 [ECF No. 43 in the Related Matter].   Those claims were dismissed against the City, with leave to replead. However, plaintiffs in the Related Matter chose instead to drop the City as a party and proceed only against Joe Carollo, in his individual capacity, by the filing of their Second Amended Complaint on June 28, 2019 [ECF No. 125 in the Related Matter].  The decision by plaintiffs in the Related Matter to not replead claims against the City has a preclusive effect upon any alleged claims or allegations that could have been asserted against the City at the time of filing of the Second Amended Complaint, including any alleged facts that purportedly establish some City policy or custom for purposes of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  The decision to not replead claims against the City after they were dismissed

with leave to replead constitutes a final judgment on the merits by a court of competent jurisdiction, in a case prosecuted by parties who are in privity with Plaintiffs in the instant matter.  Furthermore, the claims raised both in the Related Matter and the instant matter arise out of the same transaction or series of transactions, arise out of the same nucleus of operative fact, or are based on the same factual predicate.  Accordingly, any claims or allegations that arose prior to June 28, 2019 are barred in this action by the doctrine of *res judicata*.

**Fortieth Affirmative Defense**

40.    Plaintiffs' claims for equitable relief are barred by the doctrine of laches or undue delay. Plaintiffs unreasonably delayed asserting their equitable claims to the detriment of the City. As to the requests for injunctive relief, the Court already has ruled that Plaintiffs delayed unduly in seeking a request for a preliminary injunction. As to the requests for permanent injunctive relief, to the extent that the requested relief is appropriate, which the City denies, the amount of time that has passed and the actions or inactions of the City since the alleged actions of the City sought to be enjoined (or mandated) make the balance of harms disproportionate and also make entry of a permanent injunction against the public interest.

**Forty-First Affirmative Defense**

41.    Plaintiffs lack standing to assert any alleged protected First Amendment activities or claims based on conduct or actions to the extent these occurred prior to Plaintiffs' formation.

**Forty-Second Affirmative Defense**

42.    Plaintiffs lack standing to assert any First Amendment claims based on alleged First Amendment protected conduct of third persons. As an example, Plaintiffs were not the speakers or actors in the political activities alleged in Paragraph 25 of the Complaint and thus cannot rely on alleged retaliation for such conduct in support of their claims here.

43.     The City reserves the right to raise additional affirmative defenses as they are discovered or determined to exist during discovery.

## COUNTERCLAIM

Defendant/Counter-Plaintiff, the CITY OF MIAMI (the "City"), by and through its undersigned attorneys, hereby sues Plaintiffs/Counter-Defendants, THE MAD ROOM LLC D/B/A BALL AND CHAIN ("Mad Room"), ALTOS MEXICANO, LLC D/B/A TAQUERIAS EL MEXICANO ("Taquerias"), LITTLE HAVANA ARTS BUILDING, LLC ("LHAB"), and LA GRAN FIESTA, LLC ("LGF") (collectively, "Counter-Defendants"), and alleges as follows:

### INTRODUCTION

1.      This is an action for damages brought by the City arising out of violations of the Florida Racketeer Influenced and Corrupt Organization Act ("RICO"), common law fraud, and Chapter 895, Florida Statutes.

2.      The City sues Counter-Defendants as a result of being deprived of its property by Counter-Defendants through an unlawful conspiracy and pattern of racketeering and criminal activities, together with their owners, managers and others, commencing since at least 2013 by Mad Room and LHAB, and at least 2017 by LGF and Taquerias, and ongoing and continuing into the future, including the present time. Although not parties here, Counter-Defendants' principals and affiliates engaged in such conduct starting as far back as 2010.

3.      The goal and purpose of the conspiracy and unlawful conduct was to avoid paying lawfully required permitting fees and property taxes that would have been billed had the additions and remodeling work performed on Counter-Defendants' properties and establishments, as well as those of their other co-conspirators, been fully disclosed to City and County officials. By engaging in this conduct, Counter-Defendants not only avoided incurring such expenses, but they also obtained unfair advantages over their competitors who followed the permitting requirements, because they were able to accelerate their work and open or expand their establishments more

quickly than their competitors and avoid having to expend funds on changes to plans or improvements as required by the City Code of Ordinances and the Florida Building Code.

4.      Counter-Defendants and their owners and/or managers – in each case one or more of William Fuller ("Fuller"), Martin Pinilla ("Pinilla"), Ben Bush ("B. Bush") or Zack Bush ("Z. Bush"), or other entities owned or controlled by them – have developed and engaged in an unlawful scheme and conspiracy against the City and others in which Counter-Defendants have engaged in an intentional pattern and practice of purchasing various real properties within the City of Miami and performing extensive remodeling or construction work on those properties without first obtaining the necessary permits, or by intentionally obtaining permits for a lesser scope of work and then knowingly exceeding that scope without submitting new permit applications for such additional work.

5.      More specifically, Counter-Defendants' business model is to purchase properties (distressed properties in many cases), renovate those properties cheaply without obtaining all the necessary permits required by the Florida Building Code and City of Miami Code of Ordinances, and bring the properties into compliance only if they are caught and issued citations for unpermitted work.

6.      This pattern and practice were unveiled after 2017, when the City's administration became more attuned to these activities and began more consistently enforcing the law as dictated by the Florida Building Code and the City Code of Ordinances.

7.      Rather than taking responsibility and changing their behavior to become compliant, Plaintiffs and their principals used every possible legal and public relations tool available to them to excuse their actions by accusing the City and its officials of somehow "targeting" them unfairly.

8.      Counter-Defendants' actions have directly or indirectly cost the City, and thus its taxpayers, thousands of dollars in lost revenue from its lawful share of property taxes that would have been assessed against Counter-Defendants' properties had Counter-Defendants obtained the required permits at the required times for the actual scope of work performed. In addition, these actions required the City to expend resources in enforcing the State Building Code and City Code, which in most instances Counter-Defendants conceded and paid the assessed fines or challenged and then dropped.

9.      The City, like all municipalities in Miami-Dade County (the "County"), receives its share of property taxes from the County's assessment of property taxes. The Miami-Dade County Property Appraiser ("Property Appraiser") annually adjusts the just valuation of properties as of January 1 based on, among other things, improvements reflected in building permits.

10.      The permit information is transmitted to the Property Appraiser by the City each month.

11.      Because the Property Appraiser's adjustments do not result in adjustment in value predating the finalization of any legalization permit, Counter-Defendants are incentivized to draw out the legalization process – the process of bringing their noncompliant properties into compliance with applicable building codes. Rather, those adjustments following legalization are only reflected prospectively *after* the finalization of the permit.

12.      Put differently, the properties at issue are not subject to an increase in just value while unpermitted work remains undiscovered or, if it is discovered, are not subject to an increase in just value while legalization permits remain pending. Accordingly, Counter-Defendants are able to get away with years of paying artificially lower property taxes than would be the case had they obtained the proper permits in the first instance.

13.     The City is heavily dependent upon property taxes in order to fund its general operations. In fact, property tax revenue represents the City's largest source of funding for its general operations and accounted for 50.8% of the City's total general revenue in 2022. *See* City of Miami Revenue Manual for 2022-2023, attached as **Exhibit A**, at 14.

14.     The City also depends in large part on licensing and permitting revenues to fund its general operations. Licensing and permitting make up the City's fifth-largest source of funding for its general operations and accounted for 8.1% of the City's total general revenue in 2022. *Id.*

15.     Counter-Defendants' scheme has injured the City in three ways. ***First***, it has artificially and falsely suppressed the taxable value of Counter-Defendants' properties, thus depriving the City of property tax revenues and permitting Counter-Defendants to avoid paying substantial amounts in property taxes each year. ***Second***, it has deprived the City of fee revenue it would have otherwise earned from the proper permitting of the construction and remodeling of Counter-Defendants' properties. ***Third***, it has caused the City to incur expenses it otherwise would not have had to incur in inspecting and reinspecting the affected properties and ensuring compliance with applicable codes and laws.

16.     The City brings this action to redress the harm Counter-Defendants have caused its taxpayers by defrauding it of property tax and permit revenues through an unlawful conspiracy and pattern of racketeering and criminal activities and to restrain them from continuing to engage in this scheme.

## PARTIES, JURISDICTION AND VENUE

17.     Counter-Plaintiff City is a municipal corporation organized under the laws of the State of Florida.

18.     Counter-Defendant Mad Room is a Florida limited liability company with its principal place of business at 1513 SW 8th Street, Miami, Florida 33135. Mad Room operates the business known as the Ball & Chain, located at 1501 SW 8th Street and 1513 SW 8th Street, Miami, Florida 33135. Mad Room is managed by Charlie Licksterz, LLC ("Charlie Licksterz") and BNZ Bar, LLC ("BNZ Bar"). Fuller manages Charlie Licksterz, LLC. B. Bush and Z. Bush manage BNZ Bar, LLC.[2]

19.     Counter-Defendant Taquerias is a Florida limited liability company with its principal place of business at 521 SW 8th Street, Miami, Florida 33130. Taquerias operates businesses known as Taquerias El Mexicano and Los Altos at the same location. Taquerias is currently managed by Charlie Licksterz and BNZ Bar.[3]

20.     Counter-Defendant LHAB is a Florida limited liability company with its principal place of business at 1637 SW 8th Street, Suite 200, Miami, Florida 33135. LHAB owns the real properties located at 1501 SW 8th Street, Miami, Florida 33135 and 1513 SW 7th Street, Miami, Florida 33135, which Mad Room leases to conduct its operations. LHAB is currently managed by Vincent Mazzei and Fuller.[4]

21.     Counter-Defendant LGF is a Florida limited liability company with its principal place of business at 1637 SW 8th Street, Suite 200, Miami, Florida 33135. LGF owns the real property located at 521 SW 8th Street, Miami, Florida 33135, which Taquerias leases to conduct

---

[2]     Annual reports reflecting Mad Room's current layers of management are attached as **Composite Exhibit B**.
[3]     Annual reports reflecting Taquerias' current layers of management are attached as **Composite Exhibit C**.
[4]     An annual report reflecting LHAB's current management is attached as **Exhibit D**.

its operations. LGF is currently managed by Pinilla, Fuller and BNZ Fiesta, LLC which, in turn, is managed by B. Bush and BNZ Real Estate, LLC (managed by B. Bush and Z. Bush).[5]

22.     This Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S. § 1367.

23.     This Court has personal jurisdiction over each of the Counter-Defendants because, among other reasons, they subjected themselves to the jurisdiction of this Court by filing this action here; because each of them, either directly or through their agents, transacts business in, and derives substantial revenue from, the State of Florida; because the wrongful acts complained of all occurred in and caused harm in Florida; and because each Counter-Defendant has averred that it is a limited liability company organized and existing under the laws of the State of Florida and is conducting business in Florida.

24.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the City's claims occurred in the Southern District of Florida, and all the Counter-Defendants have their principal offices in this District.

25.     All conditions precedent to the relief sought herein have been performed, have occurred, or have been waived or excused.

**FACTUAL ALLEGATIONS**

**The Long-Standing Scheme to Avoid Permit Fees and Increased Tax Assessments**

26.     Beginning in or around 2004, Fuller began purchasing real properties located throughout Miami's Little Havana neighborhood and surrounding area, with a particular focus on distressed assets.[6]

---

[5]     Annual reports reflecting LGF's current layers of management are attached as **Composite Exhibit E**.

[6]     Mr. Fuller's early billybuys® website seeking distressed commercial and residential real estate can

27.     Since that time, Fuller and his associates, Pinilla, B. Bush and Z. Bush, have formed numerous corporate entities, including Counter-Defendants, for the purpose of purchasing and owning real properties featuring establishments such as the Ball & Chain, Taquerias El Mexicano, El Taquito, and the Tower Hotel.

28.     Counter-Defendants' managers, who refer to their empire building efforts as "curating and caretaking,"[7] have purchased numerous properties in various states of repair throughout Miami and have performed, or are in the process of performing, extensive renovations of many of those properties.

29.     A significant number of those renovations were performed without permits or with improper permits, including but not limited to work performed at 1444 SW 7th Street, 1450 SW 7th Street, 1460 SW 7th Street, 521 SW 8th Street, 1378 and 1380 SW 8th Street, 1459 SW 8th Street, and 1501 and 1503 SW 8th Street and—each of which is owned by entities managed directly or indirectly by one or more of Fuller, Pinilla, B. Bush or Z. Bush.

30.     Counter-Defendants' managers, or entities controlled by them, formed LHAB for the sole purpose of purchasing and owning the real property located at 1501 and 1513 SW 8th Street, Miami, Florida ("Ball & Chain Property"). Likewise, they formed LGF for the sole purpose of purchasing and owning the real property located at 521 SW 8th Street, Miami, Florida ("Taquerias Property").

31.     As set forth above, LGF and LHAB have officers in common. Fuller, in particular, has authority to sign on behalf of either entity and pays little attention to corporate formalities.[8]

---

still be accessed at http://www.billybuys.com/. The billybuys® website displays the telephone number associated with Barlington Capital, another company associated with Mr. Fuller that specialized in hard money lending. *See* Barlington Capital's at: http://www.barlingtoncapital.com/aboutus.html.

[7]     *See* ECF No. 212 ¶ 20.

[8]     *See* Fuller Dep., attached as **Exhibit F**, at 456:8-25.

Indeed, Fuller admitted there has been unpermitted work carried out at both the Ball & Chain Property and Taquerias Property at his deposition.

32.     The Ball & Chain Property is the site of an establishment called "Ball & Chain." Counter-Defendants' managers formed Mad Room for the purpose of managing Ball & Chain. LHAB has leased the Ball & Chain Property to Mad Room since August 2013.

33.     The Taquerias Property is the site of an establishment called "Taquerias El Mexicano." Counter-Defendants' managers formed Taquerias for the purpose of managing Taquerias El Mexicano. LGF has leased the Taquerias Property to Taquerias since June 2017.

34.     Prior to 2013, LHAB leased the property to other tenants, which themselves engaged in renovations of the property. Despite its rights as a landlord to approve any renovations and require its tenants to abide by all applicable laws, including obtaining proper permits, LHAB's corporate representative has admitted that LHAB did not concern itself with verifying that its tenants pulled proper permits.[9]

35.     Maintaining their managers' standard operating procedure, Counter-Defendants performed substantial unpermitted work at both properties including, but not limited to installing a new HVAC system and rear exterior stairs and constructing a speakeasy in the vacant second floor of the building located at the Taquerias Property and constructing a balcony, band shell stage (the so-called "Pineapple Stage") and outside bar counter at the Ball & Chain Property. That unpermitted and improper work is at the center of Counter-Defendants' lawsuit.

36.     In an attempt to escape liability for their scheme, Counter-Defendants claim that the City's lawful enforcement of its Code of Ordinances and the State Building Code against them—known repeat offenders with an expansive portfolio of unpermitted or improperly permitted

---

[9]     *See* LHAB Corp. Rep. Dep., attached as **Exhibit G**, at 49:11-50:18.

work—is instead the product of a fanciful, targeted vendetta against Fuller and Pinilla that "runs from top to bottom" within the City and features "lawyers, professional staff, and every single department within [the City's] administrative function."  [ECF No. 212 ¶ 3].

**State and Local Building Codes Require Permits for All Construction**

37.    All renovations performed within the City of Miami are subject to both state and local building codes. Renovations cannot be undertaken without properly obtaining permits addressing the specific types of work being performed.

38.    The City has adopted the Florida Building Code, which provides in pertinent part:

**All plans submitted after the Florida Building Code was implemented shall be governed by the "Florida Building Code, as amended" and Chapter 8 of the Code of Ordinances of Miami-Dade County, Florida, as amended (hereinafter referred as "Chapter 8 of the County Code").** Following implementation of the "Florida Building Code," the "Florida Building Code, as amended" and "Chapter 8 of the County Code" shall be enforced in the city.

*See* Section 10-3(a), City of Miami Code of Ordinances ("City Code") (emphasis added).

39.    The Florida Building Codes Act provides, in pertinent part:

**553.79   Permits; applications; issuance; inspections.—**
After the effective date of the Florida Building Code adopted as herein provided, it shall be unlawful for any person, firm, corporation, or governmental entity to construct, erect, alter, modify, repair, or demolish any building within this state without first obtaining a permit therefor from the appropriate enforcing agency.

*See* Section 553.79, Florida Statutes.

40.    Section 105.1 of the Florida Building Code states:

Any owner or owner's authorized agent who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a building or structure, or to erect, install, enlarge, later, repair, remove, convert or replace any impact-resistant coverings, electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be performed, **shall first make application to building official and obtain the required permit.**

*See* Section 105.1, Florida Building Code (emphasis added).

41.     Further, the City Code provides:

Incomplete buildings commenced without a permit or for which the permit has expired, or completed buildings commenced without a permit or for which the permit expired, prior to completion and no certificate of occupancy has been issued, shall be presumed and deemed unsafe and a permit shall be obtained to demolish the structure or bring the building into compliance with the applicable codes as provided herein.

*See* Section 10-101(a)(3), City Code.

42.     Section 10-3(a) of the City Code contains the following relevant definitions:

- *Master permit* is a building permit obtained for the complete work on any project.

- *Stand alone permit* is any trade (electrical, mechanical, or plumbing) permit pulled for a single category without the need for a master permit.

- *Trade permit* is a subsidiary building, electrical, mechanical or plumbing permit that requires a master permit associated with it to be pulled prior to issuance.

- *Private provider* means a person who can provide alternate plans review under F.S. § 553.791 and is licensed as an engineer under F.S. ch. 471 or as an architect under F.S. ch. 481, as amended.

*See* Section 10-3(a), City Code.

43.     Section 10-4 of the City Code provides that "building, mechanical and electrical permit fees for commercial and multifamily master permit, trade permit and standalone permits for buildings with an estimated constructed cost of $30,000,000 or less are 1% of the cost of construction as per the declared cost by the contractor."  *See* City Code, at Section 10-4(b)(1)(b.). Thus, the more extensive the project, the higher the construction costs and permit fees that must be paid.

44.     Each month, the City's Building Department sends status reports regarding all permits issued and in progress throughout the City to the Miami-Dade County Property Appraiser. The Property Appraiser is required by law to determine a "just value" of the real property subject to taxation. *See* Fla. Stat. § 193.011. This just value takes into account the improvements made

upon real property. *Id*. at (5). Therefore, each year, the Property Appraiser will cause the inspection of the properties which have been noted on the City's status reports as having had their permits finalized and will appraise the value of the properties and any structures thereon accordingly.

45.     New construction, additions, renovations or modifications to existing structures all result in increases in the taxable value of a real property. *Id*. at (4)-(5).

**Counter-Defendants Continue Their Principals' Scheme and Enterprise**

46.     As part of their business model, Counter-Defendants and their managers have developed and engaged in a scheme to artificially suppress the taxable value of properties they own or manage throughout the City by (1) renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or (2) by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit. The Ball & Chain and Taquerias Properties are no exception.

47.     Fuller, for instance, admitted to performing unpermitted work on properties he controls at the November 7, 2022, injunction hearing in the related matter of *Tower Hotel, et al. v. City of Miami*, Case No.:2022-8069-CA-44[10]:

---

[10]     *See* Excerpt from November 7, 2022 hearing, attached as **Exhibit H**.

```
 9  BY MS. GLORIOSO DOOLEY:
10     Q.   So, as you sit there, you can't testify as to
11  any property, of your own knowledge, individually,
12  whether or not you started work without a permit?
13          MR. BRAUNSTEIN:  Objection,
14      mischaracterizes the testimony.
15          THE WITNESS:  Let's go property by
16      property, because some of the violations --
17  BY MS. GLORIOSO DOOLEY:
18     Q.   That's not my question.  Yes or no?
19     A.   There's work done without permits, absolutely.
20  Those are the violations, some of them.
```

48.     In addition to substantial savings on property taxes and permitting fees, Counter-Defendants' and their managers' systematic disregard of permitting laws and building codes allows them to renovate buildings and get businesses up and running far more quickly than would be possible if they maintained compliance with applicable laws and codes.

49.     Counter-Defendants' managers have judicially admitted their permitting violations in numerous code enforcement cases which, after multiple attempts to delay or do away with the proceedings, ultimately resulted in their paying the required fines.

50.     Counter-Defendants are required to disclose any construction or renovations performed on the Ball & Chain Property and Taquerias Property by obtaining the permits required under Section 105.1 of the Florida Building Code and Section 8-1 of the City Code. *See* Section 553.79, Florida Statutes.

51.     Counter-Defendants' intentional failure to obtain the permitting required under Section 105.1 of the Florida Building Code before renovating the properties they own and manage constitutes intentional misrepresentations to the City as to the nature of the permits being sought,

and to the Miami Dade Office of the Tax Collector and, consequently the City, regarding the taxable value of the properties—including the Ball & Chain Property and Taquerias Property.[11]

52.     Beyond that, permit fees are directly commensurate with the scope of work set to be performed on a property. Accordingly, both in cases where Counter-Defendants obtained no permits or schemed to obtain permits for a lesser scope of work than what was actually performed, they deprived the City of the full amount of the permitting fees due for those renovations.

53.     Counter-Defendants and their managers utilized this scheme to artificially suppress the taxable values of, and avoid paying, in whole or in part, the permitting fees related to, work performed at the Ball & Chain Property and Taquerias Property in addition to other properties located throughout Miami that are not the subject of this lawsuit, resulting in substantial losses in property taxes and permitting revenues due to the City over a period of least 5 years, and substantial savings to Counter-Defendants.

**LHAB and Mad Room Illegally Carry Out Unpermitted Work and Lie to the City**

54.     On March 27, 2019, the City's Code Enforcement division issued a Notice of Violation for unpermitted work performed on the Ball & Chain Property and opened case number CE 2019005418. Specifically, an inspection of the property revealed that an overhang had been attached to the structure, the front windows had been replaced, the interior had been remodeled extensively, and a stage/band shell had been installed behind the structure.[12]

---

[11]     *See* April 15, 2019 Building Permit Application, attached as **Exhibit I**.
[12]     The March 27, 2019 Notice of Violation is attached as **Exhibit J**.

55.     Indeed, Fuller admitted at his deposition that no permits were obtained for the construction of the "Pineapple Stage,"[13] band shell,[14] outside counter[15] or overhang/balcony attached to the building.[16]

56.     Fuller admitted at his deposition that the band shell had been constructed without a permit at some point between January 17, 2014 and January 19, 2015.[17]

57.     Fuller admitted at his deposition that the balcony had been constructed without a permit between January 6, 2014 and January 19, 2015.[18]

58.     The extensive unpermitted interior work also included the complete relocation of the bar and alterations to the bathrooms. LHAB was ordered to obtain permitting for the work by April 8, 2019.[19]

59.     On April 10, 2019, the City's Unsafe Structures division opened case number BB2019006397 arising out of the same unpermitted work and issued a Repair or Demolish – First Notice ordering LHAB to submit drawings and obtain permits and inspections to correct the nonconforming items by April 8, 2019.

60.     Despite the breadth of unpermitted work cited, on April 15, 2019, LHAB or Mad Room submitted a Building Permit Application to the City reflecting unspecified exterior remodeling work to be completed at a work value of only $2,500.[20] The Building Permit Application was executed by Fuller.[21]

---

[13]     *See* Fuller Dep., Exhibit F, at 670:10-17.
[14]     *See id.* at 539:1-3.
[15]     *See id.* at 668:2-15.
[16]     *See id.* at 527:9-11.
[17]     *See id.* at 521:12-15; 526:8-15; 524:22-525:1; Band Shell Photos, attached as **Exhibit K**.
[18]     *See* Fuller Dep. at 521:12-15; 526:8-15; 527:9-11; Balcony Photos, attached as **Exhibit L**.
[19]     *See* March 27, 2019 Notice of Violation, Exhibit J.
[20]     *See* April 15, 2019, Building Permit Application, Exhibit I, at 4.
[21]     *See id.* at 6.

61.    On November 1, 2019, when the violations had not been remedied nearly six months after the original notice, the Code Enforcement Board issued a summons for LHAB to appear at a hearing on December 5, 2019. Following the hearing, on December 9, 2019, the Code Enforcement Board ordered LHAB to correct all violations by March 4, 2020.[22]

62.    LHAB and Mad Room chose not to appeal, as was their right under the City Code and Florida law. *See* Section 162.11, Florida Statutes; Section 2-818, City Code of Miami. Instead, LHAB and Mad Room opted to obtain the building permits and inspections necessary to bring the property into compliance with the applicable code standards, and elected to utilize the alternative plans review and inspection process provided for in section 533.791, Florida Statutes, to bring the property into compliance.

63.    To that end, Mad Room engaged Ortus Engineering ("Ortus") as their chosen private provider (despite the fact that the Notice of Violation was issued to LHAB).[23]  Beginning on or around May 6, 2020 and continuing through August 28, 2020, LHAB, Ortus or another agent on its behalf, consistently utilized the City's online iBuild and ProjectDox programs to submit plans, application revisions, and affidavits to the City and certify that the plans complied with all applicable codes and, following completion of the work performed pursuant to the plans, certified that all of the work complied with applicable codes. Ortus has asserted in defense of the litigation Mad Room filed against it that Mad Room failed to disclose prior work performed on the property.[24]

---

[22]    The Code Enforcement Board's Final Administrative Order is attached as **Exhibit M**.

[23]    Counter-Defendant Mad Room has filed a lawsuit against Ortus for professional negligence, breach of fiduciary duty, and breach of contract arising out of the professional services Ortus provided in relation to this property. *See Mad Room d/b/a Ball & Chain v. Ortus Engineering, P.A. et al.*, Case No. 2021-008177-CA-01(44) pending in Miami-Dade County Circuit Court. Mad Room and Ortus have since settled the case but have refused to disclose the terms of settlement, asserting confidentiality.

[24]    *See* Defendants, Ortus Engineering, P.A., and Elvis Torres' Answer and Affirmative Defenses to

64.    Violations pertaining to the exterior of the structure, such as the unpermitted "Pineapple Stage" and inadequate exits, remain outstanding, which requires the back patio bar to remain closed.

**Mad Room and LHAB Use the City's Online Permit Portals in Violation of the Communications Fraud Act in Furtherance of Their Scheme**

65.    By way of example, on or about April 15, 2019, LHAB and Mad Room, or an agent acting on their behalf utilized the City's online iBuild and ProjectDox programs to submit Building Permit Application No. BD 19-005508, inaccurately reflecting a total work value of $2,500 for the extensive structural repairs arising out of the March 27, 2019, Notice of Violation issued to LHAB. This incomplete, misleading and erroneous information was submitted to the City in furtherance of Counter-Defendants' scheme to defraud the City and artificially suppress the taxable value of properties they own or manage throughout the City by (1) renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or (2) by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit.

66.    LHAB's and Mad Room's use of the City's online iBuild and ProjectDox programs to communicate with the City to obtain permits for less than the existing or intended work and in furtherance of their scheme to deprive the City of its property (i.e., the City's portion of the full amount of property taxes due on the Ball & Chain Property), such as the submission of its April 15, 2019 Building Permit Application, constitutes a violation of Section 817.034, Florida Statutes (Florida Communications Fraud Act) and is a predicate act of LHAB and Mad Room under RICO. LHAB and Mad Room have used this scheme to obtain property (a permit as well as improvements

---

Plaintiff's First Amended Complaint in the related case of *Mad Room, LLC d/b/a Ball & Chain v. Ortus Engineering, P.A. et al.*, Case No. 2021-CA-8177-01 pending in Miami-Dade County Circuit Court, at *Thirty-Eighth Affirmative Defense*, attached as **Exhibit N**.

to their premises) and to deprive the City of its property, i.e., its share of increase in property taxes had the improvements been performed in accordance with the permits required by law and taxed accordingly.

67.     Further, the April 15, 2019 submission by LHAB and Mad Room of false information to the City, themselves directly or by providing false information to the private provider or other agents, and any further false information regarding its purported compliance with applicable codes between April 15, 2019 and September 2020 in furtherance of Counter-Defendants' scheme is a violation of Section 837.06, Florida Statutes (false statement to a public servant) and is a predicate act of those entities under RICO.

68.     LHAB's and Mad Room's participation in and acts in support of the scheme deprived the City of property and, specifically, deprived the City of its portion of the full amount of property taxes due on the Ball & Chain Property in violation of Section 812.014(1), Florida Statutes (theft). Specifically, LHAB and Mad Room knowingly endeavored to deprive the City of its property (i.e., the City's portion of the full amount of permitting fees and property taxes due on the Ball & Chain Property) each time it performed unpermitted work on the Ball & Chain Property, including, but not limited to, construction of the "Pineapple Stage," band shell, outside counter and overhang/balcony attached to the building.

### LGF and Taquerias Also Carry Out Unpermitted Work

69.     Fuller has admitted that unpermitted work was performed at the Taquerias Property.[25]

70.     On March 28, 2019, the City's Code Enforcement Division issued a Notice of Violation to LGF for work performed without a finalized permit as determined by a February 26,

---

[25]     *See* Fuller Dep., Exhibit F, at 476:13-22.

2019, inspection of the premises and aerial photographs which revealed a new HVAC system on the roof of the structure, and opened case number CE2019005428.[26]

71.    Indeed, Fuller admitted that permits were not obtained for the HVAC system installed in 2018, and that work had to be done to conform the previously unpermitted HVAC system to code and obtain a proper permit.[27]

72.    The March 28, 2019, Notice of Violation stated that work had been done to the structure's second floor without first obtaining the required permit in violation of City Code Section 10-3 and Sections 104 and 105 of the Florida Building Code and advised that LGF must obtain a building permit for the work. LGF was directed to correct all listed violations by April 8, 2019.

73.    Likely anticipating that citations would be forthcoming as a result of the inspection, on March 26, 2019, upon information and belief, LGF utilized the City's online iBuild program to begin a permit application to give the appearance of an attempt to legalize the improper and unpermitted work performed on the Taquerias Property and prevent any further action from the City.[28]  The "Owner Information" section of the EPlan application lists William Fuller on behalf of Taquerias.

74.    On April 10, 2019, the Building Department's Unsafe Structures Division issued to LGF additional violations for performing unpermitted work on the second floor of the building and requested that LGF either repair or demolish the structure.[29]  Pictures taken of the interior of

---

[26]    *See* March 28, 2019 Notice of Violation, attached as **Exhibit O**; Taquerias HVAC Photos, attached as **Exhibit P**.
[27]    *See* Fuller Dep., Exhibit F, at 481:14-23; 482:20-21; 483:24-484:2.
[28]    *See* EPlan Review Results: BD19-005503-001, attached as **Exhibit Q**.
[29]    *See* April 10, 2019 Repair or Demolish - First Notice attached as **Exhibit R**.

the second floor on April 10, 2019, show that what was once a banquet hall-type area had been converted to a lounge that included a large bar area.[30]

75.     LGF's violations were scheduled to be heard before the City's Code Enforcement Board on December 5, 2019, and the Code Enforcement Board issued a Final Administrative Order directing LGF to correct all violations no later than March 4, 2020.[31]

76.     LGF chose not to appeal the Final Administrative Order and instead opted to attempt to bring the property into compliance, which required LGF to obtain all necessary permits and inspections.

77.     While conducting inspections for ongoing legalization work, the City subsequently discovered that LGF constructed a secondary means of egress from the second floor—exterior stairs—without permits and in violation of the fire separation requirements of the Florida Building Code. *See* Sections 1027.1 & 1027.5, Florida Building Code.

78.     The rear exterior stairs were not disclosed in the legalization plans submitted under BD19-005503-001.

79.     Fuller admitted in his deposition that no permit had been obtained to attach the rear exterior stairs to the building, and that they had been constructed at some point after December 23, 2018.[32]

80.     The City ultimately revoked LGF's Certificate of Use on September 21, 2021, issuing a Certificate of Use Revocation stating that: [33]

---

[30]     *See* April 10, 2019 Inspection Photos, attached as **Exhibit S**.
[31]     *See* November 1, 2019 Notice of Violation Summons to Appear attached as **Exhibit T**.
[32]     *See* Fuller Dep., Exhibit F, at 604:8-9; 610:5-15; 618:5-20.
[33]     *See* Certificate of Use Revocation #1712-002617, attached as **Exhibit U**.

Please be advised that, effective immediately, Certificate of Use No. 1712-002617 is hereby revoked pursuant to Sections 2-211(b)(5) and (7) of the Code of the City of Miami, Florida, as amended ("City Code"). During a recent inspection of this property by the Building Department related to the after-the-fact legalization plans submitted under building permit BD19-005503-001, it was discovered that the secondary means of egress from the 2nd floor of the property, which are the rear stairs, are in violation of the Florida Building Code, Section 1027.5 for failing to provide a minimum of ten (10) feet of separation from the adjacent western property line. Further, no records could be found evidencing that those stairs were constructed legally with a permit and no temporary certificate of occupancy has been obtained under the after-the-fact legalization permit to allow for occupancy of the space.

This violation of the Florida Building Code, which directly affects life-safety, particularly of guests or patrons to the 2nd floor of the property, is a violation of Section 10-3(a) of the City Code which provides that the provisions of the Florida Building Code are enforceable by the City of Miami ("City").

Because this violation of the City Code represents a life-safety hazard for violating the portion of the Florida Building Code designed to minimize risk of loss of life due to fire, the abovementioned certificate of use is revoked.

### Taquerias and LFG Also Use the City's Online Permit Portals in Violation of the Communications Fraud Act to Further Their Scheme

81.    Beginning on or around March 26, 2019, and continuing through at least September 21, 2021, LGF and Taquerias, either directly or through their agents, utilized the City's online iBuild and ProjectDox programs to submit after-the-fact legalization plans and application revisions, none of which reflected the true scope of the work being done during that period of time—the exterior stars were omitted—to the City in furtherance of their scheme.

82.    LGF's and Taquerias' use of the City's online iBuild and ProjectDox programs to communicate with the City from March 26, 2019 through at least September 21, 2021, in furtherance of their scheme to deprive the City of its property (i.e., the City's portion of the full amount of property taxes due on the Taquerias Property), while omitting the construction of the rear external stairs, constitutes a violation of Section 817.034, Florida Statutes (Florida Communications Fraud Act) and is a predicate act of LGF and Taquerias under RICO.

83.    Further, each such submission by LGF and Taquerias of false and misleading information to the City, including the misleading information submitted between March 26, 2019, through at least September 21, 2021 regarding their purported scope of work or compliance with

applicable codes in furtherance of the scheme is a violation of Section 837.06, Florida Statutes (false statement to a public servant) and is a predicate act of those entities under RICO.

84.     LGF's and Taquerias' participation in and acts in support of the scheme deprived the City of property and, specifically, deprived the City of its portion of the full amount of permitting fees and property taxes due on the Taquerias Property in violation of Section 812.014(1), Florida Statutes (theft). Specifically, LGF and Taquerias knowingly endeavored to deprive the City of its property (i.e., the City's applicable permitting fees and its portion of the full amount of property taxes due on the Taquerias Property) each time it performed unpermitted work on the Taquerias Property, including, but not limited to, construction of the unpermitted HVAC system, renovations to convert the second floor from banquet hall to bar and lounge, and rear external stairs.

## CAUSES OF ACTION

### Count I – Violations of Florida Statutes §§ 772.103 and 895.03
### (Against LHAB and Mad Room)

85.     The City realleges Paragraphs 1 through 84 as if fully set forth herein.

86.     This is an action for damages and injunctive relief pursuant to the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §772.101 *et seq.*

87.     Counter-Defendants LHAB and Mad Room engaged in various acts which constitute "racketeering activity" as defined under Section 895.02, Florida Statutes.

88.     On or about April 15, 2019, LHAB and Mad Room, or an agent acting on their behalf utilized the City's online iBuild and ProjectDox programs to submit Building Permit Application No. BD 19-005508, which inaccurately reflected a total work value of $2,500 for structural repairs arising out of the March 27, 2019, Notice of Violation issued to LHAB.

89.     LHAB and Mad Room knowingly submitted this incomplete, misleading and erroneous information to the City in furtherance of Counter-Defendants' scheme to defraud the City and artificially suppress the taxable value of properties they own or manage throughout the City by (1) renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or (2) by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit.

90.     LHAB's and Mad Room's use of the City's online iBuild and ProjectDox programs to communicate with the City in furtherance of their scheme to deprive the City of its property (i.e., the City's portion of the full amount of property taxes due on the Ball & Chain Property), such as the submission of its April 15, 2019 Building Permit Application, constitutes a violation of Section 817.034, Florida Statutes (Florida Communications Fraud Act) and is a predicate act of LHAB and Mad Room under RICO.

91.     Further, the April 15, 2019, submission by LHAB and Mad Room of false information to the City, and any further false information regarding their scope of work or purported compliance with applicable codes between April 15, 2019 and September 2020 in furtherance of Counter-Defendants' scheme is a violation of Section 837.06, Florida Statutes (false statement to a public servant) and is a predicate act of those entities under RICO.

92.     LHAB's and Mad Room's participation in and acts in support of the scheme deprived the City of property and, specifically, deprived the City of its portion of the full amount of property taxes due on the Ball & Chain Property in violation of Section 812.014(1), Florida Statutes (theft).

93.     Specifically, LHAB and Mad Room knowingly endeavored to deprive the City of its property (i.e., the City's established permitting fees and its portion of the full amount of property

taxes due on the Ball & Chain Property) each time it performed unpermitted work on the Ball & Chain Property, including, but not limited to, construction of the "Pineapple Stage," band shell, outside counter and overhang/balcony attached to the building.

94.     LHAB and Mad Room took actions or participated in an enterprise through two or more instances of racketeering conduct including, but not limited to, the violations laid out in Paragraphs 65 through 68, above, with the same intent to defraud the City and artificially suppress the taxable value of properties they own or manage throughout the City by (1) renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so or (2) purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit, with the same results, accomplices, victims or methods of commission, and were otherwise interrelated by distinguishing characteristics and are not isolated incidents.

95.      The actions taken by LHAB and Mad Room, in conjunction with the actions taken by LGF and Taquerias at the direction of their respective managers as further described herein, constitute an "enterprise" as the term is defined by Section 895.02, Florida Statutes.

96.     LHAB and Mad Room agreed to engage in the enterprise, and objectively manifested their agreement to do so through the actions described above.

97.     The enterprise is an ongoing organization, formal or informal, acting with a common purpose of engaging in a course of conduct, namely, to artificially suppress the taxable value of the Ball and Chain Property and the Taquerias Property and to obtain cheaper permits for a lesser scope of work than that actually performed, and to deprive the City of its tax and permitting revenues.

98.     The enterprise is functioning as a continuing unit.

99.     The City has been injured in its business and property as a direct and proximate

resulting of the foregoing violations of Section 772.103(1), (2), and (3) and 895.03(1), (2) and (3),

Florida Statutes, through Counter-Defendants' enterprise.

100.    The City's injuries include but are not limited to:

a.  Loss of revenue from receiving permitting fees for unpermitted work;

b.  Loss of revenue from issuance of permits for a lesser scope of work falsely

represented than actually intended and performed by the enterprise;

c.  Loss of revenue from its share of property taxes that would have lawfully been

assessed against the Ball and Chain Property had LHAB and Mad Room not

concealed their illegal unpermitted work by failing to obtain permits;

d.  Loss of revenue from its share of property taxes that would have lawfully been

assessed against the Ball and Chain Property had LHAB and Mad Room not falsely

misrepresented the actual scope of work on the permits they did obtain;

e.  Unnecessary expenditures of City resources in investigating and enforcing the

violations of the State Building Code and City Code of Ordinances resulting from

LHAB's and Mad Room's practices in concealing their unpermitted work and using

the administrative process to delay the City's enforcement of its laws only to later

pay the assessed fines.

WHEREFORE, Counter-Plaintiff City of Miami demands judgment against Counter-

Defendants Little Havana Arts Building, LLC and The Mad Room, LLC d/b/a Ball & Chain,

jointly and severally, pursuant to Section 772.104(1) for treble damages, interest, attorney fees,

and the cost of this action, and for such other and further relief as this Court deems just and

appropriate. Further, Counter-Plaintiff City of Miami seeks an injunction pursuant to Section

895.05(1)(b), enjoining Little Havana Arts Building, LLC and The Mad Room, LLC d/b/a Ball & Chain from engaging in further activities of the type described herein, which are designed to deprive the City of permitting revenues.

## Count II – Violations of Florida Statutes §§ 772.103 and 895.03
## (Against LGF and Taquerias)

101.    The City realleges Paragraphs 1 through 100 as if fully set forth herein.

102.    This is an action for damages and injunctive relief pursuant to the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.103 *et seq*.

103.    Counter-Defendants LGF and Taquerias engaged in various acts which constitute "racketeering activity" as defined under Section 895.02, Florida Statutes.

104.    Beginning on or around March 26, 2019, and continuing through at least September 21, 2021, LGF and Taquerias, either directly or through their agents, utilized the City's online iBuild and ProjectDox programs to submit after-the-fact legalization plans and application revisions, none of which reflected the true scope of the work being done during that period of time—the exterior stars were omitted—to the City in furtherance of their scheme.

105.    LGF's and Taquerias' use of the City's online iBuild and ProjectDox programs to communicate with the City from March 26, 2019 through at least September 21, 2021 in furtherance of their scheme to deprive the City of its property (i.e., the City's established right to collect permit fees and to receive its portion of the full amount of property taxes due on the Taquerias Property), while omitting the construction of the rear external stairs, constitutes a violation of Section 817.034, Florida Statutes (Florida Communications Fraud Act) and is a predicate act of LGF and Taquerias under RICO.

106.    Each such submission by LGF and Taquerias of false and misleading information to the City, including the misleading information submitted (i.e., the omission of the exterior stairs from the scope of work) between March 26, 2019 through at least September 21, 2021 regarding scope of work or compliance with applicable codes in furtherance of the scheme is a violation of Section 837.06, Florida Statutes (false statement to a public servant) and is a predicate act of those entities under RICO.

107.    LGF's and Taquerias' participation in and acts in support of the scheme deprived the City of property and, specifically, deprived the City of its portion of the full amount of property taxes due on the Taquerias Property in violation of Section 812.014(1), Florida Statutes (theft).

108.    Specifically, LGF and Taquerias knowingly endeavored to deprive the City of its property (i.e., the City's portion of the full amount of property taxes due on the Taquerias Property) each time it performed unpermitted work on the Taquerias Property, including, but not limited to, construction of the unpermitted HVAC system, second floor renovations from banquet hall to lounge, and rear external stairs.

109.    LGF and Taquerias took actions or participated in an enterprise through two or more instances of racketeering conduct including, but not limited to, the violations laid out in Paragraphs 81 through 84, above, with the same intent to defraud the City and artificially suppress the taxable value of properties they own or manage throughout the City by (1) renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or (2) by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit, with the same results, accomplices, victims or methods of commission, and were otherwise interrelated by distinguishing characteristics and are not isolated incidents.

110.     The actions taken by LGF and Taquerias, in conjunction with the actions of LHAB and Mad Room, at the direction of their respective managers, as described herein, constitute an "enterprise" as the term is defined by Section 895.02, Florida Statutes.

111.     LGF and Taquerias agreed to engage in the enterprise, and objectively manifested their agreement to do so through the actions described above.

112.     The enterprise is an ongoing organization, formal or informal, acting with a common purpose of engaging in a course of conduct, namely, to artificially suppress the taxable value of the Ball and Chain Property and the Taquerias Property and to obtain cheaper permits for a lesser scope of work than that actually performed, and to deprive the City of its tax and permitting revenues.

113.     The enterprise is functioning as a continuing unit.

114.     The City has been injured in its business and property as a direct and proximate resulting of the foregoing violations of Section 772.103(1), (2), and (3) and 895.03(1), (2) and (3), Florida Statutes, through Counter-Defendants' enterprise.

115.     The City's injuries include but are not limited to:

a.  Loss of revenue from receiving permitting fees for unpermitted work;

b.  Loss of revenue from issuance of permits for a lesser scope of work falsely represented than actually intended and performed by the enterprise;

c.  Loss of revenue from its share of property taxes that would have lawfully been assessed against the Taquerias Property had LGF and Taquerias not concealed their illegal unpermitted work by failing to obtain permits;

d.  Loss of revenue from its share of property taxes that would have lawfully been assessed against the Taquerias Property had LGF and Taquerias not falsely misrepresented the actual scope of work on the permits they did obtain;

e.  Unnecessary expenditures of City resources in investigating and enforcing the violations of the State Building Code and City Code of Ordinances resulting from LGF's and Taquerias' practices in concealing their unpermitted work and using the administrative process to delay the City's enforcement of its laws only to later pay the assessed fines.

WHEREFORE, Counter-Plaintiff City of Miami demands judgment against Counter-Defendants La Gran Fiesta, LLC and Altos Mexicano, LLC d/b/a Taquerias El Mexicano, jointly and severally, pursuant to Section 772.104(1) for treble damages, interest, attorney fees, and the cost of this action, and for such other and further relief as this Court deems just and appropriate. Further, Counter-Plaintiff City of Miami seeks an injunction pursuant to Section 895.05(1)(b), enjoining La Gran Fiesta, LLC and Altos Mexicano, LLC d/b/a Taquerias El Mexicano from engaging in further activities of the type described herein, which are designed to deprive the City of permitting revenues.

### Count III – Violation of Florida Statutes § 772.103(4)

### (Against All Counter-Defendants)

116.  The City realleges Paragraphs 1 through 115 as if fully set forth herein.

117.  This is an action for damages pursuant to the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §772.101 *et seq.*

118.  At all relevant times, the Counter-Defendants together constitute an "enterprise" as defined in Section 772.102(3), Florida Statutes consisting of an ongoing organization with the

common purpose of engaging in a course of conduct and functioning as a continuing unit. The enterprise served as a vehicle for the commission of a pattern of racketeering activity.

119.   The Counter-Defendants conspired, endeavored, and agreed with each other to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate acts in violation of Section 772.103(4), Florida Statutes.

120.   The Counter-Defendants each manifested their respective agreement to participate in the enterprise through the pattern of racketeering activity by agreeing to the overall objective of the enterprise and by agreeing personally to commit two or more predicate acts, as described in Paragraphs 65 through 68 and 81 through 84, above.

121.   Specifically, they agreed to (1) defraud the City and artificially suppress the taxable value of properties they own or manage throughout the City by renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or by applying for and obtaining a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit, thus resulting in the retention of property tax and permit proceeds rightfully due to the City, which proceeds the Counter-Defendants used in the establishment or operation of the enterprise; (2) to acquire and or/maintain control of the enterprise with those proceeds; and (3) to conduct or participate in the conduct of the affairs of the enterprise with those proceeds, all through a pattern of racketeering activity, and they agreed that two or more racketeering acts, including violations of Sections 817.034, 837.06, and 812.014(1), Florida Statutes, were committed on behalf of the conspiracy.

122.   Section 772.102(b), Florida Statutes, specifies that "criminal activity" includes any conduct listed in Sections 817.034, 837.06, and 812.014(1), Florida Statutes.

123.    As set forth in Paragraphs 65 through 68 and 81 through 84, above, Counter-Defendants engaged in such criminal activity.

124.    The City has been injured as a direct and proximate result of the foregoing conspiracy to violate Sections 772.103(1), (2) and (3) in violation of Section 772.103(4), Florida Statutes.

WHEREFORE, Counter-Plaintiff City of Miami demands judgment against Counter-Defendants Little Havana Arts Building, LLC and The Mad Room, LLC d/b/a Ball & Chain, and La Gran Fiesta, LLC and Altos Mexicano, LLC d/b/a Taquerias El Mexicano, jointly and severally, pursuant to Section 772.104(1) for treble damages, interest, attorney fees, and the cost of this action, and for such other and further relief as this Court deems just and appropriate.

**Count IV – Common Law Fraud**

**(Against LHAB and Mad Room)**

125.    The City realleges Paragraphs 1 through 124 as if fully set forth herein.

126.    As set forth in detail above, beginning in at least 2013 and continuing through the present, LHAB and Mad Room, in at least the specific instances set forth herein, intentionally defrauded the City by making material misrepresentations and omissions as to the renovations and scope of work being performed on their properties and thus concealing the true taxable values of properties they own or manage throughout the City, and artificially suppressing the taxable value of those properties.

127.    LHAB and Mad Room did so by renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit.

128.     Specifically, LHAB and Mad Room constructed the "Pineapple Stage," band shell, outside counter and overhang/balcony attached to the building on the Ball & Chain Property without first obtaining the proper permits, and on April 15, 2019 submitted a Building Permit Application falsely misrepresenting a $2,500 work value regarding the legalization of the above unpermitted work as set forth herein.

129.     The City justifiably relied on LHAB and Mad Room's misrepresentations and omissions in not reporting the improvements to the Ball & Chain Property, each of which would have required proper permitting pursuant to the Florida Building Code, City Code, and County Code, and would have been included in the City's monthly permit status reports to the Property Appraiser.

130.     The City also justifiably relied on LHAB's and Mad Room's material misrepresentations and omissions by not charging for and collecting the correct permit fees for the work actually performed at the Ball and Chain Property.

131.     As a result of the City's reliance on LHAB and Mad Room's misrepresentations and omissions, no value adjustment of the properties was performed, and the City was deprived of both permitting revenues and property tax revenues to which it is rightfully entitled.

132.     Accordingly, LHAB and Mad Room's fraudulent misrepresentations and material omissions regarding the scope of their work was the proximate cause of the City's damages.

WHEREFORE Counter-Plaintiff City of Miami demands judgment against Counter-Defendants Little Havana Arts Building, LLC and The Mad Room, LLC d/b/a Ball & Chain for compensatory and punitive damages, interest, costs, and all other relief that this Court deems just and proper.

## Count V – Common Law Fraud

## (Against LGF and Taquerias)

133.    The City realleges Paragraphs 1 through 132 as if fully set forth herein.

134.    As set forth in detail above, beginning in at least 2017 and continuing through the present, LGF and Taquerias in at least the specific instances set forth herein, intentionally defrauded the City by making material misrepresentations and omissions as to the improvements performed on their properties and the taxable values of properties they own or manage, and artificially suppressing the taxable value of those properties.

135.    LGF and Taquerias did so by renovating, repairing or otherwise improving those properties without first obtaining the required permits to do so, or by purchasing a permit for a smaller scope of work and then far exceeding the scope of work proposed in that permit.

136.    Specifically, LGF and Taquerias installed an HVAC system, performed extensive renovations in transforming the second floor of the Taquerias Property from banquet hall to bar and lounge, and constructed rear external stairs, all without first obtaining the proper permits, and on at least March 26, 2019 and continuing through at least September 21, 2021, LGF and Taquerias, either directly or through their agents, utilized the City's online iBuild and ProjectDox programs to submit after-the-fact legalization plans and application revisions to the City, none of which reflected the true scope of the work being done during that period of time—specifically, the exterior stars were omitted.

137.    The City justifiably relied on LGF's and Taquerias' misrepresentations and omissions in not collecting the full amount of permit fees to which it was entitled and not reporting the improvements to the Taquerias Property, each of which would have required proper permitting

pursuant to the Florida Building Code, City Code, and County Code, and would have been included in the City's monthly permit status reports to the Property Appraiser.

138.     As a result of the City's reliance on LGF's and Taquerias' misrepresentations and omissions, no value adjustment of the properties was performed, and the City was deprived of both permitting revenues and property tax revenues to which it is rightfully entitled.

139.     Accordingly, LGF's and Taquerias' fraudulent misrepresentations and omissions regarding the improvements on their properties and the taxable values of their properties was the proximate cause of the City's damages.

WHEREFORE Counter-Plaintiff City of Miami demands judgment against Counter-Defendants La Gran Fiesta, LLC and Altos Mexicano, LLC d/b/a Taquerias El Mexicano for compensatory and punitive damages, interest, costs, and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

140.     The City demands a trial by jury on all claims so triable.

Dated: February 13, 2024                    Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

By: */s/ Raquel A. Rodriguez*
Raquel A. Rodriguez (Florida Bar No.511439)
Miranda L. Soto (Florida Bar No. 637963)
Daniel R. Lazaro (Florida Bar No. 99021)
Michael E. Dutko, Jr., Esq. (Florida Bar No. 72505)
Jesse Stolow (Florida Bar No. 1035214)

2 South Biscayne Boulevard, Suite 1500
Miami, FL 33131
Primary Email:  Raquel.rodriguez@bipc.com
                Miranda.soto@bipc.com
                Dan.lazaro@bipc.com
                michael.dutko@bipc.com
                jesse.stolow@bipc.com

Secondary Email: Soraya.hamilton@bipc.com
Marilee.tamesolmedo@bipc.com
Patricia.delgado@bipc.com

Gretchen L. Jankowski (PA Bar No. 74540)
Mackenzie A. Baird (PA Bar No. 205687)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Primary Email:  gretchen.jankowski@bipc.com
                mackenzie.baird@bipc.com

*Admitted Pro Hac Vice*

  -and-

ATTORNEYS FOR THE CITY OF MIAMI

Victoria Méndez, City Attorney
(Florida Bar No.194931)
Kevin R. Jones, Asst. City Attorney
(Florida Bar No. 119067)
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130
Primary Emails:  vmendez@miamigov.com
                 krjones@miamigov.com
Secondary Email:tmickens@miamigov.com

*Attorneys for Defendant, City of Miami*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing instrument has been served via electronic mail upon all those listed on the below service list on this 13th day of February, 2024.

/s/ *Raquel A. Rodriguez*

## SERVICE LIST

**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
MARIA A. FEHRETDINOV
mfehretdinov@stearnsweaver.com
JASON S. KOSLOWE
jkoslowe@stearnsweaver.com
MATTHEW C. DATES
mdates@stearnsweaver.com
CHELSEA E. KOFF
ckoff@stearnsweaver.com
CORAL DEL MAR LOPEZ
clopez@stearnsweaver.com
RYAN T. THORNTON
rthornton@stearnsweaver.com

*Counsel for Plaintiffs*