# EXHIBIT 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

      Plaintiffs,

  v.

JOE CAROLLO,

      Defendant.

_____/

### PLAINTIFFS' NOTICE OF CURRENTLY ONGOING POLITICAL RETALIATION IN FURTHER SUPPORT OF MOTION FOR TEMPORARY INJUNCTION

Despite a federal jury holding that Defendant Joe Carollo intentionally violated the United States Constitution by retaliating against Plaintiffs, and despite Plaintiffs' motion to enjoin Carollo from any further retaliation, the Miami Herald reports that Carollo is "unfazed by [the] $63M beating" and that Carollo promises to be the "last man standing" in his "next fight" with Plaintiffs, which is his false accusation implying that Plaintiffs obtained fraudulent loans from the federal government's Paycheck Protection Program ("PPP") to support their businesses through the COVID pandemic, saying: "I'll make a deal. If Mr. Fuller can prove the $6.5 million of federal PPP relief they got was spent appropriately and their employees were paid, I'll resign." *See* Linda Robertson, MIAMI HERALD, *Miami's political godfather Joe Carollo, unfazed by $63M beating, can't wait for next fight*, at http://tinyurl.com/mscs88fv (Dec. 20, 2023).

While this Court might otherwise be inclined to ignore such an absurd lie, the City of Miami is actively conducting a dragnet sham investigation to manufacture false evidence of an imaginary violation of **federal** law (which has nothing to do with any City code or any issue in

any case involving the City). Indeed, if not for the evidence presented at trial, Plaintiffs and their counsel would have a hard time believing that the City of Miami—under the direction of Carollo, City Attorney Victoria Mendez, and their law firm—would actually hire private investigators to track down Plaintiffs' employees at their homes and ask them the following pointed questions that lack any nexus to any legitimate municipal purpose:

1. Have you ever worked at Ball and Chain (1513 SW 8th Street, Miami FL) Taquerías El Mexicano (restaurant at 521 SW8th St. Miami, Fl 33130), or Los Altos/ bar/ salon? Located over Taquerias El Mexicano? Did you work at more than one of those places simultaneously?

2. When did you work there? When were you hired? and were you employed when the COVID pandemic started in March 2020?

3. Did the COVID pandemic affect your salary?

4. Were you laid off, had your hours reduced, or was your job otherwise impacted due to the COVID pandemic? When/ how?

5. Were you paid during the time you were not working, or was your job affected? How? Who paid you?

6. Are you still working there?

7. How were you paid, and how often? Who was responsible for your payments?

8. When and why did you leave the job?

9. Were there any interruptions in your employment there, and if so, why?

10. What is your position, and what were your responsibilities?

11. What hours did you work?

12. Do you recall if any family members of the restaurant/bar owners worked there?

13. Do you still maintain any relationship with the owners or management?

14. Are you still in contact with someone you worked with, and who is it?

15. Was rehired after the onset of the COVID pandemic? When?

Exhibit A (Questionnaire). One of Plaintiffs' employees provided a business card of the private investigator who questioned him:



*See* Exhibit B (Business Card) and Exhibit C (Fuller Declaration). Without any hope that questions like these could possibly vindicate any valid municipal interest, Carollo (and his allies) are hard-pressed to justify their conduct as anything other than a continuation of a campaign to punish Plaintiffs for speaking out against the corruption and misconduct that pervades City Hall by retaliating against them in violation of their First Amendment rights.

Yet, in the face of the jury's verdict and this Court's Final Judgment—which should have removed any doubt that the United States Constitution prohibits government officials from seeking to silence their political opponents by falsely accusing them of crimes—Carollo (and his allies) persist. Both the private investigator and an attorney for the City of Miami have admitted that this so-called investigation is directed and paid for by the City of Miami. And in addition to these admissions, high-level sources within the City of Miami Police Department report that Carollo instructed Captain Ron Papier to repeat the same false allegations of PPP fraud to a federal agency, which would constitute a troubling potential crime itself if those reports ultimately turn out to be accurate. *See* 18 U.S.C. § 1001 (False Statement Accountability Act); Fla. Stat. § 837.05(2) (criminalizing "[f]alse reports to law enforcement authorities").

## CONCLUSION

It is hard to overstate the irreparable harm that this particular type of political retaliation directly inflicts on Plaintiffs and indirectly inflicts on the City of Miami and its citizens as a whole. No person has any right—under the First Amendment or otherwise—to falsely accuse another person of a crime, which itself is an unlawful act. *See* 18 U.S.C. § 1001 (False Statement Accountability Act); Fla. Stat. § 837.05(2) (criminalizing "[f]alse reports to law enforcement authorities"). And, as this Court's Final Judgment confirms, such misbehavior on the part of high-ranking municipal officials like Carollo contravenes the First Amendment when their false accusations are engineered discourage and punish protected political expression by their constituents. The latest developments described above underscore how essential it is for this Court to enter an injunction to protect Plaintiffs from further illegal retaliation, to deter Carollo and his allies from continuing to thumb their nose at this Court's Final Judgment, and to send a message to the community that the First Amendment to the United States Constitution continues protects political activity in the City of Miami as it does everywhere else in the nation.

WHEREFORE, Plaintiffs respectfully request that this Court enter an injunction enjoining Defendants—including their agents, representatives, servants, employees, attorneys, and all others who are in active concert or participation with them—from engaging in further First Amendment retaliation against Plaintiffs as set forth more fully in the Motion for Temporary Injunction (DE 512).

Dated: December 27, 2023

    Respectfully submitted,

    **AXS LAW GROUP, PLLC**
    2121 NW 2nd Ave, Suite 201
    Wynwood, Florida 33127

                                Telephone: (305) 297-1878

                                By: */s/ Jeff Gutchess*
                                Jeffrey W. Gutchess Esq. (FBN#702641)
                                jeff@axslawgroup.com
                                eservice@axslawgroup.com
                                *Counsel for Plaintiffs William Fuller and Martin Pinilla*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 27 day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record.

                                By: */s/ Jeff Gutchess*
                                Jeffrey W. Gutchess Esq.

# EXHIBIT A

(1) ¿Alguna vez ha trabajado en Ball & Chain (bar en 1513 SW 8th St., Miami, FL), Taquerías el Mexicano (restaurante en 521 SW 8th St., Miami, FL 33130) o Los Altos (bar/salón? ubicado encima de Taquerías el Mexicano)? ¿Más de uno? ¿Trabajaste en más de uno de estos lugares a la vez?

(2) ¿Cuándo trabajó allí? ¿Cuándo te contrataron? ¿Trabajaba allí cuando comenzó la pandemia de COVID (marzo de 2020)?

(3) ¿La pandemia de COVID afectó su salario?

(4) ¿Lo despidieron, le redujeron sus horas o su trabajo se vio afectado de alguna manera como resultado de la pandemia de COVID? ¿Cuando cómo?

(5) ¿Le pagaron durante el tiempo que estuvo sin trabajo o su trabajo se vio afectado? ¿Cómo? ¿Quién le pagaba?

(6) ¿Sigues trabajando allí?

(7) ¿Cómo le pagaron? ¿Con que frecuencia? ¿Quién le pagaba?

(8) ¿Cuándo y por qué dejó el trabajo?

(9) ¿Hubo interrupciones en su empleo allí? ¿Por qué?

(10) ¿Cuál era su puesto y cuáles eran sus deberes?

(11) ¿Qué horas trabajaste?

(12) ¿Recuerda si algún familiar de los dueños de los restaurantes/bares trabajaba allí?

*[handwritten: George Corillo Bill 2]*

(13) ¿Aún tiene relación con los propietarios o la administración?

(14) ¿Sigue en contacto con alguien con quien trabajó? ¿Quien?

(15) ¿Lo volvieron a contratar después del inicio de la pandemia de COVID? ¿Cuando?

(16) ¿Tiene algún conocimiento de las acciones de cumplimiento del código de la Ciudad de Miami contra Ball & Chain, Taquerías el Mexicano o Los Altos? ¿Que sabes?

(17) ¿Habló con alguien del trabajo o escuchó alguna conversación sobre las acciones de cumplimiento del código? ¿Otros empleados? ¿Gerentes/administración/propietarios? ¿Qué es lo que converso o escucho?

(18) ¿Estuvo usted presente alguna vez cuando agentes encargados de hacer cumplir el código o agentes de policía estaban en Ball & Chain, Taquerías el Mexicano o Los Altos? ¿Qué viste/oíste?

(19) ¿Habló con alguien del trabajo o escuchó alguna conversación sobre el gobierno de la ciudad de Miami en general? ¿Otros empleados? ¿Gerentes/administración/propietarios? ¿Qué es lo que converso o escucho?

(20) ¿Hay alguien que pueda tener conocimiento de estos temas con quien usted cree que deberíamos hablar?

(21) ¿Hubo situaciones en las que sintió que los propietarios o gerentes trataron demasiado bien a los empleados de la ciudad cuando los visitaron?

(22) ¿Les dieron alimentos y bebidas gratis a los empleados de la ciudad en sus visitas?

(23) ¿Conoce a otras personas con las que trabajó que se vieron afectadas porque "no les pagaron, les redujeron las horas de trabajo o los despidieron"?

(24) ¿Sabe usted de alguna actividad inapropiada que se llevó a cabo mientras estuvo allí?

# EXHIBIT B

Case 1:21-cv-23485-RKA Document 597-24 Entered on FLSD Docket 10/21/2024 Page 1 of 14



# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:18-cv-24190

WILLIAM O. FULLER, and
MARTIN PINILLA, II,

       Plaintiffs,

v.

JOE CAROLLO,

       Defendant.
_____/

## DECLARATION OF BILL FULLER IN SUPPORT OF PLAINTIFFS' SUPPLEMENT TO MOTION FOR TEMPORARY INJUNCTION

I, William "Bill" O. Fuller, declare under penalty of perjury that the foregoing is true and correct:

1. I am above the age of 18, a resident of Miami-Dade County, Florida, and a Plaintiff in the above-styled action.

2. I make this declaration in support of Plaintiffs' Supplement to Motion for Temporary Injunction.

3. I have personal knowledge of the facts herein and, if called as a witness, I could and would testify competently under oath.

4. Mr. Jose De La Cruz Socarras provided me with photos of the attached questionnaire and business card. *See* Exhibits A and B.

5. I personally know Jose De La Cruz Socarras because he is both a former and also a current employee of one of my businesses.

6. Mr. De La Cruz Socarras was handed the attached questionnaire and business card by Mr. Roger Martinez, who identified himself as a private investigator hired by the City of Miami.

Executed on: December 27, 2023

/s/ William O. Fuller
William O. Fuller