**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-cv-23485-ALTMAN/Reid**

**THE MAD ROOM, LLC**
*d/b/a* **BALL & CHAIN,** *et al.*,

    *Plaintiffs*,

v.

**CITY OF MIAMI**,

    *Defendant*.

_____/

**ORDER ON MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Our Defendant, the City of Miami, filed an Amended Answer and Affirmative Defenses to the Amended Complaint and Counterclaim ("Affirmative Defenses") [ECF No. 366], advancing a staggering *forty-two* affirmative defenses (and asserting counterclaims of fraud and civil RICO). The Plaintiffs have responded with a Motion to Strike Affirmative Defenses (the "Motion to Strike") [ECF No. 373], which is now ripe for resolution, *see* Defendant City of Miami's Response in Opposition to the Plaintiffs' Motion to Strike (the "Response") [ECF No. 383]; Plaintiffs' Reply in Support of Motion to Strike (the "Reply") [ECF No. 388]. This Order follows.

**THE LAW**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Under Rule 12(f), a "motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *U.S. Commodity Futures Trading Comm'n v. Mintco, LLC*, 2016 WL 3944101, at *2 (S.D. Fla. May 17, 2016) (Bloom, J.). "Courts have broad discretion when considering a motion to strike, [although] striking defenses from a pleading remains

a drastic remedy to be resorted to only when required for the purposes of justice and only when the stricken material has no possible relation to the controversy." *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (Martinez, J.) (cleaned up).

So, when do we strike an affirmative defense? District courts are split on whether the higher pleading standards the Supreme Court laid out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), govern affirmative defenses. Some judges believe that those heightened pleading standards do apply. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 650 (S.D. Fla. 2015) (King, J.) ("Affirmative defenses must meet the pleading standards in *Iqbal* and *Twombly*."); *see also Castillo v. Roche Labs. Inc.*, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010) (Seitz, J.) ("Defendant's affirmative defenses must meet the pleading standard set out in *Twombly* and *Iqbal*."). Others have held that they don't. These latter courts conclude that affirmative defenses need only "provide[ ] the opposing party with notice of an additional issue (not directly related to liability) that may be raised at trial so that the opposing party can litigate the new issue." *Brito v. Palm Springs Mile Assocs., Ltd.*, 2021 WL 2634863, at *1 (S.D. Fla. Feb. 3, 2021) (Scola, J.); *see also, e.g.*, *Sparta Ins. Co. v. Colareta*, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013) (Rosenbaum, J.) ("[S]o long as [d]efendants' affirmative defenses give [p]laintiffs notice of the claims [d]efendants will litigate, and vice versa, the defenses will be appropriately pled under Rules 8(b) and (c)."); *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015) (Moore, C.J.) ("Although Rule 8 does not obligate a defendant to set forth detailed factual allegations, a defendant must give the plaintiff 'fair notice' of the nature of a defense and the grounds on which it rests."). And "the Eleventh Circuit has not yet resolved the split in opinion." *Northrop*, 2017 WL 5632041, at *2; *see also Tuggle v. Mamaroneck Cap., LLC*, 2019 WL 3782818, at *1 (M.D. Ga. Aug. 12, 2019) ("District courts in the Eleventh Circuit differ on whether *Twombly* and *Iqbal* apply to affirmative defenses, and the Eleventh Circuit has not resolved the split at this time."). As

we've done in the past, we side with those judges who've held that an affirmative defense needn't satisfy the strictures of *Twombly* and *Iqbal*.

For one thing, Rule 8(b) expressly applies to "defenses," and Rule 8(c) explicitly governs "affirmative defenses." This is significant because these subsections appear separately from Rule 8(a), which deals with "claims for relief." We therefore don't agree that, when considering affirmative defenses, we should look to cases interpreting Rule 8(a). Instead, we should be guided by Rule 8(b), which addresses defenses generally, and Rule 8(c), which governs affirmative defenses specifically.

For another, both *Twombly* and *Iqbal* explicitly and repeatedly referred to Rule 8(a)'s "entitled to relief" language—fourteen times in *Twombly* and twelve in *Iqbal*—as support for the Supreme Court's view that a complaint must assert a *plausible* claim to relief. If the claim entitles you to relief, the Supreme Court explained, then it must be plausible. But that "entitled to relief" requirement was notably omitted from the text of Rules 8(b) and (c). This omission must mean something. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) (describing the canon of *expressio unius* to mean that the "expression of one thing implies the exclusion of others"); NORMAN SINGER & SHAMBIE SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:23 (7th ed. updated Nov. 2021) ("*Expressio unius* instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons and things to which it refers, courts should infer that all omissions were intentional exclusions."). And the obvious implication is that *Twombly* and *Iqbal*'s plausibility standard just doesn't apply to affirmative defenses, which (as Rule 8(c) makes clear) need only "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c).

In our view, then, Rule 8 "does not obligate a defendant to set forth detailed factual allegations"; instead, "a defendant must give the plaintiff 'fair notice' of the nature of the defense and the grounds upon which it rests." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D 668, 671 (S.D. Fla. 2013) (Cohn, J.). In other words, "[a]n affirmative defense must be stricken when the defense comprises no

more than bare-bones, conclusory allegations." *Ibid.* And, of course, "it is proper to strike a defense if it is insufficient as a matter of law." *Romero v. S. Waste Sys., LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009) (Ryskamp, J.). "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Ibid.* (quoting *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (Ryskamp, J.)).

One more thing: In ruling on a motion to strike, "it is not appropriate for the [c]ourt to consider the merits of any affirmative defense because the [c]ourt accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2020 WL 2128498, at *4 n.2 (M.D. Fla. May 5, 2020) (Honeywell, J.) (cleaned up); *see also Kearney v. Valley Nat'l Bank*, 2022 WL 19754, at *3 (M.D. Fla. Jan. 3, 2022) (Mizelle, J.) ("[M]otions to strike are appropriate where an affirmative defense is legally insufficient on its face; a [c]ourt will not analyze whether a defense should fail on the merits in the motion-to-strike context." (cleaned up)).

So, here's our framework: *First*, we ask whether the "affirmative defense" is just a denial masquerading as an affirmative defense. *Second*, if it is an eligible affirmative defense, we determine whether it gives the Plaintiffs fair notice of the defense and the grounds upon which it rests. If the answer to both questions is *yes*, then the affirmative defense survives.

**ANALYSIS**

I.     **Violations of Law and Unclean Hands: Affirmative Defenses 1, 10, 25, 28**

   A.  **Affirmative Defenses 1 and 10**

For its First Affirmative Defense, the City asserts that the

> Plaintiffs' claims are barred due to their pattern and practice of seeking to evade, and concealing their evasion of, state and local building codes. Plaintiffs have a pattern and practice of engaging in, and conspiring to engage in unlawful conduct to avoid paying lawfully required permitting fees and property taxes that would have been owed had the additions and remodeling work performed on Plaintiffs' properties and establishments been fully disclosed to City. By engaging in such conduct, Plaintiffs not

4

only avoided incurring such expenses, but they also obtained unfair advantages over their competitors who followed the permitting requirements, because they were able to accelerate their work and open or expand their establishments more quickly than their competitors and avoid having to expend funds on changes to plans or improvements as required by the City Code of Ordinances and the Florida Building Code. Rather than taking responsibility and changing their behavior to become compliant, Plaintiffs and their principals used every possible legal and public relations tool available to them, including this and other litigation, to excuse their actions by accusing the City and its officials of somehow "targeting" them unfairly. To the extent the City focused extensive attention on Plaintiffs, which Plaintiffs claim is "targeting," such focus was necessitated by and caused as a result of Plaintiffs' own actions in direct repudiation of their lawful obligations under applicable state and local codes.

Affirmative Defenses at 76.

> For its Tenth Affirmative Defense, the City says that the

> Plaintiffs' claims are barred, in whole or in part, because any alleged damages that Plaintiffs sustained are the result of Plaintiffs' own conduct, or the conduct of Plaintiffs' agents, representatives, or consultants. Plaintiffs had a custom or practice of failing to apply for building permits or to obtain building permits for less than the intended work planned to avoid paying full permit fees and/or increased property tax assessments, which directly led to the code enforcement actions at issue in the Complaint and caused Plaintiffs' alleged damages.

*Id.* at 80–81. According to the City, "these include but are not limited to":

> A. Actions of their private provider Ortus Engineering, P.A. and engineer Elvis Torres as a result of their misleading, erroneous, and negligent submissions to the City as alleged in the complaint filed by Mad Room in the Eleventh Judicial Circuit styled *Mad Room LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 11th Cir. Ct. 2021);

> B. Plaintiffs' own misleading statements or failure to disclose material information to their private provider Ortus Engineering, P.A. and engineer Elvis Torres, which resulted in the latter's misleading, erroneous, and negligent submissions to the City as alleged in the Affirmative Defenses in the Eleventh Judicial Circuit styled *Mad Room LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 11th Cir. Ct. 2021);

> C. Interior alterations at Mad Room that exceed the threshold for Level 3 alterations while wrongfully maintaining that such alterations only constitute Level 2 alterations;

> D. Failure to adhere to the requirements set forth in the applicable codes, statutes, and standards as they pertain to Level 3 alterations at Mad Room, including the installation of an automatic sprinkler system;

> E. Obtaining a Certificate of Occupancy for Mad Room based on incomplete, misleading, and erroneous information, especially related to the requirements for Fire Safety and Accessibility under the Florida Building Code;

F.  Mad Room Manager Fuller's misrepresentation in the liquor license application for Mad Room that no part of the outdoor or northside space was intended to be a part of the licensed premises;

G.  Mad Room construction of the "Pineapple Stage," band shell, outside counter, and overhand/balcony attached to the building without permits;

H.  Rear stairs at Taquerias that were constructed without authorization or permit and were in violation of the Florida Building Code for failing to provide a minimum of ten feet of separation from the adjacent property line;

I.  Taquerias Manager Fuller's misrepresentations in the liquor license application for Taquerias that the establishment had capacity to seat 150 people.

*Ibid.*

These First and Tenth Affirmative Defenses are denials masquerading as affirmative defenses because they suggest that the Plaintiffs' own conduct (and not the City's) was the cause of their alleged damages. The Plaintiffs, recall, allege that they "have incurred millions in damages and significant out of pocket expenditures, along with substantial lost time, stress and aggravation, on account of the City's unlawful, malicious, vexatious, continuing, and harassing practices and policies." Amended Complaint ¶ 247. In saying that the Plaintiffs' claims are barred because "any alleged damages that Plaintiffs sustained are the result of Plaintiffs' own conduct," Affirmative Defenses at 80, the City is simply denying its liability.

We recognize that our colleagues have sometimes declined to strike "own conduct" affirmative defenses (like these). *See, e.g., Paul v. Bradshaw*, 2013 WL 12084299, at *4 (S.D. Fla. Dec. 10, 2013) (Rosenbaum, J.) (denying motion to strike affirmative defense, which asserted that "any injuries or damages sustained by [p]laintiff were caused solely by the [p]laintiff's own conduct, and such conduct bars any liability or recovery from these [d]efendants"); *Kinsman v. Winston*, 2015 WL 12839267, at *8 (M.D. Fla. Sept. 15, 2015) (Conway, J.) (denying motion to strike affirmative defense, which asserted that the plaintiff's claims "are barred by [her] own conduct," noting that the defense was "not so deficient that [it] warrant[ed] being stricken"). But, respectfully, we disagree with these decisions. Courts, after all, routinely strike defenses that simply "deny any liability." *Toney v. Dech. Corp.*, 2010 WL 11623057, at *2 (M.D. Fla. Nov. 30, 2010) (Frazier, Mag. J.). And a denial of liability is precisely what

the Defendant has advanced in these Affirmative Defenses. We'll therefore **GRANT** this part of the

Motion to Strike and treat the First and Tenth Affirmative Defenses as simple denials.[1]

## B. Affirmative Defense 25

For its Twenty-Fifth Affirmative Defense, the City avers:

> [The] Plaintiffs' claims for equitable relief are barred by the doctrine of unclean hands. As detailed further in the Counterclaim filed along with these Affirmative Defenses, Plaintiffs had an unlawful conspiracy and pattern of racketeering and criminal activities, the goal and purpose of which was to avoid paying lawfully required permitting fees and property taxes that would have been due had the additions and remodeling work performed on Plaintiffs' properties and establishments been fully disclosed to the City and consequently to County officials. As a result, Plaintiffs' properties were often in violation of the City of Miami Code of Ordinances, which is the direct cause of the code enforcement issues alleged in the Complaint. Plaintiffs' actions constitute violations of the Florida Racketeer Influenced and Corrupt Organization Act and common law fraud. Accordingly, Plaintiffs' own wrongful actions caused any alleged damage asserted in the Complaint, and Plaintiffs are inappropriately attempting to shift blame to the City for enforcing its Code of Ordinances.

Affirmative Defenses at 87–88.

Normally, "[f]or a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993). "First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." *Id.* at 451. Here, the City alleges that the Plaintiffs' alleged wrongdoing is directly related to the "code enforcement issues alleged in the Complaint," Affirmative Defenses at 88, and there's really no dispute that Affirmative Defense 25 relates to the City's "code enforcement" practices, *see generally* Motion to

---

[1] "[W]hen a defendant labels a specific denial as an affirmative defense, the proper remedy is not to strike the defense, but instead to treat it as a denial." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (Cohn, J.) (citing 5 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1269 (3d ed. 2013)).

Strike at 10–11 (never mentioning this point). The only remaining question, then, is whether the City has done enough to plead that it was "personally injured by" the Plaintiffs' (alleged) misconduct.

In answering this question, we agree with the Plaintiffs that, because the City accuses the Plaintiffs of fraud, Rule 9(b)'s heightened pleading standard applies. *See Colon v. Fource Hotel Props., LLC*, 2011 WL 13302684, at *1 (M.D. Fla. Jan. 21, 2011) (Pizzo, Mag. J.) ("Here, the [d]efendants' affirmative defense sets forth that any mistake in payment to [p]laintiff is attributable [to] [p]laintiff's own neglect, deception, fraud or intentional falsification. Because the affirmative defense includes allegations of fraud, it must be pled with particularity per Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' Defendants must include facts that place the [p]laintiff on adequate notice of the nature of the unclean hands defense, and the grounds upon which it rests."). Unlike the "entitled to relief" requirement of Rule 8(a), after all, the particularity requirements of Rule 9(b) apply to *all pleadings*—including *both* complaints *and* answers. *See* FED. R. CIV. P. 9 (titled "PLEADING SPECIAL MATTERS"); *see also* FED. R. CIV. P. 7(a) (defining the "complaint" and the "answer to a complaint" as two of the seven forms of acceptable "pleadings").

And we don't think the City has pled its unclean-hands defense with particularity. The purpose of the particularity requirement is to place any parties "accused of fraud on notice about the '*precise misconduct* with which they are charged' and [to] 'protect[ ] [those parties] against spurious charges of immoral and fraudulent behavior.'" *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) (Williams, J.) (quoting *Ziema v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (emphasis added)). To meet the Rule 9(b) standard, the party asserting an affirmative defense sounding in fraud must include the "who, what, when[,] where, and how" of the alleged fraud. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Here, the City accuses the Plaintiffs of engaging in an "unlawful conspiracy and pattern of racketeering and criminal activities, the goal and purpose of which

8

was to avoid paying lawfully required permitting fees and property taxes," Affirmative Defenses at 87, but it doesn't explain *what* those fees and taxes were, *when* they were owed and not paid, or *how* the Plaintiffs perpetrated their fraud on the City. We therefore **STRIKE** Affirmative Defense 25 without prejudice and with leave to amend.

### C. Affirmative Defense 28

For its Twenty-Eighth Affirmative Defense, the City claims that the

> Plaintiffs have failed to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and therefore there can be no liability against the City of Miami. The alleged actions complained of in the Complaint do not implement or execute a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the City. *See id.* at 690. The alleged actions complained of in the Complaint were not undertaken pursuant to any official policy enacted by the City Commission, no final policymaker acquiesced in a longstanding practice that constitutes the City of Miami's standard operating procedure, and no subordinate public official made an unconstitutional decision that was then adopted by someone with final policymaking authority. Even former City Manager, Emilio Gonzalez, who was in office during a substantial part of the actions of which Plaintiffs complain, has testified under oath that he, the chief administrative officer of the City, did not and would not engage in any actions of targeting the Plaintiffs. Additionally, due to Plaintiffs' available appellate rights with BORA and PZAB as described above, which afford Plaintiffs meaningful appellate review concerning the revocation of Plaintiffs' CU and CO, Plaintiffs cannot possibly identify any City official with final policymaking authority that acted on those particular issues. Furthermore, in the related case of *William O. Fuller and Martin Pinilla, II v. Joe Carollo*, Case No. 1:18-cv-24190 (Smith, R.) ("Related Matter"), in the United States District Court for the Southern District of Florida, principals of the Plaintiff entities, Fuller and Pinilla, asserted causes of action against City of Miami Commissioner Joe Carollo in his individual capacity for allegedly instigating code enforcement actions against Fuller's and Pinilla's businesses, including those complained of in the Complaint at issue in this matter. The Related Case went to trial, and a jury verdict was returned in favor of Fuller and Pinilla on June 1, 2023. [*See* Verdict Form in the Related Matter, ECF No. 470]. Nowhere on the Verdict Form did plaintiffs seek a determination from the jury, and the jury never made any findings, on any *Monell* issue, therefore liability in the Related Case was pursued only against Commissioner Joe Carollo as an individual. It is inherently inconsistent to now claim in this action that the same code enforcement actions at issue in the Related Case are the result of a City of Miami policy or practice, when plaintiffs in the Related Case sought and received a jury finding that the actions were the responsibility of Commissioner Joe Carollo in his individual capacity.

Affirmative Defenses at 89–90.

Affirmative Defense 28 is plainly a denial—and not an affirmative defense—since it asserts that the Plaintiffs failed to meet the elements of a *Monell* claim. *See id.* at 90 (contending that the "alleged actions complained of . . . were not undertaken pursuant to any official policy enacted by the City Commission"); *see also, e.g.*, *Chustz v. City of Marco Island*, 2020 WL 13646262, at *3 (M.D. Fla. Feb. 26, 2020) (Magnuson, Mag. J.) ("But *Monell* is not an affirmative defense. Instead, it outlines the elements of a § 1983 plaintiff's case against a governmental entity."); *Jarvis v. City of Daytona Beach*, 2023 WL 4549547, at *2 (M.D. Fla. July 23, 2023) (Byron, J.) (explaining that challenges to a *Monell* claim should be brought "either through a motion for a judgment on the pleadings or for summary judgment"); *Juracek v. City of O'Fallon, Ill.*, 2007 WL 4225591, at *2 (S.D. Ill. Nov. 20, 2007) ("[T]he municipal liability standard under *Monell* is not an affirmative defense at all.").

Insofar as the City is arguing that the Plaintiffs' *Monell* claim fails because it's inconsistent with the verdict in a related case, however, the City *may* be able to state a valid affirmative defense. That's because claim and issue preclusion *are* affirmative defenses. *See Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1223–24 (11th Cir. 2017) ("Issue preclusion, like claim preclusion, is an affirmative defense under Federal Rule of Civil Procedure 8(c)."). But, if claim preclusion *were* the defense the City intended to raise, it will have to make that clear in an amended answer. For now, Affirmative Defense 28 is **STRICKEN** without prejudice and with leave to amend.

## II.     Damages-Related Defenses: Affirmative Defenses 2, 11–18

### A.  Affirmative Defense 2

In its Second Affirmative Defense, the City alleges that the "Plaintiffs' actions have directly or indirectly cost the City and, thus its taxpayers, thousands of dollars in lost revenue from its lawful share of property taxes that would have been assessed against Plaintiffs' properties had Plaintiffs obtained the required permits at the required times for the actual scope of work performed. In addition, these actions required the City to expend resources in enforcing the State Building Code and

City Code, which in most instances Plaintiffs conceded and paid the assessed fines or challenged and then dropped. Accordingly, the City is entitled to setoff and recoupment for all such fees, taxes and unnecessary expenditure of taxpayer funds necessitated by having to enforce the applicable state and local building codes against Plaintiffs." Affirmative Defenses at 77.

As best we can tell, the Defendant is asking for a setoff from any damages the Plaintiffs ultimately recover because the Plaintiffs "directly or indirectly cost the City . . . thousands of dollars in lost revenue" by refusing to pay lawful taxes and fees. *Ibid.* A setoff is properly raised as an affirmative defense. *See Puck v. Silverman*, 2023 WL 9228323, at *2 (S.D. Fla. Dec. 22, 2023) (Moore, J.) ("To the contrary, a review of the case law shows that courts routinely recognize setoff as a valid affirmative defense under Florida law."). The Plaintiffs are right that, in some parts of the narrative for this defense, the City denies that it ever did anything wrong. Still, the Defendant ultimately asserts a valid setoff defense. We therefore **DENY** the Motion to Strike Affirmative Defense 2.

### B.  Affirmative Defense 11

In its Eleventh Affirmative Defense, the City contends that the

> Plaintiffs' claims are barred, in whole or in part, to the extent they have failed to mitigate their claimed damages. Among other things, Plaintiffs unreasonably delayed in bringing their properties into compliance, which ultimately led to the prolonged closure of Plaintiffs' businesses. By way of example, Plaintiff Taquerias, knowing for years that its property was in violation of certain City code requirements, did not perform the necessary improvements to bring its property into compliance for issuance of a Certificate of Use until only recently, and a Certificate of Use for Taquerias was issued by the City on January 22, 2024.

Affirmative Defenses at 81–82. And "failure to mitigate damages is an affirmative defense under Rule 8(c)." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000).

The Plaintiffs wisely don't challenge the legal sufficiency of the Defendant's failure-to-mitigate defense. Instead, they suggest that, as a factual matter, they *couldn't* have mitigated their damages "until they suffered the injury of the City's intentional and pretextual closures and delayed procedures for remediation and reopening." Motion to Strike at 12. In the Plaintiffs' words:

> The specific and narrow "failure to mitigate" the City claims is Plaintiffs' "unreasonabl[e] delay in bringing their properties into [building code] compliance." If Plaintiffs prove the City's liability because the City fabricated building code violations and used its administrative and police powers to disrupt and shut Plaintiffs' businesses, without a rational basis for its political vendetta—then it is *logically (and legally) impossible* for Plaintiffs, after suffering damages from that City conduct, to have "mitigated" those damages by (as the City alleges) acting more quickly to "perform the necessary improvements to bring its property into compliance." That is, when Plaintiffs prove damage because the City's violations and extended closures were all a sham—then no amount of "building code" fixes could have forced the City to shorten those disruptions and closures.

Reply at 10. This may all be true. But we aren't entitled, at this pleading stage of the case, to decide "whether [this] defense should fail on the merits." *Kearney*, 2022 WL 19754, at *3. All that matters for now is that the defense is legally cognizable—which it is. We therefore **DENY** the Motion to Strike Affirmative Defense 11.

### C. Affirmative Defense 12

In its Twelfth Affirmative Defense, the City contends that the "Plaintiffs' claimed lost profits damages are not recoverable in whole or in part to the extent Plaintiffs' claims for lost profits are too speculative, because, among other things, they are based on unquantified and unsupported assumed growth rates. Further, assumptions that lost profits will continue into the future are based on speculation about events or actions that may or may not occur over time." Affirmative Defenses at 82.

Affirmative Defense 12 is *not* an affirmative defense because it simply maintains that the Plaintiffs haven't met their burden of proof on their claims for damages. *See, e.g.*, *NR Grp. 3 Contractors, Inc. v. Grp. 3 Contractors, LLC*, 2017 WL 7792718, at *4 (S.D. Fla. Sept. 26, 2017) (Torres, Mag. J.) ("As most courts have found, allegations that a plaintiff's damages are speculative do not constitute affirmative defenses because those statements are merely allegations that [p]laintiff has not met its burden of proof."); *Hydentra HLP Int'l Ltd. v. Constantin Luchian*, 2015 WL 12658275, at *4 (S.D. Fla. Dec. 4, 2015) (Ungaro, J.) ("As their [s]eventh [a]ffirmative [d]efense, [d]efendants allege, 'Plaintiff

cannot recover damages from [d]efendants to the extent that damages alleged by [p]laintiff are speculative or uncertain.' This defense, as pleaded, pertains strictly to damages, which is an issue that will be addressed by this [c]ourt at trial and is improper for consideration as an affirmative defense."); *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2012 WL 12863887, at *1 (S.D. Fla. Aug. 31, 2012) (Dimitrouleas, J.) ("Sharp's third affirmative defense states that '[p]laintiffs' claims for damages are barred because the alleged damages, if any, are speculative.' Denying an element of a plaintiff's prima facie case, such as damages, does not give rise to an affirmative defense."). We therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defense 12 as a denial.

### D. Affirmative Defense 13

In its Thirteenth Affirmative Defense, the City avers that the "Plaintiffs [Little Havana Arts Building, LLC] and [La Gran Fiesta, LLC] have no damages as a result of the City's actions alleged in the Complaint, as they continued to receive full payment of rent and other amounts due from the Plaintiffs Mad Room and Taquerias." Affirmative Defenses at 82.

According to the Plaintiffs, Affirmative Defense 13 "should be stricken as irrelevant to the claims and damages alleged" since the Plaintiffs "have not claimed damages to the landlord Plaintiffs based on lost rental income." Motion to Strike at 13. "Rather," they continue, "the landlord Plaintiffs suffered (among other things) other forms of economic damages—most notably millions of dollars in increased expenses and lost opportunity costs when unable to refinance during a historically favorable borrowing climate because of the City's unlawful and unsupported Code violations, disruptions, and closures." *Ibid.* The City simply denies that the Landlord Plaintiffs have foresworn a claim for lost rental income. *See* Response at 15 ("Plaintiffs now argue that they 'have not claimed damages to the Landlord Plaintiffs based on lost rental income,' . . . and this now requires striking the AD directed at their continued receipt of rental income. This belated statement is at odds with the [Amended Complaint], whose broad damages clauses encompass every possible item of damages for

every Plaintiff, including Landlords Little Havana Arts Building LLC and La Gran Fiesta LLC, under every count except Count VI."). But the City adds that, "[i]f the Landlord Plaintiffs' position is now that they are *no longer* claiming damages for lost rental income, the City asks that the Court take judicial notice and deem the statement an admission that they are seeking no such damages." *Id.* at 16. We agree with this last point and will grant the Motion to Strike on this basis. The Plaintiffs have admitted, in their Motion to Strike, that they are *not* "claim[ing] damages to the landlord Plaintiffs based on lost rental income," and that "[r]ent paid with no revenue because of the City's unlawful disruptions and closures was, instead, suffered by the tenant Plaintiffs." Motion to Strike at 13. And they doubled down on this concession in their Reply:

> Plaintiffs are property owner/landlords and tenants at the same two locations. City malfeasance disrupted and shut business operations. Rental income or payments can only be damages at either, but not both, the landlord plaintiffs (if the tenants did not pay rent because of the City's misconduct) or the tenant plaintiffs (if they paid rent and thus had expenses they could not offset with revenue, resulting in lost profits damages). The City knows the latter from their financial discovery and Plaintiffs' expert report, which the City attached to its Response. So, . . . because Plaintiffs have not claimed the landlord plaintiffs suffered lost rental income[,] the City's "affirmative defense" should be stricken as a nullity.

Reply at 10. Given these concessions, we'll **GRANT** the Motion to Strike Affirmative Defense 13 and preclude the Landlord Plaintiffs from claiming, as damages, any lost rental income.

### E. Affirmative Defense 14

In its Fourteenth Affirmative Defense, the City says: "To the extent Plaintiffs [Little Havana Arts Building, LLC] and [La Gran Fiesta, LLC] assert damages as a result of the City's enforcement actions against Plaintiffs Mad Room and Taquerias, Plaintiffs were the sole and proximate cause of their own damages by failing to exercise their rights under the respective lease agreements to require Mad Room and Taquerias to abide by all state and local laws and to obtain proper permits and licenses for all construction and activities on the properties, or in the alternative, conspiring with Plaintiffs

Mad Room and Taquerias in the plan to improve their properties without any or full permits for each of the improvements." Affirmative Defenses at 82.

Affirmative Defense 14 is (once again) a simple denial. In it, after all, the City is just denying that it proximately caused the Plaintiffs' damages. To reiterate: "The absence of proximate cause is not an affirmative defense; rather, it is a requirement of plaintiff's cause of action put at issue by a general denial." *Coquina Invs. v. Rothstein*, 2011 WL 4971923, at *15 (S.D. Fla. Oct. 19, 2011) (Cooke, J.) (cleaned up). We therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defense 14 as a denial.

### F. Affirmative Defense 15

In its Fifteenth Affirmative Defense, the City insists that it

is not liable to Plaintiffs because any injury, loss, or damage that Plaintiffs claim to have suffered is the result of intervening causes beyond the control of the City, including but not limited to the COVID-19 pandemic. The alleged loss of clientele and/or closings of Plaintiffs' businesses subsequent to March 2020 were caused in whole or in part by emergency actions of various governments responding to the COVID-19 pandemic, including Governor emergency declarations, County emergency orders, and City emergency orders applicable to numerous food and drink establishments throughout the City. The United States Department of Health and Human Services ("HHS") issued a determination on January 31, 2020 the a public health emergency existed at that time and had existed since January 27, 2020, nationwide. That determination was renewed by HHS on April 20, 2020; July 23, 2020; October 2, 2020; January 7, 2021; April 15, 2021; July 19. 2021; October 15, 2021; January 14, 2022; April 12, 2022; July 15, 2022; October 13, 2022; January 11, 2023; and February 9, 2023. These emergency declarations were intervening acts for which the City has no liability. Further, the City is immune from liability for taking actions consistent with such emergency orders and declarations and in protecting the life, health and safety of its residents and visitors. Furthermore, Plaintiffs' loss of business from March 2020 through the filing of this action was wholly or partially caused by the impacts of the COVID-19 pandemic on tourism and the ability or willingness of residents or visitors to go to entertainment establishments with the same frequency as prior to the pandemic. Further, capacity controls and social distancing requirements imposed by governmental mandates reduced the total patronage during this time period. Even after the establishments reopened, it took time to reestablish patronage at the levels pre-existing the pandemic. Available personnel also were in shorter supply due to the government's extended unemployment compensation and COVID-related funds offered directly to employees who lost jobs during the pandemic, which caused or contributed to Plaintiffs' alleged inability to meet its employment targets for PPP loan forgiveness.

Affirmative Defenses at 82–83.

This is a valid superseding- or intervening-cause affirmative defense, which puts the Plaintiffs on notice that the Defendant seeks to blame at least some of the Plaintiffs' damages on COVID-19. The Plaintiffs don't disagree that the defense of "intervening cause" is a proper affirmative defense. Instead, they say that the "Plaintiffs do not claim any damages attributable to the City during the period of time when legitimate government mandates and actual economic issues caused by Covid-19 resulted in business disruptions and closures." Motion to Strike at 14. The City counters that "[w]e do not have to take [the Plaintiffs] word for it," and that the "Plaintiffs essentially ask the Court now to find that Plaintiffs can be trusted to have excluded all external factors from their damage model[, but] they are trying their case, not arguing valid grounds for a motion to strike." Response at 17.

We agree with the City: "[I]t is not appropriate for the Court to consider the merits of [an] affirmative defense because the Court accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense." *Wyndham Vacation Ownership*, 2020 WL 2128498, at *4 n.2. We therefore **DENY** the Motion to Strike Affirmative Defense 15.

### G. Affirmative Defense 16

Affirmative Defense 16 has been withdrawn. *See* Defendant's Notice of Withdrawal of Affirmative Defenses [ECF No. 381]. So, we now **STRIKE** Affirmative Defense 16.

### H. Affirmative Defense 17

In its Seventeenth Affirmative Defense, the City avers:

Any failure of Plaintiffs to obtain forgiveness of any PPP or EIDL loans was due to Plaintiffs' own actions, independent decisions of prospective employees, independent decisions of other government actors or lenders or other causes beyond control of the City and not attributable to the City. For instance, Plaintiffs have unreasonably delayed in bringing their properties into compliance, resulting in their businesses remaining fully or partially closed. Any failure to obtain forgiveness of any PPP or EIDL loans was directly caused by Plaintiffs' actions in failing to maintain or improve their properties as required by City code, and those failures contributed directly or indirectly to the inability to keep or add employees on staff. Further, Plaintiffs unreasonably

"added" "employees" which were used to obtain PPP or EIDL loans and expanded the payroll without consideration for whether or not those payroll numbers could be maintained subsequently. Among other things, the COVID-19 pandemic re-shaped the work force, with many prospective employees relocating or opting for higher paying jobs. Furthermore, any inability of Plaintiffs to obtain forgiveness of PPP or EIDL loans was caused by Plaintiffs' own employment or termination practices or independent decisions of employees, which actions were beyond the control of the City and not attributable to the City.

Affirmative Defenses at 84.

Despite the City's artful pleading, Affirmative Defense 17 is a mere denial because, in it, the City is simply denying that it caused the Plaintiffs' "loan forgiveness damages." Motion to Strike at 16 n.6; *see also, e.g.*, *Snyder v. Royal Caribbean Cruises, Ltd.*, 2020 WL 13401895, at *3 (S.D. Fla. Nov. 11, 2020) (Moore, C.J.) (treating an affirmative defense as a denial where it was really "an attempt to evade *any* liability by denying that [the defendant] was the proximate cause" of the plaintiffs' injuries). And, to the extent that this "defense" seeks to blame the Plaintiffs' injuries on COVID-19, it's also duplicative of Affirmative Defense 15 and must, for that separate reason, be stricken. *See* FED. R. CIV. P. 12(f) (authorizing the court to sua sponte strike from a pleading "any redundant . . . matter").

### I.  Affirmative Defense 18

Affirmative Defense 18 has been withdrawn. *See* Defendant's Notice of Withdrawal of Affirmative Defenses [ECF No. 381]. So, we'll **STRIKE** Affirmative Defense 18.

### III.  Fourth Amendment Defenses: Affirmative Defenses 29, 30, 31

#### A.  Affirmative Defenses 29 and 30

In its Twenty-Ninth Affirmative Defense, the City says:

The City had probable cause for any code enforcement actions alleged in the Complaint. Plaintiffs' Complaint is based on allegedly unfounded citations for code violations at Plaintiffs' properties, but in direct contradiction with the positions advanced in the Complaint, Plaintiffs previously pled guilty to the City of Miami Code Enforcement Board and/or the City of Miami Special Master for the same or similar code enforcement efforts challenged in the Complaint, explicitly or implicitly recognizing Plaintiffs' fault and the veracity of the code complaints. In fact, Plaintiffs had at least thirty-six scheduled Code Enforcement Board or Special Master hearings in multiple matters between 2017 and 2021 to address code enforcement concerns,

and in several of those matters, Plaintiffs accepted the code enforcement violation(s) and pled guilty. Still, Plaintiffs continued their pattern and practice of seeking to evade, and concealing the evasion of, state and local building codes.

Affirmative Defenses at 91.

In its Thirtieth Affirmative Defense, the City claims that it "had reasonable suspicion or probable cause for any searches of Plaintiffs' properties as alleged in the Complaint. Any searches of Plaintiffs' properties as alleged in the Amended Complaint, to the extent they qualify as searches under the United States Constitution, were based on reasonable suspicion or probable cause to justify said searches or were otherwise conducted with the consent of Plaintiffs." *Ibid.*

Affirmative Defenses 29 and 30 are not proper affirmative defenses. In Count VI of the Amended Complaint, the Plaintiffs allege that the City violated their rights under the Fourth Amendment to the U.S. Constitution (as applied through the Fourteenth) by failing to "obtain a warrant for any search or seizure of Plaintiffs' properties described herein." Amended Complaint ¶ 297. They also allege that "the City violated Taquerias' and Ball & Chain's rights to be secure in their persons and property by trespassing on and/or searching Taquerias' and Ball & Chain's establishments absent a warrant, per se, because the City's searches as part of its Dry Hour operations did not have as their primary (or even indirect) purpose the enforcement of Florida's Beverage Law or any regulatory regime in respect of a pervasively regulated industry," and that "the narrow exception to the Fourth Amendment's warrant requirement for administrative searches of businesses in closely regulated industries does not apply[.]" *Id.* ¶¶ 299, 301. The Plaintiffs also claim that "the City's searches and seizures of Taquerias' and Ball & Chain's establishments were unreasonable, pretextual, not designed to support and unnecessary for the furtherance of the relevant administrat[ive] scheme or purpose, and have been so random and unpredictable to eliminate reasonable procedures and expectations, thereby violating Taquerias' and Ball & Chain's constitutionally protected rights to be secure in their persons and property." *Id.* ¶ 304.

Affirmative Defenses 29 and 30 are *either* simple denials of the Plaintiffs' claim that the City searched their establishments without a warrant and without probable cause *or* irrelevant to the Plaintiffs' contention that the City failed to conduct a proper *warrantless* administrative search. Starting with the Plaintiffs' claim that the City violated their Fourth Amendment rights by failing to "obtain a warrant for any search or seizure of Plaintiffs' properties described herein," *id.* ¶ 297, and "by trespassing on and/or searching Taquerias' and Ball & Chain's establishments absent a warrant," *id.* ¶ 299, probable cause is (it goes without saying) a prerequisite to the issuance of any warrant, *see* U.S. CONST. amend IV (providing that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation"). And we don't take the City to be suggesting that it ever got a warrant. So, the City's claim that it *had* probable cause would be relevant only if the Plaintiffs were suggesting that the City conducted an improper, *warrantless* search. As the Supreme Court has noted, "in every case addressing the reasonableness of a warrantless search, . . . the basic rule [is] that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions,'" like exigent circumstances or administrative searches of commercial premises. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). But, "[i]n order to justify an exigent-circumstances search, the government bears the burden of 'demonstrat[ing] both exigency *and probable cause*.'" *United States v. Cooks*, 920 F.3d 735, 742 (11th Cir. 2019) (emphasis added) (quoting *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002)). If the Plaintiffs' claim were that the City conducted an improper exigent-circumstances search, in other words, the Defendant's contention that it *had* probable cause would be (again) a simple denial of one of the elements of the Plaintiffs' claim.

The City tries to sidestep all this by justifying its searches and seizures under the administrative-search exception to the Fourth Amendment, noting that "Florida's Alcohol Beverage Law permits the

search and inspection of Plaintiffs' premises under certain circumstances." Response at 18. But, if that's what the City is doing, then Affirmative Defenses 29 and 30 must be stricken because probable cause is *irrelevant* to the propriety of an administrative search. For a warrantless administrative search of "commercial premises in a 'closely regulated' industry, . . . the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, . . . have lessened application[.]" *New York v. Burger*, 482 U.S. 691, 702 (1987). So, for a warrantless administrative search to be constitutionally permissible under the Fourth Amendment, it must satisfy three criteria: *First*, "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Ibid. Second*, "the warrantless inspections must be necessary to further the regulatory scheme." *Ibid.* (cleaned up). *Third*, "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* at 703 (cleaned up). In other words, since probable cause *isn't* an element of a warrantless administrative search, the City's claim that it *had* probable cause is neither here nor there. And, to the extent the City claims that it "had reasonable suspicion . . . for any searches of Plaintiffs' properties," Affirmative Defenses at 91, that's just a denial of the Plaintiffs' claim that "the City's searches and seizures of Taquerias' and Ball & Chain's establishments were *un*reasonable," Amended Complaint ¶ 304 (emphasis added).

Since these defenses just deny the Plaintiffs' well-pled allegation that the City's searches and seizures were unreasonable and pretextual, *see ibid.*—and because probable cause isn't an element of a warrantless administrative search—we **STRIKE** Affirmative Defenses 29 and 30.

### B.  Affirmative Defense 31

In its Thirty-First Affirmative Defense, the City contends that the "Plaintiffs, by acceptance of their liquor licenses, agreed to the inspection and search of their places of business without the need for a search warrant under Section 562.41, Florida Statutes." Affirmative Defenses at 92.

This "defense" likewise denies that the City violated the Plaintiffs' Fourth Amendment rights. By definition, a plaintiff who consents to a search of his property doesn't have a viable Fourth Amendment claim. So, the City's contention that the Plaintiffs consented to the inspections is just a denial of the Plaintiffs' claim. Plus, the Plaintiffs specifically allege "that the City's inspections and raids were *not* in furtherance of Florida's alcohol beverage law." Reply at 11 (citing Amended Complaint ¶¶ 152–98 (emphasis added)). Affirmative Defense 31 is thus just a blanket denial of the Plaintiffs' allegation that the searches of their establishments *were not* effectuated pursuant to § 562.41. For both these reasons, Affirmative Defense 31 isn't a proper affirmative defense. *See Morrison*, 434 F. Supp. 2d at 1318 ("[A] defense which simply points out a defect or lack of evidence in a plaintiff's case is not an affirmative defense."). We'll therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defense 31 as a simple denial.

### IV.     Failure to State a Claim: Affirmative Defenses 3–8, 22

In its Third Affirmative Defense, the City claims that the "Plaintiffs have failed to state a cause of action for substantive due process in violation of their rights under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, the alleged actions by the City are executive acts that cannot form the basis of a substantive due process violation under the United States Constitution, and there is a rational basis for any legislative acts at issue." Affirmative Defenses at 77.

In its Fourth Affirmative Defense, the City says that the "Plaintiffs have failed to state a cause of action for substantive due process in violation of their rights under Article I, Section 9 of the Florida Constitution. The Florida Constitution provides no right of action for damages. Further, the alleged

21

actions by the City are executive acts that cannot form the basis of a substantive due process violation under the Florida Constitution, and there is a rational basis for any legislative acts at issue." *Ibid.*

In its Fifth Affirmative Defense, the City avers that the "Plaintiffs have failed to state a cause of action for procedural due process under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, Plaintiffs have failed to allege sufficiently protectible property interests to support a procedural due process claim, the City provided Plaintiffs with adequate process and the Plaintiffs have not exhausted the due process provided." *Id.* at 78.

In its Sixth Affirmative Defense, the City claims that the

Plaintiffs have failed to state a cause of action for equal protection (class of one) under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, Plaintiffs have failed to identify sufficiently identical comparators to support a class of one claim. Furthermore, none of the Plaintiffs is a member of a suspect class and none exercised any constitutional right such that any alleged difference in treatment of any Plaintiff in comparison to any alleged comparator is subject to rational basis review. The City had a rational basis for its discretionary decisions with respect to enforcement of state, county and/or local laws with respect to each of the Plaintiffs. To the extent intermediate scrutiny or strict scrutiny applies to some or all of the City's actions, the threats to health, safety and welfare of residents and visitors (including protection from threats to life or safety) by Plaintiffs' repeated and ongoing violations of state and local building, fire and/or other codes justified the City's actions.

*Ibid.*

In its Seventh Affirmative Defense, the City maintains that the "Plaintiffs have failed to state a cause of action for unlawful search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. Among other reasons, as holders of liquor licenses, they consented to inspections; moreover, the City's administrative searches of Plaintiffs' properties were objectionably reasonable." *Ibid.*

In its Eighth Affirmative Defense, the City alleges that the "Plaintiffs have failed to state a cause of action for violation of the Charter of the City of Miami ('Charter') because it does not create a private right of action." *Id.* at 79.

In its Twenty-Second Affirmative Defense, the City contends that the "Plaintiffs' claim of a facial or quasi-facial procedural due process challenge to the Revocation Ordinance under the Fifth and Fourteenth Amendments to the United States Constitution fails as there are circumstances under which the Revocation Ordinance could be applied in a constitutional manner." *Id.* at 86.

None of these are affirmative defenses. As we've said, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Affirmative Defenses 3–8 and 22—"[all] of which allege that the Plaintiffs have failed to state a claim—plainly fall into this category." *Hall v. Sargeant*, 2020 WL 1536435, at *35 (S.D. Fla. Mar. 30, 2020) (Altman, J.); *see also Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) (Hurley, J.) ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense."); *Kapral v. GEICO Indem. Co.*, 2016 WL 7234147, at *5 (M.D. Fla. Jan. 5, 2016) (Honeywell, J.) ("Failure to state a claim is not an affirmative defense."). We therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defenses 3–8 and 22 as specific denials.

## V.     More Mere Denials: Affirmative Defenses 9, 19–21, 27, 32, 36–37

### A.  Affirmative Defense 9

In its Ninth Affirmative Defense, the City says:

> No violation of the Charter occurred, because the City Attorney acted wholly within her authority under the Charter. Section 21 of the Charter specifies that the City Attorney shall be the legal advisor and counsel "for the [City], and for all officers and departments thereof in matters relating to their official duties." This provision must be read in *pari materia* with Section 15 of the Charter, on which Plaintiffs exclusively rely. In addition to requiring or authorizing the City Attorney to communicate with

> city officials and employees as part of her representation of the City and/or its departments and officials, Section 21 provides in pertinent part, "When required to do so by the resolution of the city commission, the city attorney shall prosecute or defend for and in behalf of the city all complaints, suits and controversies in which the city is a party, and such other suits, matters and controversies as he shall, by resolution or ordinances, be directed to prosecute or defend." Pursuant to Resolution No. R-19-0082, the City Attorney was directed by the City Commission to research and initiate injunctive proceedings against properties for code enforcement issues. These types of issues are the ones alleged in the Complaint. Accordingly, the City Attorney was at all times acting within the scope of her prescribed duties and responsibilities under Section 21 of the Charter. Furthermore, notwithstanding the fact that such contact would be within the City Attorney's express powers under the Charter, any contact between the City Attorney and any employee of the City that may otherwise be under the direction of the City Manager was with the express or tacit consent of the City Manager.

Affirmative Defenses at 79.

This is just a denial of the Plaintiffs' claim that the City violated the City of Miami Charter. *See* Amended Complaint ¶ 307. It's also a denial of the Plaintiffs' claim that the City Attorney exceeded the scope of her authority under the Charter when she "ordered City Staff to undertake unlawful inspections, investigate, issue citations and, ultimately shutdown [sic] Plaintiffs' businesses." *Id.* ¶ 314. Because Affirmative Defense 9 is just a denial of the claim in Count VII of the Amended Complaint, we'll **GRANT** this part of the Motion to Strike and treat Affirmative Defense 9 as a specific denial.

### B. Affirmative Defenses 19–21

For its Nineteenth Affirmative Defense, the City alleges that "Ordinance No. 13941 ('Noise Ordinance') bears a rational basis to a legitimate government purpose. The Noise Ordinance has general applicability, with only limited exceptions, and is designed to address the legitimate government purpose of protecting residential uses from unwanted noise, among other rational bases." Affirmative Defenses at 85.

For its Twentieth Affirmative Defense, the City claims: "Whether or not Resolution No. R-19-0072 ('Resolution') is a legislative or executive act, it bears a rational basis to a legitimate government purpose. The Resolution directs the City Attorney to investigate and enforce violations

of the City of Miami Code of Ordinances, which is a legitimate government purpose. Further, it is an executive act of the Commission." *Ibid.*

For its Twenty-First Affirmative Defense, the City says:

Ordinance No. 13936 ("Revocation Ordinance") bears a rational relationship to a legitimate government purpose and was supported by a rational basis. The Revocation Ordinance requires revocation of a certificate of use for, inter alia, materially false statements made in connection with the application, as well as the certificate of use holder engaging in an activity from the premises that is not in compliance with a City of Miami ordinance. The Revocation Ordinance applies to all persons. Those justifications for revoking a certificate of use are rationally related to the legitimate government purpose of protecting the health, safety and welfare of residents and citizens as well as ensuring that no properties are constructed, remodeled or used based on false pretenses or in violation of state or local codes, and they are consistent with the revocation procedures and justifications contained within the Florida Building Code.

*Id.* at 85–86.

Affirmative Defenses 19–21 are not affirmative defenses. In their Amended Complaint, the Plaintiffs allege that "[t]he City developed and acted on an official policy to deprive Plaintiffs of their constitutionally protected property and business rights . . . . The City's policy, pattern, and practice of depriving Plaintiffs of their constitutional rights was in part substantiated by and effectuated through legislative acts of the City, including [Ordinance Nos. 13936 and 13941], and [the] February 14, 2019 Commission Resolution." Amended Complaint ¶¶ 251, 255. They add that "[t]he City deprived Plaintiffs of their constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis." *Id.* ¶ 257. By asserting that Ordinance Nos. 13936 and 13941 and the Commission Resolution *do* satisfy rational-basis review, the City is just denying the Plaintiffs' allegations. In other words, these so-called affirmative defenses "attack the [Amended Complaint], either by denying the allegations outright or [by] identifying a defect or lack of evidence in [the Plaintiffs'] case." *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015) (Moore, C.J.). We'll therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defenses 19, 20, and 21 as specific denials.

### C.  Affirmative Defense 27

For its Twenty-Seventh Affirmative Defense, the City avers:

Plaintiffs cannot maintain a cause of action for procedural due process because the City afforded Plaintiffs adequate process under *Matthews v. Eldridge*, 424 U.S. 319 (1976). First, there is no constitutionally protected private interest affected by the City's revocation of Plaintiffs' CO and CU. Second, there is no legitimate risk of an erroneous deprivation of Plaintiffs' interests through the procedures afforded to them, including available appeals to PZAB and BORA as described above. Third, the City's interest in ensuring fire safety and protection for patrons of Plaintiffs' properties far outweighs the property rights claimed by Plaintiffs, and any further process would be unnecessary and would create undue burden on the City of Miami.

Affirmative Defenses at 89.

This may be the most ridiculous of them all. Affirmative Defense 27 is (again) just a denial of the Plaintiffs' claim that the City deprived the Plaintiffs of procedural due process. *See* Amended Complaint ¶¶ 273–77 ("[T]he City deprived Plaintiffs of their liberty and property interests, including by: suspending the CO, revoking the CU, closing Plaintiffs' business operations, and forcing Plaintiffs to obtain a new 'approval' which the City contends affects Plaintiffs' vesting of rights. As described herein, the City undertook those deprivations of those protected interests without affording Plaintiffs notice and an opportunity to be heard, both prior to and after the deprivations of those protected interests. The City did so by, among other things, failing to follow the procedures set forth in City Code § 2-814, et seq. to allow the businesses to cure any alleged violations and to request a hearing before a special master prior to stripping it of its entitlements, including its CU and CO. The City further did so by, among other things, failing to provide a constitutionally adequate process to remedy the deprivations, including because the BORA and PZAB appeals do not address the deprivations at stake here."). So, we'll **GRANT** this part of the Motion to Strike and treat Affirmative Defense 27 as a simple denial.

### D. Affirmative Defense 32

In its Thirty-Second Affirmative Defense, the City says: "The City properly exercised its prosecutorial discretion in determining whether, when and against whom to issue violations, and the actions alleged in the Complaint were not motivated by any constitutionally protected conduct of Plaintiffs." Affirmative Defenses at 92. This (again) is just a denial of the Plaintiffs' claims that "City officials permitted and condoned [a] policy and plan of unconstitutional violations against Plaintiffs," Amended Complaint ¶ 43, and that "[t]he City had no, and never acquired any, cause or evidence to believe that Plaintiffs or Plaintiff-affiliated businesses were susceptible to Code or regulatory violations, uniquely or differently from any other similar set of properties or businesses within the City, that could justify the policy to target them to the exclusion of others," *id.* ¶ 70.

But there's also a deeper flaw in Affirmative Defense 32: It's so vague and overbroad that it doesn't survive even the lower pleading standard of Rule 8(c). Although Rule 8 doesn't obligate a defendant to set forth detailed factual allegations, "[a] court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint." *Morrison*, 434 F. Supp. 2d at 1318; *see also Tsavaris*, 310 F.R.D. at 682 (striking—under the lower pleading standard—"defenses" that were "bare-bone conclusions of law without *any* supporting facts"). We therefore **STRIKE** Affirmative Defense 32 *without* leave to amend because it's not a true affirmative defense and because any amendment would be futile. *See, e.g., Charleston Labs., Inc. v. Takigiku*, 2016 WL 8678545, at *3 (S.D. Fla. May 26, 2016) (Cohn, J.) ("The [s]econd [a]ffirmative [d]efense is not a true affirmative defense. It does not respond to or attempt to justify any actions forming the basis for the claim asserted in the [complaint]. It simply seeks to preempt claims not actually pled. Moreover, the [d]efense as stated does not put [p]laintiff on notice of which allegations and corresponding claims [d]efendant believes are barred.

Because no amendment could transform this claim into a viable affirmative defense, the [s]econd [a]ffirmative [d]efense will be stricken without leave to amend.").

### E. Affirmative Defense 36

In its Thirty-Sixth Affirmative Defense, the City says that the "Plaintiffs cannot demonstrate threat of an irreparable injury as required to receive injunctive relief. Injunctive relief is not available for past actions." Affirmative Defenses at 94.

Again, frivolous. Affirmative Defense 36 is an outright denial of the Plaintiffs' allegation that the City is *currently* engaged in a "relentless effort against Plaintiffs designed to run them and their businesses out of town." Amended Complaint ¶ 2; *see also id.* ¶ 23 ("The City *continues* to harass Ball & Chain, by, among other things, moving the goalposts with eleventh hour requests and re-reviews by all department disciplines, to ensure that one of Ball & Chain's greatest sources of revenue, its patio, remains closed." (emphasis added)); *id.* ¶ 75 ("The City *continues* to implement its plan and policy against Plaintiffs, and, accordingly, Plaintiffs reserve their right to amend their complaint and/or present the continued and unrelenting harassment by the City against Plaintiffs to the jury[.]" (emphasis added)); *id.* ¶ 77 ("Since the City unjustifiably shut down Ball & Chain, it has been working diligently to reopen the premises but the City *continues* to make unreasonable and new demands and requests preventing the business from opening." (emphasis added)). As we've said, "the Plaintiffs have—repeatedly and in great detail—alleged that the City continues to subject them to ongoing harm and a 'real and immediate . . . rather than speculative threat of future injury.'" Order on Motion to Dismiss [ECF No. 338] at 28 (quoting *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019)). So, we'll **GRANT** this part of the Motion to Strike and treat Affirmative Defense 36 as a denial.

### F. Affirmative Defense 37

For its Thirty-Seventh Affirmative Defense, the City avers:

> Plaintiffs' claims for injunctive relief cannot succeed as the imposition of an injunction preventing the City from enforcing its Code of Ordinances would be adverse to the public interest of protecting the health and safety of all residents and visitors. Plaintiffs are essentially asking this Court to grant it a free pass that would prohibit the City of Miami from ever enforcing its own ordinances or other State of Florida laws and regulations against Plaintiffs. Further, Plaintiffs' demand that permits be granted by court order violates separation of powers and federalism principles by asking the judicial system to substitute its judgment for that of the duly elected or appointed officials of the City.

Affirmative Defenses at 94.

Affirmative Defense 37 is *both* a simple denial *and* patently absurd. So, for starters, Affirmative Defense 37 merely alleges that the Plaintiffs have failed to meet all four of the elements of a permanent injunction—which makes it just a denial, not an affirmative defense. *See* Amended Complaint ¶¶ 259, 269, 279, 293 (seeking a "permanent injunction compelling the City to issue all entitlements to permit Plaintiffs to enjoy their constitutionally protected rights"); *see also Pujals ex rel. El Rey de los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1333 (S.D. Fla. 2011) (King, J.) ("Finally, [d]efendants assert as an affirmative defense that [p]laintiff has not sufficiently pled the elements required for injunctive relief. Defendants alleged defects in [p]laintiff's prima facie case rather than stated an affirmative defense." (cleaned up)). And the City's mind-boggling claim that an injunction preventing the enforcement of an allegedly illegal law or regulation would violate the separation of powers (or the doctrine of federalism) is ludicrous. *See Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*, 672 F. Supp. 3d 1286, 1301 n.5 (S.D. Fla. 2023) (Altonaga, C.J.) (rejecting affirmative defense that "[p]laintiff's claim for injunctive relief is barred under principles of separation of powers" because "federal courts have the power to grant injunctive relief from state regulation when such regulation conflicts with federal statutes or the Constitution"); *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("If an act of the legislature, repugnant to the constitution, is void, does it, notwithstanding its invalidity, bind the courts, and oblige them to give it effect? . . . . This would be to overthrow in fact

what was established in theory; and would seem, at first view, an absurdity too gross to be insisted on."). We therefore **STRIKE** Affirmative Defense 37.

### VI.     Defenses to Non-Existent First Amendment Claims: Affirmative Defenses 41–42

In its Forty-First Affirmative Defense, the City says that the "Plaintiffs lack standing to assert any alleged protected First Amendment activities or claims based on conduct or actions to the extent these occurred prior to Plaintiffs' formation." Affirmative Defenses at 97.

For its Forty-Second Affirmative Defense, the City claims that the "Plaintiffs lack standing to assert any First Amendment claims based on alleged First Amendment protected conduct of third persons. As an example, Plaintiffs were not the speakers or actors in the political activities alleged in Paragraph 25 of the Complaint and thus cannot rely on alleged retaliation for such conduct in support of their claims here." *Ibid.*

Affirmative Defenses 41 and 42 fail for two reasons. *First*, as the Plaintiffs note in their Motion to Strike, the "Plaintiffs have not asserted any First Amendment causes of action—so these defenses address causes of action that do not exist[.]" Motion to Strike at 21. And (amazingly) the City *concedes* that the Plaintiffs have advanced no actual First Amendment claims. *See* Response at 21 ("Plaintiffs' claims are, at their root, First Amendment claims *repackaged as* due process, Fourth Amendment, or charter violations." (emphasis added)); *see also ibid.* ("While pled under the guise of different causes of action, the claims asserted by the plaintiffs in each action . . . is [sic] based on the same foundational First Amendment retaliation and targeting allegations [raised in other actions against the City].". Since the Plaintiffs haven't asserted any First Amendment claims in *this* case, their "standing to assert [ ] First Amendment claims based on alleged First Amendment protected conduct of third persons," Affirmative Defenses at 97, is totally irrelevant, *see* FED. R. CIV. P. 12(f) (allowing the court to "strike from a pleading . . . any redundant, *immaterial, impertinent,* or scandalous matter" (emphasis added)); *see also Wyndham Vacation Ownership, Inc. v. Square One Dev. Grp., Inc.,* 2022 WL 21374382, at *4 (M.D. Fla.

Feb. 2, 2022) (Kidd, Mag. J.) (striking affirmative defenses as "irrelevant and frivolous" where they were "wholly unrelated to [p]laintiffs' allegations" in the complaint); *Tech. Ins. Co. v. Guillaume*, 2014 WL 11961971, at *2 (S.D. Fla. July 21, 2014) (Goodman, Mag. J.) (striking affirmative defense where it "b[ore] no relation to the causes of action in [p]laintiff's complaint"). We therefore **STRIKE** Affirmative Defenses 41 and 42.[2]

*Second*, and in any event, "standing is not an affirmative defense." *NAEH Media Grp. LLC v. City of Lauderhill, Fla.*, 2021 WL 8263906, at *2 (S.D. Fla. Dec. 1, 2021) (Altman, J.). "[L]ack of standing—which, notably, is not listed as an affirmative defense in Rule 8—is a 'basis for dismissal of the complaint if it is established, and should be asserted by a motion to dismiss, not by an affirmative defense.'" *Ibid.* (quoting *In re Ackerman*, 247 B.R. 336, 339 (M.D. Fla. 2000)).

For both of these reasons, we **GRANT** the Motion to Strike Affirmative Defenses 41 and 42.

### VII.    Laches: Affirmative Defense 40

In its Fortieth Affirmative Defense, the City contends:

> Plaintiffs' claims for equitable relief are barred by the doctrine of laches or undue delay. Plaintiffs unreasonably delayed asserting their equitable claims to the detriment of the City. As to the requests for injunctive relief, the Court already has ruled that Plaintiffs delayed unduly in seeking a request for a preliminary injunction. As to the requests for permanent injunctive relief, to the extent that the requested relief is appropriate, which the City denies, the amount of time that has passed and the actions or inactions of the City since the alleged actions of the City sought to be enjoined (or mandated) make the balance of harms disproportionate and also make entry of a permanent injunction against the public interest.

Affirmative Defenses at 96.

---

[2] Nor has the City provided *any* cases for its frivolous theory that, since *other* cases against the City included First Amendment claims, it should be permitted to preemptively "strike" those same claims here—even though *our* Plaintiffs *haven't* asserted those causes of action. *See* Response at 22 ("The claims in the instant action arise from the same nucleus of operative facts as the allegations of the three related actions and are, in effect, First Amendment claims by other names.").

The affirmative defense of laches requires a defendant to prove three things: "(1) [T]here was a delay in asserting a right or claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). "[T]he applicability of laches is dependent on the specific facts of a case." *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1335 (N.D. Ga. 2018).

The Plaintiffs argue that "laches or undue delay cannot bar injunctive relief where the plaintiff presents an ongoing injury, as here." Motion to Strike at 21. They also contend that the "City alleges nothing about elements two and three" of the relevant laches test we quoted above. *Id.* at 22. But these arguments all go to the merits of the affirmative defense—not to the defense's legal sufficiency. And courts frequently allow parties to "plead[ ] [their] latches [sic] defense[s] in general terms," since the purpose of Rule 8 is just "to put the parties on sufficient notice of the claims and defenses and to afford them an opportunity to respond." *Chicago Title Ins. Co. v. Commonwealth Forest Invs., Inc.*, 2007 WL 201096, at *2 (M.D. Fla. Jan. 4, 2007) (Richardson, Mag. J.); *see also id.* at 1 (denying motion to strike laches affirmative defense that stated (in its entirety): "Plaintiff's claims are barred in whole or in part by laches"); *Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, 2021 WL 3277260, at *10 (E.D. Tenn. July 14, 2021) (refusing to strike "one-line [laches] affirmative defense" because "an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the offense"). Here, the City's laches defense provides more than enough information to put the Plaintiffs on "notice of the claims [the City] will litigate." *Sparta Ins.*, 2013 WL 5588140, at *3. So, we **DENY** the Motion to Strike Affirmative Defense 40.

## VIII.   Conditions Precedent: Affirmative Defense 24

In its Twenty-Fourth Affirmative Defense, the City alleges:

Plaintiffs have failed to satisfy conditions precedent in order to challenge the constitutionality of Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance, which draws into question the Florida Building Code. Section 86.091, Florida Statutes, provides in pertinent part, "In any

proceeding concerning the validity of a county or municipal charter, ordinance, or franchise, such county or municipality shall be made a party and shall be entitled to be heard. If the statute, charter, ordinance, or franchise is alleged to be unconstitutional, the Attorney General or the state attorney of the judicial circuit in which the action is pending shall be served with a copy of the complaint and be entitled to be heard." Additionally, pursuant to Fed. R. Civ. P. 5.1(a), which is consistent with the provisions of Fla. R. Civ. P. 1.071, any party that files a pleading drawing into question the constitutionality of a state statute must promptly: (i) "file a notice of constitutional question stating the question and identifying the paper that raises it, if…a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity;" and (ii) "serve the notice and paper on the…state attorney general if a state statute is questioned – either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose." Because Plaintiffs challenge the constitutionality of an ordinance of the City of Miami, the notice provisions in Section 86.091, Florida Statutes, apply. Furthermore, because Plaintiffs' claims draw into question the constitutionality of the Florida Building Code, the notice provisions in Fed. R. Civ. P. 5.1 also apply. No such notice has been served, and Plaintiffs have therefore failed to satisfy these conditions precedent in order to maintain their claims as to the constitutionality of Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance.

Affirmative Defenses at 86–87.

The City, in short, argues that the Plaintiffs failed to give sufficient notice under FLA. STAT. § 86.091 and FED. R. CIV. P. 5.1. *See id.* at 86. The Plaintiffs, for their part, ask us to strike this affirmative defense to the extent it relies on FED. R. CIV. P. 5.1 because that rule "only applies to challenges of a 'federal or state statute' and not municipal laws." Motion to Strike at 23. As for FLA. STAT. § 86.091 (Florida's Declaratory Judgment Act), the Plaintiffs contend that, "by its own clear terms," it "governs only state 'circuit and county courts' adjudicating a state law 'declaratory judgment' cause of action." *Ibid.* We agree on both points.

Rule 5.1 applies only when a party is challenging the constitutionality of a state or federal statute—not a city or county ordinance. *See* FED. R. CIV. P. 5.1(a) (applying only where "[a] party . . . files a pleading, written motion, or other paper drawing into question the constitutionality of *a federal or state statute*" (emphasis added)); *see also, e.g.*, *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 575–76 (9th Cir. 2014) (holding that Rule 5.1 did *not* apply to a challenge to "San Diego County regulations on

concealed carry"—even though it *did* apply to "the state-wide ban on open carry"), *aff'd on reh'g en banc*, 824 F.3d 919 (9th Cir. 2016) (en banc), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *Watkins v. Cnty. of Los Angeles, Cal.*, 2024 WL 1640904, at *1 (C.D. Cal. Mar. 7, 2024) ("Plaintiffs are not challenging the constitutionality of a state or federal statute in this action. Rather, they are challenging County ordinances and the application of such ordinances to their permit application process.").

Although the City resists this conclusion, it provides no cases for its view that Rule 5.1 has ever governed a party's challenge to the constitutionality of a local or county ordinance. *See* Response at 24–25. Instead, it insists that—by challenging the city ordinance—the Plaintiffs are also *implicitly* challenging the constitutionality of the Florida Building Code. *Id.* at 24. But that's not true. The Plaintiffs' Amended Complaint plainly attacks *only* Ordinance 13936, which "eliminat[ed] any discretion by the zoning director" to revoke certain certificates without providing "notice and an opportunity to be heard prior to such revocation and deprivation." Amended Complaint ¶¶ 283–84. Nothing in the complaint even purports to assault the constitutionality of a state (or federal) statute.

We also agree that FLA. STAT. § 86.091 is "inapplicable[.]" Motion to Strike at 23. Florida's Declaratory Judgment Act states that "[t]he *circuit and county courts* have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." FLA. STAT. § 86.011 (emphasis added). It also provides that, "[i]f the statute, charter, ordinance, or franchise is alleged to be unconstitutional, the Attorney General or the state attorney *of the judicial circuit in which the action is pending* shall be served with a copy of the complaint and be entitled to be heard." FLA. STAT. § 86.091 (emphasis added). This statute—a "procedural tool that confers subject matter jurisdiction on Florida state courts," *Glick v. USAA Cas. Ins. Co.*, 2021 WL 7629401, at *2 (S.D. Fla. July 26, 2021) (Cannon, J.) (quoting *Incredible Invs., LLC v. Fernandez-Rundle*, 984 F. Supp. 2d 1318, 1324 (S.D. Fla. 2013) (Ungaro, J.))—doesn't apply here for

two reasons. *One*, by its own terms, the Florida Declaratory Judgment Act only governs cases before "[t]he *circuit and county courts*" and requires service on the Attorney General or "the state attorney *of the judicial circuit in which the action is pending*." Since we're not a circuit or county court—and given that this action isn't pending in any judicial circuit—the law is just inapposite to our case. *Two*, in Count IV, the Plaintiffs *aren't* asserting a claim under Florida's Declaratory Judgment Act at all. They are, instead, advancing a cause of action under a federal statute (42 U.S.C. § 1983). So, the notice requirements of the Florida statute are (again) totally irrelevant here.

As Judge Tjoflat once noted, "Fla. Stat. § 86.091 . . . . does not apply to suits in federal court." *Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1469 n.22 (11th Cir. 1989) (Tjoflat, C.J., dissenting).[3] We therefore **GRANT** the Motion to Strike Affirmative Defense 24.

### IX.     Failure to Join Indispensable Party: Affirmative Defense 23

In its Twenty-Third Affirmative Defense, the City avers:

> Plaintiffs have failed to join an indispensable party or parties whose participation is required in their due process claims. In this action Plaintiffs challenge the constitutionality of the certificate of use revocation provisions contained in Section 2-211 of the City of Miami Code of Ordinances, as amended by the Revocation Ordinance, in circumstances that Plaintiffs allege "do not implicate emergent life-safety hazards, without pre-deprivation notice or an opportunity to cure." *See* Am. Compl. ¶ 284. The City disputes that the code enforcement violations at issue in the Amended Complaint do not implicate emergent life-safety hazards, but regardless, the provisions of Section 2-211 of the City of Miami Code of Ordinances are consistent with Section 111.4 of the Florida Building Code, as well as other provisions, which

---

[3] The cases the City cited in support of these affirmative defenses are likewise inapposite here. *See* Response at 24. Unlike our Plaintiffs—who, from the outset, have proceeded with a § 1983 claim in federal court—the plaintiff in *Hudder v. City of Plant City* asserted a Florida Declaratory Judgment Act claim *in state court* and was only later removed to federal court. 2014 WL 7005904, at *1 (M.D. Fla. Dec. 10, 2014) (Kovachevich, J.); *see also* Compl., *Hudder v. City of Plant City*, 8:14-cv-01686 (M.D. Fla. July 10, 2014) (Kovachevich, J.), ECF No. 2 ¶ 12. Even less relevant is *Mallory v. Harkness*, where Florida's Attorney General *voluntarily* "intervened to defend the constitutionality of the challenged statute under § 86.091, Fla. Stat." 923 F. Supp. 1546, 1552 (S.D. Fla. 1996) (Ryskamp, J.). Finally, in *Roberts v. Bondi*, the court held that the Attorney General "is 'entitled to be heard' when a state statute is challenged as unconstitutional[,] . . . . [b]ut that does not mean enforcing [the challenged] statute is her duty for *Ex parte Young* purposes." 2018 WL 3997979, at *2 (M.D. Fla. Aug. 21, 2018) (Covington, J.). None of these cases held (or even suggested) that FLA. STAT. § 86.091 applies to federal-court suits in which the plaintiff hasn't advanced *any* claims under Florida's Declaratory Judgment Act.

allows for a building official to suspend or revoke a certificate of occupancy or completion for any certificate issued in error or on the basis of incorrect information supplied or where any building or structure is determined to be in violation of any ordinance or regulation, the same rationales contained in Section 2-211 and relied upon by the City to revoke Plaintiffs' Certificates of Use in the instant matter. There is no "pre-deprivation notice or an opportunity to cure" contained in the applicable provisions of the Florida Building Code. Furthermore, Section 2-211 of the City of Miami Code of Ordinances is also consistent with Section 8-21.1(f) of the Miami-Dade County Code, which provides that "[w]henever any building or portion thereof is being used or occupied contrary to the provisions of this Chapter, the Building Official shall order such use or occupancy discontinued and the building or portion thereof vacated." Accordingly, Plaintiffs' claims that Section 2-211 is unconstitutional also implicate the constitutionality of the Florida Building Code as well as the Miami-Dade County Code. As such, the State of Florida and Miami-Dade County are indispensable parties to this matter.

Affirmative Defenses at 86–87.

We strike this affirmative defense as legally "insufficient." FED. R. CIV. P. 12(f). A party is indispensable if, "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(1).

Whether some provisions of the City of Miami Code of Ordinances may be "consistent" with sections of the Florida Building Code or the Miami-Dade County Code, *see* Affirmative Defenses at 87, tells us nothing about whether the State of Florida and Miami-Dade County are indispensable parties to this case. Other than alleging that this case "implicate[s] the constitutionality" of State and County law, the City "do[es] not assert why full relief cannot be accorded between [itself] and [the Plaintiffs], or how [the State of Florida and Miami-Dade County] will be harmed" by their absence from these proceedings. *Pujals*, 777 F. Supp. 2d at 1332. In any event, we agree with the Plaintiffs that they "can obtain complete relief under Count IV—i.e., a procedural due process challenge under §

1983 to find that City Code Sec. 2-211 is unconstitutional—without impacting the constitutionality of either the Florida Building Code or the County Code[.]" Motion to Strike at 24. We therefore **GRANT** the Motion to Strike Affirmative Defense 23.

## X.     Exhaustion of Administrative Remedies: Affirmative Defense 26

In its Twenty-Sixth Affirmative Defense, the City contends that the "Plaintiffs have failed to exhaust their available administrative remedies. Plaintiffs initiated, then abandoned, appeals to the Miami-Dade County Board of Rules and Appeals ('BORA') and the City of Miami Planning, Zoning, and Appeals Board ('PZAB'). Plaintiffs' appeal to BORA concerned the suspension of Plaintiffs' Certificates of Occupancy, and Plaintiffs' appeal to PZAB concerned the revocation of Plaintiffs' Certificates of Use, both of which form the basis of Plaintiffs' Complaint. Because Plaintiffs have not pursued their BORA and PZAB appeals, Plaintiffs have failed to avail themselves of administrative remedies that would address their claims." Affirmative Defenses at 89.

On Affirmative Defense 26, the Plaintiffs note that "there is no requirement that a plaintiff exhaust his administrative remedies before filing suit under § 1983." Motion to Strike at 25 (quoting *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226–27 (11th Cir. 2006)). The City concedes that "pursuing administrative remedies" is not "a condition precedent" to *every* § 1983 action—but it insists that "[f]ailure to exhaust administrative remedies *is* a recognized affirmative defense to § 1983 actions *based on procedural due process*." Response at 25 (emphases added & quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000)). But the City's argument is based on a misreading of *Cotton*, which said nothing about affirmative defenses. It noted, instead, that, "[i]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." 216 F.3d at 1331. That's because, as the Eleventh Circuit explained, a plaintiff cannot show a deprivation of procedural due process under § 1983 *unless* "the state refuses to provide a process sufficient to remedy the otherwise procedurally flawed deprivation

37

of a protected interest[.]" *Ibid.* (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)).

*Cotton* thus made clear that the City's Affirmative Defense 26 is merely a denial that the Plaintiffs have met the elements of their procedural due process claim (rather than an affirmative defense). *See ibid.* ("[W]e—when determining if a plaintiff has stated a valid procedural due process claim—look to whether the available state procedures were adequate to correct the alleged procedural deficiencies."); *see also, e.g.*, *Laney v. Hosp. Bd. of Dir. of Lee Cnty.*, 2010 WL 5161367, at *7 (M.D. Fla. Dec. 14, 2010) (Steele, J.) (describing the existence of a "state remedy" as "an element of the cause of action" in a § 1983 procedural due process case). We therefore **GRANT** this part of the Motion to Strike and treat Affirmative Defense 26 as a simple denial.

### XI.   Preclusion: Affirmative Defenses 33–35, 38–39

For its Thirty-Third Affirmative Defense, the City avers:

> Plaintiffs' claims are barred by the doctrine of judicial estoppel. Plaintiffs' Complaint is based on allegedly unfounded citations for code violations at Plaintiffs' properties. However, in direct contradiction with the positions advanced in the Complaint, Plaintiffs previously pled guilty to the City of Miami Code Enforcement Board and/or the City of Miami Special Master for the same or similar code enforcement efforts challenged in the Complaint, including for work performed without a permit and failure to obtain a warrant. Plaintiffs had at least thirty-six scheduled Code Enforcement Board or Special Master hearings in multiple matters between 2017 and 2021 to address code enforcement concerns. In several of those matters, Plaintiffs accepted the code enforcement violation(s) and pled guilty. It is inconsistent to now claim that the City of Miami's code enforcement efforts were unjustified and unconstitutional when Plaintiffs previously accepted responsibility for the same or similar violations.

Affirmative Defenses at 92.

For its Thirty-Fourth Affirmative Defense, the City says:

> Plaintiffs' claims are barred by the doctrine of judicial estoppel on separate grounds. As stated above, in the Related Matter principals of the Plaintiff entities, Fuller and Pinilla, asserted causes of action against City of Miami Commissioner Joe Carollo in his individual capacity for allegedly instigating code enforcement actions and taking other actions against Fuller and Pinilla's businesses, including those complained of in the Complaint at issue in this matter. The Related Case went to trial, and a jury verdict was returned in favor of Fuller and Pinilla on June 1, 2023. [*See* Verdict Form in the Related Matter, ECF No. 470]. As a part of that verdict, Fuller and Pinilla specifically

requested a finding from the jury as to whether (i) Commissioner Joe Carollo intentionally committed acts to violate Fuller's and Pinilla's rights to free speech and assembly (answered in the affirmative) and (ii) whether, as a result, punitive damages should be awarded against Commissioner Joe Carollo (answered in the affirmative, with combined punitive damages awarded in the amount of $47,600,000.00). At such trial, many or most of the allegations in the instant Compliant were presented as evidence to the jury. It is legally inconsistent to claim, in the Related Matter, that the damages sustained by principals of Plaintiffs' entities here were caused by Commissioner Joe Carollo's intentional acts, such that an excessive punitive damage award would be appropriate, and then to claim here that Plaintiffs' damages are caused by the official policies of the City of Miami. Accordingly, Plaintiffs are barred from bringing such contradictory claims.

*Id.* at 92–93.

In its Thirty-Fifth Affirmative Defense, the City contends:

Plaintiffs' claims are barred by the doctrine of judicial estoppel on still separate grounds. On April 5, 2021, Plaintiff Mad Room LLC filed a state-court Complaint against Ortus Engineering, P.A. ('Ortus'), which was Plaintiffs' chosen private provider, along with Elvis Torres, the engineer associated with Plaintiff's alternate plans review process, for professional negligence, breach of fiduciary duty, and breach of contract related to Ortus's professional services in providing alternate plans review and inspections related to Ball & Chain's voluntary compliance with a December 4, 2019 final order for work without a permit. In that litigation, Plaintiff alleged that Ortus's and Torres's misleading, erroneous, and negligent submissions to the City were the direct and proximate cause of the City's suspension and revocation of Ball & Chain's CO and CU. *See Mad Room, LLC v. Ortus Engineering, P.A.*, Case No. 1:21-cv-2348-RKA (Fla. 15th Circuit Ct. 2021). It is legally inconsistent to claim now that the City of Miami itself is responsible for actions Plaintiff has already judicially admitted were directly and proximately caused by a private entity and individual.

*Id.* at 93–94.

For its Thirty-Eighth Affirmative Defense, the City alleges:

Plaintiffs' claims are barred due to their impermissible claim splitting. Plaintiffs' principals and affiliates collectively have filed no fewer than three separate lawsuits in the United States District Court for the Southern District of Florida and one in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida for claims based on the same allegedly unconstitutional First Amendment violations and code enforcement actions of the City, including the following cases: (i) this matter; (ii) *William O. Fuller, et al. v. Joe Carollo*, Case No. 18-cv-24190 (S.D. Fla. 2018); (iii) *William Fuller, et al. v. The City of Miami, et al.*, Case No. 23-cv-24251 (S.D. Fla. 2023); and (ix) *Tower Hotel, LLC, et al. v. City of Miami*, Case No. 2022-008069-CA-44 (Fla. 11th Cir. Ct. 2022).

*Id.* at 94–95.

For its Thirty-Ninth Affirmative Defense, the City avers:

Plaintiffs' claims are barred, in whole or in part, by the doctrine of *res judicata*. Consistent with the Order Denying Motion to Clarify Judgment, entered by Judge Rodney Smith in the Related Matter (ECF No. 618 in the Related Matter), *William Fuller, et al. v. Joe Carollo*, Case No. 18-24190-CIV (S.D. Fla. February 6, 2024), principals of Plaintiff entities previously sued the City in a constitutional violation case based upon the same or similar facts as those alleged in the instant matter. Plaintiffs in the Related Matter filed an Amended Complaint and Demand for Jury Trial against several defendants, including the City, on January 8, 2019 [ECF No. 43 in the Related Matter]. Those claims were dismissed against the City, with leave to replead. However, plaintiffs in the Related Matter chose instead to drop the City as a party and proceed only against Joe Carollo, in his individual capacity, by the filing of their Second Amended Complaint on June 28, 2019 [ECF No. 125 in the Related Matter]. The decision by plaintiffs in the Related Matter to not replead claims against the City has a preclusive effect upon any alleged claims or allegations that could have been asserted against the City at the time of filing of the Second Amended Complaint, including any alleged facts that purportedly establish some City policy or custom for purposes of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The decision to not replead claims against the City after they were dismissed with leave to replead constitutes a final judgment on the merits by a court of competent jurisdiction, in a case prosecuted by parties who are in privity with Plaintiffs in the instant matter. Furthermore, the claims raised both in the Related Matter and the instant matter arise out of the same transaction or series of transactions, arise out of the same nucleus of operative fact, or are based on the same factual predicate. Accordingly, any claims or allegations that arose prior to June 28, 2019 are barred in this action by the doctrine of *res judicata*.

*Id.* at 95–96.

We won't strike any of these affirmative defenses (33–35, 38–39). Estoppel and *res judicata* are proper affirmative defenses. *See* FED. R. CIV. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . [and] *res judicata*[.]"). And a defendant can always advance a claim-splitting argument in an affirmative defense because "[c]laim-splitting has been analyzed as an aspect of *res judicata* or claim preclusion." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017); *see also Sound Around, Inc. v. O'Donnell*, 2023 WL 4234825, at *3 (S.D. Fla. June 28, 2023) (Scola, J.) (holding that "claim splitting can be raised by way of an affirmative defense"). Besides, the Plaintiffs don't seriously argue that Affirmative Defenses 33–35 and 38–39 should be stricken. *See* Motion to Strike at 25 ("The Court *may be required* to credit the

City's pleaded facts for now. But the reality in those separate lawsuits—which the Court could judicially notice or which will be available at summary judgment—show that all of the City's preclusion defenses fail as a matter of law." (emphasis added)).[4]

\* \* \*

One last thing: While we appreciate that this case is complex and that litigation up to this point has been contentious, we'd be remiss if we didn't point out that the vast majority of the City's affirmative defenses were improperly pled. And many of these were improper precisely because, as any first-year lawyer would have known, they weren't affirmative defenses at all. Yet again, in other words, the City has wasted an enormous amount of the Court's—not to mention the parties'—time advancing positions that border on (and sometimes cross over into) frivolity. In the future, we trust that all litigants advancing affirmative defenses will carefully engage with this Order, and that the parties in this case will make a good faith effort to confer and resolve issues by agreement before burdening the Court with pleadings that have little to no reasonable chance of success.

## CONCLUSION

The Plaintiffs' Motion to Strike Affirmative Defenses is therefore **GRANTED in part** and **DENIED in part** as follows:

---

[4] In the final paragraph of its Affirmative Defenses, the City asserts that it "reserves the right to raise additional affirmative defenses as they are discovered or determined to exist during discovery." Affirmative Defenses at 97. Of course, "[a] 'defense' seeking to reserve the right to raise additional affirmative defenses is not a valid affirmative defense." *Premier Baths, Inc. v. Safe Step Walk-In Tub Co.*, 2012 WL 13102325, at \*2 (M.D. Fla. Oct. 19, 2012) (Conway, J.). But, even if the City isn't advancing this claim as an "official" affirmative defense, "the decision regarding whether to allow amendment other than as of right rests within the Court's discretion under Rule 15(a)(2)" and, thus, "a reservation of rights within an answer is . . . meaningless." *Ramnarine v. CP RE Holdco 2009-1, LLC*, 2013 WL 1788503, at \*6 (S.D. Fla. Apr. 26, 2013) (Rosenbaum, Mag. J.); *see also Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773, at \*12 (S.D. Fla. Mar. 4, 2005) (Klein, Mag. J.) (holding that the defendants' "attempt to reserve the right to assert additional defenses in the future" was a "nullity and surplusage as [d]efendants will still have to move for leave to amend to raise new defenses").

1. We **STRIKE** Affirmative Defenses 13, 16, 18, 23, 24, 29, 30, 32, 37, 41, and 42 without leave to amend.

2. We **STRIKE** Affirmative Defenses 25 and 28 without prejudice and with leave to amend. The Defendant shall file its amended affirmative defenses by **June 13, 2024**. The Defendant is granted leave *only* to amend these two affirmative defenses and may not add new ones.

3. We'll treat Affirmative Defenses 1, 3–9, 10, 12, 14, 19–22, 26, 27, 31, and 36 as simple denials.

4. The Motion to Strike is **DENIED** as to 2, 11, 15, 33–35, and 38–40.

5. The Motion to Strike is **GRANTED** as to the part of Affirmative Defense 17 that seeks to blame the Plaintiffs' injuries on COVID-19 since that portion is duplicative of Affirmative Defense 15. But we'll treat the rest of Affirmative Defense 17 as a mere denial.

**DONE AND ORDERED** in the Southern District of Florida on May 30, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record